**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| MICHAEL J. DANIELS, ET AL. § | |
| PLAINTIFFS, § | |
| § | |
| V. § | CASE NO. SA-19-CV-01280-FB |
| § | |
| AETC II PRIVATIZED HOUSING, LLC, ET AL. § | |
| DEFENDANTS § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL RULE 35 PHYSICAL AND MENTAL EXAMINATION-ABIGAIL PISANO**

NOW COMES Plaintiff Abigail Pisano ("Plaintiff") and files this response to Defendants' Motion to Compel Rule 35 Physical and Mental Examination-Abigail Pisano ("Motion") [ECF No. 121].

**I. PRELIMINARY STATEMENT**

Defendants, privatized landlords who leased mold-ridden, substandard housing to military families on military bases, seek an order compelling Plaintiff to present for at least two days' worth of invasive physical and mental examinations, interviews, and testing by up to four allergy/immunology physicians, psychiatrists, and neuropsychologists, *over two years after she ceased living in the mold and sewage infested house*. Faced with claims by Individuals who Defendants knowingly placed in undermaintained houses replete with known issues, Defendants are attempting to bully said claimants with oppressive discovery, exhaustive depositions, and unnecessary medical examinations. If anyone needs psychological testing, it is the landlords[1] who employ such a strategy on military servicemembers and their families.

---

[1] By 2019, reports of military families' living conditions had become so dire the Senate began holding hearings on the subject. The Department of Judgment also began investigating fraud committed by

Simply put, Defendants' Motion is an attempt to intimidate and harass plaintiffs from asserting claims against them.  By their Motion, Defendants are sending a message to the military community that if you live on-base and assert your legal rights after being exposed to substandard housing conditions, you will subject yourself to exhaustive discovery, extensive releases of your personal records, countless hours of depositions, a physical examination by a physician chosen by your former landlord, 6-8 hours of neuropsychological examination, and 2-3 hours of Interviews by a physiatrist.

The relief Defendants seek is oppressive and burdensome, meant to intimidate and harass Plaintiff, and no good cause exists for such relief. Because Defendants have failed to satisfy their burden under Rule 35, Defendants' Motion should be denied in its entirety.

## I. BACKGROUND

Plaintiff lived in a house leased to her family by Defendants at Randolph Air Force Base.  The house was infested with mold and sat on top of a cesspool, resulting in Plaintiff fleeing the house when the sewage was discovered below the house.  Plaintiff is now over two years removed from having lived in the problem house. On the base, the house is commonly referred to as the "poop house," as multiple occupants have experienced similar issues.  Nevertheless, Defendants have failed to competently repair and remediate the house, and then lease it to the next unsuspecting victim.

Throughout the course of the litigation, in an effort to document and substantiate her claims, Plaintiff has responded to extensive discovery.  To start, Plaintiff signed authorizations for the release of all types of records from birth to the present, including

---

privatized housing companies who manage and lease on-base housing.  As such, Defendants are attempting to silence anyone who speaks out against them.  The Motion and its message are part of the strategy.

medical records, mental health records, and psychotherapy notes.  The authorizations included the following:

1. Unemployment Insurance Records (Texas);
2. Unemployment Insurance Records (General);
3. Workers' Compensation Records;
4. Tax Information (IRS Form 8821);
5. Tax Return Transcript (IRS Form 4506-T);
6. Tax Return Records (IRS Form 4506);
7. CVS Pharmacy Records;
8. Walmart Pharmacy Records;
9. Rite Care Pharmacy Records;
10. Walgreens Pharmacy Records;
11. Military Medical Records;
12. Military Alcohol and Substance Abuse Records;
13. Texas Workforce Commission Records;
14. General HIPAA Release;
15. Department of Veterans Affairs Release;
16. Social Security Earning Information;
17. Social Security General Release;
18. Military Personnel Records (Form SF 180);
19. Insurance Records;
20. Educational Records;
21. Psychotherapy Notes;
22. Employment Records; and
23. Criminal Records.

Although Plaintiff considered this request to be extremely invasive of her privacy, in the interest of cooperation and transparency, Plaintiff allowed the release of these records.

In addition to the virtually unlimited release of her medical and mental health records, Plaintiff answered thirty-five interrogatories complete with multiple subparts. Plaintiff produced responsive documents to thirty-eight requests for production. Responding to these requests required extensive time and effort.

Thereafter, Plaintiff sat for well over seven hours of deposition over the course of two days, during which defense counsel had the opportunity to ask every question they desired - about medical issues, mental health issues, and the mental anguish Plaintiff and her family endured.

Defendants, who are in possession of all relevant medical and mental health records and have been afforded every opportunity to question Plaintiff extensively regarding her physical and mental health condition, now seek an order compelling Plaintiff to submit to invasive[2] mental and physical examinations to be performed by four medical professionals - examinations which will subject her to at least two additional days of examinations that are not reasonably limited to produced relevant evidence.

During the course of discovery, Defendants filed a prior Motion to Compel Rule 35 Physical Examination (Docket Entry 93) seeking an order compelling all forty Plaintiffs in this case—adults and children alike—to travel to the Western District of Texas[3] to present themselves for invasive physical examinations, interviews, and testing by two allergy, asthma, and immunology physicians. This Court denied that motion. The present Motion should be similarly denied.

**II. ARGUMENT AND AUTHORITIES**

Medical examinations in aid of litigation implicates a delicate balancing of the parties' competing interests. While a Defendant should be able to defend itself against claims made in litigation, each claimant has clear constitutional privacy interests that must be respected, even in litigation. In recognition of this, Federal Rule of Civil Procedure 35(a) provides that a court "may" order a party to submit to a physical

---

[2] Plaintiff respectfully suggests that being forced to undergo any medical or mental health examination is, by its very nature, invasive in all but the medical sense of the term. Probing the body and the mind, especially for over 8 hours, invade the sanctity of the person.

[3] As the Court well-knows, at the direction of the U.S. Military, military families move throughout the country and throughout the world on average every two to three years. While the Pisano Plaintiffs happen to remain in San Antonio, Texas at the present time, the majority of the plaintiffs are no longer stations at JBSA. Presenting for in person depositions and examinations is a burden on many of these families who have no choice but to move where directed by the U.S. Military, and, with specific respect to the servicemembers, their time away from their jobs interferes with military readiness.

examination where a party has placed his or her mental or physical condition "in controversy" and the requesting party meets the burden of showing "good cause" for such examination. *See* Fed. R. Civ. P. 35(a). "Good cause" requires "a showing that the requested information cannot be obtained by other means . . . and that there is some reason for the examination other than the fact that a party's mental or physical condition is at issue." *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 379 F. Supp. 3d 669, 678 (S.D. Ohio 2019) (citations omitted). Even if the "good cause" requirement of Rule 35(a) is met, "it is still within the sound discretion of the trial court as to whether to order an examination." *Kador v. City of New Roads*, Civil Action No. 07-682-D-M2, 2010 WL 2133889 at *2 (M.D. La. May 27, 2010) (citing *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (S.D. Miss. 1970)); *see also Simmang v. Tex. Bd. of Law Examiners*, A-03-CA-650 LY, 2005 WL 6750946, at *2 (W.D. Tex. Apr. 7, 2005).

While Plaintiff agrees that her mental and/or physical condition is "in controversy" in the case, Defendants have failed to show good cause for the requested physical examinations. Additionally, the costs, logistics, and imposition of requiring Plaintiff to be seen by up to four experts chosen by Defendants is not warranted.

### A. Defendants Fail to Show Good Cause for Rule 35 Examinations

Good cause for the examinations Defendants seek is lacking for three reasons: (1) Defendants can obtain the information sought by the examinations by other means; (2) Defendants have failed to show that there is some other reason for the examinations other than that a party's mental or physical condition is at issue, and (3) any claimed need for the examinations is outweighed by the breadth and invasiveness of the exams.

#### 1. Information by Other Means

Good cause requires a showing that the information sought cannot be obtained by other means. Defendants argue that they can only obtain relevant evidence regarding

Plaintiff's claimed health conditions through their proposed physical and mental examinations. (ECF No. 121, at 3). This is incorrect.

Courts consider whether there is a probability of obtaining information through other sources (e.g. medical reports and depositions). *Ornelas v. Southern Tire Mart, LLC*, 292 F.R.D. 388, 391-2 (S.D.Tex.2013). Courts have previously held that for claimants alleging past injury, but not ongoing harm, the best evidence of the individual's damages are records of past medical treatment. *See Phoenix Intern. Holdings, Inc. v. Bjorklund*, Civil Action No. 09-6046, 2009 WL 3378606, at *2 (E.D. La. Oct. 14, 2009) (holding Rule 35 physical examination not justified where medical condition of individual had not changed since last treatment).

Defendants' experts have already identified the exhaustive volume of material they have reviewed. (ECF Nos. 121-1, at 2, 121-2 at 2). These records are far more proximal in time to when Plaintiff resided in the problem house than any presently conducted exam over two years after the family ceased living in the house[4]. Instead, what their declarations present is an effective "wish list" of additional information they desire to obtain (which could have been obtained by defense counsel during depositions[5]), additional questions they desire to be asked based on additional medical records obtained after the deposition[6], and medically-oriented examinations they desire the

---

[4] Ironically, Defendants seek Rule 35 examinations of Plaintiff Pisano well after Plaintiff Pisano moved out of the problem house, yet Defendants have refused to agree to testing and inspections of the house after Plaintiffs Pisano departed, going so far as to attempt to prohibit them from photographing the house while the Plaintiffs were inspecting their household goods that remained in the house.

[5] Defendants could have had their experts available at or during the depositions to ensure that all relevant questions were asked, but elected not to do so.

[6] Defendants, not plaintiffs, elected to proceed with depositions without all of the medical records.

plaintiffs to undergo, ostensibly for the purpose of making medical diagnoses. All of the requested information could have been obtained by defense counsel through the deposition process. Further, there is no need for the Defendants' experts to make medical diagnoses to defend against the Plaintiffs' claims, nor is there a need for expert testimony on the issue of mental anguish damages. Defendants' experts have all of the information the Plaintiffs' experts will have[7], and have failed to demonstrate that they are unable to challenge another medical professionals' diagnosis based on the records.

Defendants possess authorizations for the release of every single health record for Plaintiff – including those health records that were created before, during, and after the time Plaintiff living in Defendants' housing. Further, over the course of two days of deposition, Defendants' counsel examined Plaintiff at length regarding medical records, medical conditions, and her claim of mental anguish. Simply put, Defendants fail to demonstrate that the information sought on matters that will be relevant at trial cannot be obtained from other means.

### 2. *Lack of Viable Reason or Necessity for Examination*

In order to show good cause for a Rule 35 examination, the movant must also show a that there is a reason or necessity for the examination other than that the party's mental or physical condition is at issue. Defendants have failed to demonstrate that there is a viable reason for an examination by an allergist two years after the Plaintiffs ceased living in the house, and have failed to demonstrate that there is a viable reason for a psychiatrist and neuropsychologist to conduct between 8 and 10 hours of examinations on a Plaintiff who is asserting a claim for mental anguish damages.

---

[7] At this time, the responding Plaintiff's intend to present expert testimony from experts who have reviewed medical records and not conducted physical exams. Defendants will have a full opportunity to cross-examine any such experts.

To prove good cause, the requesting party must show that the examination could lead to the discovery of specific facts relevant to the cause of action and *necessary* to the requesting party's case. *Ornelas*, 292 F.R.D. at 391; *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D.Cal.1995); *see Young v. U.S.*, 311 F.R.D. 117, 120-21 (D.N.J.2015) (good cause is not satisfied by mere relevance). While Plaintiff assert claims for mental anguish and future treatments related to the mental anguish Plaintiff suffered, the mental anguish in this case is not an expert issue. Under Texas law, to show an entitlement to mental anguish damages, the plaintiff must put on evidence showing "the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," or showing "'a high degree of mental pain and distress that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.1995) (quoting *J.B. Custom Design & Bldg. v. Clawson*, 794 S.W.2d 38, 43 (Tex.App.1990)). Plaintiffs are not required to show the mental anguish resulted in physical symptoms. *Id.* at 443. Expert testimony is not required to show compensable mental anguish, which may be proven by the "claimants' own testimony, that of third parties, *or* that of experts." *Parkway Co.*, 901 S.W.2d at 444 (emphasis added); *see also Gilmore v. SCI Texas Funeral Servs., Inc.*, 234 S.W.3d 251, 258 n. 4 (Tex.App.2007) ("Expert testimony is not required to recover mental anguish damages."). Similarly, expert testimony is not required to establish that mental anguish led to physical symptoms. *See Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 233 (Tex.2011) (affirming a finding of mental anguish where the claimant "testified that she suffered burning in her stomach due to the stress and sought medical treatment for the symptoms" and further testified "[s]he continued to have headaches and take medication for anxiety and depression"). The suffering of family members may evidence mental anguish. *See McCaig v. Wells Fargo Bank* (Tex.), *N.A.*, 788 F.3d 463, 482–83 (5th Cir. 2015).

At bottom, because an expert opinion is not necessary to prove mental anguish, there is no necessity that defendants can demonstrate for the proposed extensive psychiatric and psychological examinations. Every question relevant to the legal definition of mental anguish was and could have been asked by defense counsel during the deposition. Further, it is completely unnecessary for Defendants to have experts diagnose Plaintiff with any conditions in order to defend against the claims. To the extent Defendants' experts desire to challenge the diagnoses of Plaintiff, Defendants have access to all of the underlying records and can, if they believe the diagnoses was incorrect or did not follow appropriate standards, testify as to the claimed deficiencies In the process or diagnoses. However, allowing Defendants' experts the opportunity to conduct full examinations for the purpose of coming up with their own diagnoses is unnecessary and improper.

With specific respect to Dr. Ticknor, he fails to state the issue on which he is being asked to opine. Because expert testimony is unnecessary to establish mental anguish damages, Dr. Ticknor's examination is unnecessary. Further, Dr. Ticknor fails to establish how the neurofunction examination would lead to any relevant evidence on the issue of mental anguish or on another medical provider's diagnosis. While it is possible that Dr. Ticknor might still opine on the issue of mental anguish based on the testimony of Plaintiff, he should not be afforded an opportunity to conduct an examination and ask questions that defense counsel failed to ask. At bottom, Dr. Ticknor's 2 to 3 hour interview is simply a chance for Defendants to re-do the deposition and has not been demonstrated to be necessary to develop relevant evidence on any claim or defense In the case.

With respect to Justin O'Rourke, PH.D., Defendants fail to establish why his opinion is necessary in addition to that of Dr. Ticknor, or what specific legal issue he will

be opining on. Moreover, Justin O'Rourke, PH.D., effectively admits that he can render his opinions based on the records when he concedes that a medical professional who conducts a personal examination and testing is "generally in a better position" to obtain "Insight Into the Pisanos' condition." (ECF 121-3, at 3). Through that admission, he demonstrates that the personal examination and testing is not necessary. Further, much like with Dr. Ticknor, because the mental anguish damages do not require expert testimony, it is unnecessary for Justin O'Rourke, PH.D., to conduct an examination. He can review the testimony of the Plaintiff and make his opinions based on the Information obtained by defense counsel.

With respect to claimed need for neuropsychological functioning testing, which will require 5 to 6 hours to conduct, Defendants have failed to establish why it is necessary, helpful, or relevant. Plaintiff has testified at length as to the conditions in the house and the effect it had on her mental health. Defendants fail to offer any information as to how this type of an examination would change the testimony or the effect of the testimony given by Plaintiff.

With respect to the physical examination by the allergist, Dr. Gross, Defendants have failed to demonstrate how a physical examination over two years after the exposure could lead to relevant evidence, other than by pointing out what he would like to ask that defense counsel did not. Defense counsel had an opportunity to inquire of all of Plaintiff's specific complaints and could have had Dr. Gross present or available to make sure all of the information necessary was obtained during the deposition. More importantly, however, Dr. Gross has already arrived at an opinion when he testified that "I do not find any evidence in the medical records above which would establish to a reasonable degree of medical certainty that any of the Pisanos' claimed physical (i.e. non-mental) symptoms or injuries were caused by exposure to any conditions in their home." (ECF No. 121-1, at

2-3.) Why, then, is it necessary for him to conduct a physical examination? And while Dr. Gross states that "an in-person physical examination of each of the Pisanos will yield valuable information to me…", he fails to articulate what information he might obtain that would change the conclusion he already reached. Every question posed in paragraph 7 of Dr. Gross's declaration is a question that defense counsel did or could have asked during the deposition. Because Defendants are asking for an effective "re-do" of the deposition with a medical professional, and because Defendants have not addressed how an examination two years after exposure is will lead to relevant information, Defendants have failed to establish a viable reason or necessity for the physical examination by Dr. Gross.

### 3. *Examinations are Overly Broad and Invasive*

A motion for a Rule 35 examination should be denied or limited when the examination would be oppressive, too burdensome, or too costly. *See Favele v. Roman Catholic Diocese of Bridgeport*, 235 F.R.D. 553, 555 (D.Conn.2006); *Romano v. Interstate Express, Inc.*, No. CV408-121, 2009 WL 211142 (S.D.Ga.2009) (slip op.; 1-28-09).

Plaintiff has already sat for hours of depositions over two days and answered every question defense counsel desired to ask. To allow 3-4 medical professionals to consume an additional two days of Plaintiff's life to re-ask the same questions, to conduct physical medical examinations, to conduct 6-8 hours of a "battery of neuropsychological tests," and to be subjected to another 2-3 hours of interrogation is burdensome and oppressive.

Additionally oppressive is the fact that Dr. Lara Gross has not sworn under penalty of perjury that, if examinations were allowed, she would follow the exact same protocols as Dr. Gary N. Gross. Moreover, her credentials and CV have not been tendered in connection with the Motion, making it difficult to ascertain her qualifications.

Finally, the proposed combination of an examination conducted by Dr. Ticknor and Justin O'Rourke, PH.D., has not been adequately explained for why it should be allowed or why its necessary, and appears to be fairly novel in terms of use in civil litigation of the instant nature. Instead, this approach appears to be more commonly used to assess whether a criminal defendant Is competent to stand trial. As such, this proposed tag-team examination is oppressive.

Accordingly, Defendants' Motion should be denied because the proposed examinations are incredibly oppressive and too burdensome.

### B. Request for Hearing

Given the lack of clarity in the Defendants' declarations as to the ultimate issues on which the purported medical professional will opine, and whether the information they seek could have been obtained by defense counsel during a deposition, Plaintiff respectfully requests that the Court either (i) allow Plaintiff's counsel the opportunity to depose the medical professionals in advance of the hearing so that Plaintiff's counsel can respond with the same access to the requesting medical professionals and potentially limit the scope of the request, or (ii) set this matter for oral hearing at which time Plaintiff's counsel can examine the medical professionals for the same purpose.

To the extent the Court is inclined to grant any relief requested by the Defendants, Plaintiff requests that the Defendants' corporate representatives who participated in the decision-making and implementation of Defendants' scheme to undermaintain houses and subject servicemembers and their families to mold, sewage, insects and gaslighting - be compelled to undergo the same examination proposed by Defendants.

## III   CONCLUSION

Defendants have failed to show that good cause exists to order the requested Rule 35 examinations. Additionally, Defendants' Motion is oppressive, burdensome, and

costly. Therefore, Defendants' Motion to Compel Rule 35 Physical Examination should be denied.

Dated: October 22, 2021

Respectfully submitted,

By: /s/ Ryan C. Reed
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Ryan C. Reed
Texas State Bar No. 24065957
rreed@pulmanlaw.com

**WATTS GUERRA LLP**
Mikal C. Watts
Texas State Bar No. 20981820
mcwatts@wattsguerra.com
Francisco Guerra, IV
Texas State Bar No. 00796684
fguerra@wattsguerra.com
Robert Brzezinski
Texas State Bar No. 00783746
rbrzezinski@wattsguerra.com
Jennifer A. Neal
Texas State Bar No. 24089834
jneal@wattsguerra.com
4 Dominion Dr., Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 447-0500 Telephone
(210) 447-0501 Facsimile


**LAW OFFICES OF JAMES R. MORIARTY**
James. R. Moriarty
Texas State Bar No. 14459000
jim@moriarty.com
4119 Montrose, Suite 250
Houston, Texas 77006
(713) 528-0700 Telephone

(713) 528-1390 Facsimile
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of October 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Walter Boone | Julia W. Mann |
| Jennifer Skipper | Erica Benites Giese |
| BALCH & BINGHAM LLP | JACKSON WALKER LLP |
| 1888 East Capitol Street, Suite 1400 | 112 E. Pecan Street, Suite 2400 |
| Jackson, Mississippi 39201 | San Antonio, Texas 78205 |

*/s/ Ryan C. Reed*
Ryan C. Reed