IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHAEL J. DANIELS, ET AL. § | |
| § | |
| PLAINTIFFS, § | |
| § | |
| V. § | CASE NO. SA-19-CV-01280-FB |
| § | |
| AETC II PRIVATIZED HOUSING, LLC, § | |
| ET AL. § | |
| § | |
| DEFENDANTS § | |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' RESPONSES TO DISCOVERY**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, MICHAEL J. DANIELS, Et. Al. ("Plaintiffs") file their *Motion to Compel AETC Defendants' Responses to Discovery* ("Motion"), and in support thereof, respectfully show the Court as follows:

### I. INTRODUCTION

1. This case involves claims against privatized landlords who leased mold-ridden, systematically-undermaintained housing to military families on military bases. Plaintiffs in this case allege that Defendants' systematic failure to properly maintain the base housing at issue has been ongoing since the U.S. Air Force leased the properties to Defendant AETC II Privatized Housing, LLC in 2007. The basis for this Motion is simple: Plaintiffs believe the maintenance history of the structures in which they lived (including the attached unit(s) in the case of a duplex) leading up to and following their dates of residence are relevant to their claims. Further, Plaintiffs believe that complaints by other servicemembers on Randolph and Laughlin Air Force Bases related to the same poor housing conditions are relevant. Defendants, on the other hand, believe the only maintenance relevant to this case is that which occurred in Plaintiffs' units from the date

1

Plaintiffs moved into their respective units until the date Plaintiffs moved out of their respective units, and nothing further.

## II. BACKGROUND

2.  Plaintiffs served Requests for Production ("RFPs") to AETC II Privatized Housing, LLC ("AETC Housing"), AETC II Property Managers, LLC ("AETC Managers") and Hunt ELP Ltd. ("Hunt ELP") (collectively referred to as "AETC Defendants" or "Defendants"). True and correct copies of Plaintiffs' RFPs are attached hereto as Exhibit 1. Defendants responded to Plaintiffs' RFPs and have been producing documents on a rolling basis. True and correct copies of Defendants' RFP responses are attached hereto as Exhibit 2.

## III. MEET AND CONFER HISTORY

3.  On May 13, 2022, Plaintiffs' counsel emailed Defendants' counsel to confer regarding the status of discovery in this case, including the subject of this motion. *See* Exh. 3. On May 16, 2022, Plaintiffs' counsel emailed Defendants' counsel a chart containing specific RFPs which are the subject of this motion and the Parties conferred via telephone. *See* Exh. 4. During the telephonic conference, Defendants' counsel stated that Defendants are standing on their objections as stated in their RFP responses and are unwilling to agree to any modification regarding their objections.

## IV. DEFINITIONS AND REQUESTS AT ISSUE

### A. Definitions

4.  Plaintiffs included in their RFPs the following definitions germane to the issues raised in this Motion:

> Definition 4:   The terms **"home"**, "house," "housing," "unit," and similar terms used to describe the premises leased or otherwise provided to military or military related members shall include the entire premises including the complete structure, including the interiors, roofs, exterior walls, foundations, basements, crawl spaces,

attics, service utility connections, attached structures, and other relevant dependencies such as patios, carports, garages, balconies, storage units, fencing, sheds, driveways, gutters, and other drainage mechanisms.

Definition 5:  The term **"subject unit"** shall include any and all homes leased, owned, or operated by You occupied by Plaintiffs during their tenure at Randolph or Laughlin Air Force Bases and encompasses leased, temporary, or otherwise provided by You.

Definition 19 "**Relevant Time Frame**" varies in regard to context. Regarding Plaintiff's specific home(s), it refers to a period of seven years prior to Plaintiff's initial occupancy of the home(s) to present day and is ongoing. For all other matters it refers to the period of time from the inception of the Public Private Venture bidding process for AETC-II to present day and is ongoing. Unless otherwise specified, all requests are limited to the Relevant Time Frame.

Exh. 1, at 6, 8.

5. Defendants lodged general objections to definitions 4, 5, and 19:

Defendants object to Definition #4 as it is not limited to the residences at issue or the Plaintiffs who have brought suit. To the extent that those words are used in the definitions of other defined terms, Defendants object to those definitions as well. . . . **Subject Properties are used in these responses in the same term as "subject unit" in Definition #5 as the unit occupied by Plaintiffs during their tenure at Randolph or Laughlin Air Force Bases.** Further, Defendant objects to the "relevant time frame" being "seven years prior to Plaintiff's initial occupancy of the home(s) to present day and is ongoing." The overly broad and expansive nature of such a broad sweep is borne out by capturing the entirety of privatization at the bases through today as the Hamiltons began residency in December 2013. Seven years prior to their residency would be December 2006, prior to privatization. There would be no year that AETC II Privatized Housing or AETC II Property Managers was doing business that would not be covered by the definition and as such is overly broad. AETC Housing Defendants further objects to Plaintiffs' Requests for Production of Documents on the basis that they are not limited to the relevant time period in which Plaintiffs lived at Randolph or Laughlin, the unit in which the individual Plaintiffs' lived in, or to the claims made by the individual Plaintiffs.

Exh. 2, at 3-4 (emphasis added).

**B.   Specific Requests**

6. In response to the majority of Plaintiffs' RFPs, Defendants state they are withholding documents "relating to properties other than the Subject Properties" and "documents relating to the Subject Properties at times other than when Plaintiffs occupied the Subject

3

Properties." *See* Exh. 2.  By way of their general objections, Defendants limited the term "Subject Properties" (as used in their objections and responses to specific requests) to the units occupied by Plaintiffs during their tenure at Randolph or Laughlin.  For ease of reference, attached as Exhibit 5 is a chart listing the specific RFPs at issue along with the relevant objections and withholding statements.  *See* Exh. 5.

V.    **ARGUMENT AND AUTHORITIES**

7. Discovery may be obtained about regarding any nonprivileged matter "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  In response to a request for production, the responding party is required to produce or make available all requested documents in that party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).  "Successful resistance to discovery requires specific, well-supported objections." *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).  The party resisting discovery "must show *specifically* how . . . each [request] is not relevant . . . ." *Id.* (emphasis added) (internal citations omitted).

8. Plaintiffs' requests are manifestly reasonable and were carefully tailored to obtain documents related to the housing conditions and work order history for the properties on the relevant military bases where Plaintiffs resided.  The categories of information Plaintiffs seek fit into two categories:  (1) documents related to the units Plaintiffs occupied (including attached units in two duplexes) (RFPs 45, 66, 68, 71, 72, 73) and (2) documents regarding other units located at

Randolph or Laughlin leased, owned, or operated by Defendants which contained similar conditions as those present in Plaintiffs' units (RFPs 4, 6, 16, 20, 23, 36, 52).

### A. Plaintiff-Occupied Units

9. Plaintiffs requested documentation regarding the homes they occupied at Randolph and Laughlin (RFPs 45, 66, 68, 71, 72, 73) for seven years prior to tenancy to current. As a specific example, Plaintiffs' RFP 68 requested: "The Yardi systems records or any other maintenance software or record keeping system documents for each of the following units and any homes directly attached thereto. . . ." *See* Exh. 1, at 17.

10. In Response to RFP 68, Defendants merely agreed to produce ". . . the Yardi maintenance history for each Subject Property ***during the time when Plaintiffs occupied the Subject Property***." *See* Exh. 2 at 69 (emphasis added). Defendants go on to state that they are "withholding production, among other things, for any maintenance records at any properties other than the Subject Property, and maintenance records at the Subject Property at any times other than when Plaintiffs occupied it." *Id*.

11. The requested records – both before, during, and after the Plaintiffs' occupancy – are relevant to determining the condition of the homes at the times Plaintiffs moved into their respective units and throughout their tenancy. Said records are further relevant to the issue of the Defendants' knowledge of ongoing issues with these homes prior to the time the Plaintiffs occupied them, as well as what, if any, substantive response Defendants made to attempt to address those issues. Plaintiffs allege in this case that Defendants engaged in a course of conduct that includes neglecting standard upkeep and maintenance and delaying necessary repairs to the subject properties. Defendants are in the business of renting housing to military members who move frequently due to change of duty station. Defendants knew that when a major issue or necessary

repair was reported by a tenant, they could delay the repair, patch over or cover up the problem, and re-lease the unit to the next family in line. Structural deficiencies, water intrusion, roof leaks, and mold in HVAC units may not be noticed by a tenant immediately upon move in. The only way Plaintiffs can evaluate Defendants' knowledge of the condition of the homes at the time Plaintiffs' took possession is through the records requested.

12. Defendants also claim the work order history for duplexes that share a common wall with a Plaintiff-occupied unit is irrelevant to this case. *See* Exh. 2 at 70. Many of the maintenance issues Plaintiffs battled while living in Defendants' housing are structural in nature and affect the entire dwelling, including foundation issues, roof leaks, and water intrusion. *See eg* Dkt. 9 at ¶¶73-74. Without knowing what issues affected the entire structure, Plaintiffs are not being afforded a complete picture of the true state of the Plaintiffs' homes. Defendants' knowledge regarding both units of the two duplex structures involved in this case is entirely relevant and discoverable.

**B.     Other Units**

13. Plaintiffs also requested documents regarding other units located at Randolph or Laughlin leased, owned, or operated by Defendants which contained similar conditions as those present in Plaintiffs' units (RFPs 4, 6, 16, 20, 23, 36, 52). As stated above, Plaintiffs have alleged Defendants engaged in a course of conduct in managing the on-base housing at Randolph and Laughlin which included systematically undermaintaining homes, including those in which Plaintiffs resided.

14. When faced with a similar request, the Court in *Finney, et al. v. Clark Realty Capital, L.L.C., et al.* ordered Clark Realty Capital, the Defendant in another suit concerning similar on-base housing maintenance issues, to produce documents related to required mold

remediation, complaints of odors, mold and/or moisture remediation, tenant displacement, and reports of tenant health concerns related to **any house** in the community where Plaintiff resided. *See* Exh. 6.

15. In the present case, after the filing of the lawsuit, Defendants undertook a Humidity Reduction Project at Randolph Air Force Base, which was designed for nearly all of the housing on the base. Defense counsel introduced evidence of the Humidity Reduction Program during the deposition of Plaintiffs' expert and cross-examined him at length about it, demonstrating by their own actions its relevance to the lawsuit. Because the Humidity Reduction Program addresses all of the housing on base, including those houses in which Plaintiffs resided, the scope and nature of the program and how it was implemented with respect to Plaintiffs' houses and other houses on base is just one example of the relevance of issues suffered by other houses. Simply put, Defendants' efforts to remediate problems in on-base housing and whether it was done comprehensively and properly **across the board**, especially as compared to Plaintiffs' houses, is the subject of this litigation and merits discovery and scrutiny.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that the Court set this Motion for hearing and, after hearing, enter an order compelling Defendants to withdraw their objections and produce the requested documents within seven days from the date of the Order on this Motion. Plaintiffs pray for such other and further relief, both general and special, at law or in equity, to which they may be entitled.

Respectfully submitted,

By: */s/ Ryan C. Reed*
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213

(210) 222-9494 Telephone
(210) 892-1610 Facsimile
Randall A. Pulman
Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Ryan C. Reed
Texas State Bar No. 24065957
rreed@pulmanlaw.com

**WATTS GUERRA LLP**
Mikal C. Watts
Texas State Bar No. 20981820
mcwatts@wattsguerra.com
Francisco Guerra, IV.
Texas State Bar No. 00796684
fguerra@wattsguerra.com
Robert Brzezinski
Texas State Bar No. 00783746
rbrzezinski@wattsguerra.com
Jennifer A. Neal
Texas State Bar No. 24089834
jneal@wattsguerra.com
4 Dominion Dr., Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 447-0500 Telephone
(210) 447-0501 Facsimile

**MORIARTY SKIVER PLLC**
James. R. Moriarty
Texas State Bar No. 14459000
jim@moriarty.com
4119 Montrose, Suite 250
Houston, Texas 77006
(713) 528-0700 Telephone
(713) 528-1390 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF CONFERENCE**

I certify that on May 13 and 16, 2022, counsel for Plaintiffs contacted counsel for Defendants in a good faith effort to obtain the requested relief without court intervention. The parties were unable to reach an agreement on these issues as detailed above.

/s/ Ryan C. Reed
Ryan C. Reed

**CERTIFICATE OF SERVICE**

I certify that on the 16th day of May, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Walter Boone | Julia W. Mann |
| Jennifer Skipper | Erica Benites Giese |
| BALCH & BINGHAM LLP | JACKSON WALKER LLP |
| 1888 East Capitol Street, Suite 1400 | 112 E. Pecan Street, Suite 2400 |
| Jackson, Mississippi 39201 | San Antonio, Texas 78205 |

/s/ Jennifer A. Neal
Jennifer A. Neal