**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. DANIELS AND BARABARA** | § | |
| **HIGH-DANIELS, ET AL.** | § | |
| | § | |
| **PLAINTIFFS** | § | |
| | § | |
| **v.** | § | **NO. 5:19-cv-01280-FB-RBF** |
| | § | |
| **AETC II PRIVATIZED HOUSING, LLC;** | § | |
| **ET AL.** | § | |
| **DEFENDANTS** | § | |

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AGAINST DANIELS PLAINTIFFS**

---

AETC II Privatized Housing, LLC ("AETC Housing"), AETC II Property Managers, LLC ("AETC Managers"), and Hunt ELP, Ltd. (collectively, "Defendants") move for summary judgment against Plaintiffs Michael Daniels, Barbara High-Daniels, and their minor children (collectively, "Plaintiffs" or "the Daniels").

## INTRODUCTION

Plaintiffs are service members and their families who resided in military housing at Randolph Air Force Base owned by AETC Housing and managed by AETC Managers, and known generally as Randolph Family Housing. All nine Plaintiff families in this case resided in different homes, at different times, had different maintenance complaints, and received different maintenance responses. While this motion will cover some of the same general legal arguments for each family, the specific arguments and facts in support differ from family to family. For that reason, Defendants are filing a separate motion for each family.

1

## STATEMENT OF UNDISPUTED FACTS

### I.       Cession of RAFB and Privatization of Housing

Both sides agree the "events giving rise to Plaintiffs' lawsuit occurred on [Randolph Air Force Base ("RAFB")]" and that RAFB is a federal enclave. [9 at ¶ 11]; [38, 39, 40 at ¶ 11]. Texas ceded the land constituting Randolph to the federal government in the late 1920s. The cession documents granted the United States exclusive jurisdiction. On October 4, 1951, the Texas Governor had the Great Seal of Texas affixed to a Deed of Cession, which provides:

> … in the name and on behalf of the State of Texas, do hereby cede to the United States of America **exclusive jurisdiction** over the said described land, to hold, possess and exercise said jurisdiction over the same as long as the same remains the property of the United States of America; provided, however, that the cession of jurisdiction is made and granted upon the express condition that the State of Texas shall retain concurrent jurisdiction with the United States of America over every portion of the land so ceded, so far, that all process, civil and criminal, issuing under the authority of the State of Texas of any of the Courts of juridical officers thereof, may be executed by the proper officers of the State of Texas upon any person amendable to the same within the limits of the land over which jurisdiction is so ceded, in like manner and with like effect as if no such cession had taken place.

Ex. 1 Cession at 14 (emphasis added).[1] The sole reservation is for service of process, a common exception preventing the enclave's becoming a sanctuary for fugitives, that "in no way confers authority for the state to exercise legislative or police powers" in the enclave. *Schiappa, Sr. v. Brookhaven Sci. Assocs., LLC*, 403 F. Supp. 2d 230, 237 (E.D.N.Y. 2005) (collecting cases).[2]

---

[1] The Collective Exhibit of Cession Documents are true and accurate copies of documents received from the Texas Department of Archives and the Texas Office of the Secretary of State pursuant to AETC Defendants' public-records request, and are admissible evidence per Federal Rules of Evidence 901(7) and (8).

[2] Correspondence between the Department of the Air Force and the Governor of Texas requested and granted exclusive federal jurisdiction, and the "Department of the Air Force acknowledge[s] receipt of a deed dated October 4, 1951 executed by [the Governor] on behalf of the State of Texas, ceding exclusive jurisdiction to the United States … notice is hereby given that

RAFB is thus a federal enclave, governed by federal law rather than state law.

## II.     Plaintiffs' Residence at RAFB

Plaintiffs signed a lease with AETC Housing for a term of one year, which automatically renewed on a month-to-month basis unless Plaintiffs gave notice of their intent not to renew. (Ex. 2 Lease, ¶ 1.)[3] In ¶ 10, Plaintiffs represented that the residence was in "a safe, clean, and habitable condition" when they signed the lease except as documented in the Move In / Move Out form, discussed below, or in written notice to the landlord within five days of move in. (Ex. 2 Lease ¶ 10.) Paragraph 19 required Plaintiffs to immediately report any damage to the premises and required AETC Housing to "make a diligent effort to repair or remedy the condition" per the maintenance procedures in the Resident Guidelines. (Ex. 2 Lease ¶ 19.) Additionally, the Resident Guidelines, which are expressly incorporated into the Lease (Ex. 2 Lease, ¶ 41), describe Plaintiffs' obligation to inspect the property when moving in or out, AETC Housing and Plaintiffs' obligations regarding maintenance, and the procedures for making maintenance requests. Lastly, Plaintiffs' lease contained an "as-is" clause. (Ex. 3 Resident Guidelines, p. 11-12.)

Before moving in and for five days thereafter, Plaintiffs had a chance to inspect their property and note any problems with their unit on a Move In / Move Out form. (Ex. 2 Lease ¶ 10.) Plaintiffs also signed a Mold Addendum incorporated into their lease. (Ex. 2 Lease, ¶ 44; Ex. 4

---

the United States accepts exclusive jurisdiction over the land described in the Deed of Cession." (Ex. 1 Cession, at 4.) Price Daniel, then Texas' Attorney General, accepted the deed of cession and recognized fee simple title in the United States, with no objection to its exclusive jurisdiction. (Ex. 1 Cession, at 6.) Texas Secretary of State Tom Reavley wrote, "the Deed of Cession ceding exclusive jurisdiction to the United States of 221.192 acres of land, more or less, located in Bexar County, Texas, was signed by Governor Allan Shivers on October 4, 1951." (Ex. 1 Cession, at 59).

[3] The Daniels family renewed their lease 23 times.

Mold Addendum.) This addendum explained tenants' duty to promptly report mold and also provided tenants with guidance for preventing mold growth in homes. (Ex. 4 Mold Addendum.)

### III.     Facts Unique to the Daniels

The Daniels moved into 9 Southeast Road, Unit 529 at RAFB on July 27, 2016 and moved out on July 15, 2019. (Ex. 5 Move In Form; Ex. 6 Move Out Form). Prior to living on Randolph, the Daniels rented an apartment in San Antonio. (Ex. 7 Michael Daniels ("MD"), 54:3-15). The Daniels lived in this apartment from January 2016 until they moved to Randolph in July 2016. (Ex. 8 Barbara High Daniels ("BD"), 9:21 – 10:3). They first declined housing at Randolph, extended their existing lease, and then later reapplied at Randolph. (Ex. 7 MD, 47:18-22).

While the Daniels did not conduct a walkthrough of the home before they signed their lease, they did fill out the Move In/ Move Out Report ("MIMO") eight days after moving in. (Ex. 9 MIMO Form). Capt. Daniels notated all the issues they spotted on the form. (Ex. 7 MD, 52:6-9) ("Q. And you marked all the things that you saw during the inspection, correct, when filling the form out? A. Yes."). They did not note any mold on their MIMO. (Ex. 9 MIMO Form). Neither of the Daniels remember any conversation they had with AETC Housing prior to moving into the home or regarding mold in the home. (Ex. 8 BD, 65:21-25; Ex. 7 MD, 57:4-7; MD, 201:9 – 202:2).

The Daniels made numerous maintenance requests during the time they lived at RAFB. (Ex. 10 Work Orders). They agree AETC Managers addressed all these requests. (Ex. 7 MD, 143:17-25; *see generally* MD, 63-143). On multiple occasions, Capt. Daniels filled out the surveys following the completion of work orders praising AETC Housing for their great job and diligent efforts. (Ex. 11 Work Order Survey Responses).

The Daniels first reported mold January 24, 2017. (Ex. 7 MD, 84:9-18). However, Capt.

Daniels testified he noticed mold prior to that date. (Ex. 7 MD, 144:1 – 145:3). AETC Housing responded to the Daniels' January 24th report and sent a maintenance technician to clean up the area. (Ex. 7 MD, 60:13-21; MD, 84:9-18). The Daniels did not place another work order related to mold after January 24, 2017. (Ex. 10 Work Orders). The Daniels paid a third party, Adaptive Environmental Consulting, to conduct a mold inspection of their home. (Ex. 12 Adaptive Report). That report showed that the total spore count outside their home was higher than the spore count inside. (*Id.* at Daniels-0000111-12).

AETC Managers cleaned the Daniels' possessions in May 2019 and requested testing of the items by Argus Environmental Consultants, LLC. (Ex. 13 May 2019 Limited Contents Sampling Report). Only one item of the 15 items tested needed to be re-cleaned and retested. *Id.* at p. 3. AETC Managers re-cleaned the Daniels' possessions and Argus tested the items again. (Ex. 14 June 2019 Limited Contents Sampling Report). This time Argus tested 22 items, some not previously tested, and only 5 items were not cleared. *Id.* at p. 3. AETC Managers offered to reimburse the Daniels for the 5 items which were not cleared or to clean them again. The Daniels chose imbursement. Argus issued a certification clearing all of the Daniels possessions which passed the testing for transport. (Ex. 15 Contents Mold Certification). Despite these tests, the Daniels chose to abandon a significant amount of property because they believed it was contaminated with mold and could not be salvaged. (Ex. 7 MD, 216:14-21) The Daniels have no proof of personal property damage, and no expert who will testify to any such damage. (Ex. 17 Miller Depo. Vol. 2 at 135:2-9; 138:19-22).

## STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and record evidence show no

5

genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

## ARGUMENT

Defendants' argument is organized in three parts: (1) legal arguments applicable to multiple claims; (2) count by count analysis of Plaintiffs' claims and the multiple reasons that each claim fails as a matter of law; and (3) in the alternative, arguments that Plaintiffs cannot recover their damages for personal injury, property damage, mental anguish, or attorney fees.

### I.     Arguments Applicable to Multiple Claims

   A.     *Federal enclave doctrine bars claims for DTPA, implied warranty of habitability, negligent misrepresentation, statutory fraud, and attorney fees.*

RAFB is a federal enclave, which results in the dismissal of many of the Plaintiffs'. "(T)he federal law of every enclave includes state law which was in force ***at the time of the cession***, where such state law is not inconsistent with federal law or policy. This assures that no new federal enclave, regardless of size, will be left without laws. However, ***laws of the state adopted after the cession are without any force or effect on the federal enclave***." *Lord v. Local Union No. 2088*, 646 F.2d 1057, 1059–60 (5th Cir. 1981) (citations omitted; emphases added).[4] This doctrine applies to both common law and statutory law: "where a state's courts recognize new common law

---

   [4] The quotation is from the district court's opinion in *Lord*, which the Fifth Circuit held "correctly states the background to the present question." *Id.* at 1059.

causes of action after the date when the state ceded certain lands to the exclusive jurisdiction of the federal government, those common law causes of action have no force on these federal lands." *Balderrama v. Pride Indus., Inc.*, 963 F. Supp. 2d 646, 656 (W.D. Tex. 2013) (citing *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1243–44 (10th Cir. 2012)).

Thus, Texas state laws recognized or enacted after the cession of RAFB generally do not apply to conduct on RAFB. The only exception potentially applicable is if Congress legislates that certain state laws apply to the enclave. *Allison*, 689 F.3d at 1238.[5] 28 U.S.C. Title 28, § 5001(b) makes state laws for physical injuries to federal enclaves.[6] But "no federal statute yet allows the broad application of state employment, tort, and contract law to federal enclaves." *Allison*, 689 F.3d at 1238; *W. River Elec. Ass'n, Inc. v. Black Hills Power & Light Co.*, 918 F.2d 713, 719 (8th Cir. 1990). Courts have held that § 5001 is limited to literal "physical injuries" and does not extend to tort law generally. *See, e.g.*, *Kelly v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 7 (D.P.R. 1998) ("With the passage of this statute, Congress intended to provide relief to certain persons suffering physical injury, or possessing causes of action related to another's physical injury, in federal enclaves."). This interpretation of § 5001 is supported by the United States Supreme Court's holding that § 457's (the predecessor statute to § 5001) "purpose was **only** to authorize

---

[5] There are two other exceptions not applicable here: (1) a state can expressly reserve the power to legislate for the enclave; or (2) minor changes to a state regulatory program that existed at the time of the cession will apply to the enclave. *Allison*, 689 F.3d at 1238.  However, these exceptions do not apply because Texas did not reserve any right to legislate at RAFB and Plaintiffs have not shown that their state-law claims were part of a "state regulatory programs" in place at the time of the cession.

[6] Because this statute encompasses negligence claims, current-day Texas negligence law applies to personal injury actions arising on RAFB. *Mathis v. General Elec. Corp.*, 580 F.2d 192, 194 (5th Cir. 1978) (holding that negligence and strict liability claims occurring on federal enclave in Alabama are governed by Alabama tort law under precursor to 28 U.S.C. § 5001(b)).

suits under a state statute abolishing the common law rule that the death of the injured person abates the action for negligence." *Murray v. Joe Gerrick & Co.*, 291 U.S. 315, 319 (1934) (rejecting broad reading of "injury" to encompass state workers-compensation laws) (emphasis added). Therefore, while Congress has carved out a narrow exception for application of state law to claims for personal injuries (which Plaintiffs in this case have abandoned), that narrow exception does not include, among other things, tort claims for property damage or claims for mental anguish.

Because Congress has not otherwise made all Texas state law applicable to RAFB, only Texas state law in place in 1952—when RAFB was ceded to the United States—applies here. The DTPA, Tex. Prop. Code § 92.051 (duties of landlord), and Tex. Bus. & Com. Code Ann. § 27.01 (fraud in a real estate transaction) were enacted after 1952.[7] Similarly, the Texas decisions recognizing implied warranty of habitability and the tort of negligent misrepresentation came after the cession. *See Kamarath v. Bennett*, 568 S.W.2d 658 (Tex. 1978) (implied warranty of habitability); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (tort of negligent misrepresentation). Thus, these causes of action are unavailable for Plaintiffs. Likewise, their claims for personal injury for breach of the lease agreement's repair clause [9 at ¶ 170] cannot survive because the law of breach of contract at the time of cession did not provide for recovery for personal injuries where such was not contemplated by the parties. *See Ross v. Haner*, 258 S.W. 1036, 1042 (Tex. Comm'n App. 1924) (repair clauses generally "for comfort and convenience only"); *Harvey v. Seale*, 362 S.W.2d 310, 312 (Tex. 1962) (citing *Ross* for past state of law).

---

[7] See Tex. Bus. & Com. Code Ann. § 17.50 (enacted by Acts 1973, 63rd Leg., p. 322, ch. 143, § 1, eff. May 21, 1973); Tex. Prop. Code § 92.051, et seq. (enacted 1979 Tex. Gen. Laws, ch. 780, § 1 et seq); Tex. Bus. & Com. Code Ann. § 27.01 (enacted by Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, § 1).

Plaintiffs also seek attorney fees under Tex. Civ. P. & Rem. Code § 38.001, Tex. Bus. & Com. Code § 27.01, "chapter 92 of the Texas Property Code," and Tex. Bus. & Com. Code § 17.50(d). As discussed above, the three latter sections were not in existence at the time of cession. Further, § 38.001 (former art. 2226) did not provide for attorney fees for breach of contract, and article 5236 (predecessor to § 92.005 of the Property Code) did not provide for attorney fees. See *Houghton v. Wholesale Elec. Supply*, 435 S.W.2d 216, 220 (Tex. Civ. App.-Waco 1968, *writ refused NRE* (Mar. 12, 1969)). Nor may Plaintiffs recover damages under the personal injury exception for alleged emotional or mental distress, as § 5001 covers only physical injuries. *Shurow v. Gino Morena Enters., LLC*, 2017 WL 1550162, at *3 (S.D. Cal. May 1, 2017); *Kelly*, 25 F. Supp. 2d at 7–9; *cf. Murray*, 291 U.S. at 319.

This Court should dismiss Counts One, Two, Four (negligent misrepresentation only), and Five, any personal-injury claims from Count 3, and claims for attorney fees and emotional distress.

B.    *The statute of limitations bars the Daniels' DTPA, negligence, negligent misrepresentation, gross negligence, nuisance, and unjust enrichment and money had and received claims.*

Even assuming the federal enclave doctrine does not bar several claims, the two-year statute of limitations applies to, and bars, Plaintiffs' DTPA[8] (Count One), negligence[9] and negligent misrepresentation[10] (Count Four), gross negligence[11] (Count Eleven), nuisance[12]

---

[8] Tex. Bus. & Com. Code Ann. § 17.565.
[9] Tex. Civ. Prac. & Rem. Code § 16.003(a); *Ledford v. Keen*, 9 F.4th 335, 337-38 (5th Cir. 2021).
[10] *Tex. Am. Corp v. Woodbridge Joint Venture*, 809 S.W.2d 299, 303 (Tex. App.-Fort Worth 1991, writ denied).
[11] *Ledford*, 9 F.4th at 337-38.
[12] *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004).

(Counts Eight, Nine, Ten), and unjust enrichment and money had and received[13] (Count Seven) claims. Under Texas law, a claim accrues "when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). Here, the Daniels allege their problems existed within their first 6 months of moving into the home and that they noticed issues before December of 2016. (Ex. 7 MD 144:8-16 ("Q. When? Can you give me a timeframe of when you first noticed an instance of what you believe to be mold? A. It was before December because I remember in December my parents came down for my promotion, and I remember cleaning the master bathroom because I wanted to have a clean house for my guests, and then again, in December, when family was in town, my mom said she could smell a musty scent in the air."); Ex. 18 BD Int. Resp., at p. 15 ("We had problems with our house the very first day of moving in."); BD Int. Res., at p. 16 ("The mold was a visible problem throughout several rooms in the house very shortly after having moved in.")). At that time, they were entitled "to seek a judicial remedy." *Emerald Oil*, 348 S.W.3d at 202. They filed this lawsuit almost 3 years later.

While Texas recognizes the discovery rule and various tolling doctrines, none apply here.[14] The discovery rule does not apply because Plaintiffs knew or "should have discovered" the mold in their homes immediately upon moving in or shortly thereafter. *See Pirtle*, 177 S.W.3d at 571. Their depositions further confirm they knew or should have known about the problems with their

---

[13] Tex. Civ. Prac. & Rem. Code § 16.003(a); *United Healthcare Servs., Inc. v. Next Health, LLC*, 2021 WL 764035, *16 (N.D. Tex. Feb. 26, 2021).

[14] The discovery rule does not toll these claims because Plaintiffs knew or "should have discovered, the nature of his injury" at the time they knew of the allegedly deficient conditions. *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex. App-Houston [1st Dist.] 2005).

homes upon moving in. (Ex. 8 BD, 81:6-17.) Additionally, "Texas courts hold that unsuccessful efforts to repair goods in no way affects the question of limitations." *Pako Corp. v. Thomas*, 855 S.W.2d 215, 219 (Tex.App.-Tyler 1993) (quotes and citations omitted).

Similarly, fraudulent concealment[15] does not toll because Plaintiffs have no proof Defendants did anything to conceal their claims. Plaintiffs knew or should have known about their supposed claims on the day they moved in. Thus, their delay bars their claims.

C.      *Plaintiffs' DTPA, fraud, statutory fraud, and negligent misrepresentations claims fail because they cannot prove a misrepresentation related to their residences.*

To prove their DTPA, fraud, and negligent misrepresentation claims, Plaintiffs must show misrepresentation of a material fact and justifiable reliance thereon.[16] They can prove neither.

1.      Plaintiffs failed to plead fraud with particularity.

The Complaint alleges two types of misrepresentation: (1) ones made before Plaintiffs signed their leases, and (2) ones regarding repairs under the lease. But while the Complaint claims there were misrepresentations, it does not identify any particular representation, who made them, or when. Plaintiffs' fraud claims should be dismissed for failure to identify the who, what, when, and where of the allegedly fraudulent statements. [9 at ¶¶ 48, 131, 139]; *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (complaint must "specify the statements contended to be

---

[15] Fraudulent concealment is an affirmative defense to the statute of limitations, giving Plaintiffs the burden of proof. *Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex. 1977).

[16] Fraud and negligent misrepresentation share the "common element" of "reasonable and justified" reliance. *Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex. Ct. App.-Houston [14th Dist.] 2006). Fraud in a real-estate transaction requires proof of reliance on the representation or false promise in entering a contract. Tex. Bus. & Com. Code Ann § 27.01(a)(1)(B) & (2)(D). For a DTPA claim under §17.46(b), the "false, deceptive or misleading act must be 'relied on by a consumer to the consumer's detriment.'" *Peltier Enters., Inc. v. Hilton*, 51 S.W.3d 616, 624 (Tex. Ct. App.-Tyler 2000) (quoting Tex. Bus. & Com. Code Ann § 17.50(a)(1)(B)).

fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."); *see also* Order in *Hill v. AETC II Privatized Housing*, No. 5:20-cv-01473-OLG-RBF, ECF No. 56 ("Plaintiffs' amended Complaint(s) . . . should comply with Federal Rule of Civil Procedure 9(b)" and specify the who, what, when required for fraud claims). "[W]hile 'failure to state a claim usually warrants dismissal under Rule 12(b)(6),' it may also serve as a basis for summary judgment." *Martin v. Lennox Int'l Inc*., 342 F. App'x 15, 17 (5th Cir. 2009) (quoting *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992)).

2.   <u>Plaintiffs identified no false statements of material fact</u>.

Like their Complaint, Plaintiffs' depositions were vague and failed to identify the who, what, when, or where of any fraudulent statements made to the Daniels. Neither of the Daniels identified any specific false representations regarding mold or other hazards. Barbara High Daniels did not remember any conversation during the walk through of the home and even testified that she does not think she talked about anything. (Ex. 8 BD, 65:2-3) ("Q. And what -- tell me about those discussions. A. I don't really remember them too much."); (BD, 65:21-25) ("Q. -- what other things did you talk about at the house when you-all were doing the walk-through? A. I don't think I talked about anything, if I were being quite honest. I -- but if we did talk, I don't remember.").

While Michael Daniels remembered a conversation with Terri Hefford and Jesse Farmer concerning mold, he did not identify any statements that were false or material. Specifically, Capt. Daniels stated Hefford and Farmer told him he was responsible for cleaning the mold in his home. (Ex. 7 MD, 190:2-5) ("That's when Jesse Farmer came to clean, and he said, listen, I'm not supposed clean this for you guys. You are. But I'll go ahead and do it, and he cleaned it."); (MD, 190:15-18) ("Q. Did you report it to maintenance again? A. I think so, and I think it was in

12

conversation with Terri, and she says, no, you have to clean that."). These statements are not false and are consistent with the mold addendum Capt. Daniels signed. (Ex. 4 Mold Addendum) ("Resident also agrees to immediately, upon actual knowledge of the condition, report to the Landlord's management office . . . (ii) any evidence of mold-or-mildew-like growth that cannot be removed by **simply applying a common household cleaner and wiping the area**) (emphasis added). Further, they show that AETC Managers responded to (and satisfactorily resolved) the Daniels' only maintenance request related to mold. (Ex. 7 MD, 60:13-21).

Capt. Daniels stated in his Interrogatories and testified that AETC Housing changed the wording of his work orders and reported that work orders had been completed when they had not been resolved. (Ex. 19 MD Int. Res., at p. 21) Even if this statement is true (which the Daniels cannot show), it is not a material fact nor was it "represented" to the Daniels.  As the residents in their home, they know what work orders were submitted and whether or not they were completed.

Because the Daniels' purported misrepresentations are neither false nor material, they are not actionable representations.[17] Additionally, unfulfilled promises to perform under a contract are not actionable under the DTPA. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14-15 (Tex. 1996).

In sum, the Daniels' failure to identify a concrete misrepresentation of material fact means their fraud, negligent misrepresentation, and DTPA claims fail as a matter of law.

---

[17] *See, e.g*, *In re Westcap Enter.,* 230 F.3d 717, 726 (5th Cir. 2000) ("An actionable representation is one concerning a material fact; a pure expression of opinion will not support an action for fraud."); *In re Shuomali*, No. 14-60808, 2016 WL 4991490, at *7 (Bankr. E.D. Tex. Sept. 16, 2016) ("Expressions of opinion without any factual underpinning cannot qualify as misrepresentations. Such expressions qualify as puffery—mere statements of subjective opinion and not objective fact—rather than fraud.") (internal citations omitted).

3.  <u>Even if the Daniels could identify some false statements of material fact,
    they cannot show that they relied on any of those statements, much less that
    such reliance was reasonable.</u>

These claims fail for another reason: no reasonable reliance. Reasonable reliance requires that (1) the plaintiff "actually rel[y] on the defendant's representation" and (2) "such reliance was justifiable." *E.g.*, *CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 350 (5th Cir. 2021).

Here, the Daniels cannot show that they reasonably relied on any allegedly fraudulent statements by AETC Managers or AETC Housing as they failed to identify any fraudulent statements made by either entity. Neither can remember any statements made as to the condition of the home when they moved into the home. Michael Daniels testified that AETC Housing responded to all of the work orders the family submitted. (Ex. 7 MD, 143:17-25).[18] Any statements made as to changing work orders or marking work orders complete fail the first prong of the reasonable-reliance test because the Daniels were well aware of what work orders they had placed and when (or if) those orders had been completed. (Ex. 7 MD, 206:25 – 207:6) ("Q. So whenever you put in a work order, did you -- you would receive an e-mail asking you how the work order -- like a work order survey asking about it, correct? A. Yes. Q. And did you fill out those surveys? A. Sometimes I would, yeah.").

4.  <u>Plaintiffs cannot show any representations induced them to sign their leases.</u>

To the extent Plaintiffs claim fraudulent inducement, they cannot point to any

---

[18] ("Q. -- so as far as the work orders are concerned, as far as like the call dates and times and things of that nature, in comparison, they do match what you produced in discovery. And so that's what we are talking about is that those call dates and things, they do match. Are there anything that we went through -- are there any work orders that you independently recall that were not in this exhibit? A. No, ma'am.").

representations that caused them to enter into their Lease.[19] Plaintiffs testified they moved to San Antonio several months before they moved to RAFB. (Ex. 7 MD, 54:3-15). They ultimately accepted housing at Randolph after they were unable to buy a house, due to their children's need to start school and Randolph's good school district. (Ex. 7 MD, 43:21 – 44:22); (Ex. 8 BD, 54:18 – 55:10). The Daniels had also already turned down a previous house at Randolph when they were undecided. (Ex. 7 MD, 47:1-22). The remainder of the representations identified by Plaintiffs occurred after they had already signed a lease or moved in and did not induce entry into the Lease.

Additionally, the Daniels cannot show that Defendants lacked an intent to perform under the lease **at the time they signed it**.[20] Plaintiffs must show that "the promise was made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Here, the undisputed evidence shows that AETC Managers repeatedly made repairs and was responsive to their repair requests. (Ex. 7 MD at 63:2-11 (install toilet seats), 64:13-19 (trash and satellite removal), 64:23 – 65:6 (AC not cooling), 67:17 – 68:1 (sump pump installation), 69:12-25 (pest control bugs).) In fact, Capt. Daniels repeated praised AETC Housing for the work performed. (Ex. 11 Work Order Survey Responses). Plaintiffs have not shown these attempted repairs were unreasonable, perfunctory, or done in bad faith. Even assuming the repairs were done negligently, that fact would not show that

---

[19] Under Texas law, "[f]raudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Ibe v. Jones*, 836 F.3d 516, 525 (5th Cir. 2016) (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015)).

[20] "[R]epresentations that [a] defendant [will] fulfill its dut[ies] under [a] contract … do[] not constitute [a] misrepresentation within the meaning of the DTPA." *Conquest Drilling Fluids, Inc. v. Tri-Flo Int'l, Inc.*, 137 S.W.3d 299, 309 (Tex. Ct. App.-Beaumont 2004).

AETC Housing never intended to perform at the time Plaintiffs entered into their leases. Plaintiffs' fraud, negligent misrepresentation, and DTPA claims fail as a matter of law.

> **D.**  *Plaintiffs have not shown that Defendants breached an applicable duty to repair, which is a necessary element of their negligence, Texas Property Code, and breach of contract claims.*

To succeed on their negligence, contract, and Texas Property Code claims, Plaintiffs must show breach of a legal duty. The lessor may have an obligation to repair certain conditions if required by a statute[21] or contract. Here, § 92.052 of the Texas Property Code (enacted post-cession) as well as ¶ 19 of the Lease required AETC Housing to remedy "damage" or "condition[s] materially affecting the health or safety of the ordinary tenant." Ex. 2 Lease ¶ 19; Tex. Prop. Code Ann. § 92.052(a)(3)(A). Assuming notice,[22] AETC Housing was required to make "a diligent effort to repair or remedy the condition." Tex. Prop. Code Ann. § 92.052(a); Ex. 2, ¶ 19.

Here, Plaintiffs cannot show (through admissible evidence or expert testimony) that AETC Housing and AETC Managers did anything to breach this duty.  AETC Managers responded to each and every maintenance complaint. (*See generally* Ex. 7 MD, 63-143 (discussing Plaintiffs' work order history in full)). After a point by point review of his work order history, Michael Daniels agreed that there were no work orders that he recalled which were not listed on the work

---

[21] In this, case the "limited landlord duty to repair" arises from section 92.051, *et seq.* of the Texas Property Code. *Philadelphia Indemnity Ins. Co. v. White*, 490 S.W.3d 468, 479 (Tex. 2016). This code section abrogated the common law implied warranty of habitability. *Id.* As discussed above, neither this statutory duty nor the common law implied warranty of habitability existed at the time of cession of RAFB and do not apply to this federal enclave.

[22] The lease required Plaintiffs to notify AETC Housing of a problem and allow a reasonable opportunity to repair. If AETC Housing did not have notice or an opportunity to remedy, then there was no breach. *Daitch v. Mid-Am. Apt. Cmtys., Inc.*, 250 S.W.3d 191, 196 (Tex. Ct. App.-Dallas 2008).

15663048.3

order list (Ex. 7 MD, 143:17-25). While the Daniels believed that AETC Managers' repairs were not successful, there is no evidence or expert testimony showing AETC Managers failed to make a "diligent effort." Because Plaintiffs have no evidence showing Defendants failed to make a diligent effort to repair, this claim fails.

Even more important, Plaintiffs cannot show that AETC Housing failed to repair a "condition materially affecting [their] health or safety." Plaintiffs have abandoned all claims for physical injuries and illness [220], have no evidence that mold ever materially affected their health,[23] and have no evidence that conditions in their house posed a material danger. Because Plaintiffs cannot show the conditions in their home posed a material threat to their health and safety, they cannot show breach of the Property Code, their lease agreement, or other legal duty.

> E.    *The economic loss rule bars Plaintiffs' negligence, negligent misrepresentation, DTPA and fraud claims.*

The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *See Lamar Homes, Inc. v. Mid-Cont. Cas. Co.,* 242 S.W.3d 1, 12 (Tex. 2007). Otherwise, every breach of contract claim would morph into a tort claim. While the rule does not automatically bar tort claims when there is a written contract, a court must analyze both the source of the duty—*i.e.*, contract or tort—as well as the nature of remedy sought to determine if the economic loss rule applies. *See Formosa Plastics*, 960 S.W.2d at 45. "[I]f the defendant's conduct … would give rise to liability only because it breaches the

---

[23] (Ex. 7 Michael Daniels, 235:11-14 (did not know what was written in his chart and if he received a diagnosis related to Randolph); Ex. 8 BD, 188:8-14 (S.D. did not receive a medical professional diagnosis related to mold); BD, 192:11-14 (X.D. did not receive a medical professional diagnosis related to mold); BD, 246:21-23 (Mrs. High Daniels not claiming any medical issues related to mold)).

parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Id.*; *see S.W. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991).

Here, Plaintiffs contend the duty was "to provide them with habitable living conditions" and "to properly maintain and repair the houses…." [9 at ¶ 172]. That duty arises solely from the lease, and any injury suffered would be compensable under the lease. Because Texas courts "have uniformly applied the economic loss rule to deny recovery of purely economic losses in actions for negligent performance of services," Plaintiffs' negligence claim must be dismissed. *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 243 (Tex. 2014).

When the economic loss rule applies to claims for negligence, it generally also applies to claims for negligent misrepresentation. *LAN/STV*, 435 S.W.3d at 246 ("The economic loss rule should not apply differently to these two tort theories in the same situation."); *see Formosa Plastics*, 960 S.W.2d at 45. Further, Texas has adopted the Restatement's independent injury requirement for negligent misrepresentation. *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797 (Tex. Ct. App.-Houston [1st Dist.] 2007) (holding that to avoid dismissal under the economic loss rule, plaintiff must suffer injury "independent from the economic losses recoverable under a breach of contract claim."). The negligent misrepresentation claims must also be dismissed.

Plaintiffs' DTPA claims are also indistinguishable from their contract claims.[24] Where the statements underlying a DTPA claim are "nothing more than representations that the defendants

---

[24] The Amended Complaint sums up Plaintiffs' DTPA claims: "Defendants leased Plaintiffs houses that were uninhabitable…and subsequently refused to perform reasonable repairs to address the issues…." [9 at ¶ 159] Plaintiffs breach of contract claims allege Defendants breached the lease by "failing to ensure that the houses…were fit for human habitation and by failing to diligently repair…." [9 at ¶ 169].

would fulfill their contractual duty … the breach of that duty sounds only in contract." *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996). Further, in dismissing a DTPA claim based on unconscionable conduct, the Fifth Circuit explained that even where there are unconscionable statements, if "the breach of the contract causes the harm," the DTPA claim cannot be sustained. *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016). The DTPA claims must fail.

Plaintiffs' fraud claims are also barred by the economic loss rule. If a party's claims "arise solely from [the parties'] contractual relationship," then the fraud claim is barred by the rule. *See, e.g.*, *Payne v. Wells Fargo Bank Nat. Ass'n*, 637 F. App'x 833, 837 (5th Cir. 2016); *Lamar Homes*, 242 S.W.3d at 12. Here, Plaintiffs allege AETC Housing failed to maintain their house *as required by the lease*.[25] Without the lease, Plaintiffs would never have been residents and their damages would be nonexistent. *See Jackson v. Ocwen Loan Servicing, LLC*, at *9 ("without the Note and Deed of Trust, Ms. Jackson's tort claims and the damages she seeks would not exist"). The remedy Plaintiffs seek is economic damages from the alleged failure to repair and maintain the residence. Therefore, both the duty and the remedy underlying their claims arise solely from the lease.

This Court's recent decision in *Holubets v. Forest River, Inc.* is on point. No. A-21-CV-01004-LY, 2022 WL 903430, at *2 (W.D. Tex. Mar. 28, 2022), *report & rec. adopted* (May 4, 2022). In *Holubets*, the plaintiff was dissatisfied with his new R.V. and sued the manufacturer for negligence, negligent misrepresentation, breach of duty to repair, and violations of the DTPA–-just as Plaintiffs have alleged in this case. This Court explained that, while his claim for breach of contract could proceed, the tort and DTPA claims were barred by the economic loss rule:

---

[25] Plaintiffs have no proof of fraudulent inducement.

"Holubets' negligence and negligent misrepresentation claims, along with his breach of the duty to repair and DTPA claims, all fall within the economic loss rule because 'the only loss or damage [arising from these claims] is to the subject matter of the contract' itself—here, the warranty and repair agreements related to the RV." *Holubets* at *2 (quoting *DeLanney*, 809 S.W.2d at 494).[26] *Cf. Mays v. Pierce*, 203 S.W.3d 564, 574–75 (Tex. Ct. App.-Houston [14th Dist.] 2006) ("Here, Pierce did not show she was harmed by Pro–Tech's representations, but only showed harm caused by Pro–Tech's failure to perform."); *Payne*, 637 F. App'x at 837 ("Because [plaintiff's] fraud claim is premised on [Defendant's] performance under the [contract], [it] is barred by the economic loss rule.").

In this case, the crux of Plaintiffs' claims is that AETC Housing did not properly repair and maintain their homes, a duty required by the lease. *See* [9 at ¶ 15 (alleging Defendants have "under-maintained the houses")]. This duty is similar (if not identical) to the duty to repair imposed by the warranty agreement in *Holubets*, and the remedy sought is economic damages resulting from a breach of that duty. As in *Holubets*, the claims are barred by the economic loss rule.

II.    **For the Reasons Explained Below, Each of Plaintiffs' Claims Fails as a Matter of Law.**

A.    *Count I: Texas Deceptive Trade Practices Act (DTPA)*

Plaintiffs' DTPA claims fail for at least the following reasons:

---

[26] The holding that Holubets' assertion of mental anguish due to his R.V.'s dysfunction could not rescue his tort claims from the economic loss rule is critical: "Moreover, Holubets' allegations of mental anguish damages cannot save his claims from the economic loss rule, as 'litigants cannot avoid application of the economic loss rule by merely alleging mental anguish damages where the plaintiff's claims for mental anguish stem from the defendant's breach of contract.' " *Id.* at *3 (quoting *Jackson*, 2018 WL 1001859, at *8).

1.      <u>Plaintiffs' DTPA claims are barred by the federal enclave doctrine</u>. *See* Section I.A. The DTPA was originally enacted in 1973, well after RAFB was ceded to the federal government. Tex. Bus. & Com. Code Ann § 17.50 (enacted by Acts 1973, 63rd Leg., p. 322, ch. 143, § 1, eff. May 21, 1973).

2.      <u>Plaintiffs' DTPA claims are barred by the statute of limitations</u>. *See* Section I.B. *See Pako Corp. v. Thomas*, 855 S.W.2d 215, 217, 219 (Tex. Ct. App.-Tyler 1993) (DTPA claim accrued when plaintiff knew of defects; no tolling based on defendant's attempts to repair).

3.      <u>Plaintiffs have no evidence of a material misrepresentation.</u> *See* Section I.C. *See Jones v. Zearfoss*, 456 S.W.3d 618, 623 (Tex. Ct. App.-San Antonio 2015) (material misrepresentation is element under DTPA).

4.      <u>The DTPA claims are barred by the economic loss rule</u>. *See* Section I.E. *See Salek v. SunTrust Mortg., Inc*., 2018 WL 3756887, at *6 (S.D. Tex. Aug. 8, 2018) (granting motion to dismiss DTPA claims pursuant to economic loss rule).

5.      <u>The "as is" clause in the lease negates causation for the DTPA claims</u>. An "as is" clause negates the causation element of the DTPA. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd*., 896 S.W.2d 156, 161 (Tex. 1995); *Potter v. HP Texas 1 LLC*, 2020 WL 1672556 (Tex. Ct. App.-Dallas Apr. 6, 2020) (upholding "as is" clause in residential lease).

  B.      *Count 2: Implied Warranties and Texas Property Code.*

The implied warranties and Texas Property Code claims fail for at least these reasons:

1.      <u>There is no implied warranty of habitability in residential leases under Texas law</u>. Texas first recognized an implied warranty of habitability (IWH) for tenants in *Kamarath v. Bennett*, 568 S.W.2d 658 (Tex. 1978). "Shortly after *Kamarath* was decided,

superseding legislation was enacted that abrogated the implied warranty and created a limited landlord duty to repair." *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 479 (Tex. 2016) (quotes & citation omitted). Because the IWH did not exist at common law before cession and was abrogated by statute after cession, this claim must be dismissed.

2.  <u>The federal enclave doctrine bars the claims</u>. *See* section I.A. Apart from the fact that the IWH postdates cession, Texas did not recognize the implied warranty of good and workmanlike repairs until 1987, over 30 years after RAFB became a federal enclave. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 353 (Tex. 1987); *see Balderrama*, 963 F. Supp. 2d at 656. And Property Code § 92.051 postdates cession. *See* section I.A.

3.  <u>The lease supersedes any implied warranty of repairs</u>. Plaintiffs cannot show that Texas law would imply a warranty of good and workmanlike repairs because "other adequate remedies are available" to them. *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co*., 662 F. Supp. 2d 623, 656-57 (S.D. Tex. 2009). Specifically, Plaintiffs' lease imposes a duty to repair, making no implied warranty necessary.

4.  <u>Plaintiffs failed to plead or present evidence of statutory requirements of §</u> <u>92.056</u>. Even if it applies, Plaintiffs have not pled or proven they met the requirements of § 92.056(b) for each condition that they allege required repair, which is a necessary element to succeed on this claim. *See Wynn v. Silver Oaks Apts., LTD*., 2014 WL 60657, at *2 (Tex. Ct. App.-San Antonio Jan. 8, 2014) (affirming summary judgment because tenant failed to "establish the requirements set forth in section 92.056(b)."). Although Plaintiffs assert generally that they gave notice, "unsubstantiated assertions are not competent summary judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

5.     <u>Plaintiffs failed to present evidence of any condition materially affecting the health or safety of an ordinary tenant</u>. Plaintiffs have not shown that any condition for which no repairs were allegedly attempted "materially affects the physical health or safety of an ordinary tenant." Tex. Prop. Code § 92.056(b)(2). Indeed, Plaintiffs have abandoned any personal injury claims that their health was harmed by living in the residence. [220]. Any claims relating to mold would require expert testimony because "it is not within the general experience and common sense of a lay person that exposure to mold causes the injuries" alleged. *Starr v. AJ Struss & Co.,* 2015 WL 4139028, at *7 (Tex. Ct. App.-Houston [1st Dist.] July 9, 2015). Because Plaintiffs have no evidence "that these conditions materially affect the physical health and safety of an ordinary tenant," summary judgment is proper on any remaining claims in Count 2. *REM Servs., Inc. v. Zaheer*, 2013 WL 1384912, at *8-10 (Tex. Ct. App.-Houston [14th Dist.] Apr. 4, 2013).

C.     *Count 3: Breach of Contract (the Lease).*

Plaintiffs' breach of contract claim fails for at least the following reasons:

1.     <u>Assuming the lease imposes a duty to provide a "habitable" house, Plaintiffs cannot show breach of that duty because they agreed their house was "clean, safe, and habitable" when they signed their lease</u>. Plaintiffs had an opportunity to inspect their house and note any issues on their MIMO. Eight days after moving in, the Plaintiffs returned their MIMO, which means they agreed their residence was in "a safe, clean, and habitable condition" except as otherwise noted on the MIMO. *See* Ex. 2 Lease ¶ 10. Thus, Plaintiffs cannot show Defendants breached a duty to provide a "habitable" house.

2.     <u>Plaintiffs cannot show Defendants breached the lease provision requiring diligent repair</u>. The lease only requires AETC Housing to diligently repair conditions about which

23

it had notice. Ex. 2 Lease ¶ 19. Without notice, there can be no breach. *Hernandez v. Gallardo*, 594 S.W.3d 341, 346 (Tex. Ct. App.-El Paso 2014) (upholding summary judgment on breach of contract claims where "[t]enant failed to present any competent summary judgment evidence that they specified the conditions at issue in a notice to [the landlord.]"). Plaintiffs cannot show AETC Housing failed to remedy a condition of which it had notice. Indeed, Plaintiffs agreed that AETC Managers responded to each and every one of their maintenance requests. (*See generally*, Ex. 7 MD, 63-143; Ex. 10 Work Orders).

3.      <u>Plaintiffs are unable to prove any damages arising from any alleged breach of the lease</u>. Under Texas law, a claimant must show that the alleged breach of contract caused them injury. *Smith Int'l, Inc. v. Eagle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Plaintiffs have disclaimed any physical injuries [220], and they cannot establish property damage without expert testimony showing damage to personal contents, and cleaning or repair of those contents, or any proof that contents were damaged by mold. *See Plunkett v. Conn. Gen. Life Ins. Co.*, 285 S.W.3d 106, 120-21 (Tex. App. 2009). Plaintiffs' claims for personal injury for breach of the lease agreement's repair clause [9 at ¶ 170] cannot survive because the law of breach of contract at the time of cession did not provide for recovery for personal injuries. *See Ross v. Haner*, 258 S.W. 1036, 1042 (Tex. Comm'n App. 1924) (repair clauses generally "for comfort and convenience only"); *Harvey v. Seale*, 362 S.W.2d 310, 312 (Tex. 1962) (citing *Ross* for past state of law).

4.      <u>Breach of the lease agreement can only be brought by the service member tenant and against AETC Housing</u>.  According to the lease, the only tenant is the service member, and thus the claims of Mrs. Daniels and the minor children must be dismissed.  Likewise, AETC Managers is not a signatory to the lease, and cannot be liable under it. Even were AETC Managers

24

somehow held to have contracted with Plaintiffs on behalf of AETC Housing, Texas law is generally that an agent who contracts for a disclosed principal is not liable on the contract. *Sherrard v. SignAd, Ltd.*, 637 S.W.3d 192, 199 (Tex. Ct. App.-Houston (14th Dist.) 2021). Because the lease clearly disclosed AETC Housing, AETC Managers cannot be liable.

      D.     *Counts 4 and 11: Negligence, negligent misrepresentation, and gross negligence.*

Plaintiffs' negligence, negligent misrepresentation, and gross negligence claims fail for at least the following reasons:

      1.     <u>Plaintiffs' negligent misrepresentation claim is barred by the federal enclave doctrine.</u> *See* section I.A. Texas did not recognize the tort of negligent misrepresentation until 1991, well after RAFB was ceded to the federal government. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

      2.     <u>Plaintiffs' negligence claims are barred by the two-year statute of limitations</u>. *See* Section I.B.

      3.     <u>Plaintiffs' negligence claims are barred by the economic loss rule.</u> *See* Section I.E.

      4.     <u>Plaintiffs are unable to prove that any alleged negligence[27] is the proximate cause of their damages (if any).</u> Plaintiffs disclaim any physical injuries [220], and cannot show

---

[27] In addition to the reasons stated herein, Plaintiffs cannot show that Defendants engaged in any contemporaneous negligent conduct that caused them injury. Texas distinguishes between negligent activity and negligent failure to remedy an unreasonable risk of harm. *See Timberwalk Apt., Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998). To recover on a negligent activity theory, the plaintiff must "have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Id.* (quoting *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). Because Plaintiffs here have alleged premises liability (i.e., that there was a dangerous condition), Plaintiffs have "not [shown] that [Defendants] engaged in a

property damage, as discussed below; they have no damage and their negligence claims must fail. *Plunkett v. Conn. Gen. Life Ins. Co.*, 285 S.W.3d 106, 120-21 (Tex. Ct. App.-Dallas 2009, *writ denied*).

5.       <u>Plaintiffs' failed to plead their negligent misrepresentation claim with particularity</u>. *See* Section I.C.1.

6.       <u>Plaintiffs cannot show a material misrepresentation</u>. See Section I.C.2.

7.       <u>Plaintiffs cannot show causation, nor justifiable reliance upon any alleged representation</u>. *See* Section I.C.3. Further, the "as is" clause incorporated in the lease negates the causation element of negligence and the reliance element of misrepresentation. *Van Duren v. Chife*, 569 S.W.3d 176, 185-86 (Tex. Ct. App.-Houston (1st Dist.) 2018).

8.       <u>Plaintiffs cannot show inducement</u>. *See* Section I.C.4.

E.       *Count 5: Statutory fraud.*

Plaintiffs' statutory fraud claim fails for at least the following reasons:

1.       <u>Plaintiffs' statutory fraud in a real estate transaction claim is barred by the federal enclave doctrine</u>. *See* Section I.A. The code provision was enacted in 1967. Tex. Bus. & Com. Code Ann. § 27.01 (enacted by Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, § 1).

2.       <u>Plaintiffs failed to plead fraud with particularity</u>. *See* Section I.C.1.

3.       <u>Plaintiffs failed to identify a material misrepresentation</u>. *See* Section I.C.2.

4.       <u>Plaintiffs did not show actual or justifiable reliance on any alleged representation</u>. *See* Section I.C.3. *See U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 406 (5th Cir.

---

contemporaneous, negligent activity at the time of [their injuries]." *Chapman v. Parsons*, No. 4:18-cv-00360-O, 2019 WL 2743793, *2 (N.D. Tex. Apr. 2, 2019).

15663048.3

2000) (holding that fraud claims under § 27.01(a) "include[e] the elements of reliance and materiality."). Further, the "as is" clause incorporated in the lease negates any reliance element. *Van Duren*, 569 S.W.3d at 185.

     5.    <u>Plaintiffs did not show they were induced by fraud to enter into the lease</u>. *See* Section C.4.

    *F.*    *Count 6: Common law fraud.*

Plaintiffs' fraud claims fail for at least the following reasons:

     1.    <u>Plaintiffs failed to plead fraud with particularity</u>. *See* Section I.C.1.

     2.    <u>Plaintiffs failed to identify a material misrepresentation</u>. *See* Section I.C.2. Even if they had, the "as is" clause in their lease would negate any reasonable reliance on those representations. *See Potter*, 2020 WL 1672556, at *10.

     3.    <u>Plaintiffs did not show actual or justifiable reliance on any alleged representation</u>. *See* Section I.C.3.

     4.    <u>Plaintiffs did not show they were induced by fraud to enter into the lease</u>. *See* Section I.C.4.

    *G.*    *Count 7: Unjust enrichment and money had and received.*

The two year statute of limitations bars these claims. *See* Section I.B. Further, both these claims are equitable principles that apply only where there is no contract governing the subject matter of the parties' dispute. *Parkway Dental Assocs., P.A. v. Ho & Huang Prop., L.P.*, 391 S.W.3d 596, 610 (Tex. Ct. App.-Houston [14th Dist.] 2012) (upholding Rule 56 dismissal of money had and received, restitution, and unjust-enrichment claims where lease covered subject matter of parties' dispute). The existence of the Lease bars these equitable claims. Further, even if

these equitable claims could apply here, Plaintiffs have no evidence of unequitable conduct. *See* Sections I.B-I.E.

      **H.**     *Counts 8, 9, and 10: Nuisance and Texas Health and Safety Code.*

      Plaintiffs' common law and statutory nuisance claims fail for at least the following reasons:

      1.     <u>Plaintiffs' negligent and intentional nuisance claims are barred by the economic loss rule</u>. Defendants have been unable to locate a reported case where a nuisance action has been brought, let alone successfully, by a residential tenant against their landlord for conditions resulting from a failure to repair. That is because these claims are properly brought as a breach of contract. Nuisance is a substantial, unreasonable interference with a plaintiff's right of use and enjoyment of property. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 594-95 (Tex. 2016). For a nuisance to be actionable, there must be a "violation of legal right and a breach of a legal duty." *Id.* at 601 (quotes & citation omitted). Because there was no legal duty owed by any Defendant or a legal right held by any Plaintiff apart from the Lease, there could not be a "breach of legal duty" absent the existence of the lease. *DeLanney*, 809 S.W.2d at 494 (holding that for tort damages to be recoverable, defendant's act or omission must "give rise to liability independent of the fact that a contract exists between the parties."). Because Plaintiffs' nuisance claims are repackaged claims for breach of the lease, they are barred by the economic loss rule.

      2.     <u>Plaintiffs' negligent nuisance claims duplicate their negligence claims</u>. Nuisance is not a cause of action, but rather a legal injury—a substantial, unreasonable interference with the use and enjoyment of property. *Crosstex*, 505 S.W.3d at 594-95. The elements for establishing a negligent nuisance claim are the same as negligence, with the added element that "the defendant's negligent conduct created a nuisance, which in turn resulted in the plaintiff's

damages." *Id.* at 607. Where negligence is pled, this claim "would be duplicative when the only alleged legal injury is a nuisance." *Id.* at 607, n.18. Here, the injury caused by the alleged nuisance is the same injury caused by the negligence claim—that a failure to properly repair the residence per the lease caused injury. Thus, this claim is merely duplicative and fails as a matter of law.

3.      <u>Plaintiffs have not pled or presented evidence demonstrating intent to cause alleged conditions</u>. Plaintiffs have no evidence that any Defendant "actually desired or intended to create the interference or . . . [knew] or believe[d] that the interference would result." *Crosstex*, 505 S.W.3d at 605. Indeed, the undisputed summary judgment evidence shows that AETC Managers were responsive to repair requests. (*See generally*, Ex. 7 MD, 63-143; Ex. 10 Work Orders). Because Plaintiffs have no evidence showing any Defendant's intention to substantially interfere in their use and enjoyment and because the evidence shows repeated attempts to remedy issues of which Defendants were made aware, the intentional nuisance claims must be dismissed.

4.      <u>Plaintiffs' claims under the Texas Health & Safety Code fail as a matter of law</u>. Assuming this statute applies (and it does not), Texas Health & Safety Code § 341.011 does not afford citizens a private right of action. *See Brown v. Daniels*, 2021 WL 1997060, at *15 (Tex. Ct. App.-Dallas May 19, 2021) (dismissing statutory nuisance claims under § 341.011; section not "a provision authorizing a private enforcement action of the kind brought here to abate a public health nuisance"). Similarly, Plaintiffs lack standing to sue under § 343.011 because they no longer live at RAFB. Tex. Health & Safety Code § 343.013(b) (standing to sue to "property owner, resident of a neighborhood, or organization of property owners or residents of a neighborhood").

III. **Plaintiffs are not entitled to damages for personal injury, property damage, mental anguish, or attorney fees.**

     A.     *Plaintiffs cannot recover damages for personal injury.*

Plaintiffs have stipulated to dismissal of their claims for "physical injuries and/or physical illness" and any damages from those conditions. [220]. It is therefore proper for this Court to enter an order accepting the stipulation and dismissing those damages claims. *See Henley v. Love Ins. Grp., LLC*, No. 3:15-CV-3078-L, 2016 WL 9526463, at *3 (N.D. Tex. Oct. 21, 2016) (entering order per stipulation).

Even without the stipulation, Plaintiffs' personal injury claims fail because they required expert testimony.[28] While Barbara High Daniels is not making any medical claims related to the home (Ex. 8 BD, 246:21-23), Michael Daniels is claiming increased anxiety due to his time in the home. (Ex. 19 MD Int. Res., at 11). Plaintiffs failed to designate any competent expert and the only competent, admissible expert testimony on their personal injury claims came from their Rule 35 examiners, who concluded their "medical conditions and complaints were not caused by or exacerbated by any conditions in their home."[29] (Ex. 21 Dr. Gross Rule 35 Report on Michael

---

    [28] The general rule is that "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of [laypersons]." *BMLA, Inc. v. Jordan*, 2021 WL 5364771, at *7 (Tex. Ct. App.–Houston [1st Dist.] Nov. 18, 2021). "Expert testimony is **particularly necessary in toxic-tort and chemical-exposure cases**, in which medically complex diseases and causal ambiguities compound the need for expert testimony." *Starr,* 2015 WL 4139028, at *6 (emphasis added).

    [29] Plaintiffs' designation of experts includes no medical doctor, or anyone else, opining that Defendants caused them medical injuries. There is no genuine issue to be tried. "When expert testimony is required to establish causation, and the plaintiff offers no expert testimony on causation or fails to designate an expert to opine on causation, summary judgment is appropriate." *Vessels v. Prospect Airport Servs., Inc.,* No. SA-19-CV-01330-JKP, 2021 WL 4712696, at *3 (W.D. Tex. Oct. 6, 2021).

Daniels, at 4).

   B.   *Plaintiffs cannot recover damages for property damage because they lack expert testimony to establish those claims.*

Plaintiffs' property damage claims fail for the same reason. In Texas, jurors cannot resolve questions outside the ordinary knowledge of laypersons without expert testimony. *See BMLA, Inc. v. Jordan*, 2021 WL 5364771, at *7 (Tex. Ct. App.–Houston [1st Dist.] Nov. 18, 2021). This general rule should apply to Plaintiffs' property damage claims, especially when their own expert testified that expert testimony was required to show property damage. The Daniels retained mold consultant Kristi Beck-Miller to conduct mold assessments in their homes. Although her original reports made vast, broad, and ultimately false conclusions regarding Plaintiffs' personal property and contents, Beck-Miller abandoned those opinions. (Ex. 17 Miller Dep. Vol. 2, 135:2-9; 138:19-22). She conceded that she had not followed applicable national standards for the determination of whether and to what extent personal property had been damaged and could be cleaned. As a result, Miller withdrew all of her opinions regarding personal contents. (Ex. 17 Miller Dep. Vol. 2, 135:2-9). But most importantly, Beck-Miller testified that the assessment of personal property for mold damage was something which required an expert opinion (Ex. 17 Miller Depo. Vol. 2 at 30:23-33:1) that she was unable or unwilling to provide. Thus, Plaintiffs' have no expert testimony supporting their claims for damage to personal property. Therefore, all claims for damage to personal property should be dismissed.

   C.   *Plaintiffs cannot recover damages for mental anguish.*

      1.   The federal enclave doctrine bars Plaintiffs from damages for mental anguish.

*See* section I.A. Pre-cession Texas law provided for damages for mental anguish only when

31

there was personal injury. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 443 (Tex. 1995) ("We initially allowed mental anguish damages only in cases in which there was a physical injury.") (citing *Hill v. Kimball*, 13 S.W. 59, 59 (1890)). Indeed, it was not until the 1980s that Texas law allowed recovery for mental anguish that did not manifest itself by causing physical injury. *Parkway*, 901 S.W.2d at 443. Because pre-cession Texas law only permitted mental anguish where there was personal injury and because there are no personal injury claims here, Plaintiffs' mental anguish claims must be dismissed.

2.      Current Texas Law Likewise Bars Plaintiffs from Recovering for Mental Anguish.

Even if current Texas law applied (and it does not per the federal enclave doctrine), the result would be the same. "Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish" and has limited it to four types of cases: those (1) involving intent or malice by the defendant; (2) involving "serious bodily injury" to the plaintiff; (3) where a "special relationship" exists between the parties; and (4) "involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result" (such as defamation, mishandling of corpses, etc.). *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997); *see also Holcombe v. United States*, No. SA-18-CV-555-XR, 2021 WL 398842, at *4 (W.D. Tex. Feb. 3, 2021); *Petty v. Great W. Cas. Co.*, 783 F. App'x 414, 415–16 (5th Cir. 2019). Plaintiffs' mental anguish claims do not fall into any of these 4 categories and thus cannot proceed.

2.1.    No "Serious Bodily Injury."

Plaintiffs have stipulated dismissal of their claims for personal injuries. [220]. "[M]inor physical symptoms ... such as difficulty sleeping, are not serious bodily injuries that can form the

32

basis for recovering mental anguish damages." *Likes*, 962 S.W.2d at 496. Neither are "PTSD symptoms alone," such as sleep deprivation, anxiety, stomach issues, depression, crying, mood swings, "difficulty concentrating," and the like. *Holcombe*, 2021 WL 398842, at *5 (reviewing cases). The Daniels are not claiming any mental or emotional damages for S.D. (Ex. 8 BD, 189:15-19). When asked about X.D., Mrs. Daniels stated her son developed ADHD and behaved emotionally following the move due to the loss of his toys. (BD 189:20-25). This kind of symptom, in addition to being related to property abandoned months after leaving RAFB, is not actionable. Barbara High-Daniels did not list any medical claims physical or mental in her discovery responses (Ex. 18 BD Int. Resp., 11) and at her deposition only testified as being upset and stressed. (Ex. 8 BD, 215:13-22). The Rule 35 mental examination for Michael Daniels' stated: "Psychological testing, completed May 2022, did not reveal any significant symptoms that would support a diagnosis of a current clinical mental health condition." (Ex. 20 Dr. Cooper Rule 35 Report on Michael Daniels, at 15). Plaintiffs simply cannot show they suffered compensable mental anguish.

Nor can Plaintiffs recover for mental anguish due to their alleged fear that they might get sick from mold or other conditions.[30] The *Likes* plaintiff, for example, could not recover for "feelings of insecurity both for her home, personal property and personal safety." 962 S.W.2d at

---

[30] In Texas, mental-anguish damages cannot be recovered for fear of future disease due to alleged exposure to toxins as "most Americans are daily subjected to toxic substances in the air they breathe and the food they eat." *Temple-Inland Forest Prod. Corp. v. Carter*, 993 S.W.2d 88, 93 (Tex. 1999). Further, mere fear or anxiety about a peril that caused no injury cannot support an award for mental anguish as "[i]t has been established for over a century that '[a] person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply because he has been placed in a perilous position. Nor is mere fright the subject of damages.'" *Id.* at 91 (quoting *Likes*, 962 S.W.2d at 500).

500; *see also Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 96 (Tex. Ct. App.–Houston [14th

Dist.] 1998) (no recovery for fear caused by false-positive HIV test).

### 2.2.     No Malice.

Malice in this context means some "evidence of some ill-will, animus, or design to harm

the plaintiff personally." *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 757

(Tex. Ct. App.-Houston [14th Dist.] 1998) (limiting mental anguish damages for gross negligence).

Although the Amended Complaint contains spurious allegations of malice, there has been no proof

that any Defendant ever intended to harm Plaintiffs or was recklessly indifferent to their health,

which Plaintiffs admit was unaffected.

### 2.3.     No "Special Relationship."

No evidence exists of any "special relationship" between Plaintiffs, who were tenants in

base housing, and Defendants. "[M]ost relationships, whether legal or personal, create no duty to

avoid causing mental anguish." *Likes*, 962 S.W.2d at 496 (citations omitted). The limited types of

"special relationships" include the physician–patient relationship and "a very limited number of

contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for

burial or delivering news of a family emergency." *Id.*

### 2.4.     No "Shocking and Disturbing" Misconduct.

Finally, Plaintiffs' case does not fall into the narrow category where the alleged misconduct

is on its face particularly "shocking and disturbing." In a similar case where the plaintiffs' home

flooded and ruined some personal property, the Texas Supreme Court stated:

> historically, some types of disturbing or shocking injuries have been found
> sufficient to support an inference that the injury was accompanied by mental
> anguish. As a general matter, though, qualifying events have demonstrated a threat
> to one's physical safety or reputation or involved the death of, or serious injury to,

a family member. While the flooding of the Woodruffs' home **certainly disrupted their lives temporarily**, under our substantive law **this type of disruption will not support an inference that compensable mental anguish occurre**d.

*Parkway Co.,* 901 S.W.2d at 445 (emphasis added). Harms like flooding that fall within "the vicissitudes of daily life" are not compensable injuries. *Id.* at 445 n.10. Plaintiffs have alleged nothing more than such ordinary vicissitudes of leasing a house in south Texas. While Plaintiffs contend their houses were "uninhabitable" and that Defendants' conduct was "shocking or disturbing," they have no evidence showing their houses posed a material danger to their health and safety or even that Defendants failed repair their home in a diligent manner. Accordingly, they cannot prove "shocking or disturbing" conduct even if they subjectively believe that is what they experienced. *See* Section I.B-E & Section II. Plaintiffs' mental anguish claims fail.

        3.    <u>The economic loss rule also bars mental anguish claims in this case.</u>

*See* Section I.E. This rule bars Plaintiffs' attempt to recover damages for mental anguish for what is in fact a mere allegation of breach of contract.

        D.    *The federal enclave doctrine bars the recovery of attorney fees.*

In Texas, "attorney's fees are not awarded unless a statute or contract authorizes them." *JCB, Inc. v. Horsburgh & Scott Co.*, 597 S.W.3d 481, 491 (Tex. 2019). The Lease does not provide for attorney fees. Plaintiffs claim entitlement to attorney fees under four statutes. [9 at ¶ 208] As discussed above, these statutes were either not in existence or did not provide for attorney fees at the time of cession and such fees are barred by the federal enclave doctrine. *See* Section I.A.

## CONCLUSION

For all these reasons, the Court should grant summary judgment on all of Plaintiffs' claims.

Respectfully submitted, this the 5th day of July, 2022.

By: */s/ Walter H. Boone*

Walter H. Boone, MS Bar No. 8651
*(Admitted to W. D. of TX on 7/28/2020)*
Jennifer J. Skipper, State Bar No. 24076171
BALCH &BINGHAM LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
E-mail:       wboone@balch.com
              jskipper@balch.com

By: */s/ Julia W. Mann*
Julia W. Mann, State Bar No. 00791171
Erica Benites Giese, State Bar No. 24036212
JACKSON WALKER LLP
112 East Pecan Street, Suite 2400
San Antonio, Texas 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail:       jmann@jw.com

***Attorneys for AETC II Privatized Housing, LLC,
AETC II Property Mgrs., LLC, and Hunt ELP,
LTD.***

36

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of July, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Randall A. Pulman, Esq.
Ryan C. Reed, Esq.
Sarah Jackson Donahue, Esq.
PULMAN, CAPPUCIO, & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, TX 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
E-Mail: rpulman@pulmanlaw.com
          rreed@pulmanlaw.com
          sdonahue@pulmanlaw.com

James R. Moriarty, Esq.
LAW OFFICES OF JAMES R. MORIARTY
4119 Montrose, Suite 250
Houston, TX 77006
(713) 528-0700 Telephone
(713) 528-1390 Facsimile
E-Mail: jim@moriarty.com

Mikal C. Watts, Esq.
Francisco Guerra, IV, Esq.
Jennifer Arlene Neal, Esq.
Robert E. Brzezinski, Esq.
WATTS GUERRA, LLP
Four Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 477-0500
E-Mail: mcwatts@wattsguerra.com
          fguerra@wattsguerra.com
          jneal@wattsguerra.com
          rbrzezinski@wattsguerra.com

*/s/ Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
*(Admitted to W. D. of TX on 7/28/2020)*

37

15663048.3