**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. DANIELS AND BARABARA HIGH-DANIELS, ET AL.** | § § § | |
| **PLAINTIFFS** | § § | |
| **v.** | § § | **NO. 5:19-cv-01280-FB-RBF** |
| **AETC II PRIVATIZED HOUSING, LLC; ET AL.** | § § § | |
| **DEFENDANTS** | § | |

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AGAINST VINALES PLAINTIFFS**

---

AETC II Privatized Housing, LLC ("AETC Housing"), AETC II Property Managers, LLC ("AETC Managers"), and Hunt ELP, Ltd. (collectively, "Defendants") move for summary judgment on all claims brought by Plaintiffs Shane and Becky Vinales, on behalf of themselves and their minor children (collectively, "Plaintiffs" or "the Vinales").

## <u>INTRODUCTION</u>

Plaintiffs are service members and their families who resided in military housing at Randolph Air Force Base owned by AETC Housing and managed by AETC Managers, and known generally as Randolph Family Housing. All nine Plaintiff families in this case resided in different homes, at different times, had different maintenance complaints, and received different maintenance responses. While this motion will cover some of the same general legal arguments for each family, the specific arguments and facts in support differ from family to family. For these reasons and others [41], Defendants are filing a separate motion for each family.

1

## STATEMENT OF UNDISPUTED FACTS

### I.   Cession of RAFB and Privatization of Housing

Both sides agree the "events giving rise to Plaintiffs' lawsuit occurred on [Randolph Air Force Base ("RAFB")]" and that RAFB is a federal enclave. [9 at ¶ 11]; [38, 39, 40 at ¶ 11]. Texas ceded the land constituting Randolph to the federal government in the late 1920s. The cession documents granted the United States exclusive jurisdiction. On October 4, 1951, the Texas Governor had the Great Seal of Texas affixed to a Deed of Cession, which provides:

> … in the name and on behalf of the State of Texas, do hereby cede to the United States of America **exclusive jurisdiction** over the said described land, to hold, possess and exercise said jurisdiction over the same as long as the same remains the property of the United States of America; provided, however, that the cession of jurisdiction is made and granted upon the express condition that the State of Texas shall retain concurrent jurisdiction with the United States of America over every portion of the land so ceded, so far, that all process, civil and criminal, issuing under the authority of the State of Texas of any of the Courts of juridical officers thereof, may be executed by the proper officers of the State of Texas upon any person amendable to the same within the limits of the land over which jurisdiction is so ceded, in like manner and with like effect as if no such cession had taken place.

Ex. 1 Cession Documents at 14 (emphasis added).[1] The sole reservation is for service of process, a common exception preventing the enclave's becoming a sanctuary for fugitives, that "in no way confers authority for the state to exercise legislative or police powers" in the enclave. *Schiappa, Sr. v. Brookhaven Sci. Assocs., LLC*, 403 F. Supp. 2d 230, 237 (E.D.N.Y. 2005) (collecting cases).[2]

---

[1] The Collective Exhibit of Cession Documents are true and accurate copies of documents received from the Texas Department of Archives and the Texas Office of the Secretary of State pursuant to AETC Defendants' public-records request, and are admissible evidence per Federal Rules of Evidence 901(7) and (8).

[2] Correspondence between the Department of the Air Force and the Governor of Texas requested and granted exclusive federal jurisdiction, and the "Department of the Air Force acknowledge[s] receipt of a deed dated October 4, 1951 executed by [the Governor] on behalf of the State of Texas, ceding exclusive jurisdiction to the United States … notice is hereby given that

RAFB is thus a federal enclave, governed by federal law rather than state law.

**II.     Plaintiffs' Residence at RAFB**

Plaintiffs signed a lease with AETC Housing for a term of one year, which automatically renewed on a month-to-month basis unless Plaintiffs gave notice of their intent not to renew. (Ex. 2 Lease, ¶ 1.)[3] In ¶ 10, Plaintiffs represented that the residence was in "a safe, clean, and habitable condition" when they signed the lease except as documented in the Move In / Move Out form, discussed below, or in written notice to the landlord within five days of move in. (*Id*., ¶ 10.) Paragraph 19 required Plaintiffs to immediately report any damage to the premises and required AETC Housing to "make a diligent effort to repair or remedy the condition" per the maintenance procedures in the Resident Guidelines. (*Id*., ¶ 19.) The Resident Guidelines, which are expressly incorporated into the Lease (*Id*., ¶ 41), describe Plaintiffs' obligation to inspect the property when moving in or out, Housing and Plaintiffs' obligations regarding maintenance, and the procedures for making maintenance requests. Lastly, Plaintiffs' lease contained an "as is" clause. (Ex. 3 Resident Guidelines at 11-12.)

Before moving in and for five days thereafter, Plaintiffs had a chance to inspect their property and note any problems with their unit on a Move In / Move Out form. (Ex. 2 Lease, ¶ 10);

---

the United States accepts exclusive jurisdiction over the land described in the Deed of Cession." (Ex. 1 Cession at 4.) Price Daniel, then Texas' Attorney General, accepted the deed of cession and recognized fee simple title in the United States, with no objection to its exclusive jurisdiction. (Ex. 1 Cession at 6.) Texas Secretary of State Tom Reavley wrote, "the Deed of Cession ceding exclusive jurisdiction to the United States of 221.192 acres of land, more or less, located in Bexar County, Texas, was signed by Governor Allan Shivers on October 4, 1951." (Ex. 1 Cession at 59.)

[3] Six of the nine Plaintiffs renewed their leases: Hamiltons (55 renewals); Wolfs (24 renewals); Daniels (23 renewals); Hiatts (11 renewals); Vinales (nine renewals); and Klines (five renewals).

15918792.3

[56-1, ¶¶ 36-43]. Plaintiffs also signed a Mold Addendum incorporated into their lease. (Ex. 2 Lease, ¶ 44; Ex. 4 Mold Addendum); [56-1, ¶¶ 36-43]. This addendum explained tenants' duty to promptly report mold and also provided tenants with guidance for preventing mold growth in homes. (Ex. 4 Mold Addendum); [56-1, ¶¶ 36-43].

### III.   Facts Unique to the Vinales

Becky and Shane Vinales moved into 3 Southwest Road, Unit 604 at RAFB on October 6, 2017 and moved out on June 15, 2019. They did not move out because of problems with their unit, but because they received orders transferring Lt. Col. Vinales to another location. (*See* Ex. 5 Becky Vinales Depo. Vol. 1 ("BV1") at 209:13-21, 287:3-9; Ex. 6 Shane Vinales Depo. ("SV") 123:22-124:2.)

The Vinales inspected the unit in October 2017 before signing their lease or moving in. They noticed "mold/stain/smell" on the living room carpet and asked AETC Managers to remove the carpet (which was later done). They also commented on the unit's "musty" smell. (Ex. 6 SV at 283:21; Ex. 5 BV1 48:11-12.) When they mentioned the "smell," AETC Housing personnel allegedly said either the house "smells like grandma's house" or it has "an old-house smell." (Ex. 5 BV1 48:11-12; Ex. 6 SV at 283:21.) After walkthrough, the Vinales signed the Lease.

The Vinales claim the unit's former tenant showed up the day they moved in and told them his family "had some problems with this house." (Ex. 5 BV1 at 231:24-25.) Becky Vinales says she asked AETC Housing about previous problems and was told there were "no problems." She claims this meant there had never been anything wrong with the house. (*Id*. at 232:1-9.)

The Vinales say AETC Managers personnel came to their house long after they had moved in and told them AETC Managers had a practice of marking work orders complete when they were

4

not actually complete. (Ex. 5 BV1 at 302:5-6.) But they cannot point to any specific action they took in reliance on this statement. They agree AETC Managers completed all the maintenance requests they made after they moved in. (Ex. 5 BV1 at 303:5-12; Ex. 6 SV at 300:4-6.)

The Vinales reported mold in March 2019. AETC Managers sought to quickly remediate the mold but Ms. Vinales refused because she first wanted the mold tested. (Ex. 5 BV1 at 128:11-129:20 She demanded testing even though AETC Managers promised to clean "as if it's the worst kind of mold." (*Id*. at 129:25-130:1.) The Vinales later paid for third-party mold testing of their home, which found the mold levels inside were significantly ***lower*** than outside. (*Id*. at 133:10-19, 140:2-12.) Plaintiffs' designated mold consultant, Kristi Beck-Miller, testified that generally when indoor mold levels are less than outdoor, that would indicate no fungal growth. (Ex. 7 Kristi Beck-Miller Depo. Vol 1 ("KBM1") at 109:24-111:3.)

Eventually, the Vinales agreed to allow the remediation of their residence, which required them to temporarily relocate. (Ex. 5 BV1 at 210:10-15.) They were also given the option of remediation or reimbursement for the personal property they suspected to be damaged by mold. They chose remediation. (Ex. 6 SV at 140:21-141:5.)

After remediation was complete and the Vinales were preparing to move, AETC Housing and the Vinales agreed to mold testing of certain property by a third party. (*Id*. at 141:6-11.) The tests showed that all but four items were cleared for overseas transport. (*Id*. at 165:10-25; Ex. 9 Argus Limited Contents Sampling Report at 3.) Despite these tests, the Vinales chose to abandon a significant amount of property because they nevertheless imagined that the property was contaminated with mold. (Ex. 6 SV at 132:14-15.) The Vinales have no proof of personal property damage, and no expert who will testify to any such damage. (Ex. 8 Kristi Beck-Miller Depo. Vol.

2 ("KBM2") at 93:2-22; 104:2-4.

## STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ARGUMENT

Defendants' argument is organized in three parts: (1) legal arguments applicable to multiple claims; (2) count by count analysis of Plaintiffs' claims and the multiple reasons that each claim fails as a matter of law; and (3) in the alternative, arguments that Plaintiffs cannot recover their damages for personal injury, property damage, mental anguish, or attorney fees.

### I.      Arguments Applicable to Multiple Claims

   A.      *Federal enclave doctrine bars claims for DTPA, implied warranty of habitability, negligent misrepresentation, statutory fraud, and attorney fees.*

RAFB is a federal enclave, which results in the dismissal of many of Plaintiffs' claims who resided there. "(T)he federal law of every enclave includes state law which was in force ***at the time of the cession***, where such state law is not inconsistent with federal law or policy. This assures that no new federal enclave, regardless of size, will be left without laws. However, ***laws of the state adopted after the cession are without any force or effect on the federal enclave***." *Lord v. Local Union No. 2088*, 646 F.2d 1057, 1059–60 (5th Cir. 1981) (citations omitted; emphases

6

added).[4] This doctrine applies to both common law and statutory law: "where a state's courts recognize new common law causes of action after the date when the state ceded certain lands to the exclusive jurisdiction of the federal government, those common law causes of action have no force on these federal lands." *Balderrama v. Pride Indus., Inc.*, 963 F. Supp. 2d 646, 656 (W.D. Tex. 2013) (citing *Allison v. Boeing Laser Tech. Servs.*, 689 F.3d 1234, 1243–44 (10th Cir. 2012)).

Thus, Texas state laws recognized or enacted after the cession of RAFB generally do not apply to conduct on RAFB. The only exception potentially applicable is if Congress legislates that certain state laws apply to the enclave. *Allison*, 689 F.3d at 1238.[5] Title 28, § 5001(b) makes state laws for physical injuries to federal enclaves.[6] But "no federal statute yet allows the broad application of state employment, tort, and contract law to federal enclaves." *Allison*, 689 F.3d at 1238; *W. River Elec. Ass'n, Inc. v. Black Hills Power & Light Co.*, 918 F.2d 713, 719 (8th Cir. 1990). Courts have held that § 5001 is limited to literal "physical injuries" and does not extend to tort law generally. *See, e.g.*, *Kelly v. Lockheed Martin Servs. Grp.*, 25 F. Supp. 2d 1, 7 (D.P.R. 1998) ("With the passage of this statute, Congress intended to provide relief to certain persons suffering physical injury, or possessing causes of action related to another's physical injury, in

---

[4] The quotation is from the district court's opinion in *Lord*, which the Fifth Circuit held "correctly states the background to the present question." *Id.* at 1059.

[5] There are two other exceptions not applicable here: (1) a state can expressly reserve the power to legislate for the enclave; or (2) minor changes to a state regulatory program that existed at the time of the cession will apply to the enclave. *Allison*, 689 F.3d at 1238.  However, these exceptions do not apply because Texas did not reserve any right to legislate at RAFB and Plaintiffs have not shown that their state-law claims were part of a "state regulatory programs" in place at the time of the cession.

[6] Because this statute encompasses negligence claims, current-day Texas negligence law applies to personal injury actions arising on RAFB. *Mathis v. General Elec. Corp.*, 580 F.2d 192, 194 (5th Cir. 1978) (holding that negligence and strict liability claims occurring on federal enclave in Alabama are governed by Alabama tort law under precursor to 28 USC § 5001(b)).

federal enclaves."). This interpretation of § 5001 is supported by the United States Supreme Court's holding that § 457's (the predecessor statute to § 5001) "purpose was **only** to authorize suits under a state statute abolishing the common law rule that the death of the injured person abates the action for negligence." *Murray v. Joe Gerrick & Co.*, 291 U.S. 315, 319 (1934) (rejecting broad reading of "injury" to encompass state workers-compensation laws) (emphasis added). Therefore, while Congress has carved out a narrow exception for application of state law to claims for personal injuries (which Plaintiffs in this case have abandoned), that narrow exception does not include, among other things, tort claims for property damage or claims for mental anguish.

Because Congress has not otherwise made all Texas state law applicable to RAFB, only Texas state law in place in 1952—when RAFB was ceded to the United States—applies here. The DTPA, Tex. Prop. Code § 92.051 (duties of landlord), and Tex. Bus. & Com. Code Ann. § 27.01 (fraud in a real estate transaction) were enacted after 1952.[7] Similarly, the Texas decisions recognizing implied warranty of habitability and the tort of negligent misrepresentation came after the cession. *See Kamarath v. Bennett*, 568 S.W.2d 658 (Tex. 1978) (implied warranty of habitability); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (tort of negligent misrepresentation). Thus, these causes of action are unavailable for Plaintiffs. Likewise, their claims for personal injury for breach of the lease agreement's repair clause [9 at ¶ 170] cannot survive because the law of breach of contract at the time of cession did not provide for recovery for personal injuries where such was not contemplated by the parties. *See Ross v. Haner*, 258 S.W.

---

[7] See Tex. Bus. & Com. Code Ann. § 17.50 (enacted by Acts 1973, 63rd Leg., p. 322, ch. 143, § 1, eff. May 21, 1973); Tex. Prop. Code § 92.051, et seq. (enacted 1979 Tex. Gen. Laws, ch. 780, § 1 et seq); Tex. Bus. & Com. Code Ann. § 27.01 (enacted by Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, § 1).

1036 (Tex. Ct. Com. App. 1924) (repair clauses generally "for comfort and convenience only"); *Harvey v. Seale*, 362 S.W.2d 310, 312 (Tex. 1962) (citing *Ross* for past state of law).

Plaintiffs also seek attorney fees under Tex. Civ. P. & Rem. Code § 38.001, Tex. Bus. & Com. Code § 27.01, "chapter 92 of the Texas Property Code," and Tex. Bus. & Com. Code § 17.50(d). As discussed above, the three latter sections were not in existence at the time of cession. Further, § 38.001 (former art. 2226) did not provide for attorney fees for breach of contract, and article 5236 (predecessor to § 92.005 of the Property Code) did not provide for attorney fees. See *Houghton v. Wholesale Elec. Supply*, 435 S.W.2d 216, 220 (Tex. Civ. App.-Waco 1968, *writ refused NRE* (Mar. 12, 1969)). Nor may Plaintiffs recover damages under the personal injury exception for alleged emotional or mental distress, as § 5001 covers only physical injuries. *Shurow v. Gino Morena Enters., LLC*, 2017 WL 1550162, at *3 (S.D. Cal. May 1, 2017); *Kelly*, 25 F. Supp. 2d at 7–9; *cf. Murray*, 291 U.S. at 319.

Counts One, Two, Four (negligent misrepresentation only), and Five, personal-injury claims from Count Three, and claims for attorney fees and emotional distress should be dismissed.

> B.    The statute of limitations bars the Vinales' DTPA, negligence, negligent misrepresentation, gross negligence, nuisance, and unjust enrichment and money had and received claims.

Even assuming the federal enclave doctrine does not apply, the two-year statute of limitations applies to, and bars, Plaintiffs' DTPA[8] (Count One), negligence[9] and negligent

---

[8] Tex. Bus. & Com. Code Ann. § 17.565.
[9] Tex. Civ. Prac. & Rem. Code § 16.003(a); *Ledford v. Keen*, 9 F.4th 335, 337-38 (5th Cir. 2021).

15918792.3

misrepresentation[10] (Count Four), gross negligence[11] (Count Eleven), nuisance[12] (Counts Eight, Nine, Ten) and unjust enrichment and money had and received[13] (Count Seven) claims. Under Texas law, a claim accrues "when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011). Here, the Vinales allege their problems existed and were apparent when they moved in on October 16, 2017. (Ex. 6 SV at 124:18-20 ("Q: So what started with the concern of mold? A: Really, when we first moved in, the musky smell."); Ex. 10 Becky Vinales Interr. Responses at 28 ("Problems began from the start")). At that time, they were entitled "to seek a judicial remedy." *Emerald Oil*, 348 S.W.3d at 202. However, they did not file this lawsuit until October 29, 2019—over 24 months later. Thus, their claims are time barred.

While Texas recognizes the discovery rule and various tolling doctrines, none apply here.[14] The discovery rule does not apply because Plaintiffs knew or "should have discovered" the mold in their homes immediately upon moving in or shortly thereafter. *See Pirtle*, 177 S.W.3d at 571. Their depositions further confirm they knew or should have known about the problems with their homes upon moving in. (Ex. 6 SV at 124:18-20.) Additionally, "Texas courts hold that unsuccessful efforts to repair goods in no way affects the question of limitations." *Pako Corp. v.*

---

[10] *Tex. Am. Corp v. Woodbridge Joint Venture*, 809 S.W.2d 299, 303 (Tex.App.-Fort Worth 1991, writ denied).

[11] *Ledford*, 9 F.4th at 337-38.

[12] *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004).

[13] Tex. Civ. Prac. & Rem. Code § 16.003(a); *United Healthcare Servs., Inc. v. Next Health, LLC*, 2021 WL 764035, *16 (N.D. Tex. Feb. 26, 2021).

[14] The discovery rule does not toll these claims because Plaintiffs knew or "should have discovered, the nature of his injury" at the time they knew of the allegedly deficient conditions. *Pirtle v. Kahn*, 177 S.W.3d 567, 571 (Tex.App.-Houston [1st Dist.] 2005).

15918792.3

*Thomas*, 855 S.W.2d 215, 219 (Tex.App.-Tyler 1993) (quotes and citations omitted).

Similarly, fraudulent concealment[15] does not toll the statute because Plaintiffs have no proof Defendants did anything to conceal their claims. Plaintiffs knew or should have known about their supposed claims on the day they moved in. Thus, their delay bars their claims.

> C.   *Plaintiffs' DTPA, fraud, statutory fraud, and negligent misrepresentations claims fail because they cannot prove a misrepresentation related to their residences.*

To prove their DTPA, fraud, and negligent misrepresentation claims, Plaintiffs must show misrepresentation of a material fact and justifiable reliance thereon.[16] They can prove neither.

> 1.   Plaintiffs failed to plead fraud with particularity.

The Complaint alleges two types of misrepresentation: (1) ones made before Plaintiffs signed their leases, and (2) ones regarding repairs under the lease. But while the Complaint claims there were misrepresentations, it does not identify the specific language of any particular representation, who made them, or when. Accordingly, Plaintiffs' fraud claims should be dismissed for failure to identify the who, what, when, and where of the allegedly fraudulent statements. [9 at ¶¶ 48, 131, 139]; *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002) (complaint must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.");

---

[15] Fraudulent concealment is an affirmative defense to the statute of limitations, giving Plaintiffs the burden of proof. *Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex. 1977).

[16] Fraud and negligent misrepresentation share the "common element" of "reasonable and justified" reliance. *Ortiz v. Collins*, 203 S.W.3d 414, 421 (Tex. Ct. App.-Houston [14th Dist.] 2006). Fraud in a real-estate transaction requires proof of reliance on the representation or false promise in entering a contract. Tex. Bus. & Com. Code Ann § 27.01(a)(1)(B) & (2)(D). For a DTPA claim under §17.46(b), the "false, deceptive or misleading act must be 'relied on by a consumer to the consumer's detriment.' " *Peltier Enters., Inc. v. Hilton*, 51 S.W.3d 616, 624 (Tex. Ct. App.-Tyler 2000) (quoting Tex. Bus. & Com. Code Ann § 17.50(a)(1)(B)).

*see also* Order in *Hill v. AETC II Privatized Housing*, No. 5:20-cv-01473-OLG-RBF, ECF No. 56

("Plaintiffs' amended Complaint(s) . . . should comply with Federal Rule of Civil Procedure 9(b)"

and specify the who, what, when required for fraud claims). "[W]hile 'failure to state a claim

usually warrants dismissal under Rule 12(b)(6),' it may also serve as a basis for summary

judgment." *Martin v. Lennox Int'l Inc.*, 342 F. App'x 15, 17 (5th Cir. 2009) (quoting *Whalen v.

Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992)).

2.   <u>Plaintiffs identified no false statements of material fact.</u>

Like their Complaint, Plaintiffs' depositions were vague and failed to identify the who,

what, when, or where of any fraudulent statements made to the Vinales. Neither Becky nor Shane

Vinales identified any specific representations regarding mold or other hazards. Lt. Col. Vinales

agreed that no agent of Defendants used the terms "safe" or "habitable" during the pre-lease

process. (Ex. 6 SV at 283:4-84:7.) When the Vinales mentioned a "smell," an AETC Housing

employee allegedly said either the house "smells like grandma's house" or it has "an old-house

smell." (Ex. 5 BV1 48:11-12; Ex. 6 SV at 283:21.) Both statements are subjective opinions—that

is, they merely relate what the speaker thought about the smell. Thus, they are not actionable

representations.[17] Becky Vinales says she asked AETC Housing about previous problems in her

home and was told there were "no problems." That statement made her think "everything was

fine." (Ex. 5 BV1 at 231:20–232:9.) The statement there are "no problems" however is a "loose

---

[17] *See, e.g*, *In re Westcap Enter.*, 230 F.3d 717, 726 (5th Cir. 2000) ("An actionable representation is one concerning a material fact; a pure expression of opinion will not support an action for fraud."); *In re Shuomali*, No. 14-60808, 2016 WL 4991490, at *7 (Bankr. E.D. Tex. Sept. 16, 2016) ("Expressions of opinion without any factual underpinning cannot qualify as misrepresentations. Such expressions qualify as puffery—mere statements of subjective opinion and not objective fact—rather than fraud.") (internal citations omitted).

general statement … without specific content or reference to facts, [which] buyers are expected to and do understand that they are not entitled to rely literally upon ….” *Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 682 (5th Cir. 1986) (quoting Restatement (Second) of Torts § 543, Cmt. e). Such an opinion cannot support a fraud claim. *Id* at 678-79. Further, per AETC Housing's policies and the lease agreement Plaintiffs signed, once any issues identified on the Move In/Move Out form were remedied, the residence was deemed in "safe, clean and habitable" condition. (Ex. 2 Lease, ¶ 10.)

Ms. Vinales also says an AETC Managers employee told her "Audra and Robert Harris used to cancel out or mark our work orders as completed" even if they were not. (Ex. 5 BV 302:5-6.) Even if the Vinales' work orders were erroneously marked complete—which the Vinales cannot show—that does not mean a material fact was "misrepresented" to the Vinales, as the marking was not communicated to them. This statement is not a "misrepresentation" that can support a fraud claim. Lastly, unfulfilled promises to perform under a contract are not actionable under the DTPA. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14-15 (Tex. 1996).

In sum, the Vinales' failure to identify a concrete misrepresentation of material fact means their fraud, negligent misrepresentation, and DTPA claims fail as a matter of law.

3.   <u>Even if the Vinales could identify some false statements of material fact, they cannot show that they relied on any of those statements, much less that such reliance was reasonable</u>.

These claims fail for another reason: Plaintiffs cannot show reasonable reliance. Reasonable reliance requires that (1) the plaintiff "actually rel[y] on the defendant's representation" and (2) "such reliance was justifiable." *E.g.*, *CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 350 (5th Cir. 2021).

Here, the Vinales cannot show that they reasonably relied on any allegedly fraudulent statements by AETC Managers or AETC Housing. The statement alleging AETC Housing marking work orders complete fails the first prong of the reasonable-reliance test because the Vinales could never have relied on this statement to their detriment: the Vinales were well aware of what work orders they had placed and when (or if) those orders had been completed.

The Vinales also cannot show reliance on any of their other suggested misrepresentations. Indeed, the Vinales noted an issue with what they claim was mold on the living-room carpet at the time they moved in. They asked that the carpet be replaced (and agree that this work was done). (Ex. 5 BV1 at 51:5-14.) In light of this fact, it is unreasonable for the Vinales to claim they believed there were no problems when, in fact, they noted several problems on their Move In/Move Out report. Also, Mrs. Vinales testified that, when they moved in, a previous tenant appeared and told them that "we had some problems with this house." In light of this information, it was unreasonable for the Vinales to rely on any alleged representation that "everything was fine." *See, e.g.*, *Lewis v. Bank of America NA*, 343 F.3d 540, 546 (5th Cir. 2003) ("[A] person may not justifiably rely on a representation if there are red flags indicating such reliance is unwarranted.") (quotes and citations omitted). Because their reliance was not reasonable, their fraud claims fail.

    4.    <u>Plaintiffs cannot show any representations induced them to sign their leases</u>.

To the extent Plaintiffs claim fraudulent inducement, they cannot point to any representations that caused them to enter into their Lease.[18] Plaintiffs testified they moved to

---

[18] Under Texas law, "[f]raudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Ibe v. Jones*, 836 F.3d 516, 525 (5th Cir. 2016) (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015)).

RAFB because (a) there was a six-month wait for housing at Fort Sam Houston, (b) they did not wish to live in civilian housing, and (c) they needed to be settled to enroll their children in school. (Ex. 5 BV1 44:9-25; 46:20-47:3.) The remainder of the representations identified by Plaintiffs occurred after they had already signed a lease or moved in and did not induce entry into the Lease.

Additionally, the Vinales cannot show that Defendants lacked an intent to perform under the lease **at the time they signed it**.[19] Plaintiffs must show that "the promise was made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Here, the undisputed evidence shows that AETC Managers repeatedly made repairs and were responsive to their repair requests. (Ex. 5 BV1 at 60:3-13 (caulked around toilet), 62:3-63:10 (electrical issues, required third-party electricians), 72:7-73:7 (upon removal of carpet at Plaintiffs' request, rotted wood discovered and repaired), 86:1-8 (re-caulked bathtub), 97:22-98:2 (sprayed for ants).) Plaintiffs may have been dissatisfied, but they have not shown these attempted repairs were unreasonable, perfunctory, or done in bad faith. Even assuming the repairs were done negligently (they were not), that fact would not show that AETC Housing never intended to perform at the time Plaintiffs signed their leases.

Plaintiffs' fraud, negligent misrepresentation, and DTPA claims fail as a matter of law.

> D.     *Plaintiffs have not shown that Defendants breached an applicable duty to repair, which is a necessary element of their negligence, Texas Property Code, and breach of contract claims.*

To succeed on their negligence, contract, and Texas Property Code claims, Plaintiffs must

---

[19] "[R]epresentations that [a] defendant [will] fulfill its dut[ies] under [a] contract … do[] not constitute [a] misrepresentation within the meaning of the DTPA." *Conquest Drilling Fluids, Inc. v. Tri-Flo Intern., Inc.*, 137 S.W.3d 299, 309 (Tex. Ct. App.-Beaumont 2004).

show breach of a legal duty. The lessor may have an obligation to repair certain conditions if required by a statute[20] or contract. Here, § 92.051 of the Texas Property Code (enacted post-cession) as well as ¶ 19 of the Lease required AETC Housing to remedy "damage" or "condition[s] materially affecting the health or safety of the ordinary tenant." Ex. 2 Lease, ¶ 19; Tex. Prop. Code Ann. § 92.052(a)(3)(A). Assuming notice,[21] AETC Housing was required to make "a diligent effort to repair or remedy the condition." Tex. Prop. Code Ann. § 92.052(a); Ex. 2 Lease, ¶ 19.

Here, Plaintiffs cannot show (through admissible evidence or expert testimony) that AETC Housing did anything to breach this duty. AETC Managers responded to each and every maintenance complaint. (*See generally* Ex. 5 BV1 at 57-126 (discussing Plaintiffs' work order history in full).) After a point by point review of her work order history, Becky Vinales agreed that "we didn't see any of the work orders that were canceled or marked out as complete that were not [done]." (*Id.* at 303:9-10.) While the Vinales believed that AETC Managers' repairs were not successful, there is no evidence or expert testimony showing AETC Managers failed to make a "diligent effort." Moreover, there is abundant proof that Plaintiffs refused AETC Managers' "diligent efforts" and so caused more maintenance problems. When AETC Managers attempted to schedule regular duct cleaning in December 2018, Mrs. Vinales also refused to leave the home, as

---

[20] In this, case the "limited landlord duty to repair" arises from section 92.051, *et seq.* of the Texas Property Code. *Philadelphia Indemnity Ins. Co. v. White*, 490 S.W.3d 468, 479 (Tex. 2016). This code section abrogated the common law implied warranty of habitability. *Id.* As discussed above, neither this statutory duty nor the common law implied warranty of habitability existed at the time of cession of RAFB and do not apply to this federal enclave.

[21] The lease required Plaintiffs to notify AETC Housing of a problem and allow a reasonable opportunity to repair. If AETC Housing did not have notice or an opportunity to remedy, then there was no breach. *Daitch v. Mid-Am. Apt. Cmtys., Inc.*, 250 S.W.3d 191, 196 (Tex. Ct. App.-Dallas 2008).

required by AETC Housing policy. (Ex. 5 BV1 at 101:12-102:14, 104:11-24.). Then, in March 2019, after mold was discovered, Ms. Vinales again refused to allow duct cleaning because she wanted the mold tested before remediation. (*Id*. at 127-30.) Because Plaintiffs have no evidence showing Defendants failed to make a diligent effort to repair, this claim fails.

Even more important, Plaintiffs cannot show that AETC Housing failed to repair a "condition materially affecting [their] health or safety." Plaintiffs have abandoned all claims for physical injuries and illness [220], have no evidence that mold ever materially affected their health,[22] and have no evidence that conditions in their house posed a material danger. Because Plaintiffs cannot show a material threat to their health and safety, they cannot show a breach of the Property Code, their lease agreement, or any other legal duty.

E.      *The economic loss rule bars Plaintiffs' negligence, negligent misrepresentation, DTPA and fraud claims.*

The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *See Lamar Homes, Inc. v. Mid-Cont. Cas. Co.,* 242 S.W.3d 1, 12 (Tex. 2007). Otherwise, every breach of contract claim would morph into a tort claim. While the rule does not automatically bar tort claims when there is a written contract, a court must analyze both the source of the duty—*i.e.*, contract or tort—as well as the nature of remedy sought to determine if the economic loss rule applies. *See Formosa Plastics*, 960 S.W.2d at 45. "[I]f the defendant's conduct … would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Id.*; *see S.W. Bell Tel.*

---

[22] (Ex. 5 BV1 at 260:4-11 (no medical professional linked any of Mrs. Vinales's medical conditions to her residence at RAFB); *id*. at 272:16-21 (no medical professional linked any of the Vinales children's medical conditions to their residence at RAFB).)

*Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991).

Here, Plaintiffs contend the duty was "to provide them with habitable living conditions" and "to properly maintain and repair the houses…." [9 at ¶ 172] That duty arises solely from the lease, and any injury suffered would be compensable under the lease. Because Texas courts "have uniformly applied the economic loss rule to deny recovery of purely economic losses in actions for negligent performance of services," Plaintiffs' negligence claim must be dismissed. *LAN/STV v. Martin K. Eby Const. Co., Inc.*, 435 S.W.3d 234, 244 (Tex. 2014).

When the economic loss rule applies to claims for negligence, it generally also applies to claims for negligent misrepresentation. *LAN/STV*, 435 S.W.3d at 246 ("The economic loss rule should not apply differently to these two tort theories in the same situation."); *see Formosa Plastics*, 960 S.W.2d at 45. Further, Texas has adopted the Restatement's independent injury requirement for negligent misrepresentation. *Sterling Chems., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797 (Tex. Ct. App.-Houston [1st Dist.] 2007) (holding that to avoid dismissal under the economic loss rule, plaintiff must suffer injury "independent from the economic losses recoverable under a breach of contract claim."). The negligent misrepresentation claims must also be dismissed.

Plaintiffs' DTPA claims are also indistinguishable from their contract claims.[23] Where the statements underlying a DTPA claim are "nothing more than representations that the defendants would fulfill their contractual duty … the breach of that duty sounds only in contract." *Crawford*

---

[23] The Amended Complaint sums up Plaintiffs' DTPA claims: "Defendants leased Plaintiffs houses that were uninhabitable…and subsequently refused to perform reasonable repairs to address the issues…." [9 at ¶ 159] Plaintiffs breach of contract claims allege Defendants breached the lease by "failing to ensure that the houses…were fit for human habitation and by failing to diligently repair…." [9 at ¶ 169]

*v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996). Further, in dismissing a DTPA claim based on unconscionable conduct, the Fifth Circuit explained that even where there are unconscionable statements, if "the breach of the contract causes the harm," the DTPA claim cannot be sustained. *Shakeri v. ADT Sec. Services, Inc.*, 816 F.3d 283, 295 (5th Cir. 2016). The DTPA claims fail.

Plaintiffs' fraud claims are also barred by the economic loss rule. If a party's claims "arise solely from [the parties'] contractual relationship," then the fraud claim is barred by the rule. *See, e.g.*, *Payne v. Wells Fargo Bank Nat. Ass'n*, 637 F. App'x 833, 837 (5th Cir. 2016); *Lamar Homes*, 242 S.W.3d at 12. Here, Plaintiffs allege AETC Housing failed to maintain their house *as required by the lease*.[24] Without the lease, Plaintiffs would never have been residents and their damages would be nonexistent. *See Jackson v. Ocwen Loan Servicing, LLC*, at *9 ("without the Note and Deed of Trust, Ms. Jackson's tort claims and the damages she seeks would not exist"). Further, the remedy Plaintiffs seek is economic damages from the alleged failure to repair and maintain the residence. Both the duty and the remedy underlying their claims arise solely from the lease.

This Court's recent decision in *Holubets v. Forest River, Inc.* is on point. No. A-21-CV-01004-LY, 2022 WL 903430, at *2 (W.D. Tex. Mar. 28, 2022), *report & rec. adopted* (May 4, 2022). In *Holubets*, the plaintiff was dissatisfied with his new R.V. and sued the manufacturer for negligence, negligent misrepresentation, breach of duty to repair, and violations of the DTPA–-just as Plaintiffs have alleged in this case. This Court explained that, while his claim for breach of contract could proceed, the tort and DTPA claims were barred by the economic loss rule: "Holubets' negligence and negligent misrepresentation claims, along with his breach of the duty

---

[24] Plaintiffs have no proof of fraudulent inducement. *See* Section I.C.4.

to repair and DTPA claims, all fall within the economic loss rule because 'the only loss or damage [arising from these claims] is to the subject matter of the contract' itself—here, the warranty and repair agreements related to the RV." *Holubets* at \*2 (quoting *DeLanney*, 809 S.W.2d at 494).[25] *Cf. Mays v. Pierce*, 203 S.W.3d 564, 574–75 (Tex. Ct. App.-Houston [14th Dist.] 2006) ("Here, Pierce did not show she was harmed by Pro–Tech's representations, but only showed harm caused by Pro–Tech's failure to perform."); *Payne*, 637 F.App'x at 837 ("Because [plaintiff's] fraud claim is premised on [Defendant's] performance under the [contract], [it] is barred by the economic loss rule.").

In this case, the crux of Plaintiffs' claims is that AETC Housing did not properly repair and maintain their homes, a duty required by the lease. *See* [9 at ¶ 15 (alleging Defendants have "under-maintained the houses")] This duty is similar (if not identical) to the duty to repair imposed by the warranty agreement in *Holubets*, and the remedy sought is economic damages resulting from a breach of that duty. As in *Holubets*, the claims are barred by the economic loss rule.

**II.**     **For the Reasons Explained Below, Each of Plaintiffs' Claims Fails as a Matter of Law.**

   *A.     Count I: Texas Deceptive Trade Practices Act (DTPA)*

Plaintiffs' DTPA claims fail for at least the following reasons:

   1.     Plaintiffs' DTPA claims are barred by the federal enclave doctrine. *See*

---

[25]The holding that *Holubets* plaintiffs' assertion of mental anguish due to his R.V.'s dysfunction could not rescue his tort claims from the economic loss is critical: "Moreover, [plaintiff's] allegations of mental anguish damages cannot save his claims from the economic loss rule, as 'litigants cannot avoid application of the economic loss rule by merely alleging mental anguish damages where the plaintiff's claims for mental anguish stem from the defendant's breach of contract.' " *Id.* at \*3 (quoting *Jackson*, 2018 WL 1001859, at \*8).

Section I.A. The DTPA was originally enacted in 1973, well after RAFB was ceded to the federal government. Tex. Bus. & Com. Code Ann § 17.50 (enacted by Acts 1973, 63rd Leg., p. 322, ch. 143, § 1, eff. May 21, 1973).

2.      <u>Plaintiffs' DTPA claims are barred by the statute of limitations</u>. *See* Section I.B. *See Pako Corp. v. Thomas*, 855 S.W.2d 215, 217, 219 (Tex. Ct. App.-Tyler 1993) (DTPA claim accrued when plaintiff knew of defects; no tolling based on defendant's attempts to repair).

3.      <u>Plaintiffs have no evidence of a material misrepresentation.</u> *See* Section I.C. *See Jones v. Zearfoss*, 456 S.W.3d 618, 623 (Tex. Ct. App.-San Antonio 2015) (material misrepresentation is element under DTPA).

4.      <u>The DTPA claims are barred by the economic loss rule</u>. *See* Section I.E. *See Salek v. SunTrust Mortgage, Inc.*, 2018 WL 3756887, at *6 (S.D. Tex. Aug. 8, 2018) (granting motion to dismiss DTPA claims pursuant to economic loss rule).

5.      <u>The "as is" clause in the lease negates causation for the DTPA claims</u>. An "as is" clause negates the causation element of the DTPA. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995); *Potter v. HP Texas 1 LLC*, 2020 WL 1672556 (Tex. Ct. App.-Dallas Apr. 6, 2020) (upholding "as is" clause in residential lease).

B.      *Count 2: Implied Warranties and Texas Property Code.*

The implied warranties and Texas Property Code claims fail for at least these reasons:

1.      <u>There is no implied warranty of habitability in residential leases under Texas law</u>. Texas first recognized an implied warranty of habitability (IWH) for tenants in *Kamarath v. Bennett*, 568 S.W.2d 658 (Tex. 1978). "Shortly after *Kamarath* was decided, superseding legislation was enacted that abrogated the implied warranty and created a limited

landlord duty to repair." *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 479 (Tex. 2016) (quotes & citation omitted). Because the IWH did not exist at common law before cession and was abrogated by statute after cession, this claim must be dismissed.

　　　　2.　　**The federal enclave doctrine bars the claims**. *See* section I.A. Apart from the fact that the IWH postdates cession, Texas did not recognize the implied warranty of good and workmanlike repairs until 1987, over 30 years after RAFB became a federal enclave. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 353 (Tex. 1987); *see Balderrama*, 963 F. Supp. 2d at 656. And Property Code § 92.051 postdates cession. *See* Section I.A.

　　　　3.　　**The lease supersedes any implied warranty of repairs**. Plaintiffs cannot show that Texas law would imply a warranty of good and workmanlike repairs because "other adequate remedies are available" to them. *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co*., 662 F.Supp.2d 623, 656-57 (S.D. Tex. 2009). Specifically, Plaintiffs' lease imposes a duty to repair, making no implied warranty necessary.

　　　　4.　　**Plaintiffs failed to plead or present evidence of statutory requirements of § 92.056**. Even if it applies, Plaintiffs have not pled or proven they met the requirements of § 92.056(b) for each condition that they allege required repair, which is a necessary element to succeed on this claim. *See Wynn v. Silver Oaks Apts., LT*D., 2014 WL 60657, at *2 (Tex. Ct. App.-San Antonio 2014) (affirming summary judgment because tenant failed to "establish the requirements set forth in section 92.056(b)."). Although Plaintiffs assert generally that they gave notice, "unsubstantiated assertions are not competent summary judgment evidence." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

5. <u>Plaintiffs failed to present evidence of any condition materially affecting the health or safety of an ordinary tenant</u>. Plaintiffs have not shown that any condition for which no repairs were allegedly attempted "materially affects the physical health or safety of an ordinary tenant." Tex. Prop. Code § 92.056(b)(2). Indeed, Plaintiffs have abandoned any personal injury claims that their health was harmed by living in the residence. [220]. Any claims relating to mold would require expert testimony because "it is not within the general experience and common sense of a lay person that exposure to mold causes the injuries" alleged. *Starr v. AJ Struss & Co.,* 2015 WL 4139028, at *7 (Tex. Ct. App.-Houston [1st Dist.] July 9, 2015). Because Plaintiffs have failed to cite any evidence "that these conditions materially affect the physical health and safety of an ordinary tenant," summary judgment is proper on any remaining claims in Count 2. *REM Servs., Inc. v. Zaheer,* 2013 WL 1384912, at *8-10 (Tex. Ct. App.-Houston [14th Dist.] Apr. 4, 2013).

C. *Count 3: Breach of Contract (the Lease).*

Plaintiffs' breach of contract claim fails for at least the following reasons:

1. <u>Assuming the lease imposes a duty to provide a "habitable" house, Plaintiffs cannot show breach of that duty because they agreed their house was "clean, safe, and habitable" when they signed their lease</u>. Plaintiffs walked through their house before signing the lease and also had five days after moving in to report any issues with the house. After they signed their lease, Plaintiffs agreed their residence was in "a safe, clean, and habitable condition" except as otherwise noted on the Move In/Move Out Form. (Ex. 2 Lease, ¶ 10.) Thus, Plaintiffs cannot show Defendants breached a duty to provide a "habitable" house.

2. <u>Plaintiffs cannot show Defendants breached the lease provision requiring diligent repair</u>. The lease only requires AETC Housing to diligently repair conditions about which

23

it had notice. (Ex. 2 Lease, ¶ 19.) Without notice, there can be no breach. *Hernandez v. Gallardo*, 594 S.W.3d 341, 346 (Tex. Ct. App.-El Paso 2014) (upholding summary judgment on breach of contract claims where "[t]enant failed to present any competent summary judgment evidence that they specified the conditions at issue in a notice to [the landlord.]"). Plaintiffs cannot show AETC Housing failed to remedy a condition of which it had notice. In fact, AETC Managers responded to each and every one of their maintenance requests. (Ex. 5 BV1 at 303:9-10.)

        3.   <u>Plaintiffs are unable to prove any damages arising from any alleged breach of the lease</u>. Under Texas law, a claimant must show that the alleged breach of contract caused them injury. *Smith Intern., Inc. v. Eagle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Plaintiffs have disclaimed any physical injuries [220], and they cannot establish property damage without expert testimony showing damage to personal contents, and cleaning or repair of those contents, or any proof that contents were damaged by mold. *See Plunkett v. Conn. Gen. Life Ins. Co.*, 285 S.W.3d 106, 120-21 (Tex. Ct. App.-Dallas 2009, *writ denied*). Plaintiffs' claims for personal injury for breach of the lease agreement's repair clause [9 at ¶ 170] cannot survive because the law of breach of contract at the time of cession did not provide for recovery for personal injuries. *See Ross v. Haner*, 258 S.W. 1036 (Tex. Ct. Com. App. 1924) (repair clauses generally "for comfort and convenience only"); *Harvey v. Seale*, 362 S.W.2d 310, 312 (Tex. 1962) (citing *Ross* for past state of law).

        4.   <u>Breach of the lease agreement can only be brought by the service member tenant and against AETC Housing</u>.  According to the lease, the only tenant is the service member, and thus the claims of Mrs. Vinales and the minor children must be dismissed.  Likewise, AETC Managers is not a signatory to the lease, and cannot be liable under it. Even were AETC Managers

somehow held to have contracted with Plaintiffs on behalf of AETC Housing, Texas law is generally that an agent who contracts for a disclosed principal is not liable on the contract. *Sherrard v. SignAd, Ltd.*, 637 S.W.3d 192, 199 (Tex. Ct. App.-Houston (14th Dist.) 2021). Because the lease clearly disclosed AETC Housing, AETC Managers cannot be liable.

      D.      *Counts 4 and 11: Negligence, negligent misrepresentation, and gross negligence.*

Plaintiffs' negligence, negligent misrepresentation, and gross negligence claims fail for at least the following reasons:

      1.      <u>Plaintiffs' negligent misrepresentation claim is barred by the federal enclave doctrine.</u> *See* Section I.A. Texas did not recognize the tort of negligent misrepresentation until 1991, well after RAFB was ceded to the federal government. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

      2.      <u>Plaintiffs' negligence, negligent misrepresentation, and gross negligence claims are barred by the two-year statute of limitations.</u> *See* Section I.B.

      3.      <u>Plaintiffs' negligence, negligent misrepresentation, and gross negligence claims are barred by the economic loss rule.</u> *See* Section I.E.

      4.      <u>Plaintiffs are unable to prove that any alleged negligence[26] is the proximate cause of their damages (if any).</u> Plaintiffs disclaim any physical injuries [220], and cannot show

---

[26] In addition to the reasons stated herein, Plaintiffs cannot show that Defendants engaged in any contemporaneous negligent conduct that caused them injury. Texas distinguishes between negligent activity and negligent failure to remedy an unreasonable risk of harm. *See Timberwall Apt., Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998). To recover on a negligent activity theory, the plaintiff must "have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Id.* (quoting *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). Because Plaintiffs here have alleged premises liability (i.e., that there was a dangerous condition), Plaintiffs have "not [shown] that [Defendants] engaged in a

property damage, as discussed below; they have no damage and their negligence claims must fail. *Plunkett*, 285 S.W.3d at 120-21.

        5.     <u>Plaintiffs' failed to plead their negligent misrepresentation claim with particularity</u>. *See* Section I.C.1.

        6.     <u>Plaintiffs cannot show a material misrepresentation</u>. *See* Section I.C.2.

        7.     <u>Plaintiffs cannot show causation, nor justifiable reliance upon any alleged representation</u>. *See* Section I.C.3. Further, the "as is" clause incorporated in the lease negates the causation element of negligence and the reliance element of misrepresentation. *Van Duren v. Chife*, 569 S.W.3d 176, 185-86 (Tex. Ct. App.-Houston (1st Dist.) 2018).

        8.     <u>Plaintiffs cannot show inducement</u>. *See* Section I.C.4.

    E.    *Count 5: Statutory fraud.*

Plaintiffs' statutory fraud claim fails for at least the following reasons:

        1.     <u>Plaintiffs' statutory fraud in a real estate transaction claim is barred by the federal enclave doctrine</u>. *See* Section I.A. The code provision was enacted in 1967. Tex. Bus. & Com. Code Ann. § 27.01 (enacted by Acts 1967, 60th Leg., vol. 2, p. 2343, ch. 785, § 1).

        2.     <u>Plaintiffs failed to plead fraud with particularity</u>. *See* Section I.C.1.

        3.     <u>Plaintiffs failed to identify a material misrepresentation</u>. *See* Section I.C.2.

        4.     <u>Plaintiffs did not show actual or justifiable reliance on any alleged representation</u>. *See* Section I.C.3. *See U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 406 (5th Cir. 2000) (holding that fraud claims under § 27.01(a) "include[e] the elements of reliance and

---

contemporaneous, negligent activity at the time of [their injuries]." *Chapman v. Parsons*, 2019 WL 2743793, at *2 (N.D. Tex. Apr. 2, 2019).

materiality."). Further, the "as is" clause incorporated in the lease negates any reliance element. *Van Duren*, 569 S.W.3d at 185.

   5. <u>Plaintiffs did not show they were induced by fraud to enter into the lease</u>. *See* Section C.4.

  *F.* *Count 6: Common law fraud.*

Plaintiffs' fraud claims fail for at least the following reasons:

   1. <u>Plaintiffs failed to plead fraud with particularity</u>. *See* Section I.C.1.

   2. <u>Plaintiffs failed to identify a material misrepresentation</u>. *See* Section I.C.2. Even if they had, the "as is" clause in their lease would negate any reasonable reliance on those representations. *See Potter*, 2020 WL 1672556, at \*10.

   3. <u>Plaintiffs did not show actual or justifiable reliance on any alleged representation</u>. *See* Section I.C.3.

   4. <u>Plaintiffs did not show they were induced by fraud to enter into the lease</u>. *See* Section I.C.4.

  *G.* *Count 7: Unjust enrichment and money had and received.*

The unjust enrichment claims are barred for at least the following reasons:

   1. <u>The two year statute of limitations bars these claims</u>. *See* Section I.B.

   2. <u>Both of these claims are based on equitable principles that only apply in the absence of a written contract</u>. *Parkway Dental Assocs., P.A. v. Ho & Haung Prop., L.P.*, 391 S.W.3d 596, 610 (Tex. Ct. App.-Houston [14th Dist.] 2012) (upholding Rule 56 dismissal of money had and received, restitution, and unjust-enrichment claims where lease covered subject matter of parties' dispute). The existence of the Lease bars these equitable claims.

3.      <u>Even if these equitable claims could apply here, Plaintiffs have no evidence of unequitable conduct</u>. *See* Sections I.B-I.E.

H.      *Counts 8, 9, and 10: Nuisance and Texas Health and Safety Code.*

Plaintiffs' common law and statutory nuisance claims fail for at least the following reasons:

1.      <u>Plaintiffs' negligent and intentional nuisance claims are barred by the economic loss rule</u>. Defendants have been unable to locate a reported case where a nuisance action has been brought, let alone successfully, by a residential tenant against their landlord for conditions resulting from a failure to repair. That is because these claims are properly brought as a breach of contract. Nuisance is a substantial, unreasonable interference with a plaintiff's right of use and enjoyment of property. *Crosstex North Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 594-95 (Tex. 2016). For a nuisance to be actionable, there must be a "violation of legal right and a breach of a legal duty." *Id*. at 601 (quotes & citation omitted). Because there was no legal duty owed by any Defendant or a legal right held by any Plaintiff apart from the Lease, there could not be a "breach of legal duty" absent the existence of the lease. *DeLanney*, 809 S.W.2d at 494 (holding that for tort damages to be recoverable, defendant's act or omission must "give rise to liability independent of the fact that a contract exists between the parties."). Because Plaintiffs' nuisance claims are repackaged claims for breach of the lease, they are barred by the economic loss rule.

2.      <u>Plaintiffs' negligent nuisance claims duplicate their negligence claims</u>. Nuisance is not a cause of action, but rather a legal injury—a substantial, unreasonable interference with the use and enjoyment of property. *Crosstex*, 505 S.W.3d at 594-95. The elements for establishing a negligent nuisance claim are the same as negligence, with the added element that "the defendant's negligent conduct created a nuisance, which in turn resulted in the plaintiff's

damages." *Id*. at 607. Where negligence is pled, this claim "would be duplicative when the only alleged legal injury is a nuisance." *Id*. at 607 n. 18. Here, the injury caused by the alleged nuisance is the same injury caused by the negligence claim—that a failure to properly repair the residence per the lease caused injury. Thus, these claims are merely duplicative and fail as a matter of law.

3.      Plaintiffs have not pled or presented evidence demonstrating intent to cause alleged conditions. Plaintiffs have no evidence that any Defendant "actually desired or intended to create the interference or…[knew] or believe[d] that the interference would result." *Crosstex*, 505 S.W.3d at 605. Indeed, the undisputed summary judgment evidence shows that AETC Managers was responsive to repair requests. (Ex. 11 Vinales Work Order History; Ex. 5 BV1 at 303:9-10.) Because Plaintiffs have no evidence showing any Defendant's intention to substantially interfere in their use and enjoyment and because the evidence shows repeated attempts to remedy issues of which Defendants were made aware, the intentional nuisance claims must be dismissed.

4.      Plaintiffs' claims under the Texas Health & Safety Code fail as a matter of law. Assuming this statute applies (and it does not), Texas Health & Safety Code § 341.011 does not afford citizens a private right of action. *See Brown v. Daniels*, 2021 WL 1997060, at *15 (Tex. Ct. App.-Dallas May 19, 2021) (dismissing statutory nuisance claims under § 341.011; section not "a provision authorizing a private enforcement action of the kind brought here to abate a public health nuisance"). Similarly, Plaintiffs lack standing to sue under § 343.011 because they no longer live at RAFB. Tex. Health & Safety Code § 343.013(b) (standing to sue to "property owner, resident of a neighborhood, or organization of property owners or residents of a neighborhood").

### III.  Plaintiffs are not entitled to damages for personal injury, property damage, mental anguish, or attorney fees.

A.      *Plaintiffs cannot recover damages for personal injury.*

Plaintiffs have stipulated to dismissal of their claims for "physical injuries and/or physical illness" and any damages from those conditions. [220]. The Court should enter an order accepting the stipulation and dismissing those damages claims. *See Henley v. Love Ins. Grp., LLC*, 2016 WL 9526463, at *3 (N.D. Tex. Oct. 21, 2016) (entering order per stipulation).

Even without the stipulation, Plaintiffs' personal  injury claims fail because they required expert testimony,[27] and Plaintiffs failed to designate any competent expert. The only competent, admissible expert testimony on Becky Vinales's personal injury claim came from her Rule 35 examiner, who concluded that she "does not currently have nor has she ever had any medical symptoms which were caused or exacerbated by any conditions in the Vinales's home."[28] (Ex. 12 Becky Vinales Rule 35 Medical Report at 4.) Shane Vinales is not making any personal injury claims for himself. (Ex. 6 SV at 195:9-15.)

---

[27] The general rule is that "expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of [laypersons]." *BMLA, Inc. v. Jordan*, 2021 WL 5364771, at *7 (Tex. Ct. App.–Houston [1st Dist.] Nov. 18, 2021). "Expert testimony is **particularly necessary in toxic-tort and chemical-exposure cases**, in which medically complex diseases and causal ambiguities compound the need for expert testimony." *Starr*, 2015 WL 4139028, at *6 (emphasis added).

[28] Plaintiffs' designation of experts includes no medical doctor, or anyone else, opining that Defendants caused them medical injuries. There is no genuine issue to be tried. "When expert testimony is required to establish causation, and the plaintiff offers no expert testimony on causation or fails to designate an expert to opine on causation, summary judgment is appropriate." *Vessels v. Prospect Airport Servs., Inc.*, 2021 WL 4712696, at *3 (W.D. Tex. Oct. 6, 2021).

B.     *Plaintiffs cannot recover damages for property damage because they lack expert testimony to establish those claims.*

Plaintiffs' property damage claims fail for the same reason. In Texas, jurors cannot resolve questions outside the ordinary knowledge of laypersons without expert testimony. *See BMLA, Inc. v. Jordan*, 2021 WL 5364771, at *7 (Tex. Ct. App.–Houston [1st Dist.] Nov. 18, 2021). This general rule should apply to Plaintiffs' property damage claims, especially when their own expert testified that expert testimony was required to show property damage. The Vinales retained mold consultant Kristi Beck-Miller to conduct mold assessments in their homes. Although her original reports made vast, broad, and ultimately false conclusions regarding Plaintiffs' personal property and contents, Beck-Miller abandoned those opinions. (Ex. 8 KBM2 at 119:19-120:14). She conceded that she had not followed applicable national standards for the determination of whether and to what extent personal property had been damaged and could be cleaned. As a result, Miller withdrew all of her opinions regarding personal contents, and actually withdrew her entire report for the Vinales family. (*Id*. at 122:10-123:1.) But most importantly, Beck-Miller testified that the assessment of personal property for mold damage was something which required an expert opinion (Ex. 8 KBM2 at 30:23-33:1) that she was unable or unwilling to provide. Thus, Plaintiffs' have no expert testimony supporting their claims for damage to personal property. Therefore, all claims for damage to personal property should be dismissed.

C.     *Plaintiffs cannot recover damages for mental anguish.*

1.     <u>The federal enclave doctrine bars Plaintiffs from damages for mental anguish.</u>

*See* section I.A. Pre-cession Texas law provided for damages for mental anguish only when there was personal injury. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 443 (Tex. 1995) ("We

15918792.3

initially allowed mental anguish damages only in cases in which there was a physical injury.")
(citing *Hill v. Kimball*, 13 S.W. 59, 59 (1890)). Indeed, it was not until the 1980s that Texas law
allowed recovery for mental anguish that did not manifest itself by causing physical injury.
*Parkway*, 901 S.W.2d at 443. Because pre-cession Texas law only permitted mental anguish where
there was personal injury and because there are no personal injury claims here, Plaintiffs' mental
anguish claims must be dismissed.

  2. Current Texas Law Likewise Bars Plaintiffs from Recovering for Mental
    Anguish.

  Even if current Texas law applied, the result would be the same. "Texas does not recognize
a general legal duty to avoid negligently inflicting mental anguish" and has limited it to four types
of cases: those (1) involving intent or malice by the defendant; (2) involving "serious bodily
injury" to the plaintiff; (3) where a "special relationship" exists between the parties; and (4)
"involving injuries of such a shocking and disturbing nature that mental anguish is a highly
foreseeable result" (such as defamation, mishandling of corpses, etc.). *City of Tyler v. Likes*, 962
S.W.2d 489, 496 (Tex. 1997); *see also Holcombe v. United States*, 2021 WL 398842, at *4 (W.D.
Tex. Feb. 3, 2021); *Petty v. Great W. Cas. Co.*, 783 F. App'x 414, 415–16 (5th Cir. 2019).
Plaintiffs' mental anguish claims do not fall into any of these 4 categories.

  2.1. No "Serious Bodily Injury."

  Plaintiffs have stipulated to the dismissal of their claims for personal injuries. [220].
"[M]inor physical symptoms ... such as difficulty sleeping, are not serious bodily injuries that can
form the basis for recovering mental anguish damages." *Likes*, 962 S.W.2d at 496. Neither are
"PTSD symptoms alone," such as sleep deprivation, anxiety, stomach issues, depression, crying,

mood swings, "difficulty concentrating," and the like. *Holcombe*, 2021 WL 398842, at *5 (reviewing cases). Here, the Rule 35 examination on Becky Vinales's mental anguish claims revealed no record of behavioral health difficulties and testing showed no evidence of current "psychological or emotional symptoms, disorders, or conditions." (Ex. 13 Becky Vinales Rule 35 Mental Report at 9.) Shane Vinales is not making any claims of mental anguish, (Ex. 6 SV at 195:9-15), and Becky and Shane Vinales could not identify compensable mental anguish for their children. (Ex. 6 SV at 221:15-222:2, 239:4-240:9; Ex. 5 BV1 at 278:6-281:7.)

Nor can Plaintiffs recover for mental anguish due to their alleged fear that they might get sick from mold or other conditions.[29] The *Likes* plaintiff, for example, could not recover for "feelings of insecurity both for her home, personal property and personal safety." 962 S.W.2d at 500; *see also Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 96 (Tex. Ct. App.–Houston [14th Dist.] 1998) (no recovery for fear caused by false-positive HIV test).

### 2.2.   No Malice.

Malice in this context means some "evidence of some ill-will, animus, or design to harm the plaintiff personally." *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.,* 979 S.W.2d 730, 757 (Tex. Ct. App.-Houston [14th Dist.] 1998) (limiting mental anguish damages for gross negligence). Although the Amended Complaint contains spurious allegations of malice, there has been no proof

---

[29] In Texas, mental-anguish damages cannot be recovered for fear of future disease due to alleged exposure to toxins as "most Americans are daily subjected to toxic substances in the air they breathe and the food they eat." *Temple-Inland Forest Prod. Corp. v. Carter*, 993 S.W.2d 88, 93 (Tex. 1999). Further, mere fear or anxiety about a peril that caused no injury cannot support an award for mental anguish as "[i]t has been established for over a century that '[a] person who is placed in peril by the negligence of another, but who escapes without injury, may not recover damages simply because he has been placed in a perilous position. Nor is mere fright the subject of damages.'" *Id.* at 91 (quoting *Likes*, 962 S.W.2d at 500).

that any Defendant ever intended to harm Plaintiffs or was recklessly indifferent to their health, which Plaintiffs admit was unaffected.

### 2.3.    No "Special Relationship."

No evidence exists of any "special relationship" between Plaintiffs, who were tenants in base housing, and Defendants. "[M]ost relationships, whether legal or personal, create no duty to avoid causing mental anguish." *Id*. The limited types of "special relationships" include the physician–patient relationship and "a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial or delivering news of a family emergency." *Likes*, 962 S.W.2d at 496 (citations omitted).

### 2.4.    No "Shocking and Disturbing" Misconduct.

Finally, Plaintiffs' case does not fall into the narrow category where the alleged misconduct is on its face particularly "shocking and disturbing." In a similar case where the plaintiffs' home flooded and ruined some personal property, the Texas Supreme Court stated:

> historically, some types of disturbing or shocking injuries have been found sufficient to support an inference that the injury was accompanied by mental anguish. As a general matter, though, qualifying events have demonstrated a threat to one's physical safety or reputation or involved the death of, or serious injury to, a family member. While the flooding of the Woodruffs' home **certainly disrupted their lives temporarily**, under our substantive law **this type of disruption will not support an inference that compensable mental anguish occurre**d.

*Parkway Co.,* 901 S.W.2d at 445 (emphasis added). Harms like flooding that fall within "the vicissitudes of daily life" are not compensable injuries. *Id*. at 445 n.10. Plaintiffs have alleged, and certainly can prove, nothing more than such ordinary vicissitudes of leasing a house in south Texas. While Plaintiffs contend their houses were "uninhabitable" and that Defendants' conduct was "shocking or disturbing," they have no evidence showing their houses posed a material danger to

34

their health and safety or even that Defendants failed repair their home in a diligent manner. Accordingly, they cannot prove "shocking or disturbing" conduct even if they subjectively believe that is what they experienced. *See* Section I.B-E & Section II. The mental anguish claims must be dismissed.

3.      <u>The economic loss rule also bars mental anguish claims in this case.</u>

*See* Section I.E. This rule bars Plaintiffs' attempt to recover damages for mental anguish for what is in fact a mere allegation of breach of contract.

> *D.*      *The federal enclave doctrine bars the recovery of attorney fees.*

In Texas, "attorney's fees are not awarded unless a statute or contract authorizes them." *JCB, Inc. v. Horsborgh & Scott Co.*, 597 S.W.3d 481, 491 (Tex. 2019). The Lease does not provide for attorney fees. Plaintiffs claim entitlement to attorney fees under four statutes. [9 at ¶ 208] As discussed above, these statutes were either not in existence or did not provide for attorney fees at the time of cession and such fees are barred by the federal enclave doctrine. *See* Section I.A.

<strong><u>CONCLUSION</u></strong>

For all these reasons, the court should grant summary judgment on all of Plaintiffs' claims.

Respectfully submitted, this the 6th day of July, 2022.

By: ***/s/ Walter H. Boone***

Walter H. Boone, MS Bar No. 8651
*(Admitted to W. D. of TX on 7/28/2020)*
Jennifer J. Skipper, State Bar No. 24076171
BALCH &BINGHAM LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
E-mail:      wboone@balch.com

35

jskipper@balch.com

By: */s/ Julia W. Mann*
Julia W. Mann, State Bar No. 00791171
Erica Benites Giese, State Bar No. 24036212
JACKSON WALKER LLP
112 East Pecan Street, Suite 2400
San Antonio, Texas 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail:        jmann@jw.com

*Attorneys for AETC II Privatized Housing, LLC, AETC II Property Mgrs., LLC, and Hunt ELP, LTD.*

36

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of July, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Randall A. Pulman, Esq.
Ryan C. Reed, Esq.
Sarah Jackson Donahue, Esq.
PULMAN, CAPPUCIO, & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, TX 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
E-Mail: rpulman@pulmanlaw.com
        rreed@pulmanlaw.com
        sdonahue@pulmanlaw.com

James R. Moriarty, Esq.
LAW OFFICES OF JAMES R. MORIARTY
4119 Montrose, Suite 250
Houston, TX 77006
(713) 528-0700 Telephone
(713) 528-1390 Facsimile
E-Mail: jim@moriarty.com

Mikal C. Watts, Esq.
Francisco Guerra, IV, Esq.
Jennifer Arlene Neal, Esq.
Robert E. Brzezinski, Esq.
WATTS GUERRA, LLP
Four Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 477-0500
E-Mail: mcwatts@wattsguerra.com
        fguerra@wattsguerra.com
        jneal@wattsguerra.com
        rbrzezinski@wattsguerra.com

*/s/ Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
*(Admitted to W. D. of TX on 7/28/2020)*

15918792.3