IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHAEL J. DANIELS, et al. § | |
| § | |
| PLAINTIFFS, § | |
| § | |
| V. § | NO. SA-19-CV-01280-RBF |
| § | |
| AETC II PRIVATIZED HOUSING, § | |
| LLC, et al. § | |
| § | |
| DEFENDANTS § | |

**REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT BY HUNT ELP, LTD.**

In response [293] to the summary judgment motion [254] filed by Defendant Hunt ELP, Ltd. ("Hunt ELP"), Plaintiffs stack all their chips on one fact: Hunt ELP's assumed name certificate with the Texas Secretary of State for the trade name "Hunt Military Communities." That one fact, however, does not manufacture direct or indirect liability for Hunt ELP. Nor does it even create a genuine issue of material fact. The law is not a roulette wheel where Plaintiffs might get lucky. No matter how many ways or times Plaintiffs recite this one fact, Texas law leaves no doubt that Plaintiffs show no genuine issue of material fact as to any of their claims against Hunt ELP.

**I.   Direct Liability and Alter Ego[1]**

Plaintiffs rest their direct liability argument on Hunt ELP's registering the assumed name "Hunt Military Communities." [254, at 4–6]. Their argument goes like this: Hunt ELP registered "Hunt Military Communities," and therefore, everything done under the name "Hunt Military Communities" was done by Hunt ELP. The first part is true—Hunt ELP did register that assumed

---

[1] At the outset, we note that Plaintiffs have correctly abandoned their claim for civil aiding and abetting, which the motion showed is not a valid cause of action under Texas law. [254, at 15–17].

name. However, Plaintiffs come with zero facts to support the second part. They offer no evidence to contradict the Kelly declaration [254-1]. There is no proof that Chris Radliff, Melody Gallego, or anyone else works for, or on behalf of, Hunt ELP. There is no proof that Hunt ELP undertook any allegedly wrongful act or omission. Plaintiffs have shown no misrepresentation, no breach of contractual or tort duty, and no actionable conduct by Hunt ELP, its employees, or others acting on its behalf. There is no direct involvement by Hunt ELP at all.

Plaintiffs have only the registry of the assumed name, but that alone cannot prove direct liability. In *Lucky Dawg Movers, Inc. v. Wee Haul, Inc.,* 2011 WL 5009792, at *7 (Tex. Ct. App.–Dallas Oct. 21, 2011), the president of Wee Haul, Inc., Mr. Killick, personally filed an assumed name certificate for "Wee Haul Inc." Later, the plaintiff in a DTPA action sued Mr. Killick individually, arguing he was liable for Wee Haul because he filed the assumed name certificate. The court held that the contention failed, in part because the plaintiff "has pointed to no evidence in the record, and we can find none, that shows that Killick was, in fact, 'doing business' as Wee Haul Inc.," regardless of the certificate. *Id*. Likewise, Plaintiffs here offer no proof that Hunt ELP (as opposed to its subsidiaries) was or is "in fact" doing business as Hunt Military Communities.

Rather, Texas law prohibits holding an entity directly liable merely on the basis of an assumed name. Consider the slip-and-fall case arising at the Kern Plaza shopping center, where the defendant C. H. Leavell & Co. "had on file at all times material an Assumed Name Certificate certifying that it was transacting business under the name of Kern Plaza." *Cohen v. C. H. Leavell & Co.,* 520 S.W.2d 793, 794–95 (Tex. Ct. Civ. App.–El Paso 1975). As it turned out, C.H. Leavell & Co. neither owned nor controlled the premises at the time the slip-and-fall occurred. The court held that summary judgment for the corporation was therefore proper:

> we have **found no authority and have been cited to none for holding a party liable in tort because he had a Certificate of Assumed Name on file** which had

not been withdrawn. This is a slip and fall case in which the liability of C. H. Leavell & Co., Inc. is predicated on its being responsible for the condition of the premises. Non-ownership and control are not disputed, and **there is nothing about the assumed name act which would make them responsible for the condition of premises which they did not own or exercise any control over**.

*Id.* (emphasis added). Just as in *Cohen*, Hunt ELP does not own any other Defendant or any property managed by any other Defendant, and "there is nothing about the assumed name act which would make [it] responsible for the condition of the premises which [it] did not own or exercise control over." There is no evidence that Hunt ELP exercised any direct control over Randolph or Laughlin housing, or over any of the events which occurred there. "Confusion regarding an entity's assumed name provides no basis for imposing tort liability on the entity for acts it did not commit." *Janik v. City of Dallas*, 1997 WL 452732, at *2 (N.D. Tex. July 31, 1997) (citing *Cohen*).

To oppose summary judgment on a theory of direct liability, Plaintiffs are **required** to point out specific issues of fact about Hunt ELP's alleged acts or omissions for every element of every cause of action pled in the First Amended Complaint. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). As Plaintiffs themselves concede, they must prove that "the parent is directly a participant in the wrong complained of." [254, at 4].[2] Plaintiffs' response does not even attempt such a thing. Merely pointing out that some people called themselves "Hunt Military Communities" and that those words and a logo were on documents and websites does not do anything to show **that Hunt ELP itself** did anything at all. Plaintiffs do not cite **any** case where a parent has been held liable merely because a subsidiary used its assumed name. On the contrary: corporations' "sharing of names" does not make them liable for one another's conduct. *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 456 (Tex. 2008). *SSP Partners*

---

[2] In the case they are quoting, the court stated that such direct participation meant that the parent itself was operating the facility. *Union Pacific R.R. Co. v. Oglebay Norton Minerals, Inc.*, No. EP–17–CV–47–PRM, 2018 WL 1722175, at *6 (W.D. Tex. 2018). Plaintiffs offer no such proof that Hunt ELP was operating any base housing.

16607789.3                                   3

addressed derivative, not direct, liability, but the point holds even more forcefully for direct liability. Plaintiffs do not cite, let alone distinguish, this holding, which destroys their claims.[3]

Instead, Plaintiffs cite one unpublished Fifth Circuit decision as if it supported their case. [293, at 5 n.1]. However, in that case, the issue was dismissal under Rule 12(b)(7), not summary judgment. *August v. Boyd Gaming Corp.,* 135 F. App'x 731, 732 (5th Cir. 2005). The website at issue in *Boyd Gaming* did not merely feature the parent company's name, but actually included the statement that the casino in question was "owned and operated by parent company, Boyd Gaming Corporation." *Id.* at 733. Here, Plaintiffs offer nothing showing that the Hunt Military Communities website is in any way connected to Hunt ELP. Moreover, the parent company in *Boyd Gaming* had a written management agreement with the subsidiary wherein the parent "assumed the duty and responsibility to 'supervise and direct the management and operation of the [casino]' and to 'hire, supervise and terminate all personnel of [the casino].' " *Id.* Plaintiffs here have no such proof. In *Boyd Gaming*, those allegations sufficed for the pleading standards under Rules 12 and 19: "In analyzing a motion to dismiss under Rule 12(b)(7), the court must accept all factual allegations in the complaint as true ...." *Tinoco v. San Diego Gas & Elec. Co.,* 327 F.R.D. 651, 657 (S.D. Cal. 2018). But the issue now is summary judgment. Plaintiffs are required now to show up with material evidence, not vague allegations, and they have not done so.

Paragraph 8 of the Response and its attached exhibits and declarations contain assorted

---

[3] Some Texas cases still treat "common business name" as a factor for alter ego, even citing to *SSP Partners*, which mentions that factor only in quoting a prior case's test for a different theory, the "single business enterprise theory" that *SSP Partners* rejected. *See, e.g., Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 509 (Tex. Ct. App.–Houston (1st Dist.) 2012). In fact, the plaintiff was not arguing for alter ego. *SSP Partners*, 275 S.W.3d at 451. According to Westlaw, the Texas high court has not used the term "common business name" since *SSP Partners*, and it does not appear to have considered shared names in its alter ego cases since then—as one would expect, given the holding of *SSP Partners* that such name-sharing is immaterial to indirect liability.

references to "Hunt" and "Hunt Military Communities" that are said to somehow create issues of genuine material fact on direct liability of Hunt ELP for negligence, breach of contract, fraud, and everything else pled by Plaintiffs. The details are either irrelevant (staff wore "Hunt" on their apparel, etc.) or unsupported ("Radliff's own words demonstrate that employees of parent companies are involved in and exercise control …"). [254, at 6]. The former assertion brings us no closer to Plaintiffs' proof of any wrongful acts by Hunt ELP, while the latter misstates the declaration and ignores the fact that Radliff is not, and never said he was, an employee of Hunt ELP. (Of course, Plaintiffs made no effort to even depose Radliff to find out whom he works for or whether he has any relationship to Hunt ELP.) Summary judgment must be opposed by specific facts linked to specific legal elements, not by a "miasma of allegations [and] innuendo." *Bates v. Univ. of Tex. Med. Branch*, 425 F. Supp. 2d 826, 841 (E.D. Tex. 2003).

Although Plaintiffs say they are arguing direct liability, they also contend "Radliff's own words demonstrate that employees of parent companies are involved in and exercise control over matters involving AETC Privatized Housing, LLC and AETC II Property Managers, LLC …." [254, at 6]. That contention (which misstates Radliff's words) is clearly an alter ego claim, i.e., that Hunt ELP was the alter ego of the other defendants. But his declaration nowhere says that any Hunt ELP employee exercised any such control.

Moreover, Texas law is clear that the mere fact of two entities' sharing an assumed name does not suffice to prove an alter ego relationship, because the key to finding such a relationship must be proof of control of one entity by another. *Am. CAN! v. Car Donations Found.,* 2019 WL 1112667, at *6–7 (N.D. Tex. Mar. 11, 2019); *see DDH Aviation, L.L.C. v. Holly*, 2005 WL 770595, at *8-*9 (N.D. Tex. March 31, 2005) (no alter ego relationship despite such things as sharing logos and trademarks). The cornerstone of alter ego is absolute control: "The control necessary [to prove

alter ego] is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." *Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 594 (5th Cir. 1999) (citation omitted). The use of a shared brand name by related entities is common, but does not prove control. In a case where the plaintiffs sued various Toyota subsidiaries, the district court held that there was no fact issue as to alter ego status. *In re Toyota Hybrid Brake Litig.,* 2021 WL 2805455, at *4–5 (E.D. Tex. July 6, 2021). Despite the fact that all the entities called themselves "Toyota," the plaintiffs "needed to prove that the relationship between TMC and any one of these other entities is so all-consuming as to constitute complete domination by TMC." *Id*. Plaintiffs offer no such proof here.

Similarly, as a Louisiana court correctly held, it made no difference that a group of defendant companies marketed themselves as "one group" and "cultivated a unified corporate culture," because those facts did "not demonstrate control." *In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 168 F. Supp. 3d 918, 937 n.17 (E.D. La. 2016) (cited in *Sightline Payments, LLC v. Everi Holdings Inc.,* No. 6:21-CV-01015-ADA, 2022 WL 2078215, at *5 (W.D. Tex. June 1, 2022)). The *Chinese Drywall* court agreed with a Pennsylvania district court's succinct statement of the principle: "The common marketing image and joint use of trademarked logos fail to render [one company] an alter ego of [another]. Enterprise Rent-A-Car **is portrayed as a single brand to the public**, but this evidence does not demonstrate the necessary control by defendant parent over the subsidiaries." *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 323 (W.D. Pa. 2010) (emphasis added), *aff'd*, 683 F.3d 462 (3d Cir. 2012). Likewise, the use of the "Hunt Military Communities" brand does not make entities jointly liable.

For these reasons, the fact that Hunt ELP's subsidiaries are doing business as "Hunt

16607789.3                                        6

Military Communities," using a Hunt logo, or operating the "Hunt Military Communities" website does not prove direct or alter ego liability of Hunt ELP.

## II.  Joint Enterprise Liability

Part II of the Response argues joint enterprise liability. [293, at 6]. Joint enterprise liability makes "each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other." *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000) (citation omitted). Plaintiffs must prove four elements: "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Id*. (citation omitted).

Plaintiffs argue that there is "summary judgment evidence" that "Defendants have always had an agreement, express or implied, to carry out a common purpose." [254, at 7]. But they point to no evidence of such an agreement other than, again, the use of the "Hunt Military Communities" name. Plaintiffs cite no case that has ever held joint enterprise to be proved by such a sharing of names, and ignore the clear holding of *SSP Partners,* which expressly held that the sharing of names cannot make one entity liable for the alleged wrongdoing of another. *SSP Partners,* 275 S.W.3d at 456.  *SSP Partners* dooms their joint liability claims.

Moreover, Plaintiffs fail to show the necessary "community of pecuniary interest," which requires each enterprise to share equally in their profits. *Chesser v. LifeCare Mgmt. Servs., L.L.C.,* 356 S.W.3d 613, 626 (Tex. Ct. App.–Fort Worth 2011). Facing direct evidence to the contrary [254-1, at ¶ 7], Plaintiffs ignore this element. On the necessary element of equal control, they allege that "Radliff's own declaration demonstrates that all Defendants are controlled by common persons who have an equal right to control the enterprise," without however citing any specific

part of that declaration. Plaintiffs' omission of a citation is for good reason—Radliff's declaration says no such thing. "Evidence of shared officers, directors, employees, business addresses, and assets [is] insufficient to demonstrate joint enterprise where the other requirements are left unmet." *Burchinal v. PJ Trailers-Seminole Mgmt. Co., LLC*, 372 S.W.3d 200, 216 (Tex. Ct. App.–Texarkana 2012). Plaintiffs show no genuine issue of material fact as to joint enterprise liability.

### III. Agency

As to their contention that there is a fact issue on whether any other Defendant was an agent of Hunt ELP, Plaintiffs rely again on the shared business name, which they seem to think is a magic talisman that opens the door to all causes of action. Here as before, the argument founders on control, an essential element of the relation of agency. Agency simply "does not exist" where the alleged agent is not under the control of the alleged principal. *Stanford v. Dairy Queen Prod. of Texas*, 623 S.W.2d 797, 801 (Tex. Ct. App.–Austin 1981). Plaintiffs' own cited case law concedes the point: "[T]he alleged principal had the right to control both the means and the details of the process by which the alleged agent was to accomplish the task." [293, at 9] (*quoting Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, No. 1:19-CV-724-RP, 2021 WL 3639801 (W.D. Tex. Aug. 17, 2021)). Despite agreeing on the absolute necessity of proof of control, Plaintiffs do not offer one example of any act or omission carried out pursuant to the control of Hunt ELP.

Lacking proof of control, Plaintiffs claim that Hunt ELP "allowed employees of other entities to act as its agents and allowed its agents to ratify the conduct of its subsidiaries." [293, at 10]. Here, they almost argue for agency based on apparent authority, though without using that term or citing any cases on the subject. Regardless, even if made, such an argument would fail. A finding of apparent authority looks only to the acts of the principal, not of the alleged agent. *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996). Texas law is replete with case

law holding that a company's furnishing the use of its trade name to another is not enough to prove apparent authority. *United Residential Props., L.P. v. Theis*, 378 S.W.3d 552, 564–65 (Tex. Ct. App.–Houston (14th Dist.) 2012) (collecting cases). Rather, the company must **itself** make representations to the third party. *Id.* Plaintiffs do not identify any act by Hunt ELP that represented to them that any other Defendant was its agent.

The same phrase is argued to support "ratification." But Plaintiffs stand "ratification" on its head. "Ratification" must be undertaken by the principal, not the agents. Here, Plaintiffs do not cite any case where a purported agent did something wrong, announced that it was a good thing he had done, and thus bound the principal as having "ratified" his misconduct. Such bootstrapping is not supported by Texas law. "One cannot waive or acquiesce in a wrong while ignorant that it has been committed. Current suspicion and rumor are not enough. There must be knowledge of the facts which will enable the party to take effectual action. Nothing short of this will do ...." *Texas Workers' Comp. Ins. Facility v. Pers. Servs., Inc.*, 895 S.W.2d 889, 894 (Tex. Ct. App.–Austin 1995) (citation omitted). Since every agent always knows what he or she has done, Plaintiffs' theory of ratification via agency would mean that every agent's wrongdoing was "ratified" and every principal was thus liable. That is not the law in Texas or anywhere else.

### IV. Civil Conspiracy

Plaintiffs offer no evidence to support any element of civil conspiracy. Rather, Plaintiffs again assume that, because various employees of other Defendants operated under the name "Hunt Military Communities," this somehow proves civil conspiracy. [293, at 10]. Plaintiffs make the dramatic (and unsupported) claim that "people like Melody Gallegos and Chris Radliff … were involved in and **controlled and directed the efforts of all Defendants** in the course of their military housing business" (emphasis added). [293, at 10]. The citation for this claim is "Paragraph

16607789.3                              9

8 above," which in turn recites various uses of the assumed name "Hunt Military Communities" which in turn refers to the various exhibits attached to the Response and to other motions. But nowhere do Plaintiffs point the Court to any fact showing "control" or "direction" by Hunt ELP. Here as elsewhere, Plaintiffs do not acknowledge, address, or distinguish any of the cases cited by Hunt ELP. Proof of civil conspiracy must "clearly establish the singular intent to defraud by each party [and] the common knowledge by all parties that each has such intent," and this element "must be established by full, clear, satisfactory, and convincing testimony." *Riquelme Valdes v. Leisure Res. Group, Inc.*, 810 F.2d 1345, 1351 (5th Cir. 1987) (citation omitted). Here, Plaintiffs have thrown the spaghetti at the wall, hoping that something will stick. Hunt ELP registered an assumed name, which some of its subsidiaries then used. That is all the proof Plaintiffs have, and it comes nowhere near proving civil conspiracy or any other wrongdoing.

WHEREFORE, Hunt ELP asks that this Court grant the motion for summary judgment, and dismiss with prejudice all claims against Hunt ELP in this civil action. Defendant also requests such other general relief as the Court may deem appropriate.

Respectfully submitted this the 12th day of August, 2022.

By: */s/ Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
*(Admitted to W. D. of TX on 7/28/2020)*
Jennifer J. Skipper, State Bar No. 24076171
BALCH &BINGHAM LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
E-mail:     wboone@balch.com
            jskipper@balch.com

16607789.3                        10

By: */s/ Julia W. Mann*
Julia W. Mann, State Bar No. 00791171
Erica Benites Giese, State Bar No. 24036212
JACKSON WALKER LLP
112 East Pecan Street, Suite 2400
San Antonio, Texas 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail:        jmann@jw.com

*Attorneys for AETC II Privatized Housing, LLC, AETC II Property Mgrs., LLC, and Hunt ELP, Ltd.*

16607789.3                             11

CERTIFICATE OF SERVICE

    I hereby certify that on the 12th day of August, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Randall A. Pulman, Esq.
Ryan C. Reed, Esq.
Sarah Jackson Donahue, Esq.
PULMAN, CAPPUCIO, & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, TX 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
E-Mail: rpulman@pulmanlaw.com
        rreed@pulmanlaw.com
        sdonahue@pulmanlaw.com

James R. Moriarty, Esq.
LAW OFFICES OF JAMES R. MORIARTY
4119 Montrose, Suite 250
Houston, TX 77006
(713) 528-0700 Telephone
(713) 528-1390 Facsimile
E-Mail: jim@moriarty.com

Mikal C. Watts, Esq.
Francisco Guerra, IV, Esq.
Jennifer Arlene Neal, Esq.
Robert E. Brzezinski, Esq.
WATTS GUERRA, LLP
Four Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 477-0500
E-Mail: mcwatts@wattsguerra.com
        fguerra@wattsguerra.com
        jneal@wattsguerra.com
        rbrzezinski@wattsguerra.com

                        */s/ Walter H. Boone*
                        Walter H. Boone, MS Bar No. 8651
                        *(Admitted to W. D. of TX on 7/28/2020)*