**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. DANIELS AND BARBARA HIGH-DANIELS, ET AL.** | § § § | |
| **PLAINTIFFS** | § § | |
| **v.** | § § | **NO. 5:19-cv-01280-RBF** |
| **AETC II PRIVATIZED HOUSING, LLC; ET AL.** | § § § | |
| **DEFENDANTS** | § | |

**REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AGAINST KLINE PLAINTIFFS**

## I.      Arguments Applicable to Multiple Claims

*A.  The federal enclave doctrine bars Plaintiffs' claims.*

Plaintiffs agree that Randolph AFB is a federal enclave, as the Supreme Court in fact has held. *United States v. Sharpnack*, 355 U.S. 286, 286 (1958). The application of exclusive federal jurisdiction over this federal enclave means that many of Plaintiffs' claims must be dismissed.

### 1.   Contract and deed terms are not "choice of law" provisions choosing state law.

Plaintiffs cite to various documents that refer to "the local applicable laws," but those documents do not identify **which** laws are applicable, and therefore do not operate as a "choice of law." *Cap. Mgmt. Select Fund Ltd. v. Bennett*, 680 F.3d 214, 230 (2d Cir. 2012) ("Although RCM did state that it was subject to 'all applicable laws' …, that simply raises the question of what laws were applicable."). The Virginia case cited by Plaintiffs involved an express choice-of-law provision, which we do not have here: "all disputes under [the subcontracts] shall be determined and interpreted pursuant to the laws of the Commonwealth of Virginia." *JAAAT Tech. Servs., LLC*

*v. Tetra Tech Tesoro, Inc.,* 2017 WL 4003026, at *1 (E.D. Va. Sept. 11, 2017). Plaintiffs then cite to the Ground Lease and MDMA, which simply agree that local building codes, for example, will apply. Federal facilities routinely agree to local building codes because there are no corresponding federal codes. But that does not mean that Texas law governs Randolph AFB; no one has to promise to obey laws that legally bind him. The documents cited by Plaintiffs make no such choice of law, and cannot abrogate exclusive federal jurisdiction over this federal enclave. *See United States v. State of Tex.*, 695 F.2d 136, 141 (5th Cir. 1983) (federal government, "absent a voluntary relinquishment of its sovereign rights, exercises exclusive jurisdiction over federal enclaves").

Plaintiffs' citation to the Deed of Cession misleads by ellipsis. [310, at 7]. The deed does say Texas "shall retain concurrent jurisdiction," but the sentence continues: "... so far, that all process, civil and criminal, issuing under the authority of the State of Texas, may be executed ... in like manner and with like effect as if no such cession had taken place." [251-1 at 14]. Such "reservations of rights" as to civil and criminal process "have never been held to bar application of the federal enclave doctrine." *Sundaram v. Brookhaven Nat. Labs.,* 424 F. Supp. 2d 545, 570–71 (E.D.N.Y. 2006).  That limited concurrent jurisdiction simply means that fugitives cannot escape Texas process by entering the federal enclave.

2. <u>Plaintiffs have pled that their claims arose at Randolph AFB</u>.

Plaintiffs now suggest their claims did not "arise on the Randolph enclave" [310, at 7] after all, but they offer no proof of any wrongful act or omission occurring elsewhere, and nothing but speculation that any decision was made anywhere but at Randolph AFB. Speculation or conjecture cannot suffice. *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1216 (5th Cir. 1985). But more importantly, Plaintiffs cannot contradict their own complaint, which states: "the events giving rise to Plaintiffs' lawsuit occurred on RAFB and LAFB …. [T]he pertinent events alleged by Plaintiffs

giving rise to the claims arise out of Plaintiffs' occupancy in Hunt-controlled properties on federal enclaves situated in Texas." [9, at ¶11]. This judicial admission cannot be contradicted on summary judgment. *Davis v. A.G. Edwards & Sons, Inc.*, 822 F.2d 105, 108 (5th Cir. 1987). Plaintiffs' own cited case says that, in a personal injury case like this, the existence of federal enclave jurisdiction is determined by the location of the injury. *Amtec Corp. v. U.S. Centrifuge Sys., LLC*, 2012 WL 12897212 *9 (N.D. Ala. Dec. 6, 2012); *see also Wallace v. Am. Petrofina, Inc.*, 659 F. Supp. 829, 832 (E.D. Tex. 1987) (action for breach of contract arises at place of performance).

      3.   Common law claims have not "always existed" prior to cession.

Plaintiffs then argue that, because common-law causes of action are said to be "recognized," they have existed forever, even prior to cession. Many courts have held the opposite,[1] including this Court: "where a state's courts recognize new common-law causes of action after the date when the state ceded certain lands to the exclusive jurisdiction of the federal government, those common-law causes of action have no force on these federal lands." *Balderrama v. Pride Indus., Inc.,* 963 F. Supp. 2d 646, 656 (W.D. Tex. 2013).

Moreover, Texas courts acknowledge that they can and do create **new** law, not just recognize existing law. In "recognizing" the implied warranty of habitability, for instance, the Texas Supreme Court stated what it was doing: it recited the historical expectations of tenants, then declared that "[t]he **present day dweller**, in seeking the combination of living space, suitable facilities and tenant services, has **changed** the basic function of the lease." *Kamarath v. Bennett*,

---

[1] *See Cooper v. So. Cal. Edison Co.,* 170 F. App'x 496, 497–98 (9th Cir. 2006) (common-law action for wrongful termination and common-law tort of IIED not valid on federal enclave ceded before state court recognized cause of action); *Stuckstede v. NJVC LLC*, 2010 WL 234953, at *1 (E.D. Mo. Jan. 15, 2010) (same as to whistleblower cause of action); *Stiefel v. Bechtel Corp.,* 497 F. Supp. 2d 1138, 1149 (S.D. Cal. 2007) (same re: IIED); *Sundaram*, 424 F. Supp. 2d at 570 (same); *Celli v. Shoell,* 995 F. Supp. 1337, 1344 (D. Utah 1998) (same).

568 S.W.2d 658, 659–60 (Tex. 1978) (emphasis added). The same court candidly notes its power "to impose a **new** common-law duty" based on "considerations of public policy." *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993) (declining to "**create**" cause of action) (emphasis added). The legal fiction underlying retroactive application of common-law decisions is just that, a fiction.

4.  28 U.S.C. § 5001 does not include Plaintiffs' DTPA claim.

Plaintiffs claim that their DTPA claim could survive dismissal if construed as a claim for "personal injury" under 28 U.S.C. § 5001. Following *Kelly v. Lockheed Martin Servs. Group.*, 25 F. Supp. 2d 1, 7 (D.P.R. 1998) cited in the motion, another court held that § 5001 means either "physical injury" or else "any kind of injury," and that the latter reading would cause § 5001 to "swallow the entire Federal Enclave Doctrine." *Shurow v. Gino Morena Enters., LLC*, 2017 WL 1550162, at *3 (S.D. Cal. May 1, 2017). The Constitution gives Congress the power of "exclusive Legislation" over federal enclaves, and "[e]xclusive legislative power is in essence complete sovereignty." *S.R.A., Inc. v. State of Minn.,* 327 U.S. 558, 562 (1946). "[S]tatutes in derogation of sovereignty are strictly construed in favor of the sovereign." *Bruno v. United States*, 547 F.2d 71, 74 (8th Cir. 1976) (quoting 3 Sands, *Sutherland Statutory Construction* § 70.03, at 302 (1974)). § 5001, which sacrifices Congress's exclusive sovereign power, is properly construed narrowly, as the *Kelly* court did.[2]

---

[2] Plaintiffs cite a recent, unsound decision to the contrary. *Andersen v. Lewis McChord Cmtys. LLC*, 2022 WL 874774, at *4 (W.D. Wash. Mar. 24, 2022). The court ignored the derogation of sovereignty canon and also misread the statute. When Congress stated that for "an injury sustained in a place described in subsection (a), the rights of the parties shall be governed by the law of the State in which the place is located," it did not let state law define "injury." "Injury," the court conceded, meant physical injury and nothing else. When an "injury" occurs, as understood by Congress, then "the rights of the parties," **not** the definition of "injury," will be decided under state law. States never had the power to decide what kinds of "injury" will impose current state law in a federal enclave.

5.   Plaintiffs' other arguments lack merit.

Relying on the *Howard* case for the notion that state laws apply if they do not "interfere," Plaintiffs overlook that the Fifth Circuit repudiated that construction of *Howard*: "… *Howard* did not therefore imply that a state has legislative power within a federal enclave unless exercise of that power interferes with the federal government." *Miss. R. Fuel Corp. v. Cocreham*, 382 F.2d 929, 937 n.17 (5th Cir. 1967). "Antiquated" or not, the federal enclave doctrine is good law, and easily withstands Plaintiffs' arguments that the doctrine is unfair or bad policy. [310, at 12-13].

B.   *The statute of limitations bars many of Plaintiffs' claims.*

The parties agree that the two year statute of limitations applies to most of Plaintiffs' claims and that those claims accrued on the date of legal injury, absent fraudulent concealment or the discovery rule. [310, at 13]. "[A] cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). "Absent some exception, such as the discovery rule, injuries that arise or develop after the legal injury are still deemed to have accrued on the same date as the legal injury that caused them." *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). Although Plaintiffs' cookie-cutter replies cobble together various allegations from other Plaintiffs (each of which will be dealt with in each family-specific reply), the Klines' own allegations and their sworn discovery responses demonstrate that they allege legal injury from the first day they moved in. [252, at 11; 252-11, at 22, "problems began from the start"; 252-12, at 27, "[p]roblems began from the time we moved into our house"]. Kline's declaration confirms that the injuries Plaintiffs suffered were immediate and "constant": "[w]e constantly worried about the health of our children," "we constantly worried about our ability to actually move," "[w]e also worried day and night" "home was constantly uncomfortable," "constantly

congested," "constant roach infestation." [310-8, at ¶25]. Plaintiffs are bound by these allegations. *Davis*, 823 F.2d at 108.

Plaintiffs utter the words "discovery rule," but offer nothing to show "the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V.*, 933 S.W.2d at 6. An injury is "inherently undiscoverable" only when it is "unlikely to be discovered within the prescribed limitations period despite due diligence." *Id*. Plaintiffs' claim that they suffered from allegedly substandard conditions cannot not be "inherently undiscoverable," as evidenced by their allegations and sworn statements that they actually discovered them. Plaintiffs' declaration to the contrary does not save them. *Freeman v. City of Fort Worth, Tex.*, 2011 WL 2669111, at *3 (N.D. Tex. July 7, 2011) ("self-contradictory" affidavits do not "create a dispute of fact as to any material issues.").

Plaintiffs also allege fraudulent concealment, but fail to put forward competent summary judgment evidence creating a fact issue on each element of that claim.[3] Plaintiffs' unsupported claims of what they were told comes far short of proving that Defendants knew those statements were false, had a duty to say otherwise, and a purpose in concealing.

C.    *Plaintiffs' DTPA, fraud, statutory fraud and negligent misrepresentation claims still fail, and are not saved by cookie cutter, conclusory declarations.*

1.    Plaintiffs have not identified an actionable misrepresentation.

Plaintiffs still have not identified the who, what, when, and where of the alleged fraud.[4] During her sworn testimony, Mrs. Kline recounted a subjective opinion and a statement of

---

[3] 1) Defendants' actual knowledge of a wrong, 2) Defendant's duty to disclose that wrong, and 3) a fixed purpose to conceal that wrong. *Trousdale v. Henry*, 261 S.W.3d 221, 235 (Tex. Ct. App.-Houston [14th Dist.] 2008).

[4] Without authority, Plaintiffs say compliance with Rule 9(b) is summary judgment is a "moot point" [310, at 27], but federal courts in Texas grant summary judgment because the plaintiffs

nonmaterial fact as grounds for fraud—neither of which is actionable. [252, at 12-31]. Now, at summary judgment, Plaintiffs ignore their Complaint and their depositions and rely solely on ¶¶ 3-11 of a brand new Declaration. For starters, those allegations also do not identify the who, what, when and where of the alleged fraud, as this Court requires.[5] *See* [310-8, ¶ 10] ("we were told by a Hunt maintenance person," "Hunt represented," etc.). Many of the "representations," such as the website promise of "superior customer service," [319-8, ¶ 4], are mere "puffery." *In re Shuomali*, 2016 WL 4991490, at *7 (Bankr. E.D. Tex. Sept. 16, 2016) ("Expressions of opinion without any factual underpinning … qualify as puffery—mere statements of subjective opinion and not objective fact—rather than fraud.") Many others are Plaintiffs' subjective impressions.[6] *See Gifford v. Don Davis Auto, Inc.*, 274 S.W.3d 890, 895 (Tex. Ct. App.-Fort Worth 2008) (holding plaintiff's "subjective belief" regarding meaning of certain words did not amount to misrepresentation); *Steptoe v. True*, 38 S.W.3d 213, 217 (Tex. Ct. App.-Houston [14th Dist.] 2001) (concluding plaintiff's' "subjective belief … cannot, as a matter of law, be transformed into an affirmative misrepresentation.) Others are not representations at all.[7] In ¶ 7, Plaintiffs say "Terri Hefford told us that all of these historic homes have issues, but they are not too bad." [310-8, at

---

[5] failed to plead fraud with particularity. *See GeoVera Specialty Ins. Co. v. Walker*, 2021 WL 5351721, at *3 (S.D. Tex. Aug. 9, 2021).

[5] *See* Order, *Hill v. AETC II Privatized Hous.*, No. 5:20-cv-01473-RBF, ECF No. 56 ("Plaintiffs' amended Complaint(s) . . . should comply with Federal Rule of Civil Procedure 9(b)" and specify the who, what, when required for fraud claims.")

[6] *See* [310-8, at ¶ 4] (phrase "full service maintenance[] **le[d] us to believe** that the house … had been properly maintained in good condition and would continue to be maintained in good condition."; ¶ 4 ("[W]e were **led to believe** that our house and the maintenance service would be of top quality."); ¶ 5 ("**we believed** that Hunt had a strong affiliation with the military and a care for the military and its servicemembers, leading us to trust that Hunt and its agents were acting in our best interests and should be believed.") (emphasis added).

[7] [310-8, at ¶ 9] (claiming that not all work orders related to their house were entered into Hunt's computer system); ¶ 10 (claiming that Defendants were not always prompt in responding to maintenance requests.)

¶ 7]. That statement is a subjective opinion as to what is "too bad." *See, e.g*, *In re Westcap Enter.*, 230 F.3d 717, 726 (5th Cir. 2000) ("a pure expression of opinion will not support an action for fraud."). Vague representations like "not too bad" cannot support a fraud claim. *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010).

Plaintiffs point to the Resident Guidelines, which state that the landlord will maintain "electrical … heating, ventilating, [and] air conditioning" systems "in good and safe working condition" and follow applicable building codes. [310-8, ¶ 4; 260-3, 6]. Because the statement is an obligation contained in the lease, it cannot be a "misrepresentation" that supports a fraud claim. *See Escajeda v. Cigna Ins. Co. of Tex.*, 934 S.W.2d 402, 407–08 (Tex. Ct. App.-Amarillo 1996) (misrepresentation cannot be based on terms of contract itself). At most, it is a promise of future conduct with no proof of an intent not to perform, and based entirely on Plaintiffs' own subjective beliefs. That is not enough for fraud. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc*., 960 S.W.2d 41, 48 (Tex. 1998) (must show "promise was made with no intention of performing at the time it was made"); *Tex. Div.-Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 314 (Tex. 1994) ("subjective beliefs" held "not competent summary judgment evidence.").

2. <u>Plaintiffs cannot show reasonable reliance.</u>

Plaintiffs' Response says only that "a fact issue exists" on reliance, and then cites to multiple paragraphs in the Declaration. [310, at 29]. Plaintiffs miss the point. They cannot rely on "representations" when they know facts to the contrary. [252, at 14]; *Lewis v. Bank of Am., NA*, 343 F.3d 540,546 (5th Cir. 2003). Here, the Klines' "problems" began their first day. Any reliance after is unreasonable as a matter of law and before is negated by the "as is" clause in the Resident Guidelines incorporated into the Lease. *Van Duren v. Chife*, 569 S.W.3d 176, 185 (Tex. Ct. App.-

Houston [1st Dist.] 2018) ("[A]n enforceable as-is clause negates the elements of causation and reliance on claims relating to the sale.").

### 3.   Plaintiffs cannot show fraudulent inducement.

For pre-lease misrepresentations, Plaintiffs must show all the elements of fraud **plus** a present intent not to perform under the contract.[8] Plaintiffs have no such evidence. While Plaintiffs say Defendants failed to repair their homes properly, non-performance is **not** evidence an intent not to perform. *See Fuller v. Wholesale Elec. Supply Co. of Houston, Inc.*, 631 S.W.3d 177, 187 (Tex. Ct. App.-Houston [14th Dist.] 2020) ("Breach, or failure to perform as promised, is no evidence that [defendant] had no intent to perform when he made the promise.") Subjective, conclusory beliefs that repairs were done improperly cannot sustain a fraudulent inducement claim.

### D.   *Plaintiffs have not shown that Defendants breached an applicable duty to repair.*

Under the Texas Property Code, a duty to repair does not even arise until notice of a condition "materially affecting the health or safety of an ordinary tenant." Tex. Prop. Code Ann. § 92.052(a)(3)(A). Plaintiffs make no effort to prove that a legal duty existed under that statute. But even if a duty to repair were present (as it is under the Lease), Plaintiffs must show specific facts identifying an issue for trial. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (citation omitted). Instead of addressing specific facts surrounding the duty to repair, Plaintiffs' Response cites almost the entirety of a template declaration that both

---

[8] Under Texas law, "[f]raudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Ibe v. Jones*, 836 F.3d 516, 525 (5th Cir. 2016) (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015)).

regurgitates the allegations in the Complaint and contradicts the sworn testimony. The Declarations for each family[9] state "[w]e routinely had to request repairs for the same issues," "they rarely fixed the issue until the third or fourth time, if ever," "we regularly saw mold" [310-8, at ¶¶13, 14, 17]. Relying on a declaration containing merely conclusory allegations cannot defeat summary judgment. *Pioneer Expl.*, 767 F.3d at 510.

  E.  *The economic loss rule applies to this case.*

  This Court's *Holubets* decision is on point here, and completely ignored by Plaintiffs. In *Holubets*, as here, the tort and DTPA claims were barred by the economic loss rule because the claimed damages were failures to perform the contract. [252, at 19]. The *Chapa* case cited by Plaintiffs does not mention the economic loss rule. [310,at 17]. Plaintiffs' reliance on *McCaig* is distinguished by the fact that it did not construe the DTPA and dispelled by the subsequent ruling in *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016). There, the Fifth Circuit held that a similar DTPA claim was barred by the economic loss rule: "[Plaintiffs'] claim ultimately rests on the allegation that ADT falsely advertised that its alarm system would be of high quality and would work, when the alarm system, in fact, did not work as it was supposed to under the contract," and thus the DTPA claim was really a claim for breach of contract. *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016). Here, Plaintiffs say they were promised "quality housing" and their service was not what they were promised. In *Malsom v. Match.com, L.L.C.*, 540 F. App'x 412 (5th Cir. 2013), also applied by *Shakeri*, the Fifth Circuit distinguished its case from one where promises to perform were made with no intent to fulfill them: the plaintiffs'

---

[9] The exact same language by nine separate people is not based on personal knowledge, must be conclusory, and is not competent summary judgment evidence. *Richardson v. Oldham*, 811 F. Supp. 1186, 1197 (E.D. Tex. 1992) (striking copycat language from affidavits), *aff'd*, 12 F.3d 1373 (5th Cir. 1994). *See also Diaz v. Castro*, 122 F. Supp. 3d 603, 615 n.13 (S.D. Tex. 2014) (identical language indicates not based on personal knowledge).

"allegations are essentially … that (1) Match represented that it would perform under the contract, and (2) nonperformance means they misrepresented that they would perform under the contract." *Id.* at 416. Plaintiffs' only proof here is the same—no evidence of no intent to perform, coupled with allegations of nonperformance. Under the law of this Court and the Fifth Circuit, the economic loss rule applies.

II.   **Arguments Applicable to Multiple Claims**

A.   *Count 1: DTPA.* Plaintiffs' Response adds nothing not already addressed. [252, 21-22].

B.   *Count 2: Implied Warranties and Texas Property Code*

1.   There is no implied warranty of habitability for residential leases in Texas.

Plaintiffs miss the point on the Implied Warranty of Habitability. There was no IWH in residential leases prior to its creation in 1978. *Kamarath*, 568 S.W.2d 658. Nor has there been since 1979, when the Texas Legislature abrogated *Kamarath* by creating the limited landlord duty to repair under the Texas Property Code. Pursuant to the federal enclave doctrine, summary judgment should be granted because both the common law and statutory claims were created post-cession. But apart from the federal enclave doctrine, IWH simply does not exist. *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 479 (Tex. 2016).

2.   Plaintiffs' implied warranty of good and workmanlike repairs claim fails because there is an adequate remedy available—the Lease. Texas law does not "impos[e] an implied warranty for service transactions in the absence of a demonstrated, compelling need." *Rocky Mtn. Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 52-53 (Tex. 1998). The Lease has a repair clause, and there is no compelling need for this Court to read new terms into the contract. This claim is not an alternate theory of liability. Either the Court determines there

is a compelling need (which there is not) and reads an implied warranty into the contract, or summary judgment should be granted on this claim.

       3.    <u>Plaintiffs have not designated specific facts supporting the requirements of Texas Property Code § 92.056(b), which are necessary.</u> Even if it applies, Plaintiffs identify no specific facts on the elements in § 92.056(b)(1)-(6). Summary judgment is proper under the Texas Property Code. *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

      *C.  Count 3: Breach of Contract*

       1.    <u>Plaintiffs' agreed in the lease that the homes were habitable.</u> Plaintiffs claim that Defendants breached the contract by not providing habitable housing ***at lease signing***. [9, at ¶168]. Defendants don't argue ratification, but rather sufficiency of proof. Plaintiffs' own statements in the lease that the house was "clean, safe, and habitable" at signing dispel this claim.

       2.    <u>Plaintiffs do not give specific facts supporting breach.</u> *See* [I.D., *supra*].

       3.    <u>Plaintiffs do not designate specific facts supporting damages from breach.</u> There are no physical injuries, no proof of damage to personal belongings, nor any other type of injury supported by competent summary judgment evidence.

       4.    <u>Neither AETC Managers nor the servicemember's families are parties to the lease.</u> As to the families, Plaintiffs argue third party beneficiary and cite *First Bank v. Brumitt*, 519 S.W.3d 95 (Tex. 2017), but *First Bank* says "[a]s a general rule, the benefits and burdens of a contract belong solely to the contracting parties, and 'no person can sue upon a contract except he be a party to or in privity with it.' " *Id*. at 102 (quoting *House v. Hous. Waterworks Co.*, 31 S.W. 179 (Tex. 1895)). Plaintiffs come with no proof, only the conclusion that the issue is "clearly" decided in their favor. As to AETC Managers, Plaintiffs claim a "fact issue" and cite their own Complaint. [310, at 25]. They assert no fact and provide no law to hold AETC Managers liable.

D.  *Counts 4 and 11: Negligence, negligent misrepresentation, and gross negligence.*

Citing ¶¶ 8-26 of the Declaration, Plaintiffs simply assert there is an issue of fact as to breach and causation. [310, at 25]. Plaintiffs cannot proceed on their own because they lack expert testimony regarding mold (or other conditions) in Plaintiffs' home.[10] Plaintiffs' "research on the internet" and hearsay from people in the "mold industry" does not cut it. [310-8, at ¶ 17]. Plaintiffs do not identify any specific facts about any specific repairs, only that some repairs were "re-fixed" or that things kept "breaking again." Plaintiffs assertions are mere subjective conclusions, not summary judgment evidence. *See Tex. Div.-Tranter,* 876 S.W.2d at 314.

E.  *Counts 5 and 6: Statutory Fraud and Common Law Fraud.* See I.C. above.

F.  *Count 7: Unjust enrichment and money had and received.*

Plaintiffs argue that they are entitled to plead unjust enrichment in the alternative, and cite a case about a gun purchaser who sued on express and implied warranties, even though there was no actual contract. On those facts, the court allowed an alternative plea of unjust enrichment. *Gordon v. Sig Sauer, Inc.*, 2019 WL 4572799, at *7, 16 (S.D. Tex. Sept. 20, 2019). But that is not what we have here. "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory" *Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex. 2000).

G.  *Counts 8, 9, and 10: Nuisance and Texas Health and Safety Code*

Because Plaintiffs did not respond at all to these arguments and therefore failed to "designate specific facts showing that there is a genuine issue for trial," these claims must fail. *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

---

[10] Any claims relating to mold (or other conditions outside the knowledge of an ordinary lay person) would require expert testimony. *See, e.g.*, *Starr v. AJ Struss & Co.,* 2015 WL 4139028, at *7 (Tex. Ct. App.-Houston [1st Dist.] July 9, 2015).

### III.   <u>Arguments Relating to Damages</u>

#### A.   *Personal injury and property damage.*

Plaintiffs have stipulated they do not seek damages for "physical injuries and/or physical illness" [220], and anything in their Declarations to the contrary should be stricken. As to property damage, Plaintiffs' sole authority is a case where movers lost or damaged furniture and other objects. *Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022 WL 2392875, at *4, 18 (W.D. Tex. July 1, 2022). But this is not a case where "my gun went missing" or the "mirror was broken." Plaintiffs' own expert says that **only** an expert can assess personal property for mold damage. [255, at 29]. That is because there is an applicable industry standard which requires a visual inspection of each item, identification of the type of item, determination of the porousness of the item and selection of cleaning method, weighing the cost of cleaning the item versus the cost of the item, and categorization of all the items to be cleaned. [245, at 4; 245-1, at 10-11]. Even if lay opinion testimony could suffice to prove mold damage to personal property, Plaintiffs offer no "specific lay testimony on actual contamination or causation." *Plunkett v. Conn. Gen. Life Ins. Co.,* 285 S.W.3d 106, 114 (Tex. Ct. App.-Dallas 2009) (affirming summary judgment).

#### B.   *Mental Anguish*

The federal enclave doctrine bars recovery for mental anguish. [252, at 30]. But even were current Texas law applicable, this case must fall into one of the four categories stated in *City of Tyler v. Likes*, 962 S.W.2d 489 (Tex. 1997). Plaintiffs concede, through silence, that none of those categories apply here. Instead, Plaintiffs argue that their mental anguish claim should be spared, at least as to their DTPA, fraud and gross negligence claims. [310, at 31-32]. But Plaintiffs don't explain how their anguish is compensable even under the DTPA. *See Anderson v. Long*, 118 S.W.3d 806, 811 (Tex. Ct. App.-Fort Worth 2003) ("extreme fright, constant worry, extreme

apprehension, and nervousness on a daily basis" not enough); *Finger v. Ray*, 326 S.W.3d 285, 293 (Tex. Ct. App.-Houston [1st Dist.] 2010) ("anxiety, heart palpitations and loss of hair, stress, just went in for a stress test and had to get—couldn't sleep" not enough); *Bailey v. Fleming*, 1997 WL 634166, at *5 (Tex. Ct. App.-Houston [14th Dist.] Oct. 16, 1997) ("situation bothered him tremendously; … he got angry with the bill collectors; … he was worried how he and his wife would pay for two trucks; and … they 'worried' quite a few nights" not enough). Plaintiffs fail to show more than "the vicissitudes of daily life." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 445 n.10 (Tex. 1995). A plaintiff who "had to live with a tarp on the back of her house for nearly two years" and "had to deal with mold issues," who "was unable to live in her home at times because of wind noise and the inconvenience of repairs," and who felt "insulted and identified to others as a 'RIP OFF ARTIST' who is 'used to screwing people out of their money,' " was held to show only "inconvenience, occasional disruption in her living arrangements, and insults" insufficient to prove mental anguish. *Kyle v. Zepeda*, 2013 WL 2246030, at *9 (Tex. Ct. App.-Houston [1st Dist.] May 21, 2013). Plaintiffs here hardly allege more.

      C. *Attorney fees.* Attorney fees are excluded by the federal enclave doctrine.

      WHEREFORE, Defendants seek summary judgment on all or some of Plaintiffs' claims on all grounds set forth in the motion [252], and other appropriate relief.

      Respectfully submitted, this the 9th day of September 2022.

/s/ *Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
(*admitted to W.D. of Tex. on 7/28/2020*)
Jennifer J. Skipper, State Bar No. 24076171
Balch & Bingham LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201-2133
Telephone:  601-965-8182
Facsimile:  866-501-9984
E-Mail: jskipper@balch.com

wboone@balch.com

Julia W. Mann, State Bar No. 00791171
Erica Benites Giese, State Bar No. 24036212
JACKSON WALKER LLP
112 East Pecan Street, Suite 2400
San Antonio, Texas 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail: jmann@jw.com
      egiese@jw.com
***Attorneys for Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of September 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Randall A. Pulman, Esq.
Ryan C. Reed, Esq.
Matthew J. McGowan, Esq.
Sarah Jackson, Donahue, Esq.
PULMAN, CAPPUCIO, & PULLEN, LLP
2161 NW Military Highway, Suite 400
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
E-Mail: rpulman@pulmanlaw.com
 rreed@pulmanlaw.com
 mmcgowan@pulmanlaw.com
 sdonahue@pulmanlaw.com

James R. Moriarty, Esq.
LAW OFFICES OF JAMES R. MORIARTY
4119 Montrose, Suite 250
(713) 528-0700 Telephone
(713) 528-1390 Facsimile
E-Mail: jim@moriarty.com

Francisco Guerra, IV
Jennifer Arlene Neal
Robert E. Brzezinksi
WATTS GUERRA, LLP
Four Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 477-0500
E-Mail: fguerra@wattsguerra.com
 jneal@wattsguerra.com
 rbrzezinski@wattsguerra.com

/s/ *Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
(*admitted to W.D. of Tex. on 7/28/2020*)