**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MICHAEL J. DANIELS, ET AL. | § | |
| | § | CASE NO. SA-19-CA-01280-FB |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | |
| | § | |
| AETC II PRIVATIZED HOUSING, LLC; ET AL. | § | |
| | § | |
| DEFENDANTS. | § | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR ENTRY OF ORDER ON SOCIAL
MEDIA COLLECTION OR, IN THE ALTERNATIVE, MOTION FOR STATUS CONFERENCE**

---

Plaintiffs, MICHAEL J. DANIELS, ET. AL. ("Plaintiffs") file their *Response to
Defendants' Motion for Entry of Order on Social Media Collection or, in the alternative, Motion
for Status Conference* ("Motion"), and in support thereof, respectfully show the Court as follows:

**I.      BACKGROUND**

On May 15, 2022, Defendants filed their Motion to Compel Production of Certain
Electronic Discovery from Plaintiffs [ECF No. 224], and this Court held a hearing on that issue on
July 7, 2022. The Court granted that Motion, in part, on July 20, 2022, and ordered the parties to
confer and "provide to the Court a Word version of a proposed order for the Court's review and
modification." [ECF No. 288]. The Court ruled that the "proposed order should limit the discovery
to a reasonable time frame and to only those topics that touch on this litigation . . ." and provided
that "[u]nfettered access by Defendants to Plaintiffs' social media accounts is not warranted."
[ECF No. 288].

## II.     MEET AND CONFER HISTORY

On August 14, 2022, parties began conferring via email on the Court's Order regarding social media production. *See* Exhibit A – Email Correspondence 8/14/22-8/22/22. On August 18, 2022, the parties conferred via teleconference and on August 19, 2022, the parties conferred via video conference regarding social media production. On September 9, 2022, Defendants forwarded their vendor's consent form and a "protocol" for message collection. *See* Exhibit B – Email Correspondence 9/9/22-9/12/22 at 6-7. On September 16, 2022, the parties conferred via email and a telephone conference that same afternoon. *See* Exhibit C – Email Correspondence 9/16/22.

On September 21, 2022, Plaintiffs' counsel emailed Defendants' counsel a list of proposed search terms. *See* Exhibit D –Email Correspondence 9/20/22-9/27/22 at 4-5.  On September 27, 2022, Defendants' counsel emailed their additions to the search term list. *Id*. at 1-4.  This list expanded Plaintiffs' proposed list from 22 search terms to 163 search terms.

Ultimately, although several matters have been addressed, there are still pending issues that will require Court intervention.

## III.     DISAGREEMENTS AT ISSUE

### A.     Standard Consent Form

Plaintiffs object to certain indemnity language in the Standard Consent Form provided by the SMI Aware ("Vendor"):

> I hereby indemnify SMI Aware from any and all liability associated with the use of materials and data from my accounts. I understand that SMI Aware does not use my materials and data and that SMI Aware's function is only to collect my materials and data to provide to those parties I listed above.

Plaintiffs will not voluntarily indemnify Defendants' Vendor. Defendants chose the Vendor and are in a better position to provide Vendor with indemnification than military servicemembers. If

the Vendor requires indemnification, Defendants should provide such indemnification as the data collection is at Defendants' request. Plaintiffs request that this language be removed from the Form before signing or, in the alternative, that Vendor's Standard Consent Form be altered such that Defendants provide indemnification.

**B.      Methodology of Downloading Process and Production Format**

Plaintiffs have asked Defendants to identify Vendor's methodology of the collection process in order to identify the format of the final product to be turned over to Plaintiffs' counsel for relevance and privilege review. The "protocol" provided by Defendants states, in its entirety:

- Receive signed consent form
- Login to profile with provided credentials
- Go to the target messages
- Load all the messages
- Save the source code
- Produce screen shots of all target messages
- Logout of provided profiles
***Something to note is that Cameron usually experiences IP address issues when logging into other people's Facebook profiles***

Exhibit B, at 6.

On September 12, 2022, at the request of Plaintiffs' ESI consultant, Plaintiffs' counsel requested that "load all messages" be written "with specificity [as] required by a digital forensic examiner to understand the scope and depth of what is being done." *See* Exhibit B, at 1. This request for clarification is justified for two reasons: (1) To confirm the scope of the collection is within the scope ordered by the Court and (2) to understand how the data is collected and converted to final output so Plaintiffs can ensure the final product is likely complete, accurate and otherwise based on forensically sound methodology, especially given that the collection tool is a proprietary design without consumer or public vetting. .  Providing clarity as to Vendor's collection protocol will not incur significant, if any, additional costs, deviate from the Vendor's standard practice, or threaten the ability to perform this data collection, as Defendants have argued in their Motion

without support. *See* Motion [ECF 336], at 5. Defendants have not provided an answer to this request for clarification to this date. The fact that Defendants have apparently not asked their own vendor for more specificity in their collection protocol is shocking based upon the current standards of electronic data collection where transparency is required

The only response Defendants have provided as to the file type of Vendor's collection is that the information will be provided in a "PDF deliverable".  Exhibit C, at 2.  If the only possible format for production from the Vendor is a "PDF deliverable", Plaintiff is willing to work with that format to the extent possible as further detailed below.

### C.     Review for Relevance and Privilege

Contrary to Defendants' assertion, Plaintiffs have clearly offered throughout this meet and confer process to review the ordered social media data for relevance and privilege.  *See* Exhibit B, at 2.  The crux of the issue is either Defendants' lack of technological knowledge on the processes involved for the collection, review, and production of social media data, or a means of imposing unnecessary burden on Plaintiffs.

One technical issue needs to be addressed.  In the process of Plaintiffs' initial collection and production of relevant documents, Plaintiffs collected full downloads of Facebook messages for four of the seven requested Plaintiffs in HTML format through the Facebook download tool. The HTML format is not compatible with Plaintiffs' ESI platform in such a way that the output Defendants request—specifically that any photos, videos, or documents included in the messages be included in the final produced documents—can be achieved.[1]  As a result, the ability to search this data is hindered to the extent that searches must be performed one at a time to determine which individual conversation file contains a particular term. Then each conversation file (one per

---

[1] In fact, some of the HTML messages loaded do not even show who the message was sent to or any responses thereto. The HTML messages also omit attachments. See Exhibit E – Relativity Screen shot.

individual user account—meaning a separate file for each individual with whom the account holder exchanged messages) must be word searched for the relevant term, the messages on either side of the "message bubble" containing that term must be reviewed to ensure all relevant messages related to that search term hit are produced, and screen shots must be saved for the relevant messages. Those screen shots are then produced. Plaintiff explained this process and showed defense counsel via screen share on the August 19, 2022, Zoom how this format hinders the granular level of review Defendants seek. *See* Exhibit A, at 1-2.

Defendants expressed in a meet and confer that the most expensive portion of this collection process is collection of Plaintiffs' Facebook messenger messages and insisted that because Plaintiffs are in possession of four Plaintiffs' messages, Plaintiff should review those files rather than Defendants paying Vendor to collect those Plaintiffs' messages. In a clear effort of cooperation, Plaintiffs' counsel agreed to undertake the arduous review (of the four Plaintiffs' Facebook messages currently in counsel's possession in HTML format, as well as the three Plaintiffs Vendor was to collect in "PDF deliverable" format) in this fashion so long as the parties agreed upon a reasonable set of search terms to guide such review prior to initiating review of years' worth of Facebook messages. Plaintiffs provided a list of 22 search terms. *See* Exhibit D. In response, defense counsel proposed a list of 163 search terms, including wildcard characters (*e.g.* Allerg\*) and Boolean terms (*e.g.* itch\* /2 eye). *Id.* Wildcard characters and Boolean terms are simply not compatible with the type of review Plaintiffs' counsel is limited to with the HTML download of Facebook messages—it is impossible to search the HTML files for wildcard terms or Boolean searches. At multiple points in the search term discussion, defense counsel clearly misunderstood Plaintiffs' suggested protocol for undertaking review of the Facebook data for relevance and privilege. *See* Exhibit B, at 2-4.

Defendants claim Plaintiffs' counsel "refuses to undertake the normal, customary review of that information for relevance, privilege, etc." and instead "seek to obligate Defendants to propose search terms of that downloaded material." *See* Motion [ECF 336], at 6. Contrary to Defendants' assertion, Plaintiffs have explicitly asked to review the materials collected by Vendor for relevancy and privilege prior to production to Defendants, to which Defendants responded, "[a]t this junction, we are agreeing to that request." *See* Exhibit C, at 2. Plaintiffs sought Defendants' input on search terms from the outset of this exercise for efficiency purposes and to comply with all counsels' discovery cooperation obligations.[2]

Lastly, Defendants offer the following proposition: "Defendants will have the Vendor collect the material and Defendants will have their Vendor produce it, alleviating the burden and cost for Plaintiffs." *See* Motion [ECF 336], at 7.  This proposition, however, would provide Defendants with the "unfettered access" the Court previously determined is not warranted in this case. *See Dkt*. 288, at 2 ("Unfettered access by Defendants to Plaintiffs' social media accounts is not warranted").

As discussed in Section B, *supra*, the "PDF deliverable" format in which Vendor intends to produce the collected messages and data may be more compatible with Relativity—Plaintiffs' document review platform—than the HTML versions.  However, Plaintiffs cannot determine that level of compatibility until they are provided the outcome of Vendor's collection.  For example, whether the PDF deliverable is a collection of individual PDF files or a PDF binder or PDF

---

[2] The Sedona Conference, Cooperation Proclamation, 10 SEDONA CONF.J. 331 (2009 Supp.) ("It is time to build upon modern Rules amendments . . . which address e-discovery. Using this springboard, the legal profession can engage in a comprehensive effort to promote pre-trial discovery cooperation. Our 'officer of the court' duties demand no less. This project is not utopian; rather, it is a tailored effort to effectuate the mandate of court rules calling for a 'just, speedy, and inexpensive determination of every action' and the fundamental ethical principles governing our profession.")

Portfolio or a single PDF hundreds of pages long makes a difference in usability. It is surprising that Defendants do not seek this same basic information.

**D.      Search Terms**

As Defendants stated in their Motion, "the producing party is naturally better suited to propose initial search terms." *See* Motion [ECF 336], at 9. Plaintiffs agree. On September 21, 2022, Plaintiffs  proposed a list of 22 search terms. *See* Exhibit D, at 5.  Plaintiffs asked Defendants to engage in a cooperative effort to ensure a full and complete list of search terms was agreed upon prior to initiating any review of the ordered Facebook data. Courts regularly order parties to engage in this exact type of collaborative effort.  *See, e.g., Measured Wealth Private Client Group, LLC v. Foster*, No. 20-CV-80148, 2021 WL 1215218, at *3 (S.D. Fla. Mar. 31, 2021) (ordering the parties to confer in an attempt to agree on search terms); *HealthEdge Software, Inc. v. Sharp Health Plan*, No. 19-CV-11020-ADB, 2021 WL 1821358, at *3 (D. Mass. May 6, 2021) (ordering meet and confer to discuss search terms).

Defendants responded with three full pages of additional search terms. *See* Exhibit D, at 1-4. This is an overly expansive list of terms which will certainly produce messages that are irrelevant and pose an unnecessary invasion of Plaintiffs' privacy. Furthermore, it will be overly burdensome for Plaintiffs' counsel to have to review the plethora of "hits" that will result from such a search and determine which are relevant and which are not. As explained above, the option for plugging in a list of search terms into a document review platform is simply not an option in this situation, or at least not to counsel's knowledge.  Thus, a ***reasonable*** list of search terms is the most efficient way of running this search and identifying materials responsive to Defendants' requests for production. Moreover, Defendants have made no attempt to show or explain how any of the 163 terms will result in documents that are relevant to the claims and defenses at issue or how the additional 163 terms are proportional to the needs of the case

Defendants take the position that Plaintiffs should craft their own search terms, produce documents, and then Defendants should have the opportunity to propose additional search terms. That ship has sailed. Based upon the current status of the parties' meet and confers, we know exactly what will transpire.  Plaintiffs will run the terms they proposed above and Defendants will come back with *at least* the 163 terms they proposed in response.  *See* Exhibit D.  While the back and forth of discussing search terms post-review and production may be appropriate in instances in which a set of data is in a format which permits search terms to be run with the click of a few buttons, that is not the situation here where the format of the data cannot be searched without undertaking the overly burdensome process described above.  Additionally, discovery in this case has closed, both parties are aware of the relevant claims, and both parties are equally suited to suggest what they believe are appropriate terms.

### E.      Summary

Plaintiffs have agreed to Defendants requested time frame of the first day of the month prior to the Plaintiff's move in to current.  Defendants request the following from Plaintiffs Allison Alexander, Barbara High-Daniels, Leilani Hamilton, Sarah Kline, Becky Vinales, Megan Konzen, and Kassandra Wolf:

1. **Vendor collection of "Facebook Profiles".**  It is entirely unclear based upon the information provided to Plaintiff what data is included in this proposed collection category.  Plaintiffs suggested utilizing the Facebook download tool because it contains a granular level of detail as to what information is included in the download.  To the extent Defendants mean the Plaintiff's Facebook "wall", Plaintiffs are unopposed to that collection, subject to resolution of the Vendor indemnification issue.

2. **Vendor collection of Comments or Posts in housing-related Facebook groups by searching the Facebook user names for these seven Plaintiffs in each group.**

Plaintiffs are unopposed to this collection, subject to resolution of the Vendor indemnification issue.

3.  **Vendor collection of Facebook activity logs**.  Plaintiff is opposed to this request. Defendants' Motion for Entry of Order [ECF 336] is the first time Defendants have sought to compel this information. Defendants did not request this information in their Motion to Compel.[3] Discovery has closed in this case. Expanding the scope of production at this point in time is inappropriate.

4.  **Vendor collection of Facebook messages (as to Becky Vinales, Megan Konzen, and Kassandra Wolf only).** Plaintiffs are unopposed to this collection, subject to resolution of the Vendor indemnification issue. However, as Defendants have refused collection in the HTML format, in order to keep the collection and production consistent across all seven Plaintiffs, Plaintiffs propose that Vendor collect Facebook messages for all seven Plaintiffs.  Utilizing the 4 HTML downloads and 3 "PDF deliverable" downloads with separate review protocols will lead to inconsistencies across Plaintiff productions. Therefore, Plaintiffs would ask that Vendor collect Facebook messages from all seven (7) Plaintiffs in the same format—whatever format that may be.

5.  **Plaintiffs' Review and Production of relevant, non-privileged data contained in #1, 2, and 4 above.** As Plaintiffs cannot ascertain the technical details of the "PDF deliverable" and test such deliverable in Relativity, Plaintiffs would suggest that the

---

[3] "Defendants respectfully request this Court GRANT its Motion and ORDER Plaintiffs to provide access to the Facebook pages on which they made posts, provide all relevant Facebook posts from their personal Facebook pages as they appear on Facebook (including any comments, videos, photos), relevant text messages, completed unredacted Facebook messages for administrator's message accounts for those pages run by Plaintiff where military housing was the focus of the page, and all relevant un-redacted Facebook messages involving Plaintiffs and any other relief Defendants are so entitled." ECF 224, Motion to Compel Production of Certain Electronic Discovery From Plaintiffs, at 10.

search terms be negotiated once the files are produced from Vendor to Plaintiffs'
counsel and the efficacy of utilizing search terms can be determined.

6. **Log of Withheld Information.**  Defendants also request the Court order Plaintiffs to
   prepare a log "[f]or all documents withheld from production or parts redacted."
   Motion, at 3.  While Plaintiffs agree they have an obligation to produce a privilege log
   for relevant content being withheld under a claim of privilege, Defendants' request
   does not make clear that documents withheld as irrelevant need not be included in the
   log. If Defendants' request includes irrelevant messages, this would require the logging
   of years of irrelevant Facebook messages that are not ultimately produced.  This is
   another example of the unfettered access to Plaintiffs' accounts that Defendants
   continually seek.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that the Court set Defendants'
Motion for hearing and, after hearing, enter an order compelling Defendants to agree to a more
reasonable list of search terms; agree to remove the indemnification language in the Vendor's
Standard Consent Form or, in the alternative, order Defendants to indemnify Vendor; and agree to
provide a written clarification of the Vendor's protocol within seven (7) days from the date of the
Order on this Motion. Plaintiffs pray for such other and further relief, both general and special, at
law or in equity, to which they may be entitled.

Respectfully submitted,

By: */s/ Jennifer A. Neal*
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400
San Antonio, Texas  78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
Randall A. Pulman

10

Texas State Bar No. 16393250
rpulman@pulmanlaw.com
Ryan C. Reed
Texas State Bar No. 24065957
rreed@pulmanlaw.com

**WATTS GUERRA LLP**
Mikal C. Watts
Texas State Bar No. 20981820
mcwatts@wattsguerra.com
Francisco Guerra, IV.
Texas State Bar No. 00796684
fguerra@wattsguerra.com
Robert Brzezinski
Texas State Bar No. 00783746
rbrzezinski@wattsguerra.com
Jennifer A. Neal
Texas State Bar No. 24089834
jneal@wattsguerra.com
4 Dominion Dr., Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 447-0500 Telephone
(210) 447-0501 Facsimile

**MORIARTY SKIVER PLLC**
James. R. Moriarty
Texas State Bar No. 14459000
jim@moriarty.com
4119 Montrose, Suite 250
Houston, Texas 77006
(713) 528-0700 Telephone
(713) 528-1390 Facsimile

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

I certify that on the 20th of October, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Walter Boone
Jennifer Skipper
BALCH & BINGHAM LLP
1888 East Capitol Street, Suite 1400
Jackson, Mississippi 39201

Julia W. Mann
Erica Benites Giese
JACKSON WALKER LLP
112 E. Pecan Street, Suite 2400
San Antonio, Texas 78205

*/s/ Jennifer A. Neal*
Jennifer A. Neal