IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHAEL J. DANIELS AND BARBARA HIGH-DANIELS, ET AL. § § § | |
| PLAINTIFFS § § | |
| v. § | NO. 5:19-cv-01280-RBF |
| § | |
| AETC II PRIVATIZED HOUSING, LLC; § ET AL. § | |
| DEFENDANTS § | |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

AETC II Privatized Housing, LLC ("AETC Housing"), AETC II Property Managers, LLC ("AETC Managers"), and Hunt ELP, Ltd. (collectively, "Defendants") file this Supplemental Brief in support of Defendants' Motion for Summary Judgment Against Vinales Plaintiffs [260]. In light of the Court's January 4, 2023 and January 18, 2023 Orders [349, 350], this Supplemental Brief addresses the law applicable to Randolph Air Force Base ("Randolph"), a federal enclave, and the effect of applying only pre-cession law on various claims, defenses, and damages. As discussed in more detail below, the application of pre-cession Texas law in this matter requires (1) dismissal of Plaintiffs' negligence (Counts 4, 11) and nuisance claims (Counts 8 and 9); (2) dismissal of all claims of Becky Vinales and the minor children, including those for breach of the lease (Count 3); and (3) dismissal of some of Plaintiffs' damages, including their claims for personal property damage, rent (or BAH), and exemplary damages. This Supplemental Brief will address each of these three arguments in turn.

**EXHIBIT 1**

### I. The Federal Enclave Doctrine Requires Dismissal of Plaintiffs' Negligence and Nuisance Claims and of Non-Signatories' Contract Claims

*A. Pre-Cession Texas Law Requires Dismissal of Plaintiffs' Negligence Claims*

Under Texas common law prior to 1952, tort claims and contract claims were separate, and Texas courts did not permit the assertion of a tort claim arising solely out of contract. The traditional rule was that "actions in contract and in tort are to be distinguished in that an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law." *Int'l Printing Pressmen & Assistants' Union of N. Am. v. Smith*, 198 S.W.2d 729, 735 (Tex. 1946) (quoting 1 C.J.S., *Actions* § 44, at 1098).[1] The same case noted the principle that "if the action is not maintainable without pleading and proving the contract, where the gist of the action is the breach of the contract … it is, in substance, an action on the contract, whatever may be the form of the pleading." *Id*. (quoting 1 Am. Jur. *Actions* § 50, at 441). In *International Printing Pressmen*, the plaintiff, a union man, had a contract with the union which was breached by the union, and, according to the Court, was thus entitled to proceed in contract, but not in tort. "All the rights for which he seeks redress arose by virtue of the agreement of the parties. Smith's action was therefore founded upon a contract in writing." *Id*. The key distinction for that Court, like this one, was that the only source of the duty was found in the contract. "Of course, in cases where the duty imposed upon the defendant **arises purely by virtue of a contract**, the action for a breach **must necessarily be in contract**." *Id*. at 736 (emphasis added).

---

[1] Of course, this same rule exists today in Texas, and is called the economic loss rule. According to the Fifth Circuit, the Texas Supreme Court "adopted the 'economic loss' rule, which requires plaintiffs to recover their economic losses resulting from a defective product in contract rather than in tort." *Hininger v. Case Corp.*, 23 F.3d 124, 126 (5th Cir. 1994) (citing *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977)). As discussed here, although the Texas courts did not name this doctrine until 1977, pre-cession case law held much the same thing.

If a claim arose under contract but not tort, Texas law required dismissal of the tort claim. In *Galveston, H. & S.A. Ry. Co. v. Hennigan*, 76 S.W. 452 (Tex. Civ. App. 1903), the plaintiff was a railroad employee whose contract of employment required the employer to provide medical care to its employees. *Id*. at 452. When the employer failed to provide that medical care, the injured plaintiff sued in tort (but not in contract) and recovered a judgment on his negligence claim. The Court noted, as is also the case here, that the defendant owed no duty in common law to the plaintiff outside the contract: "No duty arising from the relation of master and servant is imposed by law upon the former to furnish medical treatment." *Id*. at 453. Left with no duty outside the contract, the evidence "shows no breach of a legal duty by the defendant towards the plaintiff, but simply an omission of the former to perform a contract involving no legal duty." *Id*. at 454. Because such a duty arose solely out of contract and did not exist in law, the Court concluded that "the ingredients of contract and elements of negligence and the damages flowing merely from the breach of one and the existence of the other are so essentially different that we cannot see how a case can be properly tried and a right judgment entered upon the theory that the cause of action arises from negligence, when it is merely a breach of contract." *Id*. The judgment on the negligence claim was reversed, as in other cases where a party pled tort but the courts held that the matter arose solely from contract. *Id*. at 454; *see Hewitt v. Buchanan*, 4 S.W.2d 169, 175 (Tex. Civ. App. 1927) (no claim for negligence in suit alleging builder failed to fulfill contract); *Sanger Bros. v. Barrett*, 221 S.W. 1087, 1089 (Tex. Civ. App. 1920) ("A suit on contract will not authorize a recovery for a tort"); *Pecos & N.T. Ry. Co. v. Amarillo St. Ry. Co.*, 171 S.W. 1103, 1107 (Tex. Civ. App. 1914) (held error to give negligence instruction for failure to perform under contract).

In the present case, the duty to repair under pre-1952 Texas law arose entirely from the repair clause in the lease agreement, as the common law imposed no such duty. *See, e.g.,*

*Yarbrough v. Booher*, 174 S.W.2d 47, 48 (Tex. 1943) (no recovery for plaster falling upon tenant). Nor was an action for personal injury allowed even where a contract imposed such a duty: "Ordinarily a contract by a landlord to repair is made with a view to comfort and convenience only, and not for the purpose of protecting the tenant or a member of his family from some threatened personal injury. In such case no duty would be implied to use care for protection against injury of this character." *Ross v. Haner*, 258 S.W. 1036, 1042 (Tex. Comm'n App. 1924) (distinguishing case where promise made with express intent to forestall injury).

This is therefore a case "where the duty imposed upon the defendant arises purely by virtue of a contract," and any tort claims premised on that duty must be dismissed. There is no duty to repair outside the contract or any proof to support express intent of Defendants to forestall personal injury to Plaintiffs. The case is an action on the contract, not an action in tort. Therefore, Plaintiffs' claims for negligence and gross negligence (Counts 4 and 11) must be dismissed.

B.  *The Nuisance Claims Are Not Supported by Pre-1952 Texas Law*

Much of the applicable Texas law on nuisance is the same now as under pre-cession Texas law, and the same arguments asserted in Defendants' original briefing require dismissal of Plaintiffs' nuisance claims. The reasons for dismissal of the nuisance claims are: (1) Plaintiffs' nuisance claims are repackaged claims for breach of the lease, and pre-cession Texas law does not permit the assertion of a nuisance claim for breach of a lease obligation; (2) Plaintiffs' negligent nuisance claims must be dismissed along with their negligence claims, and (3) Plaintiffs' intentional nuisance claims fail because Plaintiffs failed to present sufficient evidence of an intent to cause the complained-of conditions.

20455947.7

1. <u>Pre-cession Texas law does not recognize nuisance claims for a breach of a lease obligation</u>

Historically in Texas as elsewhere, the black-letter law defined nuisance as "a use of one's own property in such a manner as to cause injury to the property or other right or interest of another and generally results from the commission of an act **beyond the limits of the property affected.**" 39 Am. Jur. *Nuisance* § 3 (1942) (emphasis added); *see also* 66 C.J.S. *Nuisances* § 14 (nuisance is "a wrongful, nontrespassory invasion of or interference with **another's** use and enjoyment of **their** land, property, or legal rights or interest ….") (emphasis added). In pre-cession Texas parlance, nuisance law existed to ensure that "every citizen has the right to enjoyment of his home without hurt or injury from any unlawful acts or conduct **of his neighbor**, and that no person has the right to make such use **of his property** as unlawfully works hurt or injury **to his neighbor**." *Fields Sewerage Co. v. Bishop*, 30 S.W.2d 412, 415 (Tex. Ct. Civ. App.-Dallas 1930) (emphasis added). In fact, Texas nuisance cases prior to 1952 dealt exclusively with nuisance claims by one landowner against an adjacent landowner.[2]

In short, Plaintiffs' nuisance claims here must be dismissed because a nuisance claim is properly brought between the owners or occupiers of adjacent properties. A claim for an alleged failure to repair a rental property according to a lease is properly brought as claim for breach of

---

[2] *See, e.g., Storey v. Central Hide & Rendering Co.*, 226 S.W.2d 615 (Tex. 1950) (nuisance action brought by landowners against operators of "a rendition plant in the vicinity of the petitioners' land"); *Hoover v. Horton*, 209 S.W.2d 646 (Tex. Ct. Civ. App.-Amarillo 1948) (nuisance action between operators of "neighboring farms"); *O'Daniel v. Libal*, 196 S.W.2d 211 (Tex. Ct. Civ. App.-Waco 1946) (nuisance action brought by homeowners "in close proximity" to livestock auction sales barn); *Rainey v. Red River, T. & S. Ry. Co.*, 89 S.W. 768 (Tex. 1905) (nuisance action brought to prevent railroad from conducting certain activities on their property "in close proximity to his residence"); *Marsan v. French*, 61 Tex. 173 (1884) (nuisance brought by "contiguous" homeowners against owner of rental properties being used for prostitution); *Burditt v. Swenson*, 17 Tex. 489 (1856) (nuisance brought by neighbors against a livery stable).

that lease.[3] This was true before 1952 and remains true today. Defendants find not a single case in Texas, either pre-cession or post-cession, which permits a nuisance claim by a tenant against his landlord for conditions in the tenant's residence (as opposed to common areas under the landlord's direct control, and the like).[4] That is so not only because this factual scenario is inappropriate for a nuisance claim specifically, but also because Texas law, both before and after 1952, more generally prohibits the assertion of tort claims for those claims that sound in contract, as we saw above regarding negligence. *Int'l Printing*, 198 S.W.2d at 736 ("in cases where the duty imposed upon the defendant arises purely by virtue of a contract, the action for a breach must necessarily be in contract.").

    2. <u>Plaintiffs' negligent nuisance claims must be dismissed along with their negligence claims</u>

As explained by Dean William Prosser, nuisance is "a kind of damage done, rather than any particular conduct" and "may be inflicted by conduct which is intended to cause harm, by that which is merely negligent, or by that which involves an unusual hazard or risk …." Prosser, *Nuisance Without Fault*, 20 Tex. L. Rev. 399, 416-17 (1942). In Count 9, Plaintiffs allege that the damage done to them was by virtue of negligence on behalf of Defendants. [9, at ¶ 192]. However, as discussed above, Plaintiffs' negligence claims must be dismissed. See Section I.A. According to pre-cession Texas law, as interpreted by the Fifth Circuit, "in all cases where negligence has

---

    [3] The gravamen of Plaintiffs' complaint is that Defendants "systematically under-maintained" their rental homes. [9, at ¶ 3]. With respect to nuisance, Plaintiffs allege that Defendants "refused to act" or "negligently failed to act" despite owing a "duty as landlord." [9, at ¶¶ 186,192]. That duty arises only from the lease. *Yarbrough*, 174 S.W.2d at 48.

    [4] Other states have spelled out that a "tenant cannot sue his own landlord for a nuisance on the property that the tenant rents from the landlord." *Doe v. New Bedford Hous. Auth.*, 630 N.E.2d 248, 257 (Mass. 1994). As the *Doe* court observed, it's the essence of nuisance that something on one parcel of land affects conditions on a neighboring parcel. *Id.* The *Bishop* case's reference to "neighbors" shows that the post-cession holding in *Doe* comports with pre-cession Texas law.

20455947.7

created, or contributed to the creation of, the nuisance such negligence should be alleged." *King v. Columbian Carbon Co.*, 152 F.2d 636, 641 (5th Cir. 1945); *see also* 31 Tex. Jur. *Nuisances* § 11, at 421 (quoted in *King*, 152 F.2d at 639) ("However, where the act or condition in question can become a nuisance only by reason of the negligent manner in which it is performed or permitted, no right of recovery is shown independently of the existence of negligence"). This claim must be dismissed because such negligence does not lie.

### 3. Plaintiffs have not presented evidence demonstrating intent to cause alleged conditions

In Count 8, Plaintiffs state a claim for intentional nuisance. In the words of Dean Prosser, intentional nuisance involved conditions which were "inflicted by conduct which [was] intended to cause harm …." Prosser, *Nuisance Without Fault*, 20 Tex. L. Rev. at 416-17. Pre-1952 Texas law explained the actions causing an intentional nuisance as "voluntary, intentional conduct … with the consequences [a defendant] knew were inevitably resulting and would indisputably continue to result therefrom." *Columbian Carbon Co. v. Tholen*, 199 S.W.2d 825, 828 (Tex. Ct. Civ. App.-Galveston 1947). A common example of such a nuisance was that of a factory or plant. In *King*, the defendant's plant emitted soot and "carbon black, a greasy distillate" which "damage[d] the land of these plaintiffs.", 152 F.2d at 638; *see also Marvel Wells, Inc. v. Seelig*, 115 S.W.2d 1011, 1012 (Tex. Ct. Civ. App.-Austin 1938) (ashes emitted from plant). This category of nuisance action allowed plaintiffs an opportunity to seek a remedy for a claimed nuisance, despite the defendant's operation of such a plant being "lawful and serv[ing] a useful purpose …." *King*, 152 F.2d at 638. In other words, the plant intended to operate as it did, even though it claimed that the manner of its operation was lawful and useful. This type of action is wholly inapplicable here. The complained-of conditions did not "inevitably" result from any actions of Defendants. After all, the Vinales' primary complaints are for pest control and mold, and nothing Defendants

did nor did not do "inevitably" resulted in those conditions. Nor is there any proof of intent to cause those conditions.

There is no proof in this record of "voluntary, intentional conduct" which "inevitably" resulted in conditions constituting a nuisance. This Court has already found just that: "And according to Plaintiffs, Defendants would respond to those calls, conduct maintenance, and then inform Plaintiffs that the problem had been fixed, only for Plaintiffs to encounter the same issues later." [349, at 3]. As the Court stated, that is the most that Plaintiffs could prove. Plaintiffs have no proof of any intent or knowledge, since they have no document evidencing such an intent, have no deposition testimony from any of Defendants' employees, and have remained silent on any proof of intent on this or any other claim. Further, Mrs. Vinales, after a point-by-point review of her work order history, could not identify any entry that was not completed. [260 at 16]; [260-5 at 303:9-10]. In light of this admission that 102 work order entries were completed, Defendants' maintenance could hardly be said to be "intentional" and "inevitably" creating conditions constituting a nuisance. [260-11].

## II. Claims of Spouse and Family-Member Plaintiffs Must Be Dismissed

As described above, Plaintiffs' negligence and nuisance claims must be dismissed. Following that dismissal, the only remaining substantive claim is for breach of the Lease, Count 3. However, the servicemember is the only signatory to the military housing Lease. [260-2]. In this case, Becky Vinales and her children were not signatories to the Lease, and have no rights under that contract. The black-letter law in the early 20th century was that "[a]s a general rule **only** the lessee may maintain an action for damages for the lessor's breach of a covenant in the lease." 35 C.J. *Landlord and Tenant* § 496 (1924). (emphasis added). This rule applied in Texas: "It is a general rule, well established, that only parties to a contract and those in privity with them can maintain a suit for breach of … contract." *Dallas Power & Light Co. v. Carrington*, 245 S.W.

1046, 1048 (Tex. Civ. App.-Dallas 1922), *writ dismissed* (Apr. 4, 1923). The mere relationship of husband and wife did not create privity of contract between them under pre-cession law. *See Great Atl. & Pac. Tea Co. v. Walker*, 104 S.W.2d 627, 634 (Tex. Civ. App.-Dallas 1937), *rev'd*, 131 112 S.W.2d 170 (Tex. 1938) (wife not in privity with husband's contract with retailer to buy can of spoiled corn; reversed on grounds of implied warranty of fitness of goods). Thus, the general rule enforced in pre-cession Texas law was that non-signatories had no claim under a contract, including a lease agreement.

While the spouse and family members may attempt to claim that they were third-party beneficiaries under the Lease, Texas law prior to 1952 (and after 1952 for that matter) held that the concept of third-party beneficiary was available only in very limited circumstances. The general rule in Texas prior to 1952 prohibited the application of the doctrine to "incidental" beneficiaries, and applied it only for expressly intended beneficiaries. The presumption is that a contract has no third-party beneficiary: "Parties are presumed to contract for themselves. It follows that a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties." *Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co.*, 150 S.W.2d 1003, 1006 (Tex. 1941). "One claiming to be a third party beneficiary under a contract alleged to have been made for his benefit cannot recover thereon merely because he will be incidentally benefited by its performance. He must be a party to the consideration or the contract must have been entered into for his benefit …." *Price v. Lee*, 119 S.W.2d 673, 675 (Tex. Civ. App. 1938) (citing 13 C.J. 709, § 817), *dismissed.* The contract must expressly state the parties' "direct liability to third persons. An intent to make an obligation inure to the benefit of a third party must clearly appear in the contract, and if there is any doubt about it,

it should be construed against such intent." *Cannon Ball Motor Freight Lines v. Grasso*, 59 S.W.2d 337, 343 (Tex. Civ. App. 1933), *aff'd*, 81 S.W.2d 482 (Tex. Comm'n App. 1935).

> It is true that plaintiff in error might have received benefit from the performance of the contract by the defendant, but 'it is not every promise made from one to another, from the performance of which a benefit may inure to a third, which will give a right of action to such third person, he being neither privy to the contract nor to the consideration. The contract must be made for his benefit as its object, and he must be the party intended to be benefited.'

*House v. Houston Waterworks Co*., 31 S.W. 179, 180 (Tex. 1895) (citation omitted).

In Texas law pre-cession, two exceptions to that general rule were for "donee beneficiaries" and "creditor beneficiaries": "a third person for whose benefit a contract is made, whether he is a creditor beneficiary or a donee beneficiary, has by virtue of the contract a right that he may enforce by suit against the promissor." *Edds v. Mitchell*, 184 S.W.2d 823, 829 (Tex. 1945). The contracting servicemembers' families in this case are incidental beneficiaries, not donee or creditor beneficiaries. The latter type may sue on a contract where one person promises another to pay the other's debt to the creditor. *Breaux v. Banker*, 107 S.W.2d 382, 389 (Tex. Civ. App. 1937), *rev'd on other grounds*, 128 S.W.2d 23 (Tex. Comm'n App. 1939). The former type is the recipient of a gift not legally owed, as in the common example of the beneficiary of a contract for life insurance. *Id*.; Ira P. Hildebrand, *Contracts for the Benefit of Third Parties in Texas*, 9 Tex. L. Rev. 125, 164–65, 168 (1931). Neither applies here. There was no intention by AETC Housing to confer any benefits on the servicemembers' families, as opposed to the incidental benefit to the family of being allowed to live there at the servicemember's discretion. Nothing in the contract indicates any expectation that the lessor would have "direct liability" to non-signatory tenants for breach of the Lease covenants.

For these reasons, the covenant to repair applies only as between the lessor and the lessee, and relatives of the lessee are not entitled to sue for its breach. They must be dismissed as to the

cause of action for breach of contract.

### III.    The Federal Enclave Doctrine Bars Additional Elements of Plaintiffs' Damages

Plaintiffs' claims for damages must be based on Texas law existing at the time of cession and, if not, must be dismissed under the federal enclave doctrine. The Court has already correctly concluded that Plaintiffs' claims for mental distress and attorney fees were not supported by pre-cession law and has dismissed them. [349]. Plaintiffs' claims for damages for their personal property, rent payments, and exemplary or punitive damages must suffer the same fate.

#### A.    Plaintiffs' Claims for Personal Property Damage Require Expert Testimony and Must Be Dismissed for Lack of Such Testimony

Texas law requires expert testimony for specialized and complex matters on which lay people are not qualified to opine. In Texas, prior to 1952, "in a case where the evidence, and the facts to be deduced therefrom, are undisputed, and the case concerns a matter of science or specialized art or other matter, of which a layman can have no knowledge, the jury must base their conclusion upon the testimony of the experts." *Gulf, C. & S.F. Ry. Co. v. Young*, 284 S.W. 664, 669 (Tex. Ct. Civ. App.-Dallas 1926) (quoting *Moratsky v. Wirth*, 76 N.W. 1032 (Minn. 1898)). Many Texas decisions from the pre-cession period rejected claims and damages which were not supported by expert testimony, but were required to be. *Bowles v. Bourdon*, 219 S.W.2d 779, 782 (Tex. 1949) ("When a case concerns the highly specialized art of treating (disease), with respect to which a layman can have no knowledge at all, the court and jury must be dependent on expert evidence. There can be no other guide, and, where want of skill or attention is not thus shown by expert evidence applied to the facts, there is no evidence of it proper to be submitted to the jury."); *Gulf, C. & S.F. Ry. Co. v. Downs*, 70 S.W.2d 318 (Tex. Ct. Civ. App.-Dallas 1934) (defendant's expert testimony on cause of fire required reversal of jury verdict in absence of contrary evidence); *Floyd v. Michie*, 11 S.W.2d 657, 658-59 (Tex. Ct. Civ. App.-Austin 1928) (upholding directed

11

verdict finding no liability for wrongful death because without expert, no evidence to support recovery).

Plaintiffs here allege damage to their personal property caused by mold.[5] Like determining the source of a fire or analyzing treatment of disease, pre-cession Texas law demands that the complex question of whether contents are damaged by mold; the extent of such damage; and the possibility or cleaning, restoration, or replacement must be addressed by expert testimony. In fact, such questions are governed by ANSI standards S500 and S520 and in Texas today, and such determinations can only be made by a Texas-licensed mold assessor. Tex. Occ. Code § 1958.101(a). S500 and S520, for example, require, among other things, (1) an item-by-item assessment of damage for each piece of personal property; (2) if damaged, an assessment of the type of item and the restorability of that item; and (3) an assessment as to each item whether cleaning or replacement was the appropriate remedy. [245 at 4]. There was, and is, no dispute that such questions can only be made by an expert. Plaintiffs' own expert, Kristy Beck-Miller, admitted the necessity of expert opinion on this subject and expressly declined making those determinations in this case.[6] In short, these Plaintiffs have failed to present sufficient summary judgment evidence that they suffered any such damage. Pre-cession Texas law requires expert testimony on complex matters such as this, and Plaintiffs have none. Plaintiffs' property damage claims should be dismissed.

---

[5] "The majority of their personal property, including nearly all porous personal property … has been ruined by mold." [9, at ¶ 102]. Shane Vinales' declaration alleged damages to a "China hutch," bookcase, bed frames, a dresser, an entertainment center, "and other furniture and personal related items" which supposedly "had to be thrown out." [319-8, ¶¶ 20, 24]

[6] "Q: So this [content remediation] is not something that a plaintiff in this case can do on their own; they must have an expert to do it, true? A: True. Q: And to your knowledge, there is no expert on the contents remediation portion, correct? ... The Witness: Correct. Q: … Because you didn't do it. A: I did not." Depo. of Beck-Miller, Vol. 2 [245-4, at 32:17-33:1].

B.     *Plaintiffs Are Not Entitled to Recover Rents Paid*

Plaintiffs have contended that they are entitled to recover the monies paid on their behalf for rent.[7] See, e.g., [319-8] (S. Vinales declaration), at 6 (including payment of BAH as item of damages). Plaintiffs' theory is that they are entitled to recover their BAH paid because AETC Housing supposedly breached its lease obligation to repair their housing, thus causing them to live in an unsuitable house. As Shane Vinales testified by declaration, "Hunt's failure to provide quality housing … caused us to pay BAH rent for an unsuitable house …." [319-8, ¶ 27].

However, under black-letter Texas law prior to cession, the tenant's obligation to pay rent was separate from the landlord's obligation to repair, and the performance of one duty was not contingent upon the completion of the other. "In this regard it may be said that the usual covenant by the landlord to repair is independent of covenants by the tenant, and therefore performance of the covenant to repair is not a condition precedent to the right to enforce the lessee's covenants." 28 A.L.R. 1448, *Rights and Remedies of Tenant upon Landlord's Breach of Covenant to Repair* (1924). The tenant's duty to pay rent continued regardless of the landlord's duty to repair, and the landlord remained liable for all damages caused by its failure to repair. The foregoing A.L.R. article is cited as correctly stating the pre-cession law of Texas:

> The covenant of the landlord to repair and the tenant's covenant to pay rent are regarded as independent covenants unless the contract between the parties evidences the contrary. Accordingly, the breach by the landlord of his covenant does not justify the refusal of the tenant to perform his covenant to pay rent. **Certainly this is true when the tenant remains in possession, occupancy, and use of the premises** as the undisputed evidence in this case shows was done. The

---

[7] Rent in this case is the same as the Base Allowance Housing (BAH). In essence, each servicemember receives a BAH depending on rank and where they are stationed, and they may use their BAH for on-base military housing (as in this case) or spend it on housing off-base. The Lease in this case provides that the "rent" is equal to BAH. See [260-2, at ¶ 5(a)-(d)]. Thus, when Plaintiffs claim they want their "rent" returned, they want a refund of BAH amounts paid under the Lease on their behalf by the government.

> tenant is remitted to the right to recoup himself in the damages resulting from the landlord's breach of his covenant to repair.

*Mitchell v. Weiss*, 26 S.W.2d 699, 700–01 (Tex. Civ. App. 1930) (emphasis added). Of course, Plaintiffs likewise "remained in possession, occupancy, and use of the premises," so it is "certainly true" that they owed rent regardless of any breach of the covenant to repair.

This pre-cession rule at common law was called the "independent covenants" rule, and its application meant that Plaintiffs could not recover rent payments for the time when they continued in possession of the premises. The 1988 case abrogating the rule gave a useful summary of the old rationale underlying the common law position that applies in our case.

> At common law, the lease was traditionally regarded as a conveyance of an interest in land, subject to the doctrine of caveat emptor. The landlord was required only to deliver the right of possession to the tenant; the tenant, in return, was required to pay rent to the landlord. Once the landlord delivered the right of possession, his part of the agreement was completed. The tenant's duty to pay rent continued as long as he retained possession, even if the buildings on the leasehold were destroyed or became uninhabitable. **The landlord's breach of a lease covenant did not relieve the tenant of his duty to pay rent for the remainder of the term because the tenant still retained everything he was entitled to under the lease—the right of possession.** All lease covenants were therefore considered independent.

*Davidow v. Inwood N. Pro. Grp.-Phase I*, 747 S.W.2d 373, 375 (Tex. 1988) (emphasis added). While the "independent covenants" rule is no longer the law, that was the law in 1952 and before, and is the law applicable to this case.

Therefore, Plaintiffs' claims for refund of rent or BAH must be dismissed.

C. *Plaintiffs' Claim for Exemplary Damages Fails Because Plaintiffs' Gross Negligence Claim Fails*

Under Texas law prior to 1952, exemplary damages could not be recovered for simple breach of contract. "The rule in this State is that exemplary damages cannot be recovered for a simple breach of contract, where the breach is not accompanied by a tort, even though the breach

14

is brought about capriciously and with malice." *A L. Carter Lumber Co. v. Saide*, 168 S.W.2d 629, 631 (Tex. 1943). Following this Court's order on the Vinales' motion [349], the only claims remaining were for breach of contract, negligence, and nuisance. Of those, the only remaining claim which could have supported a claim for punitive or exemplary damages was the gross negligence claim. Because that claim sounds in contract rather than tort and must be dismissed, *see supra* I.A., Plaintiffs' claims for exemplary damages must also be dismissed. This result has the further consequence of barring exemplary damages and mooting Plaintiffs' claim for gross negligence.

### IV. Conclusion

For the reasons outlined above, and in Defendants' Motion for Summary Judgment [260], Plaintiffs' negligence and nuisance claims; all claims of Becky Vinales and their children; and Plaintiffs' damages for their personal property, rent, and exemplary damages should be dismissed.

Respectfully submitted, this the 24th day of January 2023.

/s/ *Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
(*admitted to W.D. of Tex. on 7/28/2020*)
Jennifer J. Skipper, State Bar No. 24076171
Balch & Bingham LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201-2133
Telephone: 601-965-8182
Facsimile: 866-501-9984
E-Mail: jskipper@balch.com
   wboone@balch.com

Julia W. Mann, State Bar No. 00791171
Erica Benites Giese, State Bar No. 24036212
JACKSON WALKER LLP
112 East Pecan Street, Suite 2400
San Antonio, Texas 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail: jmann@jw.com

20455947.7

egiese@jw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 24th day of January 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

    Randall A. Pulman, Esq.
    Ryan C. Reed, Esq.
    Matthew J. McGowan, Esq.
    Sarah Jackson, Donahue, Esq.
    PULMAN, CAPPUCIO, & PULLEN, LLP
    2161 NW Military Highway, Suite 400
    (210) 222-9494 Telephone
    (210) 892-1610 Facsimile
    E-Mail: rpulman@pulmanlaw.com
     rreed@pulmanlaw.com
     mmcgowan@pulmanlaw.com
     sdonahue@pulmanlaw.com

    James R. Moriarty, Esq.
    LAW OFFICES OF JAMES R. MORIARTY
    4119 Montrose, Suite 250
    (713) 528-0700 Telephone
    (713) 528-1390 Facsimile
    E-Mail: jim@moriarty.com

    Francisco Guerra, IV
    Jennifer Arlene Neal
    Robert E. Brzezinksi
    WATTS GUERRA, LLP
    Four Dominion Drive, Bldg. 3, Suite 100
    San Antonio, TX 78257
    (210) 477-0500
    E-Mail: fguerra@wattsguerra.com
     jneal@wattsguerra.com
     rbrzezinski@wattsguerra.com

    /s/ *Walter H. Boone*
    Walter H. Boone, MS Bar No. 8651
    (*admitted to W.D. of Tex. on 7/28/2020*)

20455947.7