**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MICHAEL J. DANIELS and BARBARA HIGH-DANIELS, et al.** | § | |
| | § | |
| | § | |
| **PLAINTIFFS** | § | |
| | § | |
| **v.** | § | **NO. 5:19-cv-01280-RBF** |
| | § | |
| **AETC II PRIVATIZED HOUSING, LLC; et al.** | § | |
| | § | |
| **DEFENDANTS** | § | |

---

### DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL BRIEF [358] IN SUPPORT OF SUMMARY JUDGMENT

---

I.      **The Federal Enclave Doctrine Requires Dismissal of Plaintiffs' Negligence and Nuisance Claims.**

   A.      *Pre-cession Texas law requires dismissal of Plaintiffs' negligence claims because they arise solely from the Lease and sound only in contract, not tort.*

Defendants made two arguments as to negligence. First, Plaintiffs' action sounds in contract, barring any attempt to plead in tort. Plaintiffs' response ignores the first argument, thus conceding it. *Garner v. Martin Marietta Materials, Inc.*, No. 1:20-CV-01167-DAE, 2021 WL 4993487, at *2 (W.D. Tex. Oct. 27, 2021) (finding waiver where "Plaintiff did not respond to Defendant's arguments in his brief"). On that ground, Plaintiffs' tort claims should be dismissed.

Second, pre-cession Texas law creates no general duty in tort for a landlord to repair a tenant's dwelling. On this argument, Plaintiffs misconstrue the holding of *Ross v. Haner*, 258 S.W. 1036 (Tex. Comm'n App. 1924). In *Ross*, there was an express promise to repair an upper-story window latch, and the landlord knew that the tenant specifically feared that failure to install the latch would lead to her child's falling out. *Ross*, 258 S.W. at 1036. Finding that the repair had not

1

been made, the tenant "at once notified plaintiffs in error of this, and they advised her that they too thought the repair had been made, and assured her that they would have it attended to at once. The Petries, relying on this promise, did not know the fastening had not been placed on the screen until after defendant in error fell and was injured." *Id*. The issue at law was clearly stated in the opinion:

> Defendant in error [i.e., the plaintiff below] contends that where the landlord, for a valuable consideration, and as part of the contract of tenancy, agrees to make a **specific repair** to avert a condition of **apparent danger**, and fails through negligence to make such repair, which is a proximate cause of injury to the tenant's infant child, he is liable for such injury, **where it is clear that the safety of the child was within the mutual contemplation of the parties**, and was the **purpose** for which the promise of repair was required and made.

*Id*. at 1037 (emphasis added). Plaintiffs have failed to offer any factual showing as to any of the elements boldfaced above. There is no "specific repair" cited. There was no "condition of apparent danger"; indeed, the Vinales have stipulated they incurred no personal injuries. The "mutual contemplation of the parties" did not embrace any danger or safety issue, and this "purpose" was ultimately why the landlord in *Ross* was held liable: the case carved out a narrow exception to the general rule. The *Ross* decision is longwinded, but its actual holding is as follows:

> ... Ordinarily a contract by a landlord to repair is **made with a view to comfort and convenience only**, and not for the purpose of protecting the tenant or a member of his family from some threatened personal injury. **In such case no duty would be implied** to use care for protection against injury of this character. However, it being evident in the instant case that the plaintiffs in error entered into the contract to make this repair, **contemplating at the time that their failure to do so would result in defendant in error falling from the window**, their negligent failure to perform their contract rendered them liable for the injury.

*Id*. at 1042 (emphasis added). The only way for Plaintiffs to enjoy the *Ross* exception would have been for them to show that a particular repair was sought for the purpose of averting "some threatened personal injury," that the landlord was on notice of that purpose, and that the landlord in "contemplating" that purpose made the specific promise to carry out the particular repair, resulting in the anticipated injury. Plaintiffs have not done so.

The other cases cited by Plaintiffs do not alter this result. The decision in *Burton-Lingo Co.*

2

rejects "the idea that the lessor may be liable for defects which, in the exercise of reasonable care the landlord could have discovered, for the reason that the tenant is, in law, required to exercise the same degree of care to discover the dangerous condition of the premises as required by the landlord." *Burton-Lingo Co. v. Morton*, 126 S.W.2d 727, 734 (Tex. Civ. App.-Eastland 1939) (quoting 36 C.J. 206, § 877), *aff'd*, 150 S.W.2d 239 (Tex. Comm'n App. 1941). Plaintiffs allege that AETC Housing knew of a dangerous condition that it did not reveal, but they offer zero proof that could create a fact issue for a jury, as this Court observed in dismissing their claims for fraud or fraudulent concealment. Likewise, all the *Goldstein Hat* case shows is that in the absence of a landlord's promise to repair, a tenant must keep his premises safe. *Goldstein Hat Mfg. Co. v. Cowen*, 136 S.W.2d 867, 873 (Tex. Civ. App.-Dallas 1939), *writ dismissed, judgment correct*.

Moreover, Plaintiffs offer no authority for the notion that a landlord's reserving the right to make or approve repairs brings the tenant's dwelling within the scope of a "common area" like a passageway between units as in *Paternostro v. Bradley*, 262 S.W. 896, 898 (Tex. Civ. App.-Dallas 1924). Finally, the remark in *Jackson v. Amador* that a tenant's relative "can maintain an action ex delicto against a landlord for breach of covenant with his tenant to make repairs," *Jackson v. Amador*, 75 S.W.2d 892, 893 (Tex. Civ. App.-Eastland 1934), *writ dismissed*, based on a citation to *Ross*, cannot expand its holding beyond the narrow exception created in *Ross*. At most, the language was mere *obiter dictum*: "But, that question is not before us for decision, for the jury found that no covenant to repair was made by the landlord." *Id*.

AETC Housing contracted to provide repairs, and Plaintiffs can sue for breach of that contract. But neither the applicable case law nor the facts offered in opposition to summary judgment raise any issue of negligence for failure to carry out that contract. Plaintiffs' claims for negligence and gross negligence must be dismissed as a matter of law.

B.     *Pre-cession Texas law does not support Plaintiffs' nuisance claims.*

1.     <u>Pre-cession nuisance law does not encompass landlord-tenant disputes.</u>

The parties agree that "there are no pre-1952 Texas cases that address a nuisance cause of action in connection with a landlord/tenant relationship." [361 at 7]. Despite that recognition, Plaintiffs implore this Court to reach into the "legal garbage can" of nuisance law, travel back in time, and create a new cause of action in the present suit. William R. Prosser, *Nuisance Without Fault*, 20 Tex. L. Rev. 399, 410 (1942); [361 at 7]. That is inappropriate and, equally important, unnecessary here. This Court need not parse an area of law which "is incapable of any exact or comprehensive definition" in search of a cause of action. *Crosstex N. Tex. Pipeline, LP v. Gardiner*, 505 S.W.3d 580, 591 (Tex. 2016). This is a simple breach of contract case, and that is the claim available here.[1] The parties agree that the Lease contained a repair clause which requires a "diligent effort to repair or remedy" where AETC Housing was given notice of damage. Because Plaintiffs have failed to identify any case law where a nuisance claim was successfully brought under similar facts, Counts 8 and 9 of the Amended Complaint must be dismissed.

2.     <u>Plaintiffs' negligent nuisance claims must be dismissed.</u>

As explained above, Plaintiffs' negligence claims must be dismissed because those claims sound in contract and arise solely from the Lease. *See* Section I.A. Because a negligent nuisance claim requires "the existence of negligence," this claim must be dismissed as well. *King v. Columbian Carbon Co.*, 152 F.2d 636, 639 (5th Cir. 1945).

3.     <u>Plaintiffs' intentional nuisance claims must be dismissed.</u>

Plaintiffs' intentional nuisance claims must fail because they have not proved any intent to

---

[1] For the reasons stated in Defendants' original summary judgment motion and reply, [260 at 15-17; 330 at 9-10], Plaintiffs have not demonstrated a breach of the Lease.

16364203.12

cause conditions constituting a nuisance. *Columbian Carbon Co. v. Tholen*, 199 S.W.2d 825, 828 (Tex. Ct. Civ. App.-Galveston 1947) ("voluntary, intentional conduct … with the consequences [a defendant] knew were inevitably resulting … therefrom."). In response, Plaintiffs pointed to the Amended Complaint, a declaration stating that some unidentified conditions recurred, and their work order history. [361 at 10-11]. This "evidence" dumped at the Court's doorstep—even if competent summary judgment evidence—shows only that Plaintiffs' homes, like all homes, had maintenance histories. Plaintiffs have not shown which conditions recurred, how frequently, nor that Defendants intended the conditions to recur. While Plaintiffs' work order history does suggest that some issues—like a leaking toilet—occurred more than once, there is no dispute maintenance responded to and fixed those complaints,[2] and a leaking toilet does not mean, in and of itself, a failure to repair, or that anyone intended that condition to recur. See [361-1 at 72, 74] (noting leak in maid's toilet on October 17, 2017 and March 13, 2019). These facts *as a matter of law* cannot support a finding of intentional nuisance. Plaintiffs' complaints of a condition which occurred again cannot form the basis for any claim, much less an intentional nuisance claim.

## II.     Breach of Contract Claims of Spouses and Family Members Must Be Dismissed.

Contrary to Plaintiffs' argument, *Ross* is irrelevant to the question of third party beneficiary status. Whether the tenant's minor child could recover in contract against the landlord was not addressed in *Ross v. Haner*. As the lower court decision that was affirmed makes more plain, the case sounded in tort as a negligence action. *See Ross v. Haner*, 244 S.W. 231, 235 (Tex. Civ. App.-Beaumont 1922), *writ granted* (Nov. 29, 1922), *aff'd*, 258 S.W. 1036 (Tex. Comm'n App. 1924).

Plaintiffs are correct that this Court should consider the Lease as a whole in resolving

---

[2] Mrs. Vinales admitted that every work order her family submitted was completed. [260-5 at 303:9-10].

16364203.12

whether family members are intended third party beneficiaries. As Plaintiffs' brief recognizes, the family members are directly mentioned only in Section 8 of the Lease, but that mere mention does not mean what Plaintiffs say it does. The unambiguous purpose of listing the family members in Section 8 is to assure that no one else resides in the dwelling. Section 8 begins, "**Resident agrees** that the premises shall be occupied by his immediate family ..." [260-2 at ¶ 9] (emphasis added). Only the resident makes this agreement, not the landlord, which does not itself "agree" that those people will live there. Section 9 limits "use of premises" to family members. *Id*. Under the Lease, the landlord is simply trying to assure that no one outside the family lives there. Shane Vinales may have entered into the Lease intending to benefit his wife and children, but nothing in the Lease demonstrates AETC Housing shared his intent.

The test under pre-cession Texas common law is that the contract must state expressly, not by implication, "**direct liability** to third persons," and that the "intent to make an obligation inure to the benefit of a third party must clearly appear in the contract, and if there is **any doubt about it**, it should be construed against such intent." *Cannon Ball Motor Freight Lines v. Grasso*, 59 S.W.2d 337, 343 (Tex. Civ. App. 1933), *aff'd*, 81 S.W. 2d 482 (Tex. Comm'n App. 1935) (emphasis added). Nothing in the Lease indicates any intent on the part of AETC Housing to make itself directly liable to family members for a breach of the Lease.

Under Texas law, there are only three kinds of beneficiaries to another person's promise: creditor, donee, or incidental. *Breaux v. Banker*, 107 S.W.2d 382, 389 (Tex. Civ. App.-Beaumont 1937), *rev'd on other grounds*, 128 S.W.2d 23 (Tex. Comm'n App. 1939). The family members are not creditor beneficiaries who would have the right to sue the landlord because it promised to pay their debt owed to the resident. *Id*. They are not donee beneficiaries like a life-insurance beneficiary, to whom the insurance company is obligated to pay a death benefit that is spelled out

16364203.12

in the policy. *Id*. Because they are neither kind of beneficiary, they are incidental beneficiaries who cannot maintain an action on the Lease.

### III.     The Federal Enclave Doctrine Bars Additional Elements of Plaintiffs' Damages.

   *A.     Plaintiffs' claims for personal property damage require expert testimony and must be dismissed for lack of such testimony.*

Plaintiffs agree expert testimony is required to prove "matters upon which the typical juror would not possess expert knowledge." [361 at 16]. While jurors may have experience with mold on cheese or in their shower, they have no experience with mold remediation for contents, and the necessity and scope of that remediation. Kristi Beck-Miller—Plaintiffs' own expert witness— testified that (1) deciding the nature and scope of mold remediation of personal contents "is not something that a plaintiff in this case can do on their own; **they must have an expert to do it** …." [245-4, at 32:17-19]; and (2) she had not done so. [260-8 at 119:11-120:14] (emphasis added).

Here, Plaintiffs discarded a China hutch, bookcases, bed frames, a dresser, an entertainment center, etc., claiming they were contaminated with mold and could not be remediated. [358 at 12 n.5]. Unlike with moldy cheese, jurors will not know from their own experience whether there was contamination on any particular item, whether it could be cleaned, whether it should be discarded, and what is the cost of cleaning versus the value of the item. Plaintiffs here discarded these items *based on their own subjective opinions*. Expert opinion is critical here, and there is none. Plaintiffs claim their "personal decision" to throw away property is all that matters. [361 at 16]. But if that is the rule, then the duty to mitigate[3] does not exist.

Without expert testimony on causation and remediation, Plaintiffs have no evidence their

---

   [3] *Cessac v. Leger*, 214 S.W.2d 860, 864 (Tex. Civ. App. 1948) (recognizing plaintiff's "duty to mitigate his damages as much as was reasonably possible."); [38 at 25; 39 at 25; 40 at 25] (raising affirmative defense of failure to mitigate damages).

property was damaged by mold *at all*, much less beyond repair. Their property damage claims fail.

        B.      *Plaintiffs have not proved that they are entitled to any of their rents.*

      The duty to repair and the duty to pay rent are separate obligations under pre-cession Texas law. Contrary to their argument [361, at 18-19], the Lease does not tie the resident's duty to pay rent with the landlord's duty to "make a diligent effort to repair or remedy the condition at the premises." [260-2 at ¶ 19]. Section 19 of the Lease says "Resident will be held responsible for the costs" if the resident causes damage to the premises, but it says nothing about "get[ting] a portion of their rent returned." Even if Plaintiffs attempt to prove that the residence was "uninhabitable" (for which they offer zero evidence, other than their own assertions), Plaintiffs would be entitled only to "surrender [of] possession of the Premises to Landlord." [260-2 at ¶ 22]. These Plaintiffs never surrendered possession, and want to have their cake (maintain possession) and eat it too (get their rent back). Neither the Lease nor Texas law permit them to do so.

      As for the holding of *Mitchell v. Weiss*, it is true that Plaintiffs were free to offer some proof as to reduction in the rental value of the premises, had they wished to do so:

> The usual measure applied is the reduced rental value; that is, the difference between the contract rental and the rental value in the unrepaired condition. 35 C. J. 1191.
>
> The present case is not one where the landlord has wholly breached his covenant to repair. At most the breach is but partial by failing to restore one of the buildings to as good condition as it was just before the fire. The tenant has not been disturbed in his possession of the buildings except in one of them, and then only during the brief period the repairs were being made. ... The proper measure of the tenant's damage in this case is the reduced rental value, if any, as indicated above.

*Mitchell v. Weiss*, 26 S.W.2d 699, 701 (Tex. Civ. App.-El Paso 1930). But Plaintiffs have failed to offer any such proof. As in *Mitchell*, no failure to repair has been shown to be total, and Plaintiffs remained in possession, living in the premises, storing their goods there, and denying landlord the opportunity to rent the units to someone else.

      Thus, some competent proof of the difference in rental value would be required. In the

16364203.12

foregoing quotation from *Mitchell*, the court cited as authoritative 35 C.J. 1191, § 500 of the article on "Landlord and Tenant." This same section states: "By rental value is meant … fair value, to be ascertained by proof of what the premises would rent for in the open market, or by evidence of other facts from which the fair rental value may be determined." 35 C.J. *Landlord & Tenant* 1191 n.99[b] (emphasis omitted).

But Plaintiffs have not offered any such proof. *See Umscheid v. City of San Antonio*, 69 S.W. 496, 498 (Tex. Civ. App. 1902) ("For we have seen that the measure of damages for such injury is the difference in the rental value of the land immediately before and after the injury, and there was no evidence as to what this difference in value was.") Plaintiffs have failed to put any competent proof in the record as to the true reduction in rental value, if any.

Proof of market values for real estate, rented or otherwise, typically is shown by the testimony of experts. *See State v. Clement*, 252 S.W.2d 587, 588 (Tex. Civ. App. 1952) (mere testimony "as to unaccepted offers which he had received for the land in question" did not qualify real estate agent to testify to market value); *Reeves v. City of Dallas*, 195 S.W.2d 575, 579 (Tex. Civ. App. 1946), *writ refused NRE* (expert on real estate values would consider "location and environment of the property, the purchase and sale price in an open market of similar property in the same or near-by vicinity, the price that was voluntarily paid for the property taken, the availability of the property for similarly zoned business, the kind and character of occupancy, the encumbrances, contracts, liens, leases, etc., and many other elements"); *Foley v. Houston Belt & Terminal Ry. Co.*, 110 S.W. 96, 98 (Tex. Civ. App. 1908) ("the proof of his long residence near the property, together with the fact that he had been engaged in the real estate business–that is, in negotiating sales and purchases of real estate–the prosecution of which business necessarily required a peculiar and expert knowledge of the values of improved real estate in the city in which

9

he prosecuted his business, qualified him to testify as to the value of the entire property"); *Cluck v. Houston & T.C.R. Co.*, 79 S.W. 80, 81 (Tex. Civ. App. 1904) (witness "had shown such special knowledge of the property and its uses as to entitle him to give his opinion as to its value and the value of its use"). Plaintiffs have offered no such opinions, and can't proceed without them.

      C.    *Plaintiffs' exemplary damages claims must be dismissed.*

Plaintiffs cannot show gross negligence, for the reasons set forth above, and have failed to make any showing as to such willful and wanton conduct on the part of any Defendant that might suffice to send the issue of exemplary damages to a jury.[4] Plaintiffs' response on this critical issue is a conclusory sentence supported by zero evidence. [361 at 19]. Where is the "willful," "wanton," or "malicious" conduct? Plaintiffs may be entitled to litigate whether Defendants made a "diligent" effort to repair, but Plaintiffs' silence on this issue is dispositive. See section I.A., above.

## IV.    Conclusion

Per Defendants' Supplemental Brief [358] and Motion for Summary Judgment [260], Plaintiffs' negligence and nuisance claims; all claims of Becky Vinales and their children; and Plaintiffs' damages for their personal property, rent, and exemplary damages should be dismissed.

Respectfully submitted, this the 10th day of March 2023.

/s/ *Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
(*admitted to W.D. of Tex. on 7/28/2020*)
Jennifer J. Skipper, State Bar No. 24076171
Balch & Bingham LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201-2133
Telephone:  601-965-8182
Facsimile:  866-501-9984
E-Mail: jskipper@balch.com

---

[4] The definition of gross negligence pre-cession is the same as post-cession. *Rio Grande Valley Tel. Co. v. Hocut*, 93 S.W.2d 167, 170 (Tex. Civ. App. 1936) (citations omitted), *writ dismissed* (May 27, 1936).

16364203.12

wboone@balch.com

Julia W. Mann, State Bar No. 00791171
Erica Benites Giese, State Bar No. 24036212
JACKSON WALKER LLP
112 East Pecan Street, Suite 2400
San Antonio, Texas 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail: jmann@jw.com
       egiese@jw.com
***Attorneys for Defendants***

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of March 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Randall A. Pulman, Esq.
Ryan C. Reed, Esq.
Matthew J. McGowan, Esq.
Sarah Jackson, Donahue, Esq.
PULMAN, CAPPUCIO, & PULLEN, LLP
2161 NW Military Highway, Suite 400
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
E-Mail: rpulman@pulmanlaw.com
  rreed@pulmanlaw.com
  mmcgowan@pulmanlaw.com
  sdonahue@pulmanlaw.com

James R. Moriarty, Esq.
LAW OFFICES OF JAMES R. MORIARTY
4119 Montrose, Suite 250
(713) 528-0700 Telephone
(713) 528-1390 Facsimile
E-Mail: jim@moriarty.com

Francisco Guerra, IV
Jennifer Arlene Neal
Robert E. Brzezinksi
WATTS GUERRA, LLP
Four Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 477-0500
E-Mail: fguerra@wattsguerra.com
  jneal@wattsguerra.com
  rbrzezinski@wattsguerra.com

/s/ *Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
(*admitted to W.D. of Tex. on 7/28/2020*)

16364203.12