IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL J DANIELS, ET AL., | § | |
| | § | |
| *Plaintiffs,* | § | 5-19-CV-01280-RBF |
| | § | |
| vs. | § | |
| | § | |
| AETC II PRIVATIZED HOUSING, LLC, | § | |
| AETC II PROPERTY MANAGERS, LLC, | § | |
| HUNT ELP, LTD, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Before the Court is the status of this case, which was reassigned for disposition following the consent of all parties. *See* Dkt. No. 267; 28 U.S.C. § 636(c). The Court previously granted summary judgment in part and dismissed some of the Vinales Plaintiffs' claims. *See* Dkt. No. 349. Defendants then filed supplemental briefing on the pre-1952 Texas law applicable to the Vinales Plaintiffs' remaining claims. *See* Dkt. No. 358. Plaintiffs have also filed a brief opposing separate trials in this case. *See* Dkt. No. 360. Both matters have been fully briefed.

For the reasons stated below, the Court's Order dated January 4, 2023, Dkt. No. 349, is modified to the following extent based on the parties' supplemental briefing. *See* Dkt. Nos. 358, 361, 364. Summary judgment is hereby **GRANTED IN PART AND DENIED IN PART** as to the Vinales Plaintiffs. The Court is persuaded by Defendants' arguments on the remaining claims for negligence and nuisance, and partially grants summary judgment accordingly. In all other respects, summary judgment is **DENIED** without prejudice to reraising arguments at trial.

Regarding the parties' briefing on separate trials, *see* Dkt. Nos. 360, 363, 365, Plaintiffs' request for a consolidated trial is **DENIED**. Instead, the Court will set the Vinales Plaintiffs' claims for a separate bellwether trial to be held in June, as previously discussed.

**Procedural History**

After briefing and oral argument, the Court previously granted summary judgment, in part, against the Vinales Plaintiffs on Defendants' arguments under the federal-enclave doctrine. *See* Dkt. No. 349. But the Court declined to reach most of Defendants' other arguments, as they were not supported by pre-1952 Texas case law.[1] As a result, the Vinales Plaintiffs' remaining causes of action were reduced to: Count 3 (breach of contract), Count 4 (negligence), Count 8 (intentional nuisance), Count 9 (negligent nuisance), and Count 11 (gross negligence). Plaintiffs sought *inter alia* recovery for rents paid, personal-property damage, and exemplary damages under a theory of joint liability. The Court additionally indicated an openness to revisiting the applicable pre-cession law in supplemental briefing or a motion for judgment as a matter of law.

The Court subsequently addressed the remaining motions pending on the docket in two omnibus Orders. *See* Dkt. Nos. 350, 351. Therein, the Court set a status hearing and instructed the parties to discuss next steps in the case, including trial format. Defendants then sought leave to file supplemental briefing pertaining to the partial grant of summary judgment against the Vinales Plaintiffs. *See* Dkt. No. 352. At the status hearing, the parties agreed to a briefing schedule on those two issues: pre-cession law and separate trials. *See* Feb. 9, 2023, Text Order. Both matters are now fully briefed and ripe for decision.

**Standard of Review**

Because the briefing on pre-cession law is framed as a supplement to Defendants' earlier motion for summary judgment, the Court employs the same summary-judgment standard. *See* Dkt. No. 349 at 3-4; Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

---

[1] The specific facts relevant to the Vinales Plaintiffs' claims are discussed in more detail in the original summary judgment briefing, *see* Dkt. Nos. 260, 319, and the Court's prior Order. *See* Dkt. No. 349 at 1-3. The supplemental briefing does not identify or rely on any new or additional facts.

*Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014). Courts may additionally reconsider or revise an earlier grant of summary judgment at any time before entry of final judgment. *See* Fed. R. Civ. P. 54(b).

## Analysis

As a general matter, Defendants have already met their burden of establishing the absence of any fact dispute over whether Randolph Air Force Base is a federal enclave. *See* Dkt. No. 349. Plaintiffs also do not dispute the existence of the lease agreement or identify any fact disputes that might otherwise preclude summary judgment. Instead, the primary dispute unresolved after the first round of dispositive motions is whether Defendants are entitled to summary judgment as a matter of law. Under the federal-enclave doctrine, *see generally Lord v. Loc. Union No. 2088*, 646 F.2d 1057, 1059-60 (5th Cir. 1981), this question is governed here by federal law in addition to state law in effect as of October 4, 1951, when Texas ceded exclusive jurisdiction over Randolph to the federal government. The Court endeavors to resolve those questions of law below.

### A.      Plaintiffs' Negligence Claims Cannot Be Premised on a Duty Imposed by the Lease Agreement.

Defendants argue that although there was no economic-loss rule in Texas circa 1951 identical to the rule recognized at present, courts at that time would have arrived at the same results as those applying the modern rule. The Texas Supreme Court of that era explained how to differentiate between tort and contract as follows: "an action in contract is for the breach of a duty arising out of a contract either express or implied, while an action in tort is for a breach of duty imposed by law." *Int'l Printing Pressmen & Assistants' Union of N. Am. v. Smith*, 198 S.W.2d 729, 735 (Tex. 1946) (quotation omitted). Under that definitive statement of the law from the Supreme Court of Texas, where a plaintiff's complaint involves a duty "imposed upon

3

the defendant [that] arises purely by virtue of a contract, the action for a breach must necessarily be in contract." *Id.* at 736. And a landlord has no implied duty to repair, absent express agreement otherwise. *See Yarbrough v. Booher*, 174 S.W.2d 47, 48 (Tex. 1943). The gravamen of Plaintiffs' negligence claims here is a breach of a contractual duty to repair. Thus, Defendants argue, any duty to repair here arose solely by virtue of the lease agreement, *see* Dkt. No. 260-2 at 5, and Plaintiffs can only assert claims for breach of contract, not those sounding in negligence. *See* Dkt. No. 358 at 2-4. Defendants, through this line of argument, have satisfied their summary judgment burden under pre-cession law.

Plaintiffs unpersuasively rely on personal-injury cases to support their contention that a negligence claim is viable here, where they allege damage to personal property and urge the refund of rent payments.[2] *See, e.g.*, *Ross v. Haner*, 258 S.W. 1036 (Tex. Comm'n App. 1924). In *Ross*, a tenant asked the landlord to make certain repairs to an apartment, which included supplying a latch to a third-floor window for the safety of the tenant's child, as a condition to signing the lease. *Id.* at 1036. When the landlord failed to conduct the promised repairs and the child sustained injuries after falling out of the window, the tenant sued on the child's behalf. *Id.* At trial, the jury found the landlord liable under a negligence theory, and the Court of Civil Appeals affirmed. *Id.* Providing a broad overview of the law, the Commission of Appeals of Texas explained that courts generally consider personal injuries "too remote" to be contemplated by contract, and the landlord-tenant relationship does not itself typically create a duty to

---

[2] Plaintiffs cite several other cases discussing liability for physical injuries in common areas under a landlord's control. *See* Dkt. No. 361 at 4-6; *Burton-Lingo Co. v. Morton*, 126 S.W.2d 727, 729 (Tex. App.—Eastland 1939), *aff'd*, 150 S.W.2d 239 (Tex. Comm'n App. 1941) (outdoor porch); *Goldstein Hat Mfg. Co. v. Cowen*, 136 S.W.2d 867, 869 (Tex. App.—Dallas 1939, writ dism'd judgm't cor.) (elevator shaft). But those cases don't speak to whether Plaintiffs can assert claims in negligence for breach of a contractual duty. And in citing these cases, Plaintiffs offer no explanation for how a contractual duty to repair transforms an entire *house* into a "common area" such that these cases would be informative on the issue presented.

safeguard against them. *See id.* at 1037-41. But the Commission reasoned that under the specific circumstances presented, no distinction between tort and contract was necessary:

> Ordinarily a contract by a landlord to repair is made with a view to *comfort and convenience only*, and not for the purpose of protecting the tenant or a member of his family from some threatened personal injury. *In such case no duty would be implied to use care for protection against injury of this character.* However, it being evident in the instant case that the plaintiffs in error entered into the contract to make this repair, contemplating at the time that their failure to do so would result in defendant in error falling from the window, their negligent failure to perform their contract rendered them liable for the injury.

*Id.* at 1042 (emphasis added).

According to the reasoning of *Ross*, therefore, non-signatory tenants, *i.e.*, spouses and children, may recover for physical injuries caused by a landlord's negligent failure to comply with a contractual duty to repair, but only where the parties contracted with the intent to prevent foreseeable physical injuries. Whereas here, Plaintiffs have offered no evidence that the lease agreement's generic repair clause covers anything other than "comfort and convenience." Indeed, the clause itself only requires tenants to "notify Landlord of any damage to the Premises," after which "Landlord shall make a diligent effort to repair or remedy the condition." Dkt. No. 260-2 at 5. Moreover, Plaintiffs have already stipulated to the dismissal of all medical and personal-injury claims. *See* Dkt. No. 220. Plaintiffs seek monetary recovery for rents paid and damage to personal property. Such matters sound in direct and consequential damages for a breach of contract. *See, e.g.*, *Mitchell v. Weiss*, 26 S.W.2d 699, 701 (Tex. App.—El Paso 1930, no writ) (noting that landlord's breach of repair clause results in reduced rental value); *Sanger v. Smith*, 135 S.W. 189, 192-93 (Tex. App. 1911, writ ref'd) (affirming recovery of damages to personal property due to leaky roof on storage building). Plaintiffs cannot assert claims for negligence and gross negligence based on a contractual duty.

The *Int'l Printing* case cited in the parties' briefing also confirms the Court's conclusion. In that case, the Supreme Court of Texas explained how the availability of recovery through tort versus contract theories differs under three scenarios. *See Int'l Printing*, 198 S.W.2d at 735-36. Recovery in negligence is usually available despite the existence of a contract (1) where there is "also a duty imposed by law, but the gravamen of the action is the negligence of the defendant," and "the contract serves merely as an inducement to the action or as a foundation for the plaintiff's right to enjoy the benefits of the duty imposed by law." *Id*. at 735. There is also the scenario (2) "where the duty is imposed by law and is also provided for by contract," in which case "the action may be both in contract and in tort." *Id*. But, in contrast, (3) "where the duty imposed upon the defendant arises purely by virtue of a contract, the action for a breach must necessarily be in contract." *Id*. at 736. As noted above, landlords (pre-1952) owed no general duty to tenants to conduct repairs. *See Yarbrough*, 174 S.W.2d at 48. Thus, the only duty imposed here is that contained in the lease, which is to "make a diligent effort to repair or remedy the condition." Dkt. No. 260-2 at 5. And Because Plaintiffs only allege that Defendants were negligent because they did not "make a diligent effort" as required under the contract itself, not that there was a breach of some *other* duty aside from the contract, the situation presented appears to fall squarely into the third *Int'l Printing* category.

**B.      Nuisance Law Is Inapplicable Under These Circumstances.**

Defendants next seek summary judgment on Plaintiffs' nuisance claims. At the outset, the Court agrees with Defendants' previous argument that, as with negligence, pre-cession Texas case law drew a sharp distinction on actions in tort where any duty arose from a contract. *See Int'l Printing*, 198 S.W.2d at 735-36. None of the cases cited herein indicate a different result for the torts of negligent and intentional nuisance. And because Plaintiffs would have no occasion to

assert nuisance without the repair clause in the lease agreement, the Court is of the view that Plaintiffs' contract claims likely subsume *all* tort causes of action here under the applicable law.

Regardless, Plaintiffs' nuisance claims fail under pre-cession law. Whether negligent or intentional, private nuisance cases in Texas almost exclusively concern claims by one landowner against a nearby landowner. *See, e.g.*, *Cent. Hide & Rendering Co. v. Storey*, 223 S.W.2d 81, 83 (Tex. App.—Texarkana 1949), *aff'd sub nom. Storey v. Cent. Hide & Rendering Co.*, 226 S.W.2d 615 (Tex. 1950) (nuisance case brought by landowners within a mile of rendering plant). Neither party professes to have located *any* pre-cession authority contemplating landlords being liable in nuisance for failure to fulfill a contractual duty to repair. *See* Dkt. No. 358 at 5-6; Dkt. No. 361 at 7. The Court thus concludes, based on the cases cited by the parties, that early Texas nuisance law did not support actions in nuisance for landlord-tenant disputes involving a contractual duty to repair.

Defendants urge the Court to interpret the absence of landlord-tenant nuisance suits as an implied rejection of such a novel theory. Dkt. No. 358 at 6. Whereas Plaintiffs ask the Court to treat this silence as permissive, and they accordingly would expand the traditional view of nuisance law to allow for new applications of an existing yet "amorphous" legal theory. Dkt. No. 361 at 7. The parties do not dispute that all pre-cession Texas case law cited by them contemplated nuisance claims between nearby landowners, not between tenants and landlords. And Plaintiffs cite no federal cases where courts overseeing disputes of this nature within a federal enclave have addressed novel nuisance theories to extend or expand the applicable state law. Plaintiffs' arguments are therefore unpersuasive.

Moreover, the Court observes that when Defendants first moved for summary judgment on Plaintiffs' nuisance claims, Defendants argued that even under *current* Texas law, no

published cases supported nuisance claims by a tenant against a landlord for failure to repair. Dkt. No. 260 at 28. Defendants explained that such "claims are properly brought as a breach of contract." *Id.* (citing *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 594-95 (Tex. 2016); *S.W. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). In response, Plaintiffs generally opposed applying the economic-loss rule to bar certain tort claims. *See* Dkt. No. 319 at 16-18. But Plaintiffs never opposed summary judgment on the premise that an action for nuisance was unavailable under the circumstances of this case. In fact, the word "nuisance" appears nowhere in Plaintiffs' original response brief. Defendants have now reasserted that same argument supported by pre-cession Texas law, as the Court requested. Plaintiffs thus could have opposed—and yet did not oppose—this argument earlier. Plaintiffs have likely forfeited their argument that the amorphous and "unsettled nature of pre-1952 nuisance law" somehow permits the Court to extend the cause of action to novel situations. Dkt. No. 361 at 10. The Court's request for supplemental briefing was not *carte blanche* for Plaintiffs to assert new arguments on grounds unmentioned before.

Plaintiffs' reliance on a 1942 law review article is likewise unavailing. Plaintiffs argue that William Prosser's description of pre-cession nuisance law as a "legal garbage can" and "broad enough to cover all conceivable torts" thus permitted the assertion of nuisance claims in any number of situations. Dkt. No. 361 at 7-8 (quoting William L. Prosser, *Nuisance Without Fault*, 20 Tex. L. Rev. 399, 410 (1942)). But Plaintiffs overlook the fact that this language is a sharp criticism of the word "nuisance" being haphazardly tossed about. Instead, Prosser clarifies that there are only two types of invasions properly labeled as such: public nuisance and private nuisance, which "have nothing in common." Prosser, *supra*, at 411. He thus describes private nuisance—applicable here—as "an interference with the use and enjoyment of land," but

different from trespass as no "physical invasion" or interference with "exclusive possession" is required. *Id.* at 414. And the primary difference between nuisance and negligence boils down to whether a landowner uses their own property "in so unreasonable a manner that it disturbs those in the vicinity." *Id.* at 417. Accordingly, in the field of nuisance law,

> courts have recognized the limitation upon liability imposed by the defendant's privilege to make a reasonable use of his own land, or to carry on his own reasonable enterprise. Everyone must put up with some degree of inconvenience in a civilized community, and each defendant is free, within reasonable limits, to carry on his own affairs at the expense of some damage to his neighbors. It is only when his conduct is unreasonable, in the light of its social utility and the harm which results, that it amounts to a nuisance. The plaintiff must be expected to endure some danger and some inconvenience rather than curtail the defendant's freedom of action, and *the defendant must so use his own property that he causes no undue harm to another*. The law of private nuisance is very largely a series of adjustments and compromises to limit the rights and privileges of both parties.

*Id.* at 418 (emphasis added) (footnotes omitted). Prosser thus understood that claims for private nuisance involve a defendant's use of *their* property to the detriment of a neighboring plaintiff.[3]

Even accepting Prosser's 1942 overview of Texas nuisance law as persuasive, Defendants are entitled to summary judgment on the nuisance claims. Plaintiffs here allege that they repeatedly *asked* Defendants to enter their house (pursuant to the lease's repair clause) to

---

[3] Prosser in part cites *Trueheart v. Parker*, 257 S.W. 640, 640 (Tex. App.—San Antonio 1923, no writ), for Texas's broad, amorphous definition of "nuisance." *See* Prosser, *supra*, at 410 n.76. But the *Trueheart* court's definition continues:

> Personal and property rights are guaranteed by the organic and statutory law of the land, but liberty, not license, in the use of these rights is the heritage of the American citizen, and coupled with the protection and conservation of rights of person and property is the mandate, to so use them as to not trample upon, disregard, or destroy the rights of others. If the individual persists in attempts to disregard the old maxim, 'Sic utere tuo ut alienum non laedas,' equity stands as a sentinel over the public or individual whose rights are invaded and issues its stern commands to the offender to desist from the invasion of the rights of others.

257 S.W. at 641. This maxim has been translated to mean: "Use your property so as not to damage another's." *Legal Maxims*, Black's Law Dictionary (11th ed. 2019). In other words, pre-cession Texas courts implicitly understood that nuisance required some use of a nearby property.

remedy naturally occurring housing issues (such as mold) and conduct other routine maintenance, and that despite Defendants responding to each request, such issues would inevitably reoccur. *See* Dkt. No. 361 at 10-11. Plaintiffs do not allege that Defendants' conduct on some common area or other nearby property caused these conditions to occur in their house. Indeed, Plaintiffs do not allege that Defendants *caused* the mold, leaks, or other purported nuisances. Instead, the allegations are that Defendants failed to remediate these conditions in compliance with the lease's repair clause, either negligently or intentionally. In this sense, Plaintiffs fail to state any actionable claim for nuisance.[4]

Finally, the Court agrees with Defendants that dismissal of Plaintiffs' negligence claims likely requires dismissal of any negligent nuisance claims. *See King v. Columbian Carbon Co.*, 152 F.2d 636, 641 (5th Cir. 1945). Plaintiffs cite no authority to the contrary. The Court is likewise skeptical whether Plaintiffs' voluminous proffer of work-order histories, evincing Defendants' repeated *attempts* to remediate various housing problems, can support an inference of intentional conduct. However, the Court specifically declines to reach that issue on summary judgment. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996) (holding that "summary judgment is rarely proper when an issue of intent is involved," although such questions do not "shield a case from summary judgment"); *Int'l Shortstop, Inc. v. Rally's, Inc.*,

---

[4] Plaintiffs also rely heavily on a 2016 Supreme Court of Texas decision, which provides an overview of early Texas nuisance law. *See* Dkt. No. 361 at 8-10; *Crosstex*, 505 S.W.3d at 591-93. But *Crosstex* acknowledges the same limitations on nuisance law discussed above, noting that "early opinions confirmed that a *landowner* can be liable in nuisance for almost any conduct creating almost 'anything likely to do mischief' to a *neighbor*." 505 S.W.3d at 592 (emphasis added). Indeed, the *Crosstex* court concludes that nuisance law arose from an "effort to balance a property owner's right to use his property as he desires against his duty not to use the property in a way that unreasonably injures a neighbor's rights to use her own property." *Id.* at 592-93. Although Plaintiffs attempt to recast the word "neighbor" as potentially meaning "in a neighborly way," Dkt. No. 361 at 9 n.1, this argument fails to grapple with the clear context of the term's usage in both *Crosstex* and the Prosser article.

939 F.2d 1257, 1266 (5th Cir. 1991) (indicating that summary judgment on intent may be proper "if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation" (quotation omitted)).

### C. Family Members Are Third-Party Beneficiaries Under the Lease for Certain Purposes, and the Contract Claims Asserted Here Might Not Be Barred.

Defendants also seek summary judgment on Plaintiffs' contract claims, but only as to those at this juncture asserted by family members who didn't sign the lease. Texas courts have adopted the general rule "that only parties to a contract and those in privity with them can maintain a suit for breach of such contract." *Dallas Power & Light Co. v. Carrington*, 245 S.W. 1046, 1048 (Tex. App.—Dallas 1922, writ dism'd); *see also Great Atl. & Pac. Tea Co. v. Walker*, 104 S.W.2d 627, 634 (Tex. App.—Eastland 1937) (noting that contract privity usually does not extend to spouses or children), *rev'd on other grounds*, 112 S.W.2d 170 (Tex. 1938). Courts must "look to the entire instrument" when interpreting a contract, but "a contract will not be construed as having been made for the benefit of a third person unless it clearly appears that such was the intention of the contracting parties." *Citizens Nat. Bank in Abilene v. Tex. & P. Ry. Co.*, 150 S.W.2d 1003, 1005-06 (Tex. 1941) (quotation omitted); *see also Cannon Ball Motor Freight Lines v. Grasso*, 59 S.W.2d 337, 343 (Tex. App.—San Antonio 1933) ("An intent to make an obligation inure to the benefit of a third party must clearly appear in the contract, and if there is any doubt about it, it should be construed against such intent."), *aff'd*, 81 S.W.2d 482 (Tex. Comm'n App. 1935). Only where an individual is designated a "creditor beneficiary" or "donee beneficiary" at the time the contract is made can those third parties sue to enforce a contract. *Edds v. Mitchell*, 184 S.W.2d 823, 829 (Tex. 1945); *see also Breaux v. Banker*, 107 S.W.2d 382, 389 (Tex. App.—Beaumont 1937) (defining terms), *rev'd*, *Banker v. Breaux*, 128 S.W.2d 23 (Tex. Comm'n App. 1939). And before a third party may sue to enforce a contract, "it

must be shown that the contracting parties intended to make same for his benefit," in which case the contracting parties' intentions are "of controlling importance." *Banker*, 128 S.W.2d at 24.

Without citing any specific provisions of the lease agreement, Defendants argue that they never intended "to confer any benefits on the servicemembers' families," and nowhere in the lease contract is there an indication "that the lessor would have 'direct liability' to non-signatory tenants." Dkt. No. 358 at 10. The Court questions whether Defendants have satisfied their initial burden as moving party. Moreover, Defendants don't appear to have asserted such an affirmative defense. *See* Dkt. Nos. 38, 39, 40. Although Defendants did previously seek summary judgment on these grounds, the argument was cursorily briefed and unsupported by legal analysis. *See* Dkt. No. 260 at 24-25. As noted earlier, the Court is hesitant to address previously unraised summary judgment arguments at this stage. Nonetheless, the Court will briefly consider the arguments.

Plaintiffs primarily point to Section 8 of the lease agreement, which lists the names of each family member. *See* Dkt. No. 260-2 at 3. But that section is titled "Number of Occupants," and the stated reason for requiring family members' names is "that the Premises shall be occupied by Resident's immediate family." *Id.* at 2. Section 9 further elucidates the intent of this provision, as the premises must remain "a single-family dwelling," and the length of so-called "social visits" by non-residents is restricted. *Id.* at 2-3. Moreover, the lease defines the term "Resident" at the outset to mean "Shane C. Vinales." *Id.* at 1. And the lease appears to be signed by only Shane Vinales. *See id.* at 10. Although Plaintiffs additionally cite vague references to "families" in the Resident Guidelines, Ground Lease, and other tangentially related documents, *see* Dkt. No. 361 at 12-13, those arguments are even further removed from the lease agreement and the power to persuade. The Court previously rejected similar arguments in the context of whether those documents contain a choice-of-law clause. *See* Dkt No. 349 at 6-7.

12

Nonetheless, there is at least one section of the lease that *explicitly* designates family members as intended beneficiaries, at least for certain purposes. Section 34 states that the lease terminates upon the servicemember's death, but surviving family members retain some additional rights:

> Family members of active-duty military Residents residing in a unit on the death of an active-duty military Resident or notice that such Resident has been declared missing in action shall have the right to elect to terminate their Lease or extend it, at the same rent, for a maximum period of twelve (12) months from the month of Resident's death or notice that such Resident has been declared killed or missing in action.

*Id.* at 8. This language evinces a clear intent to vest non-signatory family members with certain rights under "*their*" lease, albeit only upon the servicemember's death or disappearance. While it is clearly apparent—and thankfully so—that the conditions precedent to Section 34 are not satisfied here, it is *not* clear whether this lone provision is sufficient to convey third-party beneficiary status for all purposes or whether a *contingent* third-party beneficiary under a contract can still sue to enforce other provisions of said contract under pre-cession Texas law. These issues have not been briefed. The lease agreement, viewed as a whole, appears to designate family members as donee beneficiaries. And while the contract claims of Becky Vinales and Plaintiffs' minor children, L.V. and S.V., *might* not be viable under the circumstances presented here, it is Defendants' burden as moving party to establish their entitlement to summary judgment as a matter of law. Having declined to address the lease's explicit language in their motion and supplement, Defendants have not met this burden.

Furthermore, the Court does not see how this issue would affect Plaintiffs' potential recovery or the types of damages available. Defendants have not argued as much, and as explained before, the Court is under the impression that all damages Plaintiffs seek—aside from exemplary damages—are recoverable as direct or consequential damages under a breach-of-

contract theory. *See Mitchell*, 26 S.W.2d at 701; *Sanger*, 135 S.W. at 192-93. Under pre-cession case law, personal injuries suffered by a spouse or child are considered too remote to be covered by a lease but such injuries could be recoverable in tort. *See, e.g.*, *Ross*, 258 S.W. at 1042. Here, however, Plaintiffs have dismissed all personal-injury and medical claims, *see* Dkt. No. 220, and as a result those tort theories are unavailable. To the extent the parties disagree with the foregoing assessment, the Court can revisit the issue of contract damages if and when it is squarely presented, either at trial or in a motion for judgment as a matter of law. But until then, summary judgment is improper.

### D.    Expert Testimony Is Not Necessary to Establish the Damages Alleged Here, Although Exemplary Damages Are Unavailable for Breach of Contract.

Defendants finally move for summary judgment on each category of Plaintiffs' alleged damages, beginning with damage to personal property. Defendants argue that expert testimony is required where "the case concerns a matter of science or specialized art or other matter, of which a layman can have no knowledge." *Gulf, C. & S.F. Ry. Co. v. Young*, 284 S.W. 664, 669 (Tex. App.—Dallas 1926, no writ) (quotation omitted). Defendants thus liken mold damage to several pre-cession Texas cases where courts rejected damages unsupported by expert testimony. *See id.* (causation for loss of sex drive due to personal injury); *Bowles v. Bourdon*, 219 S.W.2d 779, 782 (Tex. 1949) (medical malpractice); *Gulf, C. & S.F. Ry. Co. v. Downs*, 70 S.W.2d 318, 322-23 (Tex. App.—Dallas 1934, writ ref'd) (spontaneous combustion as cause of fire); *Floyd v. Michie*, 11 S.W.2d 657, 658-59 (Tex. App.—Austin 1928, no writ) (medical malpractice). But Defendants cite no cases requiring expert testimony to establish visible mold damage on personal property. And perhaps more importantly, Defendants do not argue that expert testimony is necessary to establish *causation*—Defendants only seek summary judgment on *whether* there was any mold damage, "the extent of such damage," and whether "cleaning, restoration, or

replacement" was an option. Dkt. No. 358 at 12. Defendants' reply briefing only mentions causation in passing. *See* Dkt. No. 364 at 7. The Court is not persuaded that *whether* a piece of personal property is contaminated by visible mold growth is a matter for which lay jurors "can have no knowledge" or experience.

Furthermore, the Court is unconvinced that Texas judicial decisions applying state evidence rules are controlling on this question. *See, e.g.*, *Garner v. Wolfinbarger*, 430 F.2d 1093, 1099 (5th Cir. 1970) (holding "state rules of evidence not controlling in diversity cases" under outcome-determinative test); *Monarch Ins. Co. of Ohio v. Spach*, 281 F.2d 401, 408 (5th Cir. 1960) ("For the most part rules of evidence are thought of as procedural in the traditional conflicts of laws sense."). The Court does not reach this question because it has not been fully briefed. Nonetheless, Defendants' failure to cite any persuasive authority—either federal or pre-1952 Texas case law—*requiring* expert testimony concerning personal property damage due to visible mold growth renders summary judgment improper on this issue.

Next, Defendants seek summary judgment on rents paid under the so-called "independent covenants" rule. *See Davidow v. Inwood N. Prof'l Group*, 747 S.W.2d 373, 375 (Tex. 1988) (explaining prior rule); *Mitchell*, 26 S.W.2d at 700. But Plaintiffs point out in response that *Mitchell* does not prohibit recovery of rents paid for an alleged breach of a contractual duty to repair. Dkt. No. 361 at 18. Instead, in cases where the tenant remains in possession despite a partial breach, "[t]he usual measure applied is the reduced rental value; that is, the difference between the contract rental and the rental value in the unrepaired condition." *Mitchell*, 26 S.W.2d at 701. Defendants in reply appear to concede that *Mitchell* governs Plaintiffs' available damages.

Defendants nonetheless argue that Plaintiffs cannot seek to recover the difference in rental value due to their failure to offer competent proof into the record. Dkt. No. 364 at 8. Defendants then insist that proof of market value "typically is shown by the testimony of experts." *Id.* at 9-10 (citing *Reeves v. City of Dallas*, 195 S.W.2d 575, 579 (Tex. App.—Dallas 1946, writ ref'd n.r.e.); *Foley v. Houston Belt & Terminal Ry. Co.*, 110 S.W. 96, 98 (Tex. Civ. App. 1908, no writ); *Cluck v. Houston & T.C.R. Co.*, 79 S.W. 80, 81 (Tex. Civ. App. 1904, no writ)). But Defendants did not seek summary judgment on this premise and cannot retroactively satisfy their initial burden in a reply brief. Nor do the cases cited appear to contain an absolute rule that expert testimony is *required*. Indeed, Defendants' cited case law provides a more malleable standard:

> The market value of anything is the highest price it will bring for any and all uses, and when property has a market value witnesses may testify thereto as to a fact known and proved, but where no such value exists the opinions of witnesses are admitted. While witnesses may not be required to be experts in the strict and severe sense of the term in order to give opinions on value, and while there is no inflexible rule defining how much a witness must know in order to be so qualified, yet it must be made to appear that he has had and utilized means for forming an intelligent opinion superior to those of the jurors, derived from a knowledge of the character of property in controversy.

*Cluck*, 79 S.W. at 81 (quotation omitted); *see also W. Tex. Hotel Co. v. City of El Paso*, 83 S.W.2d 772, 778 (Tex. App.—El Paso 1935, writ dism'd) (explaining that witnesses "need not qualify as experts" to testify about value of real estate). It appears that rental value may be shown by the opinions of lay witnesses, assuming they have personal knowledge of the property.

The Court further notes that Defendants have designated Ann Reisch, a licensed real-estate broker, as an expert witness. *See* Dkt. No. 211. To the extent that Defendants believe lay testimony from individuals with personal knowledge of the property will not adequately establish any difference in rental value, Defendants are free to elicit expert testimony in rebuttal. And although Defendants appear to question Plaintiffs' entitlement to recover any base allowance

housing ("BAH") paid in lieu of rent, *see* Dkt. No. 13 n.7, no legal analysis is supplied. Again, the Court sees no reason why either category of damages must be excluded at this time as a matter of law. Defendants are free to raise specific objections in a motion in limine or a motion for judgment as a matter of law should Plaintiffs fail to elicit *any* admissible testimony on damages.

Finally, dismissal of Plaintiffs' tort claims above does affect the availability of exemplary damages. "The rule in this State is that exemplary damages cannot be recovered for a simple breach of contract, where the breach is not accompanied by a tort, even though the breach is brought about capriciously and with malice." *A. L. Carter Lumber Co. v. Saide*, 168 S.W.2d 629, 631 (Tex. 1943). Plaintiffs identify no contrary authority. Because the sole remaining cause of action at this juncture is breach of contract, Plaintiffs cannot seek exemplary damages.

### E.     The Court Adopts Defendants' Proposal for Separate Trials.

Finally, the parties disagree over what trial should look like. Courts may order separate trials in the interests of "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "Whether to conduct separate trials under the Rule is a matter left to the sound discretion of the trial court on the basis of circumstances of the litigation before it." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 773-74 (5th Cir. 2009) (quotation omitted); *accord Conkling v. Turner*, 18 F.3d 1285, 1293 (5th Cir. 1994). But there are limits on the use of issue bifurcation, based on the right "to have only one jury pass on a common issue of fact," such that an issue to be tried separately "must be so distinct and separable from the others that a trial of it alone may be had without injustice." *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978).

Plaintiffs appear to prefer a consolidated trial with all nine families, whereas Defendants prefer a single bellwether trial. Plaintiffs generally assert that separate trials of all nine families will be inefficient and burdensome. *See* Dkt. No. 360. Plaintiffs also argue that Defendants' state of mind is an element they will need to prove at trial for their gross negligence and nuisance claims, which in turn requires the jury to consider all evidence together. *See* Dkt. No. 365. In contrast, Defendants oppose the concept of a consolidated trial due to the potential of prejudice and confusion. *See Mack v. Specialized Loan Servicing, LLC*, No. 4:20-CV-00766-SDJ-CAN, 2022 WL 1552142, at *2 (E.D. Tex. Apr. 26, 2022); *Henderson v. AT & T Corp.*, 918 F. Supp. 1059, 1064 (S.D. Tex. 1996). Defendants also observe that each family's case is fact-intensive with multiple expert witnesses, and trying all nine families in a three-week trial setting is impractical. *See* Dkt. No. 363 at 9. Defendants thus suggest setting the Vinales family as a bellwether trial, as the Court has greater familiarity with their circumstances and the issues raised therein are germane to multiple families. *See id.* at 10.

As explained above, breach of contract is the sole remaining claim at this juncture, so Defendants' state of mind is no longer a major factor. The Court is also unconvinced that legitimate concerns of juror confusion and prejudice to Defendants may be cured by instruction. Nor is the Court particularly worried about the prospect of nine separate trials. As Defendants explain, the purpose of proceeding with the Vinales Plaintiffs as the first trial is to serve as a bellwether. *See id.*

Although Plaintiffs briefly identify the constitutional limits on issue bifurcation, *see* Dkt. No. 360 at 2, there is no argument that separate trials for nine different families alleging different housing issues would violate the right "to have only one jury pass on a common issue of fact." *Blue Bird*, 573 F.2d at 318. Plaintiffs even suggest, in the alternative, holding separate trials of

three families each. *See* Dkt. No. 360 at 6. Here, any concerns can be cured by ensuring that all common fact issues decided in the bellwether trial are not submitted to later juries. Plaintiffs otherwise do not address Defendants' request to proceed with the Vinales family first or dispute Defendants' characterization of the Vinales family as the most representative of the families here.

### Conclusion

For the reasons stated above, **IT IS ORDERED** that summary judgment is **GRANTED IN PART** on the Vinales Plaintiffs' negligence and nuisance claims (Counts 4, 8, 9, 11), as well as the demand for exemplary damages. In all other respects, summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for consolidated trial is **DENIED**. The Court will set a bellwether trial to be held in early June on the Vinales Plaintiffs' surviving breach-of-contract claim to recover rents paid and personal-property damage, among other requested relief. Upon conclusion of trial, the Court will take up and issue orders on the remaining motions for summary judgment held in abeyance. *See* Dkt. Nos. 254, 257. The Court will also set aside several months for the parties to engage in substantive settlement negotiations and possibly mediation thereafter.

**IT IS SO ORDERED**.

SIGNED this 20th day of April, 2023.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE