IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL J. DANIELS, ET. AL. | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | NO. SA-19-CV-01280-FB-RBF |
| | § | |
| AETC II PRIVATIZED HOUSING, LLC, ET. AL. | § | |
| | § | |
| DEFENDANTS | § | |

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE OPINIONS AND TESTIMONY OF MARK EBERWINE

Defendants AETC II Privatized Housing, LLC, AETC II Property Managers, LLC, and Hunt ELP, Ltd., file this Motion in Limine to Exclude Opinions and Testimony of Mark Eberwine, and would show unto the Court as follows:

### PREFACE

On January 18, 2023, this Court issued its Order [351] regarding Defendants' *Daubert* Motions seeking to exclude Plaintiffs' experts, including Mark Eberwine. [239, 240, 245] In that Order, the Court stated Defendants' arguments were better raised "in a motion in limine" and denied those motions "without prejudice to reraising at an appropriate time." [351], at 2. Defendants now reraise those arguments pursuant to the Court's Order.

### INTRODUCTION

The Vinales Plaintiffs allege they were exposed to mold and other adverse conditions in their homes at Randolph AFB, and that the homes were "uninhabitable" and "unsafe." Mark Eberwine is a residential property inspector who inspected only one home (the Hiatts), to testify about the conditions of the Hiatt's home, and his sole report does not address the Vinales' home at all. Furthermore, Eberwine's opinions go far beyond his expertise, are unreliable, and irrelevant.

Eberwine authored a two-page report on the Hiatt home alone, followed by 57 pages of unlabeled and unmarked photographs. [239-1]. In the report, there are 21 bullet-pointed opinions under the heading "Comments/Findings," which have been reproduced with a number supplied to each "opinion" in that "comment/finding" section for ease of reference. [239-2]. Eberwine has seen only one home; is not qualified to give the opinions he has given about that home, let alone the Vinales's home; and his opinions are unreliable, irrelevant, and unhelpful to a jury.

## LEGAL STANDARD

Under Fed. R. Evid. 702, expert opinions must be both reliable and relevant: "expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable." *CFS Forming Structures Co. v. Flintco, Inc.*, No. A-07-CA-973-LY, 2009 WL 10669460, at *1–2 (W.D. Tex. Feb. 20, 2009).

The "reliability" inquiry focuses on "whether the reasoning or methodology underlying the testimony is scientifically valid," while the relevance inquiry focuses on "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993)). "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.

"Experience, on its own, may qualify an expert's opinion, but the expert's experience must

still undergo the separate reliability test." *Tijerina-Salazar v. Venegas*, No. PE:19-CV-00074-DC-DF, 2022 WL 1176722, at *2 (W.D. Tex. Apr. 19, 2022) (citing *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 247 (5th Cir. 2002)). "If a proponent does not establish these factors through more than just experience, the Court must exclude the testimony." *Id.* An expert relying on "experience" alone must nonetheless "explain what experience or technical knowledge he is relying upon in reaching his opinions, how that experience or knowledge leads to the conclusions reached, and how that experience or knowledge is reliably applied to the facts." *Alvarez v. San Antonio Citation Serv. Ctr.,* No. SA-07-CA-0523-FB, 2008 WL 11334094, at *4 (W.D. Tex. Sept. 11, 2008) (excluding opinions).

"If the expert lacks some objective, independent validation of his methodology, it is not helpful to the factfinder and should be excluded." *Spring St. Apts Waco, LLC v. Philadelphia Indem. Ins. Co.*, No. 6:16-CV-00315-JCM, 2017 WL 2805014, at *4 (W.D. Tex. June 28, 2017) (citing *Kovaly v. Wal–Mart Stores Tex., L.L.C.,* 627 F. App'x 288, 290 (5th Cir. 2015)). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Expert testimony that does not opine that some fact is more likely than not is likewise not helpful. *Bro-Tech Corp. v. Purity Water Co. of San Antonio*, No. CIV SA-08-CV-0594-XR, 2009 WL 1748539, at *8 (W.D. Tex. June 19, 2009).

## ARGUMENT

I. **Eberwine Cannot Testify As To The Vinales's Home Because He Has Only Inspected the Hiatt's Home.**

According to Plaintiffs' expert designation, Eberwine was designated to testify that "each of the houses on Randolph Air Force Base suffer from the similar conditions that make the houses unsafe." [175] at 2. However, Eberwine never set foot in the Vinales's home and his disclosed expert report summarized his inspection and opinions regarding only one home, the Hiatts'. At

Eberwine's deposition, when asked whether he intended to opine as to any other home, Eberwine confirmed that he could give no opinion on any other home: ". . . I couldn't do that unless I saw a house. So I couldn't say all houses." Eberwine Deposition [239-3] at 137:21-22.[1] Plaintiffs' counsel agreed: "[w]e agree that's correct." *Id*. at line 15. Out of an abundance of caution, Defendants seek to exclude Eberwine from testifying about the Vinales's home.

## II. Eberwine Is Not Qualified To Offer Certain Opinions About The Vinales's Home Or Any Other Home.

Eberwine's testimony must be limited to those areas where he has expertise. Eberwine is a residential property inspector. He is not a building scientist, a toxicologist, a mold assessor, an industrial hygienist, a licensed plumber, an HVAC specialist, or an expert in apartment/property management. Nor is Eberwine an engineer, homebuilder, or contractor. [239-3] at 39:14-40:9, 40:18-41:1. Eberwine's report, however, strays far afield from his limited area of expertise.

In Opinion No. 1, Eberwine states that "[t]here are multiple health related issues at this house/dwelling," and later at Opinion No. 14 finds "a mental health potential issue." [239-2]. But Eberwine is not a doctor, or a mental health professional, or any sort of expert capable of opining as to the existence of any "health"-related issue. Although he calls the amount of light admitted by window glass "a mental health potential issue," he admits having no expertise in mental health [239-3] at 121:2-4. While Eberwine readily conceded that he was not qualified to, and would not, offer any opinion that anything he saw at the house caused any specific health problems ([239-3] at 60:16-19), he is not qualified to offer any opinions about health-related issues at all. He certainly cannot do so with respect to the Vinales family, their home, or any of their claims in this case.

At Opinion No. 3, and again at Opinion No. 14, he notes something he calls "fungal-

---

[1] For brevity and simplicity, Defendants do not attach again the exhibits to the original motion, but rather refer to them by the number in the ECF system with the prior motion.

like/mold-like substances," [239-2] but admits that he is not a licensed mold assessor, and is not qualified to say whether any substance he saw was actually mold. [239-3] at 94:13-17. By his own admission, Eberwine is not qualified to opine as to the presence or not of mold.

Although not a licensed plumber, Eberwine questions, at Opinion No. 11, the placement and location of a hot-water heater flue. [239-2]. At Opinion No. 20, and despite not being an engineer or a contractor, or holding any certifications regarding radon gas, Eberwine speculates that "the foundation type" "may mean an increased likelihood of exposure to Radon Gas." [239-3] at 13:3-8.

Furthermore, and as stated above, even if he were qualified to offer these opinions (and he very clearly is not) he renders no opinions as it relates to the Vinales Plaintiffs. For these reasons, Eberwine should be prohibited from offering any opinions contained in his report at the Vinales trial.

### III. Any Opinions Eberwine Has On the Vinales's Home Would Be Unreliable.

According to Plaintiffs' designation, Eberwine's opinions are based on his "education, training, experience" as well as on the facts provided to him in this case. As we saw above, this does not relieve Eberwine of the obligation to "adequately . . . connect the dots between the . . . information and his conclusion." *Tijerina-Salazar,* 2022 WL 1176722, at *8 (quoting *Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 749 (5th Cir. 2018)) (omissions in *Tijerina-Salazar*). If an expert does not explain **how** his experience leads him from a fact to an opinion, then his testimony is mere *ipse dixit* and should be excluded. *Id.*; *Alvarez*, 2008 WL 11334094, at *4. Specifically, Eberwine must have "some objective, independent validation of his methodology" otherwise it is "not helpful to the factfinder and should be excluded." *Spring St. Apts*, 2017 WL 2805014, at *4.

In many places in his report and deposition testimony, Eberwine's opinions are based upon

purported violations of the "codes." For example, in his Opinion No. 11, he concluded that the water heater had an "improperly configured flue" which he testified was a violation of the "codes." [239-3] at 111:20-112:1. Despite his vague, sweeping references to "codes" as the basis for at least eight of his opinions,[2] Eberwine hasn't disclosed, doesn't say, or doesn't know which codes were even in effect, much less which ones have been violated:

> Q. And where is the minimum ventilation requirements found?
> A. It's in the codes.
> Q. Which code are we talking about?
> A. As far as I know, all of them that speak to that.

[239-3] at 87:24-88:4. Neither here nor for any other opinion does Eberwine's report or testimony cite a specific section of a specific code. Nor does he know whether any of those codes applied to the one residence he saw when it was built almost a hundred years ago. [239-3] at 88:13-15. Cornered about this critical issue, Eberwine resorts to *ipse dixit*: "I don't know of a single code that doesn't have that as a requirement." [239-3] at 124:23-25.[3] This relieves him, he thinks, of the need to identify an applicable code "[s]o it doesn't matter what the name or what the edition is." [239-3] at 124:25-125:1. When asked, "there was a time that there were no such codes, right?" Eberwine's response was "there's the Code of Hammurabi, and there's been building codes since the turn of the century." [239-3] at 125:3-6; see also [239-3] at 125:7-10 (conceding ignorance of

---

[2] Eberwine cites to unspecified "codes" in his testimony about Opinion No. 3 ([239-3] at 87:17-88:15); Opinion No. 4 & 5 ([239-3] at 95:3-17, 96:3-8); Opinion No. 7 ([239-3] at 101:4-15, 101:25-102:19); Opinion No. 11 ([239-3] at 111:19-112:1); Opinion No. 12 ([239-3] at 118:10-16); Opinion No. 13 ([239-3] at 118:22-119:21); Opinion No. 17 ([239-3] at 124:9-125:10); and Opinion No. 19, ([239-3] at 128:8-16)

[3] "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert" *Gen. Electric. Co. v. Joinder*, 522 U.S. 136, 146 (1997). Additionally, this Court has held "experience" alone is insufficient when the expert fails to "quantify or qualify his experience or explain how that experience lead to his conclusions." *Rice v. Con-Way Truckload, Inc.*, No.6:14-CV-0389-WSS-JCM, 2015 WL 12748170, at *6 (W.D. Tex. June 18, 2015).

earliest date of electrical codes). Eberwine's ignorance about which codes apply is an important and critical omission because building, electrical, and plumbing codes apply on a prospective basis only as they are adopted and amended. Buildings already in existence are "grandfathered" in until there are subsequent renovations or repairs which require adherence to the new codes.[4] These homes at Randolph AFB, including the Vinales's home, are almost one hundred years old. Repairs, renovations, the addition of electrical components, plumbing, and other improvements must be judged by the codes in effect at the time of the renovations or repairs were made. Eberwine does not know and cannot know of a "code" violation without knowing when the building was built, when the renovation was done, and what the codes in effect at that time said. If he cannot even do so for the one home he did see, he cannot do so for the Vinales's home which he has not seen and has not information on.

Texas state courts have found that similar omissions of code sections in an expert's report are conclusory and thus insufficient. *See Buckstop Acquisition Co., LLC v. Castaneda*, No. 04-1700484-CV, 2018 WL 2943949, at *4–5 (Tex. Ct. App.-San Antonio June 13, 2018) ("However, although [Plaintiff's expert's] report cites the International Building Code for the proposition that a thermal barrier is required on all SPF used in residential and commercial structures, there is no evidence that the International Building Code was applicable to the renovation project . . . ."); *see also, Armao v. Lennar Homes of Texas, Inc.*, No. 05-97-000466-CV, 1999 WL 431091, at *3 n.3 (Tex. Ct. App.-Dallas June 29, 1999) (rejecting expert's statements that uneven flooring was a

---

[4] "The legal occupancy of any structure existing on the date of adoption of this code shall be permitted to continue without change . . . ." Int'l Res. Code, § R102.7 (2018) *available at* https://codes.iccsafe.org/content/IRC2018/chapter-1-scope-and-administration. *See also* Int'l Zon. Code, § 1101.1 (2018) *available at* https://codes.iccsafe.org/content/IZC2018/chapter-11-nonconforming-structures-and-uses. ("[A] structure or use legally established prior to the adoption date of this code be maintained unchanged.")

building code violation when affidavit did not "refer to any specific section or provision of the building code claimed to be violated"). Eberwine's lack of knowledge on what codes were effect when certain repairs were made is reason alone his opinions and testimony should be excluded in its entirety as it relates the Vinales's homes.

Eberwine notes "potential" moisture concerns and an energy-loss issue in Opinion No. 16 due to what he says are "cracks in the exterior walls of the structure." [239-2]. Eberwine, however, admits he has done no energy audit of the house or taken relative humidity measurements. His opinion was merely a potential issue he flagged. [239-3] at 123:7-20.

In Opinion No. 3, he finds "considerable rust/corrosion" to unspecified "metal components," but does not explain what this has to do with safety, the alleged focus of his opinions. [239-2]. Eberwine's opinions repeatedly fail to go beyond the conclusory, such as Opinion No. 11: "The gas-fired water heater has an improperly configured flue," or No. 12: "There is improper access to the air handler/heating unit." *Id*. "Conclusory opinions by designated experts lack the requisite evidentiary reliability mandated by Rule 702 because they fail to set forth a discernable methodology." *Gen. Star Indem. Co. v. Sherry Brooke Revocable Tr.*, 243 F. Supp. 2d 605, 626 (W.D. Tex. 2001). Again, as Eberwine has not seen nor received information pertaining to the Vinales Plaintiffs at the time of his report, his opinions about another Plaintiffs home are doubly unreliable.

Finally, Eberwine reaches these conclusory and baseless opinions without disclosing what methodology he applies in forming them. An opinion is not reliable without some objective, independent validation of the expert's methodology. *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998). The question of methodology must be addressed for every one of an expert's opinions, not as a blanket issue: "In *Allen v. Pennsylvania Engineering Corp.,* the Fifth Circuit

held that for **every** conclusion contained in the expert's proposed testimony, the Court must determine if the methodology leading to that conclusion is sound." *McClure v. Greater San Antonio Transp. Co.,* No. SA-08-CA-112-FB, 2008 WL 11335001, at *4 & n.50 (W.D. Tex. Oct. 3, 2008) (citing 102 F.3d 194, 196 (5th Cir. 1996)) (emphasis added), *aff'd*, 2009 WL 10670240 (Mar. 24, 2009). Nowhere in Eberwine's report does he explain his methodology, other than his self-serving *ipse dixit*. "Expert opinions that fail to set forth a discernable methodology are conclusory and lack the requisite evidentiary reliability mandated by Rule 702." *Velasquez v. EAN Holdings, LLC*, 2018 WL 5924037, at *4 (N.D. Tex. Nov. 13, 2018). *See also Brass Creekside, LP v. AmGUARD Ins. Co.,* No. SA-20-CV-00583-OLG, 2021 WL 8154020, at *4 (W.D. Tex. Sept. 28, 2021) ("as the Report 'does not cite to any guidelines, training or certification, or any other authoritative source on the proper methodology' to use, the Court finds that the proposed expert testimony is nothing more than 'subjective belief or unsupported speculation,' which the Court cannot accept") (quoting *Collins v. Safeco Ins. Co. of Ind.*, 2020 WL 95488, at *3 (N.D. Tex. Jan. 8, 2020)). Even if this Court were to find that Eberwine applied some methodology in rendering his opinions, it cannot be said that this methodology was used in rendering any opinions regarding the Vinales family. His opinions are necessarily unreliable.

IV.    **Eberwine's Opinions Are Not Relevant To The Vinales's Home or Their Claims.**

"Relevant" expert testimony must not only be related to the claims or defenses in the case, but also helpful to the jury. *See McClure*, 2009 WL 10670240, at *6 (stating that "whether the reasoning or methodology properly can be applied to the facts in issue" is the "test for determining relevance . . . .") "If the expert lacks some objective, independent validation of his methodology, it is not helpful to the factfinder and should be excluded." *Spring St. Apts.*, 2017 WL 2805014, at *4. Eberwine's proposed opinions satisfy neither criteria.

Eberwine's report raises a number of possibilities and asks even more questions, but that is not helpful to the jury in determining the claims presented by the Vinales family.[5] A mere "possibility" does not assist the trier of fact. *Barefoot v. Weyerhaeuser NR Co.,* 729 F. App'x 300, 303 (5th Cir. 2018) (citing *Pipitone,* 288 F.3d at 245). "Maybe, maybe not" is not an admissible opinion. Eberwine's report is full of such speculation about probabilities. *See* Opinion No. 21 ("there is a *probability* of the paint being a lead-based product"); Opinion No. 20 ("*may mean* an increased likelihood of exposure to Radon Gas"), Opinion No. 16 ("cracks . . . have the *potential* to be a conduit for moisture . . ."); Opinion No. 8 ("underground water supply *may have been* impacted (fecal coliform)"). Eberwine's report asks as many questions as it provides opinions. *See* Opinion No. 10 ("Was this HVAC system sized, designed/engineered for this specific house . . .?" "Did the contractor who installed the dehumidifier system analyze the structure and systems . . .?"); Opinion No. 6 ("Was there affluent [sic] discharged under the house?"). [239-2].

As Defendants urge throughout this motion, none of these opinions relate to the Vinales' home. Even if information on one Plaintiff's home could shed light on another (and in this instance it cannot), the vast majority of opinions in Eberwine's report do not even relate to claims made by the Vinales family and are not helpful to the jury. For these reasons, Eberwine's opinions are not relevant and should therefore be excluded.

## **CONCLUSION**

For all of these reasons, Defendants request that Eberwine's opinions and testimony be excluded as a whole; limited to the Hiatts' claims alone; or, in the alternative, Opinions Nos. 1, 3, 4, 5, 7, 11, 12, 13, 14, 16, 17, 19, 20, and 21 be stricken.

---

[5] Most of these opinions were not even raised by the Hiatt's whose home he inspected, *see Motion to Exclude Opinions and Testimony of Mark Eberwine* [239] at 9.

## CERTIFICATE OF GOOD FAITH CONFERENCE

The undersigned herby certifies that they conferred on the phone and by email with Plaintiffs' counsel prior to filing this Motion. Plaintiffs' counsel opposes withdrawing Mark Eberwine, his report, and his opinions from evidence along with this Motion.

Respectfully submitted, this the 17th day of May 2023.

/s/ *Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
(*admitted to W.D. of Tex. on 7/28/2020*)
Jennifer J. Skipper, State Bar No. 24076171
Balch & Bingham LLP 188 East Capitol Street,
Suite 1400
Jackson, Mississippi 39201-2133
Telephone: 601-965-8182 Facsimile:
866-501-9984 E-Mail:
jskipper@balch.com
wboone@balch.com

Julia W. Mann, State Bar No. 00791171
Erica Benites Giese, State Bar No. 24036212
JACKSON WALKER LLP
112 East Pecan Street, Suite 2400
San Antonio, Texas 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail: jmann@jw.com
egiese@jw.com

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

      I hereby certify that on the 17th day of May 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

      Randall A. Pulman, Esq.
      Ryan C. Reed, Esq.
      Matthew J. McGowan, Esq.
      Sarah Jackson, Donahue, Esq.
      PULMAN, CAPPUCIO, & PULLEN, LLP
      2161 NW Military Highway, Suite 400
      (210) 222-9494 Telephone
      (210) 892-1610 Facsimile
      E-Mail: rpulman@pulmanlaw.com
      rreed@pulmanlaw.com
      mmcgowan@pulmanlaw.com
      sdonahue@pulmanlaw.com

      James R. Moriarty, Esq.
      LAW OFFICES OF JAMES R. MORIARTY
      4119 Montrose, Suite 250
      (713) 528-0700 Telephone
      (713) 528-1390 Facsimile
      E-Mail: jim@moriarty.com

      Francisco Guerra, IV
      Jennifer Arlene Neal
      Robert E. Brzezinksi
      WATTS GUERRA, LLP
      Four Dominion Drive, Bldg. 3, Suite 100
      San Antonio, TX 78257
      (210) 477-0500
      E-Mail: fguerra@wattsguerra.com
      jneal@wattsguerra.com
      rbrzezinski@wattsguerra.com

                      /s/ *Walter H. Boone*
                      Walter H. Boone, MS Bar No. 8651
                      (*admitted to W.D. of Tex. on*
                      *7/28/2020*)