**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **MICHAEL J. DANIELS, ET AL.** § | |
| § | |
| **PLAINTIFFS,** § | |
| § | |
| V. § | **NO. SA-19-CV-01280-FB-RBF** |
| § | |
| **AETC II PRIVATIZED HOUSING, LLC, ET AL.** § | |
| § | |
| **DEFENDANTS** § | |

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE OPINIONS AND TESTIMONY OF KRISTY BECK-MILLER

Defendants AETC II Privatized Housing, LLC, AETC II Property Managers, LLC, and Hunt ELP, Ltd., file this Motion in Limine to Exclude Opinions and Testimony of Kristy Beck-Miller, and would show unto the Court as follows:

## PREFACE

On January 18, 2023, this Court issued its Order [351] regarding Defendants' *Daubert* Motions seeking to exclude Plaintiffs' experts, including Kristi Back-Miller. [239, 240, 245]. In that Order, the Court stated Defendants' arguments were better raised "in a motion in limine" and denied those motions "without prejudice to reraising at an appropriate time." [351] at 2. Defendants now reraise those arguments pursuant to the Court's Order.

## INTRODUCTION

Kristy Beck-Miller is a Texas-licensed mold assessor who performed inspection and testing at five homes in this litigation, and submitted five reports on those homes.[1] Although her reports, including the Vinales family report, professed to follow nationally-recognized industry standards

---

[1] Miller's reports, her deposition testimony, and the applicable standards are all attached to, and summarized in, the Appendix [245-1] attached to the original motion [245].

and guidelines, Miller testified that she did not follow those standards, and that she did tests, reached conclusions, and inserted "personal opinions" not supported by those standards. Moreover, her report on the Vinales family was so riddled with errors, omissions, and outright falsehoods, that she withdrew the report entirely, along with large swaths of her remaining reports. In fact, Miller admitted that the Vinales report was so unreliable that she didn't want the Court to rely on it:

> Q. (By Mr. Boone) And so you would say to the court that "I do not offer this [Vinales report] as a reliable scientific mold assessment." Is that fair?
> A. Fair.

Miller Deposition Vol. II [245-4] at 120:11-14. Over and over again, Miller testified as to the unreliable nature of her report on the Vinales home:

> Q. And that with respect to one of them, the Vinales report, you do not even believe it is reliable according to national standards, correct?
> . . .
> A. Correct.

*Id.,* at 202:20-24.

> Q. And so you would say to the court that "I do not offer this as a reliable scientific mold assessment." Is that fair?
> A. Fair.

*Id.,* at 120:11-14. The Court should take Miller's own word for it, and exclude Miller's testimony in the Vinales case as unreliable.

## **LEGAL STANDARD**

"Under *Daubert*, expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the suit; and (3) the evidence is reliable." *Newcsi, Inc. v. Staffing 360 Solutions, Inc.*, 2015 WL 1143472, *1 (W.D. Tex. Apr. 21, 2015) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997)). Trial Courts must make "a preliminary assessment of whether

the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 US 579, 592-93 (1993).

The "reliability" inquiry focuses on "whether the reasoning or methodology underlying the testimony is scientifically valid," while the relevance inquiry focuses on "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592-93 (1993)). "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592). The trial court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.

## ARGUMENT

I. **Miller's Report and Opinions On The Vinales Home Are Contrary to the Scientific Standards She Professes to Uphold, and Thus Unreliable.**

Federal Rule of Evidence 702 states that an expert's testimony must be "the product of reliable principles and method" for their testimony to be admissible. Fed. R. Evid. 702(c). It is the role of the trial court to "make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592-94). Miller's Vinales report and testimony profess adherence to nationally accepted industry standards in the methodology for taking air sampling

(NIOSH 800 and AIHA), conducting mold assessments (ASTM D7338-10), and undertaking personal-contents analysis and remediation (ANSI/IICRC S500 and S520). Yet, in her deposition, Miller testified to far-reaching violations of those standards.

<u>NIOSH 800</u>. This standard governs the proper methodology for taking air samples that Miller's reports cited and she professed to uphold. [245-1] at 1. However, Miller conceded that she violated that standard because she did not take culturable samples, she did not take the correct number of samples at each location, she did not take control samples at three homes (including the Vinales home), and she did not test for other contaminants of concern. [245-1] at 1-2.

<u>AIHA</u>. Miller recognized the preeminence of the American Industrial Hygiene Association's guidelines for how to conduct air sampling [245-1, at 5], but readily admitted that she did not take culturable air samples, did not take control samples at all for the Vinales's home, did not take the required number of control samples, and did not keep proper calibration records – all of which were required by AIHA. [245-1] at 5-7.

<u>ASTM D7338-10</u>. This standard provides guidance for the proper method to follow in a mold assessment, which Miller's reports professed to uphold and she testified were applicable to her work. [245-1] at 3. But Miller testified that she failed to collect any background information on these homes, failed to review any operations or maintenance histories for the homes she inspected, and failed to form a hypothesis before beginning her inspection of any of Plaintiffs' homes – all of which were required by this standard. [245-1] at 2-5.

<u>ANSI/IICRC S500 and S520</u>. These standards govern the methodology for determining damage to contents, and the proper remediation for such, both of which are referenced in Miller's report and affirmed in her testimony as applicable to her work. [245-1] at 9. However, Miller conceded that she had not done the work required by these standards, which included a visual

inspection of the contents, identification of the type of item, determination of the porousness of the item and selection of cleaning method, weighing the cost of cleaning the item versus the cost of the item, and categorization and inventory all the items to be cleaned. [245-1] at 10-11. Miller completed none of these steps, readily conceded she violated those standards, and, as a result, withdrew all of her opinions as to the Vinales's personal contents. [245-1] at 18.

Aside from her admitted and outright failure to follow these and other nationally accepted standards, the Appendix outlines countless examples where Miller's methodology in conducting the Vinales's report was not supported by, or permitted by, or in direct violation of, many scientific and industry standards:

- Miller did not take a control sample in her air testing in the Vinales's home, in violation of every accepted scientific standard. [245-1] at 13-14.

- She concluded that air sampling results were "not satisfactory" even though the sampling results were less than the outside control sample, which national standards would deem "satisfactory."[2]

- Miller concluded that tape-sample results were "not satisfactory" even though she acknowledged that there were no standards whatsoever for the "acceptable" ranges of mold in tape samples.[3]

Over and over again, Miller rejected what the nationally accepted industry standards and

---

[2] "Q. Right. So based on the nationally accepted standards, this would be satisfactory? A. Correct. Q. Kristy Beck-Miller believes it's unsatisfactory without reliance on any nationally accepted standard. Is that what you're saying? A. Yes." [245-4] at 112:16-25.

[3] "Q. And you agree that there is no nationally accepted standard, guideline or peer-review study that you know of that would judge whether or not those [tape sample] test results were satisfactory or not satisfactory, true? A. True. Q. All right. So that is -- conclusion is not based on any nationally accepted standard but is just Kristy Beck-Miller. MR. BRZEZINSKI: Object to form. Q. (By Mr. Boone) Right? A. Yes." [245-4] at 116:7-18.

scientific guidelines told her, and inserted her own "personal opinion."[4] Miller's recognition of her countless violations of accepted practice and standards led her to withdraw her report on the Vinales's home because it "did not follow national standards," was "not reliable according to national standards" and was not "a reliable mold assessment." [245-1] at 15-16.

In *Jenkins v. Slidella LLC*, 05-370, 2008 WL 2649510 (E.D. La. Jun. 27, 2008), the court faced almost the exact same question regarding a *Daubert* challenge to a mold-assessment expert. In that case, the plaintiffs sued their apartment complex alleging mold exposure, and tendered Chester Doll "as an expert in the field of mold inspections, growth, exposure, and sampling techniques." *Id.* Like Miller here, Doll failed to follow industry standards when conducting his mold investigation, including many of the same deviations from accepted testing and sampling methodologies that Miller is guilty of. *Id.*, at *2-3. The Court excluded Doll for his numerous failings finding "the sampling standards used by Doll do not follow the accepted scientific methodology used by certified experts in the mold sampling field." *Id.* at *3. Here, Miller's outright rejection of nationally accepted standards, and her insertion of her "personal" opinions which contradict those standards, require the same result. This is all the more true where, as here, Miller herself professed to rely on these standards but then ignored them in forming her conclusions. An expert is properly excluded when he "failed to apply his own methodology reliably." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002); *accord, In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 563 n.146 (S.D.N.Y. 2004).

**II.     Miller's Report And Opinions On The Vinales Plaintiffs Are Riddled with Errors and Falsehoods and Are Unreliable.**

---

[4] "That would just be a personal opinion on the air samples." [245-4] at 112:16-25. "Q. All right. So that is -- conclusion is not based on any nationally accepted standard but is just Kristy Beck-Miller. . . . Q. (By Mr. Boone) Right? A. Yes." *Id.* at 116:4-18; "Q. . . . you agree that according to nationally accepted standards, that would be satisfactory, correct? A. Correct. Q. But according to Kristy Beck-Miller, it is not? A. Correct." *Id.* at 115:7-18.

Federal Rule of Evidence 702(d) requires that "the expert has reliably applied the principles and methods to the facts of the case"; however, the Appendix outlines in detail, on a report by report basis, the many mistakes, falsehoods, and incorrect information contained in those reports. These errors are not merely a matter of credibility for the finder of fact to sort through. In the Fifth Circuit, an opinion must be the result of a reliable methodology for it to be admissible: "the existence of sufficient facts and a reliable methodology is in all instances mandatory." *Hathaway*, 507 F.3d at 318. "Under *Daubert*, '*any* step that renders the analysis unreliable ... *renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology*.' " *Moore v. Ashland Chem. Inc*., 151 F.3d 269, 279 n.10 (5th Cir. 1998) (quoting *In re Paoli R.R. Yard PCB Litig*., 35 F.3d 717, 745 (3d Cir.1994) (emphasis in *Paoli*)).

In the Vinales report, Miller withdrew her opinions about contamination of the HVAC system because she didn't inspect it and wasn't qualified to opine about it; withdrew her opinions about the Vinales' belongings because she didn't follow the standards she cited; admitted that her conclusion that the home was "heavily contaminated by fungi" was false; didn't document where samples were taken from or where water intrusion allegedly occurred; reached conclusions on humidity but didn't document what her humidity readings were; concluded some sampling results were "not satisfactory" when in fact they were; and admitted her report did not contain the necessary elements of a mold protocol required under Texas law. All of that resulted in Miller's admission that her Vinales report was not reliable, and should be withdrawn. [245-1] at 15-16.

These mistakes, errors, falsehoods, and failings are not mere matters of credibility. They demonstrate a pattern, practice, and methodology (or the lack thereof) which is fundamentally flawed and not reliable. *See Matosky v. Manning*, 428 F. App'x 293, 298 (5th Cir. 2011) (affirming

exclusion of expert opinion where opinion based on unsupported facts). This Court outlined the "analytical gap" test whereby "the Court must analyze the underlying data forming the basis for the expert opinion." *Koenig v. Beekmans*, No. 5:15-CV-0822-OLG, 2017 WL 7732878, *2 (W.D. Tex. Mar. 30, 2017) (citing *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W. 2d 713, 726 (Tex. 1998)). "If the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable." *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)). An opinion rendered without a sufficient basis in depositions, documents, and the like may be unreliable on that basis. *Phlypo v. BNSF Ry. Co.,* 2019 WL 2297293, at *8 (N.D. Tex. Mar. 27, 2019) (excluding expert who did not review complete depositions, relevant files, or test results); *see also Nucor Corp. v. Requenez*, 2022 WL 36095, at *5 & n.94 (S.D. Tex. Jan. 4, 2022) ("Reliance on ... cherry-picked data ... may be grounds to reject expert testimony.

Here, Miller submitted a report on the Vinales family which was laden with falsehoods, mistakes, and "personal opinions" contrary to scientific standards, which simply reflected the unsupported conclusions desired by Plaintiffs. This is not "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," and it renders her opinions inadmissible as a matter of law.

## CONCLUSION

Miller was correct when she recognized that her Vinales' report was so error-ridden and standard-defiant that it was unreliable. The Court should so rule as she has suggested. Defendants respectfully request this Honorable Court grant their Motion to In Limine to Exclude Kristy Beck-Miller, and any other relief to which they are entitled.

## CERTIFICATE OF GOOD FAITH CONFERENCE

The undersigned herby certifies that they conferred with Plaintiffs' counsel prior to filing

this Motion. Plaintiffs' counsel opposes withdrawing Kristy Beck-Miller, her report, and her opinions from evidence along with this Motion.

Respectfully submitted this the 17th day of May 2023.

> By: */s/ Walter H. Boone*
> Walter H. Boone, MS Bar No. 8651
> *(Admitted to W. D. of TX on 7/28/2020)*
> Jennifer J. Skipper, State Bar No. 24076171
> BALCH &BINGHAM LLP
> 188 East Capitol Street, Suite 1400
> Jackson, MS 39201
> Telephone: (601) 961-9900
> Facsimile: (601) 961-4466
> E-mail:   wboone@balch.com
>           jskipper@balch.com
>
> By: */s/ Julia W. Mann*
> Julia W. Mann, State Bar No. 00791171
> Erica Benites Giese, State Bar No. 24036212
> JACKSON WALKER LLP
> 112 E. Pecan Street, Suite 2400
> San Antonio, Texas 782015
> Telephone: 210-978-7761
> Facsimile: 210-242-4646
> E-Mail: jmann@jw.com
>
> ***Attorneys for AETC II Privatized Housing, LLC, AETC II Property Managers, LLC, and Hunt ELP, Ltd.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May 2023, service was made of a copy of the foregoing Notice of Deposition via e-mail upon the following:

Randall A. Pulman, Esq.
Ryan C. Reed, Esq.
Matthew J. McGowan, Esq.
Sarah Jackson, Donahue, Esq.
PULMAN, CAPPUCIO, & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, TX 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
E-Mail: rpulman@pulmanlaw.com
rreed@pulmanlaw.com
mmcgowan@pulmanlaw.com
sdonahue@pulmanlaw.com

James R. Moriarty, Esq.
LAW OFFICES OF JAMES R. MORIARTY
4119 Montrose, Suite 250
Houston, TX 77006
(713) 528-0700 Telephone
(713) 528-1390 Facsimile
E-Mail: jim@moriarty.com

Francisco Guerra, IV
Jennifer Arlene Neal
Robert E. Brzezinski
WATTS GUERRA, LLP
Four Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 477-0500
E-Mail: fguerra@wattsguerra.com
jneal@wattsguerra.com
rbrzezinski@wattsguerra.com

/s/ *Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
*(Admitted to W. D. of TX on 7/28/2020)*