IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MICHAEL J. DANIELS, ET. AL. § | |
| § | |
| PLAINTIFFS, § | |
| § | |
| V. § | NO. SA-19-CV-01280-FB-RBF |
| § | |
| AETC II PRIVATIZED HOUSING, LLC, ET AL. § | |
| § | |
| DEFENDANTS § | |

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE OPINIONS AND TESTIMONY OF MIKE KRISMER

Defendants AETC II Privatized Housing, LLC, AETC II Property Managers, LLC, and Hunt ELP, Ltd., file this Motion in Limine to Exclude Opinions and Testimony of Mike Krismer, and would show unto the Court as follows:

### PREFACE

On January 18, 2023, this Court issued its Order [351] regarding Defendants' *Daubert* Motions seeking to exclude Plaintiffs' experts, including Mike Krismer. [239, 240, 245]. In that Order, the Court stated Defendants' arguments were better raised "in a motion in limine" and denied those motions "without prejudice to reraising at an appropriate time." [351] at 2. Defendants now reraise those arguments pursuant to the Court's Order.

### INTRODUCTION

The Vinales Plaintiffs allege they were exposed to mold and a host of other conditions in their home at Randolph AFB. According to Plaintiffs' First Amended Designation of Experts, Krismer is to testify "that each of the houses on Randolph Air Force Base suffer from the same conditions . . . ." [175] at 3. But that Designation has several fundamental problems: Krismer has not set foot in the Vinales's house, nor examined any documents or testimony pertaining to their

home, and his only disclosed report doesn't say anything about their home at all. Rather, his report deals with another family, the Hills, who are not plaintiffs in this case.[1] In short, Krismer has nothing relevant or reliable to offer regarding the Vinales family or their home. For the reasons set forth below, his opinions should be excluded in their entirety.

### BRIEF FACTUAL OVERVIEW

Plaintiffs have designated Krismer to provide opinions as follows:

> Mr. Krismer will testify regarding the repairs, remediation, and renovations required to address the damages he observed at houses on Randolph Air Force Base, the conditions that occurred as a result of the failure to timely and properly make repairs, and will testify that each of the houses on Randolph Air Force Base suffer from the same conditions, which likely represents a pattern and practice by the property owners of failing to timely and properly repair and/or remediate problems with the houses.

[175]. But Krismer testified that **_he could not_** determine that the conditions were the same at all of the homes at Randolph: "No, I haven't looked at all the homes." Krismer Deposition [240-1] at 242:9244:15.[2] Indeed, he has never set foot in any Plaintiff's home at Randolph. [240-1] at 245:6-11. In his 40-year career, he cannot recall testifying to opinions about a house he has not been to. [240-1] at 40:2-8. He agrees that before offering opinions, especially in court, he should do "an on-site inspection" of the premises in question and should take "whatever samples are necessary under the circumstances" as well as "what other kind of testing may be necessary." [240-1] at 38:17-39:9. But he did none of those at the Vinales' residence.

Krismer's only report disclosed in this case, attached to the original Motion to Exclude at [240-2], relates to his opinions about the Hills' residence, who are not Plaintiffs in this case and whose home is not at issue in this case. Krismer confirmed that he had no opinions in the case

---

[1] The Hills are plaintiffs in another case (*Hill et al. v. AETC II Privatized Housing, LLC, et al.*), but not in this case.
[2] For brevity and simplicity, Defendants do not attach again the exhibits to the original motion, but rather refer to them by the number in the ECF system with the prior motion.

beyond those stated in his written report. [240-1] at 67:1-68:12; 290:18-24. But nowhere in his report does he discuss any residence besides that of Major Hill, who is not a party in this suit.

Even if Krismer wished to offer opinions on the Vinales's homes (which he says he could not do without seeing it), Krismer was not provided any documents or other basis to do so. Even though Plaintiffs' counsel dumped thousands of documents on Krismer one week before his deposition (nearly two years after his report was completed and months after his designation), he had not reviewed any documents on other homes, including: maintenance records ([240-1] at 267:15-25); photographs of any Plaintiff's home, or videos or photos from their residences ([240-1] at 252:8-21, 280:7-22); testing data or mold sampling for any Plaintiff's home; ([240-1] at 252:22-253:1, 267:210); reports from anyone else about Plaintiffs' homes or done repairs there; ([240-1] at 253:2-6); depositions of any witnesses, including Plaintiffs ([240-1] at 253:7-18); sworn interrogatory responses of Plaintiffs ([240-1] at 279:3-15); or even correspondence by Plaintiffs about their maintenance complaints ([240-1] at 279:16-19).

In short, Krismer was designated to testify that "each of the houses on Randolph Air Force Base suffer from the same conditions, which likely represents a pattern and practice by the property owners of failing to timely and properly repair . . ." [175] at 3, but Krismer has never set foot in the Vinales's home, his designated report deals with another family and property not in this case, and he has reviewed zero documents or information regarding the Vinales's home on which to make the conclusory (and false) statement in the designation. Krismer's testimony and opinions must be stricken, and he must be prohibited from testifying.

## **LEGAL STANDARD**

Under Fed. R. Evid. 702, expert opinions must be both reliable and relevant: "expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the

evidence is relevant to the suit; and (3) the evidence is reliable." *CFS Forming Structures Co. v. Flintco, Inc.*, No. A-07-CA-973-LY, 2009 WL 10669460, at *1–2 (W.D. Tex. Feb. 20, 2009).

The "reliability" inquiry focuses on "whether the reasoning or methodology underlying the testimony is scientifically valid," while the relevance inquiry focuses on "whether [that] reasoning or methodology properly can be applied to the facts in issue." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592-93 (1993)). "[W]here such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152. "Experience, on its own, may qualify an expert's opinion, but the expert's experience must still undergo the separate reliability test." *Tijerina-Salazar v. Venegas*, No. PE:19-CV-00074-DC-DF, 2022 WL 1176722, at *2 (W.D. Tex. Apr. 19, 2022) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002)). "If a proponent does not establish these factors through more than just experience, the Court must exclude the testimony." *Id.* An expert relying on "experience" alone must nonetheless "explain what experience or technical knowledge he is relying upon in reaching his opinions, how that experience or knowledge leads to the conclusions reached, and how that experience or knowledge is reliably applied to the facts." *Alvarez v. San Antonio Citation Serv. Ctr.,* No. SA-07-CA-0523-FB, 2008 WL 11334094, at *4 (W.D. Tex. Sept. 11, 2008) (excluding opinions). And an opinion rendered without a sufficient basis in depositions, documents, and the

like may be unreliable on that basis. *Phlypo v. BNSF Ry. Co.,* 2019 WL 2297293, at *8 (N.D. Tex. Mar. 27, 2019) (excluding expert who did not review complete depositions, relevant files, or test results); *see also Nucor Corp. v. Requenez*, 2022 WL 36095, at *5 & n.94 (S.D. Tex. Jan. 4, 2022) ("Reliance on . . . cherry-picked data . . . may be grounds to reject expert testimony.") Applying essentially the same legal standard as Fed. R. Evid. 702 and *Daubert*, the Texas Court of Appeals rejected an expert's opinion on various plaintiffs' personal property based only on his examination of the property of one plaintiff: "In sum, Tisdell provides no empirical evidence or methodology that explains the validity of his extrapolation that 'observations pertaining to the exposure of Ms. Laura Burnett's property are also applicable to all the other Residents' property.'" *Plunkett v. Conn. Gen. Life Ins. Co.,* 285 S.W.3d 106, 117 (Tex. Ct. App.–Dallas 2009).

The lack of a methodology goes not only to reliability but to relevance: "If the expert lacks some objective, independent validation of his methodology, it is not helpful to the factfinder and should be excluded." *Spring St. Apts Waco, LLC v. Philadelphia Indem. Ins. Co.*, No. 6:16-CV-00315-JCM, 2017 WL 2805014, at *4 (W.D. Tex. June 28, 2017) (citing *Kovaly v. Wal–Mart Stores Tex., L.L.C.,* 627 F. App'x 288, 290 (5th Cir. 2015)). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Expert testimony that does not opine that some fact is more likely than not is likewise not helpful. *Bro-Tech Corp. v. Purity Water Co. of San Antonio*, No. CIV SA-08-CV-0594-XR, 2009 WL 1748539, at *8 (W.D. Tex. June 19, 2009).

## ARGUMENT

### I. Krismer Is Bound By His Report, Which Says Nothing About The Vinales Plaintiffs

Krismer's report [240-2] says nothing about the Vinales's home, and contains none of the broad, conclusory (or false) opinions found in the Designation about every other house at

Randolph. Krismer is bound by the four corners of his report. Under Fed. R. Civ. P. 26(a)(2)(B)(i), an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." It is axiomatic that an expert's opinions not disclosed in his report must be excluded, or else the case becomes simply trial by ambush. *See, e.g., Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996); *Sobrino-Barrera v. Anderson Shipping Co.*, 495 F. App'x 430, 433 (5th Cir. 2012). Krismer's report deals exclusively with "findings regarding why fungal growth was present at the Hill residence," findings and observations at the Hill residence, humidity readings at the Hill residence, and "Opinion Regarding the Scope of Remediation Required" at the Hill residence. [240-2], at 8, 9-24, 25-29, 29. Krismer's report says nothing about the Vinales's home and nothing like what Plaintiffs' counsel wrote in the designation. Krismer is bound by that report.

## II. Krismer's Opinions About the Hill Residence Are Irrelevant To The Vinales's Residence

Krismer's only opinions properly offered in this case relate to the Hill residence. But Krismer's opinions about the Hills' home cannot prove or disprove any facts about the condition and maintenance of the Vinales's residence, which is the only relevant issue at trial for these Plaintiffs. Two district courts have already held so in comparable cases involving mold claims in military housing. "Any evidence of other homes owned or managed by Defendant is irrelevant and thus inadmissible." *Federico v. Lincoln Military Hous. LLC*, 2015 WL 12806532, at *4 (E.D. Va. Nov. 13, 2015). "The relevant inquiry in this case is whether the Cookseys were exposed to mold at their residence and whether the mold exposure caused them injuries. The construction and remediation of other properties has little, if any, relevance to the Cookseys' claims." *Cooksey v. Hunt So. Group LLC*, No. 1:18-cv-00049-LG-RHW, slip op. at 2 (S.D. Miss. Nov. 7, 2018). Ex. 3

(slip op.).[3]

Of course, the Hill residence and the Vinales's home are different homes, different types and configurations of homes, occupied at different times, by different families, with different maintenance histories, different maintenance complaints, and different maintenance responses. Krismer, for his part, had no information about any of that for the Vinales's home (or even the Hill's home). For those reasons alone, whatever Krismer opines regarding the Hill residence is not relevant to this case. "A court may rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is 'too great an analytical gap between the data and the opinion proffered.' " *Burleson v. Texas Dep't of Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (citation omitted).

The condition of the Hill residence at the time Krismer inspected it was far from typical, and is the subject of Defendants' counterclaim against the Hills because the Hills "repeatedly deferred, delayed, and ultimately refused necessary repairs to address their concerns." Counterclaim, *Hill v. AETC II Privatized Housing, LLC*, Case No. 5:20-CV-01473, [9, at 29 *et seq*.]. Unbeknownst to Krismer, the condition of the Hill residence at the time of Krismer's inspection was not caused by lack of maintenance or any inherent condition of the home, but the Hills' own refusal to permit the Humidity Reduction Project work in July 2019, refusal to vacate the home for duct cleaning from July through November 2019, refusal to allow AETC Housing to complete open work orders in November 2019, and then their refusal to permit any repairs at all or vacate the residence in March and April, 2020. [9, at ¶¶15, 16, 18, 23]. The Hills breached their

---

[3] See also *Plunkett*, 285 S.W.3d at 117 ("In sum, Tisdell provides no empirical evidence or methodology that explains the validity of his extrapolation that 'observations pertaining to the exposure of Ms. Laura Burnett's property are also applicable to all the other Residents' property.'"); [230, at 4-8] (Defendants' response to Plaintiffs' Motion to Compel outlining case law establishing that conditions in one home are not relevant to conditions in another).

contractual obligations to allow access for repairs, and AETC Housing sued them for it. As alleged in the Counterclaim, but unknown to Krismer, AETC Housing proposed a scope of work in July 2019 to lower humidity in the home. Krismer testified that the scope of work proposed by Defendants (Ex. 10 to Krismer's deposition [240-1]), was a "reasonable effort" by AETC Housing "getting to the cause of the problem." [240-1] at 196;14-24.

Even if a report from an inspection of one home could shed some light on some conditions in another (which it can't), the conditions of the Hill residence at the time of Krismer's inspection are anything but applicable elsewhere. Anything Krismer found or opined about in the Hill residence was the result of their refusal to allow repairs, and not any condition in the home or failure to maintain it. For these reasons, Krismer's opinions are inadmissible in this case.

### III. Any Opinions By Krismer On The Vinales's Home Or "All of Randolph" Would Be Unreliable.

For the reasons stated above, Krismer's opinions must be restricted to the Hill's residence in the *Hill* case, and cannot be introduced in this case. However, if, for some reason, Krismer attempts to testify, as his Designation states, that "each of the houses on Randolph Air Force Base suffer from the same conditions," that testimony is unreliable.

Krismer's methodology requires "at a minimum, an on-site inspection of what you're talking about" and "also includes taking whatever samples are necessary under the circumstances" as well as "doing what other kinds of testing may be necessary under the circumstances." [240-1] at 38:23-39:9. In fact, Krismer actually attacked other experts for performing an inadequate investigation which did not include adequate inspection and testing. [240-1] at 37:2-38:13.[4]

---

[4] Krismer's criticism of Haag Engineering is reflected in *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 449 (Tex. 1997): "There was also evidence that State Farm, and the engineers on which it relied, did not conduct an adequate investigation. Krismer testified that the Haag report

Krismer admitted at his deposition that in 40 years he had never offered an opinion on a house without having first inspected it. ([240-1] at 40:25-41:9). The Supreme Court has held that Rule 702 requires that "an expert, whether basing testimony upon professional studies or personal experience, [must] employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd.*, 526 U.S. at 152. Krismer inspected the Hill residence twice ([240-1] at 63:8, 66:14-21), and did some testing there ([240-1] at 64:10-13). But Krismer did none of these things at the Vinales's house or any other Plaintiffs' home. He did not inspect any part of their home, let alone spend a full day or two at there. In his words, "No, I haven't looked at all the homes," and would certainly not be able to testify regarding the Vinales's home. [240-1] at 242:9-244:15. By his own admission, therefore, any opinions he offered on Vinales's residence would not be up to his own "level of intellectual rigor." "By failing to test in the instant case, [the expert] **failed to apply his own methodology to the facts**. That is not an issue that merely goes to evidentiary weight; it goes directly to evidentiary admissibility." *Barragan v. U-Haul Int'l Inc.,* No. 5:15-CV-854-DAE, 2018 WL 11361106, at *11 (W.D. Tex. Sept. 25, 2018) (excluding expert opinions) (emphasis added). Krismer had perilously few facts on the Hill home, and zero facts about the Vinales's home.[5] Without sufficient facts, an expert's

---

was based on inadequate information. He said the failure of State Farm and Haag Engineering to examine the leaking pipe, take core samples, and perform other tests was unreasonable."

[5] Krismer's own methodology at the Hills' residence was suspect because he had not seen the Hills' maintenance history [240-1] at 285:23-286:1; the Hills' depositions, [240-1] at 284:25-285:6; the Hills' interrogatory responses, [240-1] at 285:7-9; or any correspondence between the Hill family and Randolph Family Housing, [240-1] at 286:7-10. Even if he could overcome those deficiencies and testify about the Hills' residence, there is no reliable basis to testify about these Plaintiffs' homes because he had not seen maintenance records for the Vinales's home, [240-1] at 278:19-279:2; Vinales Plaintiffs' depositions, Ex. 2 at 280:23-25; Vinales Plaintiffs' interrogatory responses, [240-1] at 279:3-5; any correspondence by the Vinales regarding their maintenance records, [240-1] at 279:16-19; any of their thousands of photos and videos of their residences, [240-1] at 280:7-9; or reports or depositions from anybody who has inspected or tested the Vinales's home at Randolph, [240-1] at 283:16-23.

opinion is merely conclusory and therefore inadmissible. *Stagliano v. Cincinnati Ins. Co.,* 633 F. App'x 217, 220 (5th Cir. 2015) (citing cases).

"Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Edmonds v. Illinois Cent. Gulf R. Co.,* 910 F.2d 1284, 1287 (5th Cir. 1990) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir.1987)). Lacking a factual foundation, Krismer's opinions on Plaintiffs' homes, even were they offered in his report (which they are not), would be based merely on his subjective opinion and his credentials, a classic example of the *ipse dixit*, "because I say so" testimony *Daubert* and Rule 702 exclude. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## CONCLUSION

For the reasons set forth above, Krismer's opinions and testimony must be excluded.

## CERTIFICATE OF GOOD FAITH CONFERENCE

The undersigned herby certifies that they conferred by email with Plaintiffs' counsel prior to filing this Motion. Plaintiffs' counsel opposes withdrawing Mike Krismer, his report, and his opinions from evidence along with this Motion.

Respectfully submitted, this the 17th day of May 2023.

/s/ *Walter H. Boone*
Walter H. Boone, MS Bar No. 8651
(*admitted to W.D. of Tex. on 7/28/2020*)
Jennifer J. Skipper, State Bar No. 24076171
Balch & Bingham LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201-2133
Telephone: 601-965-8182
Facsimile: 866-501-9984
E-Mail: jskipper@balch.com
wboone@balch.com

Julia W. Mann, State Bar No. 00791171
Erica Benites Giese, State Bar No. 24036212
JACKSON WALKER LLP
112 East Pecan Street, Suite 2400
San Antonio, Texas 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail: jmann@jw.com
          egiese@jw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

    Randall A. Pulman, Esq.
    Ryan C. Reed, Esq.
    Matthew J. McGowan, Esq.
    Sarah Jackson, Donahue, Esq.
    PULMAN, CAPPUCIO, & PULLEN, LLP
    2161 NW Military Highway, Suite 400
    (210) 222-9494 Telephone
    (210) 892-1610 Facsimile
    E-Mail: rpulman@pulmanlaw.com
    rreed@pulmanlaw.com
    mmcgowan@pulmanlaw.com
    sdonahue@pulmanlaw.com

    James R. Moriarty, Esq.
    LAW OFFICES OF JAMES R. MORIARTY
    4119 Montrose, Suite 250
    (713) 528-0700 Telephone
    (713) 528-1390 Facsimile
    E-Mail: jim@moriarty.com

    Francisco Guerra, IV
    Jennifer Arlene Neal
    Robert E. Brzezinksi
    WATTS GUERRA, LLP
    Four Dominion Drive, Bldg. 3, Suite 100
    San Antonio, TX 78257
    (210) 477-0500
    E-Mail: fguerra@wattsguerra.com
    jneal@wattsguerra.com
    rbrzezinski@wattsguerra.com

                           /s/ *Walter H. Boone*
                           Walter H. Boone, MS Bar No. 8651
                           (*admitted to W.D. of Tex. on 7/28/2020*)