IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL J. DANIELS, et al., | § § | |
| *Plaintiffs* | § § | CIVIL ACTION NO. SA-19-CA-01280-FB |
| v. | § § | |
| AETC II PRIVATIZED HOUSING, LLC; AETC II PROPERTY MANAGERS, LLC; and HUNT ELP, LTD. d/b/a HUNT MILITARY COMMUNITIES, | § § § § § § | |
| *Defendants* | § § | |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE OPINIONS AND TESTIMONY OF MIKE KRISMER [Dkt. 375]**

Plaintiffs file this Response in Opposition to *Defendants' Motion in Limine to Exclude Opinions and Testimony of Mike Krismer* [Dkt. 375] (the "Motion"). For the reasons demonstrated herein, the Motion should be in all things denied.

**OVERVIEW & INTRODUCTION**

In this case, Defendants refused to permit Plaintiffs' expert, Mike Krismer, to inspect the subject Plaintiffs' housing units, including the Vinales' unit. As such, while Krismer has drawn relevant and reliable conclusions about all of the subject housing units at issue in this case, based on several on-site inspections,[1] he has not been afforded the opportunity to inspect the Vinales house. Now, having unilaterally obstructed Krismer's ability to perform on-site inspections of the subject housing unit, Defendants criticize and

---

[1] These include inspections at the Hill, Hiatt, Holmes and Keller residences on Randolph AFB. .

seek to exclude Krismer based on that very inability to inspect—even though their own experts have drawn conclusions about units they never inspected, and despite Defendants' own study and resulting base housing-wide remediation and repair plan (known as the "Moisture Reduction Project" or "Humidity Reduction Project") having identified the very same type of problems at the subject housing units that Krismer has identified.  As illustrated below, Krismer's opinions are relevant and reliable, and must not be excluded.  As Krismer has declared, his review of various work orders, mold reports and other documents (in addition to other items) confirms "substantially the same conditions existed" at all of the housing units made the basis of this lawsuit, which includes the Vinales Plaintiffs' housing unit.  *See* **Exhibit A**, Declaration of Mike Krismer at 4.

## EVIDENCE IN SUPPORT OF RESPONSE

This Response is supported by the following evidence, attached hereto and incorporated herein for all purposes:

1. **Exhibit A**:  Declaration of Mike Krismer;

2. **Exhibit A-1**:  Draft Expert Report of Mike Krismer dated May 24, 2020;

3. **Exhibit B**:  May 2022 Email Exchange between Robert Brzezinski and Walter Boone;

4. **Exhibit C**:  "Pilot Specification for Moisture Reduction" dated April 2019 (prepared for Randolph Family Housing);[2]

5. **Exhibit D**:  Report of Mr. Joseph Lstiburek (prepared for Defendants);

6. **Exhibit E**:  Reports of Mr. George Coto (prepared for Defendants);

7. **Exhibit F**:  Reports of Mr. Tom Sumner (prepared for Defendants);

---

[2] This document is alternatively referred to by the parties from time to time as the Humidity Reduction Project or the Moisture Reduction Project.

8. **Exhibit G:** Deposition of Joseph Lstiburek; and

9. **Exhibit H**: Deposition Testimony of Mike Krismer.

## STANDARD FOR ADMITTING EXPERT TESTIMONY

A district court has wide latitude in determining whether disclosure is sufficient pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. *See CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 277 (5th Cir. 2009) (the standard is abuse of discretion). If it finds there was a failure to disclose, the court should, pursuant to Rule 37(c)(1), weigh the unique circumstances at issue (including any explanations offered, potential prejudice to the opposing party, and the possibility of curing such prejudice), whether the failure was substantially justified or harmless, and the importance of the subject evidence or testimony. *See* FED. R. CIV. P. 37(c)(1); *U.S. v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998) (citing *Bradley v. United States*, 866 F.3d 120, 125 (5th Cir. 1989)).

The admission of expert witness testimony pursuant to Federal Rule of Evidence 702 is a matter left to the discretion of the district court as well. *See Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 194 (5th Cir. 2006). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) he testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"An expert's qualifications may be based on sufficient practical experience" because the degree of knowledge, skill, education, training or experience an expert witness must have depends upon the complexity of the subject and field of expertise at issue. *See Great Am. Ins. Co. v. Hamel*, 444 S.W.3d 780, 804 (Tex. App.—El Paso 2014), *rev'd on other grounds*, 525 S.W.3d 655 (Tex. 2017) (citing *Schneider v. Lynaugh*, 835 F.2d 570, 576 (5th Cir. 1988)). "Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. *See Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020). And a witness who is qualified as an expert "is not strictly confined to his area or practice but may testify regarding related applications" because "a lack of specialization goes to the weight, not the admissibility of the opinion." *See Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View 1, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

In determining whether an expert's testimony is admissible under Rule 702, a court should ensure the expert, "whether basing testimony upon professional studies *or personal experience*," uses the same level of rigor in the courtroom "that characterizes the practice of an expert in the relevant field." *See Kuhmo Tire*, 526 U.S. at 152 (emphasis added). In applying Rule 702, the Court "must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case." *See Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004).

To be reliable, the expert's opinion must be based on sound reasoning and/or methodology. *See Daubert*, 509 U.S. at 593; *St. Martin v. Mobil Expl. & Prod.*, 224 F.3d 402,

406-07 (5th Cir. 2002) (expert was entitled to rely upon his own experience); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245-50 (5th Cir. 2002) (expert was entitled to rely on his general knowledge). The United States Supreme Court's decision in *Daubert* sets forth a series of non-exclusive considerations intended to guide a district court's inquiry into the reliability of an expert's opinion. *See id.* at 592-94; *see also Kuhmo Tire Co.*, 526 U.S. at 149-50 (acknowledging the *Daubert* factors are guidelines rather than requirements). The reliability inquiry must remain flexible since "not every *Daubert* factor will be applicable in every situation." *See Guy*, 394 F.3d at 325. Indeed, "a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kuhmo Tire Co.*, 526 U.S. at 150. As such, "a court has discretion to consider other factors it deems relevant to assessing reliability." *See id.* In many instances, courts conducting a reliability inquiry find it appropriate to determine whether there are any analytical gaps in the expert's opinion by examining whether the opinion "fits the facts of the case." *See, e.g.*, *Hamel*, 444 S.W.3d at 806 (citing *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 235 (Tex. 2010)); *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Regardless, the focus of the inquiry "must be solely on principles and methodology, not on the conclusions that they generate." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997); *see also Moore v. Ashland Chem.*, 151 F.3d 269, 276 (5th Cir. 1998) (proponent of expert testimony need not prove that the analysis is correct, only that it is reliable).

In exercising its discretion, a court must give "proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chem. Co.*, 826

F.2d 420, 422 (5th Cir. 1987). Accordingly, the district court's role is limited to determining the threshold question of admissibility of the opinion, without regard to the credibility of the evidence. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). To that end, "as a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996). The aim of the *Daubert* inquiry as to reliability, therefore, is centered on excluding expert testimony that is based merely on subjective belief or unsupported speculation. *See Daubert*, 509 U.S. at 592-93.

To be relevant, the expert's opinion must be based on the facts. *See Daubert*, 509 U.S. at 586-87. *Daubert* emphasized that "[Rule 702's] basic standard of relevance thus is a liberal one." *Daubert*, 509 U.S. at 587. The Supreme Court acknowledged that the more liberal standard of Rule 702 would likely allow the jury to hear more expert testimony. *See id.* at 590. It determined, however, even if its ruling would "open the floodgate" of expert testimony, that juries would not be confused:

> In this regard [Respondent] seems to us to be overly pessimistic about the capabilities of the jury and of the adversary system generally. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burdens of proof are the traditional and appropriate means of attacking shaky but admissible evidence.

*See id.* at 596.

## ARGUMENTS & AUTHORITIES

I. **Defendants' Contention of a Rule 26 Violation is Without Merit and Otherwise Harmless As No Prejudice Has Occurred.**

Defendants' contention of a Rule 26 violation is without merit, as Krismer's report discusses issues which existed at all of the housing units at issue, including the Vinales'

home.  *See* Motion at 6.  For example, as Krismer details in the Declaration attached hereto as **Exhibit A**, the scope of Defendants' "Pilot Specification for Moisture Reduction" dated April 2019 involved "the same required scope" as did Krismer's inspection of the Hill, Holmes, and Keller units.  *See* **Exhibit A**, Krismer Declaration at 4.  As such, Krismer declares that his "review of the work orders, various mold reports and other documents for the plaintiffs in this case confirms substantially the same conditions existed at all of Randolph AFB housing units made the basis of this, the *Daniels et al.* lawsuit." *See id.*[3]

It is important to note that Krismer testified in his deposition that "every house I've been and looked at pictures of from, you know, reports, all have similar problems." *See* **Exhibit H**, Krismer Dep. at 247:2-4.  As Krismer testified, he had "files on all nine of those [subject] homes" at the time of the deposition and was "in the process of reviewing" the files.  *See id.* at 248:9-11.  The files included photographs of the subject homes.  *See id.* at 252:10-11.  As such, Defendants' counsel had ample opportunity to question Krismer

---

[3] Importantly, Krismer testified in his deposition that "every house I've been and looked at pictures of from, you know, reports, all have similar problems." *See* Dkt. 240-1 at 63 (Krismer Dep. at 247:2-4).  Under a proper Rule 26 analysis, a supplemental affidavit or declaration constitutes a "new opinion" only when it adds a new theory of causation or a new theory of liability or concerns materially different issues or subjects—not when (as here) it merely supplements an original opinion with additional information and an explanation regarding its proper scope and application.  *See, e.g.*, *Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 603-04 (S.D. Tex. 2001); *see also Sobrino-Barrera v. Anderson Shipping Co., Ltd.*, No. H-09-3642, 2011 WL 5245396, at *3 (S.D. Tex. Oct. 24, 2011) (a new report provides opinions which are materially different than those previously offered); *Avance v. Kerr-McGee Chem. LLC*, No. 5:04CV209, 2006 WL 3484246, at *7 (E.D. Tex. Nov. 30, 2006) (a new report discusses "new issues" rather than supplementing previous opinions).  Other courts have ruled similarly—that an expert's opinion is "new" and therefore in violation of Rule 26 only when it concerns entirely "new subjects" or entirely new matters such as providing a "new calculation of damages."  *See, e.g.*, *Bailey v. Stanley Access Techs., Inc.*, No. 3:14-CV-72-SA-JMV, 2015 WL 6828921, at *4 (N.D. Miss. Nov. 6, 2015) (new subjects); *Gen. Elec. Capital Bus. Asset Funding Corp. v. S.A.S.E. Military Ltd.*, No. SA-03-CA-189-RF, 2004 WL 5495589, at *2 (W.D. Tex. Oct. 8, 2004) (new damage calculations).  While the Federal Rules do not define what constitutes a supplemental opinion versus a new opinion and the line is admittedly "not always clear," this much is clear—decisions regarding how to make the distinction "depend[] on the facts of the case."  *See Charter Sch. Sols. v. GuideOne Mut. Ins. Co.*, No. EP-18-CV-61-KC, 2019 WL 5258055, at *2 (W.D. Tex. June 28, 2019) (quoting *In re Enron Corp. Sec., Derivative & "Erisa" Litig.*, MDL No. 1146, 2007 WL 5023541, at *8 (S.D. Tex. Feb. 1, 2007)).  In sum, it is of no consequence if a supplemental opinion contains new information.  *See Charter Sch. Sols.*, 2019 WL 5258055, at *2.  All supplemental affidavits or declarations, *by definition*, contain new information.  *See id.*

about all of the subject housing units (and did so), meaning no prejudice occurred. And, in fact, Defendants' moisture reduction report (the "Pilot Specification for Moisture Reduction") reveals Defendants had known and been armed with such information about the subject housing units by *April of 2019* (at the latest)—the date the moisture reduction report was authored. See **Exhibit C**, Pilot Specification for Moisture Reduction Report. As the report reveals, Defendants were well aware of and were attempting to figure out—some *three years prior* to Mr. Krismer's deposition—how to "reduce the moisture/humidity within the subject housing units located at Randolph Air Force Base (AFB), Texas." *See id.* at 4. As such, Defendants' alleged concerns about a "trial by ambush" are not in the least sense credible. *See* Motion at 6.

Further, Defendants' own retained expert agrees that several of the homes at Randolph have exhibited moisture problems, warranting the institution of the Moisture Reduction Project. *See* **Exhibit G**, Lstiburek Dep. at 52:8-12 and 31:3-17. Crucially for the purposes of defeating Defendants' argument in this Motion in Limine, the Defendants' retained expert testified that he was 1) retained to and 2) capable of testifying about conditions of and problems with the *entirety of the base housing* at Randolph—despite having seen only a handful of homes at that base, on a single occasion, and despite having never done any testing on any home on the base *See id.* at 37:5-38:5 and 36:6-25.

Moreover, even if a Rule 26 violation occurred in this instance (and it did not)—Krismer's approach in preparing his report was justified because (as described *infra* in Section III, subsection a), Defendants have refused to permit inspection of the homes. *See* **Exhibit B.** Additionally, Defendants have not been prejudiced in any manner whatsoever. Indeed, any Rule 26 violation in this instance was entirely harmless. *See*

FED. R. CIV. P. 37(c)(1) (sanctions are not warranted when a failure to disclose "was substantially justified or is harmless."). Again, Defendants' counsel copiously deposed Krismer about these issues and their contentions with respect thereto.

Lastly, it is important to note that, in examining potential Rule 26 violations, courts should consider the importance of the witness's testimony. *See U.S. v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998) (citing *Bradley v. United States*, 866 F.2d 120, 125 (5th Cir. 1989)). Where the exclusion of evidence under Rule 37(c)(1) could potentially have the effect of a dismissal, courts should "carefully explore and consider the efficacy of less drastic alternatives, ordinarily reserving the extreme sanction of dismissal for cases involving bad faith or willfulness." *See HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3D 1191, 1206 (10th Cir. 2017). In other words, even if Defendants' arguments as to alleged Rule 26 violations had any merit—and they do not—they would not warrant exclusion.

## II. **Krismer's Opinions Are Relevant To The Vinales Plaintiffs.**

Defendants essentially contend that, because they refused to provide access for Krismer to inspect the housing units the Plaintiffs in this case occupied, including the Vinales' unit, they have successfully rendered Krismer's testimony irrelevant and inadmissible. But interestingly, Defendants are unable to cite any case supporting its arguments for exclusion based on relevancy. Instead, the best Defendants can do is point to two obscure holdings with little to no bearing on the issue at hand in this case. Specifically, Defendants cite a district court's grant of a protective order in a discovery dispute. *See Cooksey v. Hunt So. Group LLC*, No. 1:18-cv-00049-LG-RHW, slip. Op. at 2 (S.D. Miss. Nov. 7, 2018) (attached as Ex. 3 to the Motion). But *Cooksey* involved a dispute

involving a single military housing unit wherein the plaintiffs issued subpoenas to multiple non-party contractors and consultants who participated in the original construction and moisture remediation projects relating to 1,057 housing units at the applicable military installation. *See id.* As such, *Cooksey* is of little relevance and even less use in deciding the issue at hand.

Similarly, the order Defendants point to in the *Federico* case involved a single home wherein the defendant filed a motion in limine to exclude, among other things, evidence about conditions of other homes owned or managed by the defendant. *See Federico v. Lincoln Mil. Hous., LLC*, 2015 WL 12806532, at *4 (E.D. Va. Nov. 13, 2015). But there are two distinguishing reasons which render *Federico* of little relevance. First, unlike in this case, the plaintiffs in *Federico* sought to introduce evidence relating to other homes solely to support their claim for punitive damages. *See id.* Second (and relatedly), the question in *Federico* was solely about the introduction of evidence relating to other homes separate and apart from the single home at issue. *See id.* To the contrary, the issue in this case involves expert testimony relating specifically to the Plaintiffs' homes at Randolph AFB at issue in this case, including the Vinales' home. *See* **Exhibit A**, Krismer Declaration at 4 (noting each of the Plaintiffs' units have issues substantially the same as those Krismer observed at the Hill, Holmes and Keller units and, as such, Krismer has reached substantially the same conclusions about the Plaintiffs' units that he reached with respect to the Hill unit).

Moreover, Defendants would have this Court hold Krismer's testimony about the *deplorable conditions* he has observed with respect to the subject units (through reports, photographs, etc.) are somehow irrelevant to Plaintiffs' claims that are at the very heart

of every cause of action asserted: the omnipresent and *"deplorable living conditions"* the Plaintiffs, including the Vinales family, had to endure while residing in on-base military housing at Randolph AFB. The conditions described in Krismer's report are nothing if not deplorable, meaning Krismer's opinions relating thereto are nothing if not relevant. *See Daubert*, 509 U.S. at 586-87 (the test of relevancy is whether the expert's opinions are based on the facts).

Lastly, Defendants argue "[t]he condition of the Hill residence at the time Krismer inspected it was far from typical, and is the subject of Defendants' counterclaim against the Hills" because, Defendants claim, the Hills allegedly "deferred, delayed, and ultimately refused necessary repairs." *See* Motion at 7. But this is a question of fact and goes straight to one of the primary issues the jury in this case must decide—whether Defendants adequately addressed (or even addressed to any degree whatsoever) the deplorable living conditions at the Plaintiffs' homes, specifically the Vinales Plaintiffs' home for this subject trial. Plaintiffs argue that the conditions of the Hill residence at the time of Krismer's inspection were substantially similar to the conditions of the other Plaintiffs' residences, including the Vinales' residence, and thus Krismer's opinions regarding the Hill residence are relevant to the Vinales Plaintiffs' residence as well. Defendants cannot be permitted to render Krismer's testimony irrelevant just because Defendants contend they addressed the issues at the Vinales' unit at issue in this case and were prevented from doing so at the Hill unit (as both such contentions are hotly disputed by Plaintiffs).

### III.   Krismer's Opinions Are Reliable.

Defendants fail to understand that *many* factors bear on the inquiry into reliability

of expert testimony. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). In *Daubert*, the Supreme Court outlined a non-exhaustive series of considerations to illustrate how district courts may opt to fulfill its "gatekeeper" role in evaluating the reliability of expert testimony. *See* 509 U.S. at 593-94. Among the considerations it offered were whether the expert's theory "can be or has been tested" and whether it is "generally accepted in the relevant scientific community." *See id.* The Court later stressed that the considerations set forth in *Daubert* are "flexible" and emphasized that they "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). Indeed, while *Daubert*'s general approach to the district court's gatekeeper role is binding, not every case merits "rote application" of the considerations outlined in *Daubert*. *See St. Martin v. Mobil Expl. & Prod.*, 224 F.3d 402, 406 (5th Cir. 2002); *Pipitone*, 288 F.3d at 245. Rather, courts must calibrate *Daubert* to the nature of the facts and proposed testimony. *See id.*

Defendants complain that, unlike with their own experts, a reliable methodology would require an on-site inspection or else it is inadmissible *ipse dixit*. *See* Motion at 8-10. But, even setting aside Defendants' hypocrisy (*see infra*, Section III, subsection a), courts have made it clear that quibbles about the degree to which an expert performs a specific methodological regimen "go[] to the weight, not the admissibility, of his opinions. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp.2d 776, 802 (N.D. Tex. 2013) (citing *Daubert*, 509 U.S. at 596; *Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *5 (N.D. Tex. June 22, 2010)). Perceived limitations in an opposing expert's testing methodologies do not make the opinions unreliable; instead, "[t]his is

simply something that can be brought out . . . on cross-examination." *See Isa v. Academy, Ltd.*, No. 4:16-CV-2041, 2018 WL 8732187, at *4-5 (S.D. Tex. 2018) (citing *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996)); *see also* Harvey Brown & Melissa Davis, *Eight Gates for Expert Witnesses: Fifteen Years Later*, 52 HOUS. L. REV. 1, 42 (2014) ("reliability does not require certainty") (citing *Daubert*, 509 U.S. at 590 ("[A]rguably, there are no certainties in science."))._[4]_ And "[a]ny purported weaknesses . . . can be highlighted for the jury in cross-examination." *See Melendez v. Southern Fidelity Ins. Co.*, 502 F. Supp. 3d 1071, 1076 (E.D. La. 2020). This is because experts are entitled—just as Krismer did in this instance—to rely upon their own experience in drawing conclusions. *See St. Martin v. Mobil Expl. & Prod.*, 224 F.3d 402, 406-07 (5th Cir. 2002) (holding an ecologist's first-hand observations of a flooded marsh and expertise in marshland ecology were sufficiently reliable bases for his opinion to render his expert testimony admissible); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245-50 (5th Cir. 2002) (admitting testimony of an expert who reached his conclusions by applying his general knowledge of infectious disease without performing any experiments to test his beliefs); *Kirkland v. Marriott Int'l, Inc.*, 416 F. Supp. 2d 480, 484-85 (E.D. La. 2006) (denying a motion

---

[4] Defendants' attempts to discredit Krismer by pointing to testimony from some thirty years ago in an entirely different set of circumstances involving an insured's claims for bad faith and malice on the part of their insurer (*see* Motion at 9 n.3 (citing *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 449 (Tex. 1997)) is entirely unavailing for a number of reasons, including because the evidence in *Nicolau* was that the insurer's engineers did nothing to familiarize themselves with the housing problems at issue (namely, they allegedly failed to examine a leaking pipe, did not take core samples, and failed to perform other applicable testing). *See Nicolau*, 951 S.W.2d at 448-49. But, in this instance, Krismer *has* familiarized himself with the housing problems at issue. Moreover, a witnesses's countervailing or even contradictory testimony, especially when given in an entirely separate case with entirely separate facts, goes at most to the weight of the testimony rather than admissibility. *See Gonzalez v. Inman Trucking, Inc.*, No. EP-16-CV-6-PRM, 2017 WL 7905499, at *5 (W.D. Tex. June 20, 2017) ("The fact that Dr. Hanabali arguably contradicted himself during his deposition testimony does not bear upon the admissibility of his testimony, but upon his credibility, which is a jury determination.").

to exclude, and explaining that Rule 702 contemplates that expert testimony may be deemed reliable on the basis of experience, education, training and personal observations). Indeed, as the Advisory Committee note to Rule 702 explains:

> Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide sufficient foundation for expert testimony.

*See* FED. R. EVID. 702, Advisory Committee's Note.

Moreover, the federal evidentiary rules expressly permit an expert to rely on facts or data that have been made known to him or her. *See* FED. R. EVID. 703. The Fifth Circuit has confirmed that an expert is permitted to develop opinions based upon facts made known to him by others, including other experts. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility."). Thus, an expert may rely on the facts or opinions developed by other experts. *See id.* In this instance, Krismer confirms he relied upon various sources of information in forming his opinions about the housing units made the basis of this lawsuit, including without limitation:

- the CJEC Report;
- the Adaptive Report;
- the Portico Report;
- the Atlas reports for the Keller and Holmes units;
- the NAHB June 2014 Technote;
- reports by Defendants' experts;
- Mark Eberwine's (Five Star Home Inspections, Inc.) property inspection report;
- files provided by Ryan Reed and/or Robert E. Brzezinski (Plaintiffs' counsel) for each housing unit;
- inspections of the Keller and Holmes units at Randolph AFB;

- conversations with the plaintiffs themselves;
- maintenance records documenting mold issues and humidity control issues;
- the Texas Mold Assessment Rules;
- reports and remediation protocols by Argus Environmental Consultants, LLS; and
- other reports and photos provided by counsel for Plaintiffs.

*See* **Exhibit A**, Krismer Declaration at 4.

Based on the above—along with his *evaluation of the problems at the Hill unit, his general knowledge, education, training, and experience*—Krismer has concluded that each of the Plaintiffs' units have issues substantially the same as those he observed at the Hill, Holmes and Keller units and, as such, he has reached substantially the same conclusions as to the other Plaintiffs' units, including the Vinales' unit, that he reached with respect to the Hill unit. *See id.* This, notably, is consistent with his deposition testimony when he testified, that "every house I've been and looked at pictures of from, you know, reports, all have similar problems." *See* **Exhibit H,** Krismer Dep. at 247:2-4.

At bottom, this Court's "gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *See Hanak v. DynCorp, Inc.*, No. SA-09-CA-752-FB, 2013 WL 12385017, at *2 (W.D. Tex. June 18, 2013) (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Thus, "the rejection of expert testimony is the exception rather than the rule" (*see* FED. R. EVID. 702, Adv. Comm. Notes 2000)) and the *Daubert* framework was "not intended to serve as a replacement for the adversary system." *See United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). Indeed, Defendants' criticisms of Krismer go, at most, only to the weight, not the admissibility, of his opinions. *See U.S. ex rel. Barron v. Deloitte & Touche, LLP*, No. SA-99-CA-1093-FB, 2008 WL 7136868,

at *3 (W.D. Tex. Sept. 26, 2008) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

### a. Defendants Refused to Allow Inspection of the Subject Housing Units.

Importantly, one of Defendants' primary strategies in litigating this case has been to refuse access for inspection of the subject housing units while simultaneously criticizing Plaintiffs for not having its experts inspect the subject properties. Such refusals to allow access for inspection have occurred throughout this litigation, going all the way back to 2020. Defendants' lack of cooperation is further evidenced in part by the email exchange attached hereto as **Exhibit B** between Plaintiffs' counsel (Robert Brzezinski) and Defendants' counsel (Walter Boone). Specifically, on May 9, 2022, Mr. Brzezinski sought access for Krismer's inspection of the subject units (as had been sought previously), and emphasized such access was being requested to assist Krismer in addressing the "Pilot Specification for Moisture Reduction" (dated Aril 2019)—otherwise referenced as the "Humidity Reduction Project" or "Moisture Reduction Project"—which was covered extensively in Krismer's deposition but which, until the deposition occurred, Krismer had not yet seen:

> Walter,
>
> Good afternoon. During the deposition of Mike Krismer, you challenged him on the basis that he had not been inside of any of the subject properties. It has long been our understanding that you are refusing to allow access to any of the leased houses after the family departs; to then attempt to impeach an expert on the basis that they were not able to inspect a property is, in our estimation, a "sword and shield" situation.
>
> Moreover, you also presented Mr. Krismer with paperwork concerning the humidity reduction project and cross-examined him extensively about it, whether he had criticisms of the scope of the project, whether he agreed or disagreed with it generally, etc. As Mr. Krismer made it clear at that time, he had not seen the document before he was examined at length about it.
>
> Given all of the above, we hereby request access to each of the nine houses listed in the *Daniels* complaint for inspections by Mike Krismer. Please advise by Thursday, May 12th, as to whether or not you agree to allow access to the properties for inspection by him.
>
> Thank you for your attention to this request.
>
> Best,
> Bob
>
> Robert E. Brzezinski
> Partner
> Watts | Guerra, LLP

On May 12, 2022, Mr. Boone responded and—*in keeping with Defendants' prior conduct*—flatly refused Mr. Brzezinski's request:

> Thank you, Bob. We respectfully decline your request. I am sure you know why. But if you need explanation, please let us know and we will be happy to provide it. Thanks!!
>
> **BALCH**
> & BINGHAM LLP
>
> Walter Boone, Partner, Balch & Bingham LLP
> 188 East Capitol Street • Suite 1400 • Jackson, MS 39201-2133
> t: (601) 965-8179   f: (888) 856-9542   e: wboone@balch.com
> www.balch.com

*See* **Exhibit B,** attached hereto and incorporated herein for all purposes. The "Pilot Specification for Moisture Reduction"/Humidity Reduction Project/Moisture Reduction Project is attached hereto and incorporated herein as **Exhibit C**. As discussed below, Defendants' refusal to cooperate was made even more egregious by their subsequent criticisms of Krismer for not inspecting the properties. By Defendants' logic, their refusal to cooperate is a brilliant maneuver—they get to effectively disqualify an opposing expert

simply by not permitting inspection of the subject properties. But their maneuver cannot be permitted to stand.

> **b. Defendants Criticize the Reliability of Krismer's Conclusions Regarding Housing Units They Did Not Allow Him to Inspect, but Hypocritically Designated Experts Themselves Who Likewise Drew Conclusions About Housing Units They Did Not Inspect.**

In addition to being designated as a retained expert witness by Plaintiffs, Krismer was also designated as a rebuttal expert. He was specifically designated to rebut the testimony of three defense witnesses: Joseph Lstiburek, George Coto, and Tom Sumner. From the deposition of Mr. Lstiburek and the materials produced by these three witnesses as part of their designation by the defense, it is apparent that Mr. Lstiburek walked through only a handful of homes at Randolph AFB on one occasion (and performed no inspection at the unit located at Laughlin AFB); Mr. Coto performed site visits at only three of the eight subject units at Randolph AFB (and performed no inspection at the unit located at Laughlin AFB); and Mr. Sumner performed no site visits whatsoever (neither at Randolph AFB nor at Laughlin AFB). *See* **Exhibits D (Lstiburek Report), E (Coto Reports), F (Sumner Report)**, and **G** (Lstiburek Dep. at 36:6-25), attached hereto and incorporated herein for all purposes.[5] And, yet, Defendants now come to this Court seeking relief based on its contention that, while their experts' reports are reliable, a different reliability standard applies for Krismer's report and opinions. In addition to being unmerited (*see supra*, Section I), Defendants' argument is patently unfair and impermissibly hypocritical, and it should be rejected outright.

---

[5] Specifically, Lstiburek inspected only the Alexander, Pisano, Hiatt and Daniels units. *See* Ex. D, Lstiburek Report at 3. Mr. Coto inspected only units 514, 539 and 817. *See* Ex. E, Coto Reports. And Mr. Sumner performed no on-site inspections. *See generally* Ex. F, Sumner Report (appearing to indicate the reports are based on review of documents only).

## CONCLUSION

Plaintiffs pray that the Court deny the Motion and grant Plaintiffs all relief to which they may be justly entitled.

        Respectfully submitted,

        **PULMAN, CAPPUCCIO & PULLEN, LLP**
        2161 NW Military Highway, Suite 400
        San Antonio, Texas 78213
        (210) 222-9494 Telephone
        (210) 892-1610 Facsimile

By:   */s/ Ryan C. Reed*
        Randall A. Pullman
        Texas State Bar No. 16393250
        rpulman@pulmanlaw.com
        Ryan C. Reed
        Texas State Bar No. 24065957
        rreed@pulmanlaw.com

**WATTS GUERRA LLP**
Mikal C. Watts
Texas State Bar No. 20981820
mcwatts@wattsguerra.com
Francisco Guerra, IV.
Texas State Bar No. 00796684
fguerra@wattsguerra.com
Robert Brzezinski
Texas State Bar No. 00783746
rbrzezinski@wattsguerra.com
Jennifer Neal
Texas State Bar No. 24089834
jneal@wattsguerra.com
4 Dominion Dr.
Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 447-0500 Telephone
(210) 447-0501 Facsimile

**MORIARTY SKIVER PLLC**
James. R. Moriarty
Texas State Bar No. 14459000
jim@moriarty.com

4119 Montrose, Suite 250
Houston, Texas 77006
(713) 528-0700 Telephone
(713) 528-1390 Facsimile

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I certify that on this the 24th day of May 2023, a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(b). Therefore, this document was served on all counsel who are deemed to have consented to electronic service.

                        */s/ Ryan C. Reed*
                        Ryan C. Reed