## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MICHAEL J. DANIELS, ET AL.** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| **V.** | § | |
| | § | **NO. SA-19-CV-01280-FB-RBF** |
| **AETC II PRIVATIZED HOUSING, LLC** | § | |
| **ET AL.** | § | |
| | § | |
| **DEFENDANTS** | § | |
| | § | |

---

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION IN LIMINE (GENERAL) [DKT. 378]

---

NOW COME, Plaintiffs, Shane Vinales and Becky Vinales, Individually and as Next Friends of L.V. and S.V., minors ("Plaintiffs"), and file this Response to Defendants' Motion in Limine (General) [Dkt. 378] (the "Motion"), respectfully showing the Court as follows:

### ARGUMENT & AUTHORITIES

Defendants filed their Motion seeking to exclude evidence, testimony, and argument regarding the following subjects. The purpose of a motion *in limine* is to determine whether evidence regarding a particular topic can be discussed before the jury prior to a ruling from the Court, as opposed to the substance of the objection. "Evidence is not excluded *in limine* 'unless it is clearly inadmissible on all potential grounds." *Ogden v. Cozumel, Inc.*, No. A-18-CV-00358-DAE-SH, 2019 WL 5295495, at *1 (W.D. Tex. Oct. 18, 2019) (quoting *Rivera v. Salazar*, No. C.A. C-04-552, 2008 WL 2966006, at *1 (S.D. Tex. July 30, 2008)).

Relevant evidence is admissible unless otherwise provided in the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the

Supreme Court.  Fed. R. Evid. 402.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Motions in limine are meant to "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *United States v. Kirk*, SA-11-CR-449(2)-DAE, 2013 WL 6198221, at *2 (W.D. Tex. Nov. 27, 2013).  The burden is on the movant to prove a motion *in limine* should be granted.  *F.D.I.C. v. Wheat*, 970 F.2d 124, 131 (5th Cir. 1992).  The trial court must weigh the evidence's contribution to the case against any potential prejudice or confusion.  *Id.*

"Denial [of a motion *in limine*] merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Rivera,* 2008 WL 2966006, at *1 (internal quotations omitted). At this juncture, the only relief the Court can entertain is whether a party must approach before offering evidence of the types below.  Plaintiffs object to the Court's granting of the following items from the Motion, for the reasons set forth herein.

## I.  <u>Evidence Regarding Other Homes Is Admissible</u>

Plaintiffs agree that this case is about the conditions in the Vinales' home, the Vinales' maintenance requests, Defendants' response to those maintenance requests, and the Vinales' damages.  However, Plaintiffs object to this motion *in limine* to the extent it would preclude evidence regarding other homes from being shown to the jury. As Defendants point out, the *Daniels* case contains claims made by approximately forty Plaintiffs who occupied nine homes on two Air Force bases. Although Plaintiffs agree that this first trial is focused on the Vinales family and their claims, evidence regarding other homes is relevant to the entirety of the Vinales' claims

involving Defendants.

The introduction of evidence relating to alleged conditions in other homes is not unduly prejudicial and would not result in juror confusion. Rather, the evidence will assist the jury in understanding Defendants' lack of a "diligent effort" to repair conditions that residents, like the Vinales family, reported. In fact, under Federal Rule of Evidence 406, evidence of a person's habit or routine practice is admissible to prove that a person acted in accordance with that habit or practice on a specific occasion. The court may admit this evidence regardless of whether it is corroborated. Fed. R. Evid. 406.

Alleged conditions in other homes are relevant to the analysis of Defendants' habitual actions, or lack thereof, in addressing known issues in the homes of these families, including the Vinales' home. This evidence corroborates the Vinales' claim for Defendants' breach of the Lease Agreement, showing that AETC Housing did not "make a diligent effort to repair or remedy" damage to the Vinales' home. The portions of the 2018 CEL Survey, P-49 that Plaintiffs intend to introduce is relevant to the analysis of how Defendants handled, or failed to handle, complaints reported by residents, including the Vinales family. Not only is the 2018 CEL Survey relevant to the overall analysis, but it is directly relevant to the Vinales' case and its probative value is not substantially outweighed by a danger of confusing the jury.

Despite Defendants' argument to the contrary, Plaintiffs are not seeking to prove their claim based on other houses, but are rather validating Defendants' habitual practice regarding their failure to address known maintenance issues, which the Vinales family personally encountered, by introducing corroborating evidence regarding other houses.   Defendants fail to make any meaningful argument that such evidence is prejudicial or confusing to the extent that it outweighs the probative value.   Moreover, it is disingenuous for Defendants to seek to restrict Plaintiffs'

ability to freely introduce evidence of other ongoings in the community when they brand themselves as "Hunt Military Communities"—managing a community of houses, not just one house—and when they intend to introduce Facebook messages from families, other than the Vinales family, discussing housing conditions they are all experiencing in the same community.

Because evidence regarding other homes is admissible and not unduly prejudicial, Defendants' Motion in Limine should be denied.

## II.   <u>Pre- and Post-Tenancy Conditions of the Vinales' Home Are Admissible</u>

Defendants seek to exclude pre- and post-tenancy conditions of the Vinales' home because Defendants claim it is not relevant to Plaintiffs' claims and unduly prejudicial to Defendants. However, pre- and post-tenancy conditions of the Vinales' home are relevant to show the full picture of the conditions the Vinaleses were living in at the time of their residency in the home. Additionally, pre- and post-tenancy conditions go to Defendants' knowledge of the issues with the Vinales home prior to entering into the Lease Agreement.  The United States District Court for the Eastern District of Virginia explained that, "[i]t is the same house, and the later condition of the house is dependent on the past condition." *See Federico v. Lincoln Mil. Hous. LLC,* No. 2:12CV596, 2015 WL 12806532 at *4 (E.D. Va. Nov. 13, 2015). Further, the court recognized the relevance of post-tenancy conditions stating that, "the inspections that took place after the Federicos moved out are of some relevance to the question of the condition of the house while they lived there." *Id*.  The court allowed the introduction of evidence regarding post-tenancy conditions to be admitted because these conditions are relevant in understanding the conditions of the home *while* Plaintiffs were living there.

Defendants argue that records prior to and after Plaintiffs tenancy have no bearing on whether Defendants breached any alleged contractual duty owed to the Plaintiffs.  However, this

– 4 –

assertion is patently false. Records from prior to the Vinales' occupancy is relevant to demonstrate what the Defendants knew about the conditions of the house, as well as whether Defendants had a practice of correcting known issues. Records from after the Vinales' occupancy demonstrate whether the Defendants actually repaired the reported problems prior to leasing the home to yet another Servicemember. Defendants make a mockery of this Court and their commitment to the Department of Defense, the U.S. Military, the U.S. Air Force, the United States of America, and servicemembers everywhere by insisting that their only responsibility is to diligently attempt to repair issues but only those reported by the tenant, especially when they are fully aware of known issues with the houses they manage and, through Resident Guidelines expressly incorporated into each Lease, Defendants represent to their tenants that they "agree to maintain all electrical, plumbing, heating, ventilating, air conditioning, appliances and other facilities and common areas in good and safe working condition." *See* Dkt. 262-3. Evidence of what Defendants know about and have done to a house before and after occupancy bears directly on Defendants' written commitment to its tenants to maintain houses in a good and safe working condition.

Defendants further argue that if the Court finds this evidence is relevant, any probative value is substantially outweighed by a danger of confusing the issues, misleading the jury, and undue delay. The introduction of evidence relating to service requests made and maintenance work performed on the Vinales' home before or after the Vinaleses lived there would not result in mini-trials on the pre- and post-tenancy conditions, and would not dramatically expand the scope of this trial. Instead, such evidence will help the jury in understanding the condition of the home *while* the Vinaleses lived in the home. The conditions the Vinaleses lived in began prior to their tenancy and lasted after their tenancy in the home. Therefore, the introduction of pre- and post-tenancy conditions are relevant to the question of the condition of the house *while* the Vinaleses lived there.

*See Federico v. Lincoln Mil. Hous. LLC,* No. 2:12CV596, 2015 WL 12806532m at *4 (E.D. Va. Nov. 13, 2015). The Court ordering Defendants to produce the work order history for the five years before and two years after the Vinales' residence shows the importance of the analysis of these records and their relevance to the Vinales' case. Plaintiffs recognize the broad nature of the service requests/work orders. However, these records are relevant to understanding Defendants' actions in handling, or failing to handle, the service requests/work orders prior to when the Vinaleses lived there, while the Vinaleses lived there, and after the Vinaleses lived there.

Simply put, evidence of or testimony relating to pre- and post-tenancy work orders/service requests is relevant and would not confuse the jury or create undue delay in the ultimate resolution of the trial. Therefore, Defendants' Motion should be denied.

### III.   Evidence Relating to Health Complaints, Symptoms, Sickness, Medical Costs, and Mental Distress is Relevant and Not Highly Prejudicial.

Introduction of evidence or testimony regarding Plaintiffs' health complaints, symptoms, sickness, and medical costs is relevant to Plaintiffs' claims. Although Plaintiffs voluntarily stipulated to the dismissal of their medical claims and damages [Dkt. 220], this stipulation does not prevent Plaintiffs from discussing the effects they experienced from living in the house or from seeking mental anguish damages to the extent permitted by law, thus evidence relating to health complaints, symptoms, sickness, medical costs, and mental distress is relevant and not highly prejudicial. *See* Dkt. 220, Joint Stipulation Dismissing Medical Claims and Damages.   The stipulation specifically states Plaintiffs "will not submit to the jury a damages claim for or a damage category for past, present or future damages relating to physical injury and/or physical illness." *Id.* The stipulation does not state that Plaintiffs are prohibited from testifying regarding their health complaints, symptoms, sickness, and medical costs.

Moreover, the symptoms are, in many cases, what caused Plaintiffs to investigate and

report conditions to Defendants, and to further investigate the conditions after Defendants dismissed the reports of issues and/or claimed that issues had been resolved. Barring Plaintiffs from testifying what caused them concern with the house and to report to the Defendants would be unfairly prejudicial because those facts are intricately involved with the reporting of conditions and the purported repair of conditions.

Accordingly, evidence of Plaintiffs' health complaints, symptoms, sickness, medical costs, and mental distress are direct evidence of actual damages stemming from the breach of contract and are relevant to the Plaintiffs' claims. Plaintiffs would be unduly prejudiced if they were prevented from discussing their experiences in the house and what led them to make reports; whereas Defendants would not be unduly prejudiced by the admission of evidence that is germane to a family's experience living in housing Defendants managed. Therefore, Plaintiffs' health complaints, symptoms, sickness, medical costs, and mental distress are admissible because they are relevant and not highly prejudicial, and the Court should deny the Motion.

**IV.** **Evidence Relating to Congressional Hearings, Findings, and Testimony, Other Military Housing Providers, and Media Coverage Is Relevant, Not Prejudicial, and Is Not Hearsay.**

Evidence relating to congressional hearings, findings, and testimony, other military housing providers, and media coverage is relevant, not prejudicial, and is not hearsay. "The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *See United States v. Chan*, 184 F. Supp, 2d 337, 340 (S.D.N.Y. 2002) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "Unless evidence is clearly inadmissible on all potential grounds, evidentiary rulings sought in limine should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *See United States v. Jackson*, 574 F. Supp. 3d 611

(S.D. Ind. 2021). In considering a motion in limine, courts may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287 (citing *Hawthorne Partners v. AT&T Tech., Inc.,* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (stating that a motion in limine to exclude evidence should be granted only "when evidence is clearly inadmissible on all potential grounds… [and] [u]nless evidence meets the high standard, evidentiary rulings should be deferred until trial")).

Plaintiffs have not yet identified what portions of evidence they intend to offer that falls under congressional hearings, findings, and testimony, other military housing providers, and media coverage; therefore, the court should refrain from granting Defendants' Motion in Limine on this issue. The United States District Court, D. Montana, Great Falls Division deferred ruling on Defendant's motion until the time of trial so it could determine what testimony was being offered and what Defendant's specific objections were to the proposed testimony. *See Brewer v. BNSF Ry. Co.*, No. CV 14-65-GF-BMM-JTJ, 2016 WL 11709319, at *2 (D. Mont. Apr. 22, 2016). Plaintiffs ask the Court to defer ruling on this issue until the time of trial.

Although the February 2018 congressional hearings conducted by the Senate Committee on Armed Services was not limited to Hunt Military Communities, the hearing ultimately involved communities that Defendants play a role in managing. The congressional hearing was focused on the broader issue of military housing conditions, which is relevant to the individual and specific claims in this case. The congressional hearing was limited to discussing five military housing companies, and although not every housing community was mentioned in the hearing, the hearing focused on conditions on the bases, which were known to Defendants, and a widespread problem across all military housing communities – including the Vinales' home. Therefore, introducing evidence related to congressional hearings, findings, and testimony may be relevant to the Vinales'

case. Additionally, the introduction of this evidence will assist the jury in understanding the severity of the conditions the Vinaleses experienced while living in their home.

Furthermore, evidence or testimony relating to the congressional hearing or other government investigations should not be excluded under Rule 403 because the probative value is not substantially outweighed by the likelihood of confusing the jury, causing great delay in the trial, and unfairly prejudicing the Defendants. Introduction of this evidence or testimony would not require Defendants to offer additional evidence to clarify the confusion and will not result in a mini-trial. This evidence or testimony would help the jury fully understand the conditions in which the Vinales family was living and the actions of Defendants. This evidence or testimony is not unfairly prejudicial, rather it serves as objective testimony of the conditions the Vinales family was experiencing while in the home.

Defendants also move to exclude Plaintiffs from introducing evidence, testifying, or commenting generally about other privatized military housing providers. Evidence or testimony regarding other providers and their actions or wrongdoing may be relevant to the Vinales' claims and will assist the jury in understanding the condition of the Vinales' home while they were living there and the inaction of Defendants. Ultimately, under Rule 401, this evidence has a tendency to make a fact more or less probable than it would be without the evidence.

Although some of the potential evidence, argument, or testimony relating to media coverage of these congressional hearings, military housing generally, or this case, may be excluded as hearsay, determining the admissibility of this type of evidence is better suited to be determined at trial in the context of the evidence being presented. Courts have refrained from ruling on the admissibility of media coverage and other investigations until evidence of that type is presented in context. *See Rookaird v. Bnsf Ry. Co.*, No. C14-176RSL, 2016 WL 1258388, at *1 (W.D. Wash.

Mar. 31, 2016). Additionally, some of these potential exhibits may be admissible under the Public Records exception to the rule against hearsay. *See* FRE 803(8)(C). "So long as the conclusions or opinions in a report are based on a factual investigation and satisfy the Rule's trustworthiness requirement, they should be admissible" under the public records exception to hearsay rule. *See Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers & Emps. of Outside Loc. Unions & Dist. Counsel's (Iron Workers) Pension Plan*, 467 F. Supp. 2d 91, 96 (D.D.C. 2006) (citations omitted). Finally, the admission of this evidence is not substantially outweighed by the danger of unfair prejudice to the Defendants, confusion of issues, and misleading the jury.

## V.      Allowing Witnesses to Testify in Military Uniform Would not be Highly Prejudicial to the Defendants.

Defendants knowingly engaged in the business endeavor of managing and leasing houses to military families, and use the name "Hunt Military Communities."  It is disingenuous to suggest that Defendants will be prejudiced by the very people they pledge to serve exhibiting any aspect of their military life – title or uniform.

Although it is true that the Federal Rules of Evidence authorize courts to exercise reasonable control over the visual presentation of evidence, prohibiting witnesses from testifying in their military uniforms would be unnecessary and offensive to servicemembers. Defendants argue that witnesses who wear their military uniform would be violating their service orders, *see* Army Reg. 670-1 ¶ 3-7.k.(1)("Wearing Army uniforms is prohibited … [i]n connection with the furtherance of any commercial interests"). However, the potential witnesses Defendants are attempting to prohibit from wearing their military uniforms are not seeking a "commercial interest." Rather, these witnesses are seeking justice on their families' behalf for the damages endured by military servicemembers, including damages sustained by the Vinales family, at the hands of a company doing business as "Hunt Military Communities." Allowing witnesses to testify

in military uniform would not result in unfair prejudice to Defendants, as Defendants knowingly agreed to take care of servicemembers and their families. There is little risk that witnesses wearing their military uniform would "compromise the environment of impartiality and fairness" in the courtroom. *See Ford v. Nationwide Mut. Fire Ins. Co.,* 214 F. Supp. 2d 11, 17 (D. Me. 2002), *aff'd,* 62 F. App'x 6 (1st Cir. 2003) (holding that the witness' American flag pin he was wearing in his lapel did not compromise the environment of impartiality and fairness in the courtroom and was not a political pin that took a position on an issue of current controversy).

Plaintiffs object to Defendants' request that the Court should prohibit lawyers or witnesses from unnecessarily emphasizing Plaintiffs' military titles. Referring to Plaintiffs using their military titles does not unfairly prejudice the Defendants by potentially bolstering witnesses' credibility or encouraging jurors to decide the case based on emotions or feelings of patriotism. Referring to Plaintiffs using their military titles is respectful and proper. This is akin to asking the court to not refer to a Doctor as a "Doctor" because it would be unfairly prejudicial. Plaintiffs object to Defendants' request to prohibit lawyers or witnesses from unnecessarily emphasizing Plaintiffs' military titles, and request that the Court deny the Motion.

<u>**PRAYER**</u>

WHEREFORE, Plaintiffs pray that the Court deny Defendants' Motion in Limine with respect to the items and for the reasons set forth herein and grant them all other relief as the Court may deem proper.

Respectfully submitted,

By: */s/ Ryan C. Reed*
Ryan C. Reed
Texas State Bar No. 24065957
rreed@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 NW Military Highway, Suite 400

San Antonio, Texas 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile

**WATTS GUERRA LLP**
Mikal C. Watts
Texas State Bar No. 20981820
mcwatts@wattsguerra.com
Francisco Guerra IV.
Texas State Bar No. 00796684
fguerra@wattsguerra.com
Robert Brzezinski
Texas State Bar No. 00783746
rbrzezinski@wattsguerra.com
Jennifer A. Neal
Texas State Bar No. 24089834
jneal@wattsguerra.com
4 Dominion Dr., Bldg. 3, Suite 100
San Antonio, Texas 78257
(210) 447-0500 Telephone
(210) 447-0501 Facsimile

**MORIARTY SKIVER PLLC**
James R. Moriarty
Texas State Bar No. 14459000
jim@moriarty.com
4119 Montrose, Suite 250
Houston, Texas 77006
(713) 528-0700 Telephone
(713) 528-1390 Facsimile


**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 25th day of May, 2023, a true and correct copy of the foregoing document was filed with the Court's ECF system and was served via electronic mail on counsel for Defendants:

Walter H. Boone
Balch & Bingham LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201
wboone@balch.com

Jennifer J. Skipper
Balch & Bingham LLP
188 East Capitol Street, Suite 1400
Jackson, Mississippi 39201
jskipper@balch.com

Julia W. Mann
Jackson Walker LLP
112 E. Pecan Street, Suite 2400
San Antonio, Texas 782015
jmann@jw.com


*/s/ Ryan C. Reed*
Ryan C. Reed