IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MICHAEL J DANIELS, ET AL., | § § § | |
| *Plaintiffs*, | § § | 5-19-CV-01280-RBF |
| vs. | § § § | |
| AETC II PRIVATIZED HOUSING, LLC, AETC II PROPERTY MANAGERS, LLC, HUNT ELP, LTD, | § § § § | |
| *Defendants*. | § § | |

## JOINT PRETRIAL ORDER

1. **Appearance of Counsel**

A list of each party, its counsel, counsel's address and telephone number in separate paragraphs.

**Counsel for Plaintiffs Becky Vinales, Shane Vinales, L.V., and S.V.:**

Ryan C. Reed, Esq.
Randall A. Pulman, Esq.
PULMAN, CAPPUCCIO, & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, TX 78213
(210) 222-9494 Telephone
(210) 892-1610 Facsimile
E-Mail: rpulman@pulmanlaw.com
          rreed@pulmanlaw.com


James R. Moriarty, Esq.
MORIARTY SKIVER, PLLC
4119 Montrose, Suite 250
Houston, TX 77006
(713) 528-0700 Telephone
(713) 528-1390 Facsimile
E-Mail: jim@moriarty.com


Mikal C. Watts, Esq.
Francisco Guerra, IV, Esq.

22626089.15

Jennifer Arlene Neal, Esq.
Robert E. Brzezinski, Esq.
Bailey Vannatta, Esq.
Alexis Garcia, Esq.
WATTS GUERRA, LLP
Four Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 477-0500
E-Mail: mcwatts@wattsguerra.com
  fguerra@wattsguerra.com
  jneal@wattsguerra.com
  rbrzezinski@wattsguerra.com
  bvannatta@wattsguerra.com
  argarcia@wattsguerra.com

**Counsel for Defendants AETC II Privatized Housing, LLC, AETC II Property Managers, LLC, and Hunt ELP, Ltd.:**

Walter H. Boone, Esq.
Jennifer J. Skipper, Esq.
Kye C. Handy, Esq.
BALCH &BINGHAM LLP
188 East Capitol Street, Suite 1400
Jackson, MS 39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
E-mail: wboone@balch.com
  jskipper@balch.com
  khandy@balch.com

Julia W. Mann, Esq.
Erica Benites Giese
JACKSON WALKER LLP
112 E. Pecan Street, Suite 2400
San Antonio, Texas 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail: jmann@jw.com

2. **Statement of the case**

A brief statement of the case, one that the judge could read to a jury panel for an introduction to the facts and parties.

Plaintiffs' Submission: Plaintiff Lt. Col. Shane Vinales is a servicemember in the U.S. Army. While stationed to Joint Base San Antonio, Lt. Col. Vinales and his wife, Becky, along with their two children, moved into a house located at 3 Southwest Road on Randolph Air Force Base in October 2017. The community, referred to as Randolph Family Housing, is a Hunt Military Community managed by Defendants. Plaintiffs allege that during the nearly two years that they resided in the house, they encountered issues with insects, water intrusion, gaps exposing the interior to the exterior, mold, electrical hazards, and inadequate and underqualified maintenance in response to their requests to repair issues with the house. By 2019, the Vinales family was displaced from the house for more extensive work on the house. During the time they were displaced from the house, the Vinales family lived in their camper trailer, but allege that Defendants failed to secure their house and their belongings and otherwise use qualified contractors to properly remediate issues with the house. By the time Lt. Col. Vinales received Permanent Change of Station Orders in the summer of 2019, Defendants attempted to remediate the Vinales' household goods in light of the mold found throughout the house. The Vinales family alleges that the remediation was inadequate and that their household goods were contaminated and many had to be discarded and replaced. Defendants contend that their work satisfied the standards they believe apply to them and that they diligently tried to repair issues brought to their attention. The Vinales family contends that Defendants have been aware of known issues with their house and many other similar houses at Randolph Family Housing and have failed to properly and comprehensively address the issues to ensure the houses are habitable for military families. The Vinales family seeks damages consisting of rent paid to live in the house that was not properly maintained, expenses associated with being forced to leave the house for repairs, and compensation for their damaged household goods.

Defendants' Submission: This case is a dispute between a tenant, Lt. Col. Shane Vinales, and his landlord, AETC II Privatized Housing, LLC (or "AETC Housing" or "Landlord" for short) for breach of his Lease Agreement. In October 2017, Shane Vinales signed a Lease Agreement with AETC Housing, and moved into the residence at 3 Southwest Road, which is one of the historic, almost 100 year old homes located at Randolph AFB. Shane Vinales and his wife Becky Vinales were able to inspect the residence days before signing the Lease Agreement and were then also given the option to have AETC Housing representative walk the house at move in, which they declined. After the second inspection by Vinales at the time of move-in, Vinales represented in writing that the residence was "in good order and repair," and in "safe, clean and habitable condition," except for those items listed on the form returned nine days after the Lease Agreement was signed. The Lease Agreement outlines several obligations for both Vinales and AETC Housing. Shane Vinales was obligated to, among other things, properly clean and maintain the residence, immediately notify AETC Housing of any damage to the residence, and allow the landlord access to the residence to conduct repairs. AETC Housing was obligated to, among other things, "make a diligent effort to repair or remedy" those conditions of which Vinales provided notice. Shane Vinales claims AETC Housing breached its obligations under the Lease Agreement, and failed to properly complete repairs like a duct cleaning and leaking roof. Shane Vinales claims that he and his family incurred actual damages as a result, such as expenses they had to pay and furniture that was damaged. The claimed damages in this case are **NOT** for personal injuries, mental distress, or exemplary damages. The only claimed damages here are for those losses caused by a breach of the Lease Agreement. AETC Housing, on the other hand, affirms that it made a diligent efforts to repair every condition it was notified of, but that the Vinales did not immediately notify it of some conditions, refused to allow repairs as to others, delayed repairs as to others, and

failed to clean and maintain their home as required under the Lease Agreement. Additionally, AETC Housing asserts that its duty of "a diligent effort to repair" does not guarantee that no further work order may be needed. AETC Housing maintains that it is not liable for any damages at all, and no damages caused by third parties or by the Vinaleses' own delays and failures to provide notice and access. Finally, Defendants AETC Managers and Hunt ELP assert a number of affirmative defenses and contend that neither are parties under the Lease Agreement, and thus cannot be held liable under the Lease Agreement.

3. **Jurisdiction**

A short statement identifying the Court's jurisdiction. If there is an unresolved jurisdictional questions, state it.

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331, as Randolph Air Force Base is a federal enclave, the house leased by the Vinales family is located on a federal enclave, federal enclaves are within the jurisdiction of the United States, and federal enclave subject matter jurisdiction has been conferred on this Court. The parties have consented to trial by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

4. **Remaining Claims and Defenses**

A summary of the remaining claims and defenses of each party:

Plaintiffs' Submission:

- Pursuant to the Court's Orders [Dkt. 349, Dkt. 368], the Vinales' remaining cause of action is Count 3 (breach of contract). Plaintiffs' claims for vicarious liability have not been disposed of. Plaintiffs intend to seek submission of their cause of action for fraud (Count 6) based on the evidence that will be presented at trial.

Defendants' Submission:

- Plaintiffs: The only remaining claim is breach of the Lease Agreement dated October 16, 2017, by and between Shane Vinales and AETC Housing.

- AETC Housing: AETC Housing maintains a number of affirmative defenses including but not limited to: (a) those defenses raised in its Answer [40], such as statute of limitations, plaintiffs proximately caused damage, intervening/superseding cause, failure to mitigate damages, collateral estoppel, not liable for conduct of others, (b) those defenses raised in its government contractor immunity motion [262], summary judgment motion [260] and supplemental summary judgment motion [358], such as government contractor immunity, statute of limitations, no duty to repair, no contract claims by Vinales family, no expert proof as to actual damages, and not liable for rent (BAH damages); (c) those defenses arising out of the Vinales' breach of the Lease Agreement, including the failure to immediately notify of damage, failure to comply with the Mold Addendum, failure to provide access for repairs, failure to maintain and clean the premises; and (d) other affirmative defenses relating to damages such as the failure to mitigate damages, failure of

4

expert proof as to actual damages, and failure to disclose nature and extent of damages in discovery.

- AETC Managers:  AETC Managers asserts all of the defenses by AETC Housing.  In addition, AETC Housing maintains that, as the property manager who is not a party under the Lease Agreement, it cannot be held liable under the Lease Agreement. [260, at 24-25].

- Hunt ELP, Ltd.:  Hunt ELP asserts all of the defense by AETC Housing and AETC Managers.  In addition, Hunt ELP maintains that it cannot be held liable either directly or indirectly for the reasons set forth in its summary judgment motion. [254].

5. **Stipulated Facts**

A list of facts all parties have reached agreement upon.

1. This Court has subject matter jurisdiction over this case.

2. Shane Vinales executed the Lease Agreement for Unit 604/3 Southwest Rd. on Randolph Air Force Base on October 16, 2017.

3. The occupants of the Leased Premises other than Shane Vinales were Becky Vinales, L.V., and S.V.

4. Shane Vinales visually inspected the home prior to executing the lease.

5. The Vinaleses visually inspected the home at move-in.

6. The Vinaleses filled out the Move In Move Out form, signed it, and returned it nine days after signing the lease noting any issues they perceived with the home.

7. The Lease Agreement ended on June 15, 2019.

8. The Vinales family did not reside in Unit 604 from May 27, 2019, to the end of the lease.

9. The Vinales plaintiffs agreed to dismiss with prejudice and will not assert their claims to recover monetary damages from Defendants for physical injuries and/or physical illness sustained in the past, present, or in the future.

10. The Vinales plaintiffs agreed dismiss, with prejudice and will not submit to the jury a damages claim for or a damage category for past, present or future damages relating to physical injury and/or physical illness.

11. The Vinaleses were provided a per diem for meals and incidentals while displaced from the unit in the total amount of $2,000.

12. The Vinaleses were either refunded or not charged their BAH beginning mid-May through the end of the lease resulting in $2,268.90 BAH savings.

6. **Disputed Facts**

A list of contested issues of fact.

<u>Plaintiffs' Submission</u>:

1. Whether Defendants knew of problems with the house.

2. Whether Defendants repaired problems with the house.

3. Whether Defendants made a diligent effort to repair problems with the house.

4. Whether Defendants' statements regarding the conditions of and repairs to the house were untrue.

5. Whether Defendants knew that the statements regarding the conditions and repairs were untrue.

6. Whether Plaintiffs justifiably relied on Defendants' statements regarding the conditions of and repairs to the house.

7. Whether the vendor hired by Defendants to clean the Vinales' household goods properly and effectively cleaned the household goods.

8. Whether the Defendants offered Plaintiffs suitable temporary living facilities while they were displaced from the house.

9. Whether Defendants' failure to repair the house caused the Vinales family damages.

10. The amount of damages incurred by the Vinales family.

11. Whether Defendants are engaged in a joint enterprise.

12. Whether Defendants participated in AETC Housing's failure to comply with the lease.

<u>Defendants' Submission</u>:

1. Whether the Vinaleses immediately notified AETC Housing of conditions in the home which needed repair under the Lease Agreement.

2. Whether the Vinales refused or delayed access to AETC Housing to make repairs.

3. Whether the Vinales refused to allow Defendants to make repairs to the home.

4. Whether the Vinales failed to clean and maintain their home as required under the Lease Agreement.

5. Whether the Vinales breached any other contractual obligation in the Lease Agreement.

6. Whether AETC Housing made a "diligent effort to repair or remedy" the damage or conditions which the Vinales notified them of.

7. Whether there were any actual damages from the alleged breach of the Lease Agreement.

8. Whether those actual damages, if any, were proximately caused by the breach of the Lease Agreement or by the acts of the Vinales or a third party.

9. Whether AETC Housing hired a third party vendor the clean the Plaintiffs' household contents.

10. Whether there was any damage to contents or household items in the Vinales home.

11. Whether the Vinales abandoned their household items which they left behind.

12. Whether the Vinales can offer expert testimony as to the existence of damage, necessary repairs, and value of contents and household items.

13. Whether there is any factual basis for AETC Managers or Hunt ELP to be liable under the Lease Agreement, to which they were not parties.

14. Whether AETC Housing offered alternative housing for the Vinales family at no cost to them while out of the unit.

15. Whether the Vinales family declined the alternative housing offered by AETC Housing and requested to stay at a camping fairground.

16. Whether AETC Housing complied with the Vinales family's request to stay at a fairground while they were out of the unit and paid for the cost of that stay.

17. Whether or not the Vinales claims are barred by the statute of limitations.

14. Whether the Vinales failed to mitigate damages.

15. Whether the Vinales are estopped from claiming conditions in the home contrary to the Lease Agreement.

16. Whether the Vinales proximately caused their own damages.

17. Whether Defendants can be liable for the acts of others, including their agents and contractors.

18. Whether the Vinales have proven their claim for reimbursement for rent (BAH).

19. Whether the Vinales have failed to disclose the nature and extent of their damages.

20. Whether the Vinales have deleted or destroyed evidence in violation of their discovery obligations and court orders.

7. **Agreed Applicable Propositions of Law**

A list of the legal propositions that are not in dispute:

1. Pursuant to this Court's ruling, the only legal claim at issue is breach of the Lease Agreement.

2. The Lease Agreement required Shane Vinales to "immediately notify [AETC Housing] of any damage to the Premises."

3. The Lease Agreement required AETC Housing to "make a diligent effort to repair or remedy the condition at the Premises in accordance with the maintenance procedures provide in the Resident Guideline."

4. Pursuant to this Court's rulings, AETC Housing owed no duty to repair other than as set forth in the Lease Agreement.

5. Pursuant to this Court's rulings, the federal enclave doctrine requires the application of federal law and complementary pre-cession (1951) Texas law to this case.

6. Pursuant to this Court's rulings, the following categories of damages are unavailable for a breach of lease claim: exemplary or punitive damages.

7. Pursuant to this Court's ruling, "Accordingly, the Court finds that the federal-enclave doctrine applies, and that Plaintiffs' claims are governed by federal law and non-conflicting, pre-cession Texas law. As a result, any statutory or common-law claims premised on causes of action adopted after 1952 are unavailable, as are any forms of damages or relief not recognized at the time. As Defendants have explained, this requires dismissal of Plaintiffs' statutory claims (Counts 1, 2, 5, and 10), common-law claims for implied warranty (Count 2) and negligent misrepresentation (Count 4), damages for personal injury under the lease (Count 3), damages for mental distress, and attorney's feesdamages for personal injury under the lease (Count 3), damages for mental distress, and attorney's fees" are dismissed and unavailable [[349, at 7].

8. **Contested Issues of Law**

A list of contested issues of law.

Plaintiffs' Submission:

1. The Court's application of the Federal Enclave Doctrine as barring each of Plaintiffs' claims identified in Dkts. 349 and 368.

2. The Court's application of the Federal Enclave Doctrine as barring Defendants from having to comply with present-day law.

3. The Court's application of the Federal Enclave Doctrine to conclude that Defendants owe Plaintiffs no duty to repair the leased house, other than the duty set forth in the lease.

4. The Court's determination that there is no implied warranty of habitability associated with the lease.

5. The Court's determination that nuisance does not apply to a leasehold interest in real property.

6. The Court's determination that Plaintiffs' claims for negligence in connection with maintaining and repairing the house are precluded by the contract claim.

7. The Court's determination that Plaintiffs failed to plead and adduce sufficient evidence of fraudulent representations by the Defendants throughout the course of the family living in and requesting repairs to the house.

8. Whether the family members of the servicemember who did not sign the lease are intended third party beneficiaries of the lease.

9. Whether the Plaintiffs are intended third party beneficiaries of the Master Development and Management Agreement.

10. Whether the standards set forth in the Resident Guidelines are incorporated by reference into the Lease and establish duties under the Lease.

Defendants' Submission:

1. Whether AETC Housing breached the Lease Agreement with Shane Vinales by failing to "make a diligent effort to repair or remedy" a condition at the home after Shane Vinales "immediately" reported the condition.

2. Whether Shane Vinales has proven that he performed all duties under the Lease Agreement, as required to recover any damages for breach.

3. Whether Shane Vinales is estopped from claiming any deficiencies in the home at the start of the Lease Agreement other than those noted on the Move-In/Move-Out Form.

4. Whether Shane Vinales breached the Lease Agreement with AETC Housing by failing to immediately report conditions warranting repair.

5. Whether Shane Vinales breached the Lease Agreement with AETC Housing by failing to maintain and clean the home.

6. Whether Shane Vinales breached the Lease Agreement with AETC Housing by failing to allow AETC Housing and its representatives reasonable access to the home to make necessary or agreed repairs.

7. Whether AETC II Property Managers, LLC may be held liable under the Lease Agreement.

8. Whether Hunt, ELP may be held liable under the Lease Agreement.

9. Whether Becky Vinales and the Vinales children are third-party beneficiaries to the Lease Agreement.

10. Whether Shane Vinales may recover rents paid under the Lease Agreement as a result of any breach of the Lease Agreement by AETC Housing.

11. Whether any actual damages were proximately caused by Breach of the Lease Agreement, or by acts of the Vinales or third parties.

12. Whether any damage to Shane Vinales' personal property was caused by a breach of the Lease Agreement by AETC Housing.

13. Whether expert testimony is required to prove damages to personal property allegedly caused by mold.

14. Whether expert testimony is required to prove that the third-party TDLR licensed vendor's work which Plaintiffs allege to be deficient was, indeed, deficient under industry standards.

15. Whether Shane Vinales took reasonable efforts to mitigate damages to his personal property caused by AETC Housing, if any.

16. Whether the Vinaleses breached any other contractual obligation in the Lease Agreement.

17. Whether the Vinaleses abandoned their household items which they left behind.

18. Whether or not the Vinaleses' claims are barred by the statute of limitations.

19. Whether the Vinaleses proximately caused their own damages.

20. Whether Defendants can be liable for the acts of others, including their agents and contractors.

21. Whether the Vinaleses have proven their claim for reimbursement for rent (BAH).

22. Whether the Vinaleses have failed to disclose the nature and extent of their damages.

23. Whether the Vinaleses have deleted or destroyed evidence in violation of their discovery obligations and court orders.

24. Whether the Court erred in denying, in whole or part, Defendants' Government Contractor Immunity Motion [262, 348], Motion for Summary Judgment [260, 349], and Supplemental Motion for Summary Judgment [358, 368], and Hunt ELP Motion for Summary Judgment [254].

### 9. **Exhibits**

A list of all exhibits expected to be offered.

At least ten (10) days before the Final Joint Pretrial Order is due or on May 15, 2023, counsel will make all exhibits, including documentary and demonstrative exhibits, available for examination by opposing counsel. The exhibit list should clearly reflect whether a particular exhibit is objected to or whether there are no objections to the exhibit.

>Plaintiffs' Exhibit List is attached as Exhibit A.

>Defendants' Objections to Plaintiffs' Exhibits are attached as Exhibit B.

>Defendants' Exhibit List is attached as Exhibit C.

>Plaintiffs' Objections to Defendants' Exhibits are attached as Exhibit D.

### 10. Live Witnesses

A list of the names and addresses of witnesses who may be called with a brief statement of the nature of their testimony.

>Plaintiffs' Witness List has been attached as Exhibit E.

>Defendants' Witness List has been attached as Exhibit F.

### 11. Witnesses by Deposition Designation

The name of those witnesses whose testimony is expected to be presented by means of a deposition and designation by reference to page and line of the testimony to be offered (except those to be used for impeachment only) and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony.

At least seven (7) days before the Final Joint Pretrial Order is due or on May 18, 2023, counsel will make all deposition designations available for examination by opposing counsel. The deposition designation should clearly reflect whether there are additional designations by opposing counsel, and any objections to the portions designated.

Plaintiffs' Deposition Designations are as follows: Plaintiffs do not intend to offer any testimony by deposition; therefore, Plaintiffs do not identify any deposition designations.

Defendants' Deposition Designations are as follows:

1. Deposition of W.M. Barr, attached as Exhibit G – Defendants are offering these designations if, but only if, the Mold Armor Test kit results are allowed into evidence. Defendants specifically assert, and do not waive, the arguments raised in their motion in limine with respect to exclusion of the Mold Armor test results.

2. Deposition of Microban, attached as Exhibit H - Defendants are offering these designations if, but only if, the Mold Armor Test kit results are allowed into evidence. Defendants specifically assert, and do not waive, the arguments raised in their motion in limine with respect to exclusion of the Mold Armor test results.

3. Deposition of EmLab, attached as Exhibit I. Defendants are offering these designations if, but only if, the EmLab sampling results and/or the Adaptive report are allowed into evidence. We specifically assert, and do not waive, the arguments raised in their motion in limine with respect to exclusion of Miller's testimony, the Adaptive Report, and the accompanying EmLab report.

Plaintiffs' Objections to Deposition Designations: Attached as Exhibit J.

## 12. Trial Length

An estimate of the length of trial

The parties anticipate between 10 and 12 trial days.

## 13. *Voir Dire* and Jury Instructions

For a jury trial, include (a) proposed questions for the *voir dire* examination, (b) a proposed charge, including instructions, definitions, and special instructions, with citations to authority provided in footnotes.

(a) Each party's proposed *voir dire* examination questions are attached.

Plaintiffs' proposed voir dire questions are attached as Exhibit K.

Defendants' proposed voir dire questions are attached as Exhibit L.

(b) Each party's proposed jury instructions are attached.

Plaintiffs' proposed jury instructions are attached as Exhibit M.

Defendants' proposed jury instructions are attached as Exhibit N.

Defendants proposed jury verdict form is attached as Exhibit O.

_____   _____
DATE                                                                UNITED STATES MAGISTRATE JUDGE

**AGREED AND APPROVED:**

*Plaintiffs*

*AETC II PRIVATIZED HOUSING, LLC; AETC II PROPERTY MANAGERS, LLC and HUNT ELP, LTD. d/b/a HUNT MILITARY COMMUNITIES*

By their attorneys:

By its attorneys:

/s/ Ryan C. Reed
Randall A. Pulman, TX Bar No. 16393250
Ryan C. Reed, TX Bar No. 24065957
Matthew J. McGowan, TX Bar No. 24098077
Sarah J. Donahue, TX Bar No. 24103760
PULMAN, CAPPUCCIO, & PULLEN, LLP
2161 NW Military Highway, Suite 400
San Antonio, TX 78213
Telephone: 210-222-9494
Facsimile: 210-892-1610
E-Mail: ruplman@pulmanlaw.com
rreed@pulmanlaw.com

James R. Moriarty, TX Bar No. 14459000
MORIARTY SKIVER PLLC
4119 Montrose, TX 77006
Telephone: 713-528-0700
Facsimile: 713-258-1390

Francisco Guerra, IV
Jennifer Arlene Neal
Robert E. Brzezinksi
WATTS GUERRA, LLP
Four Dominion Drive, Bldg. 3, Suite 100
San Antonio, TX 78257
(210) 477-0500
E-Mail: fguerra@wattsguerra.com
jneal@wattsguerra.com
rbrzezinski@wattsguerra.com

/s/ Walter H. Boone
Walter H. Boone, MS Bar No. 8651
(*admitted to W.D. Tex. on 7/28/2020*)
Jennifer J. Skipper, TX Bar No. 24076171
Kye C. Handy, MS Bar No. 105048
(*admitted to W.D. Tex. on 1/21/2022*)
BALCH & BINGHAM, LLP
188 East Capitol Street, Suite 1400
Jackson, MS 39201
Telephone: 601-961-9900
Facsimile: 601-961-4466
E-Mail: wboone@balch.com
jskipper@balch.com
khandy@balch.com

Julia W. Mann, TX Bar No. 00791171
JACKSON WALKER, LLP
112 E. Pecan Street, Suite 2400
San Antonio, TX 782015
Telephone: 210-978-7761
Facsimile: 210-242-4646
E-Mail: jmann@jw.com